Michael L. Cook (MC 7887)
Lawrence V. Gelber (LVG 9384)
Robert J. Mrofka (RM 1930)
SCHULTE ROTH & ZABEL LLP
Attorneys for the Debtor and Debtor in Possession
919 Third Avenue
New York, New York  10022
Telephone:  (212) 756-2000
Facsimile:  (212) 593-5955

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
:
In re                                                             :     Chapter 11
:
QUIGLEY COMPANY, INC.,                                            :     Case No. 04-_____ (___)
:
:
:
                                    Debtor.                       :
:
------------------------------------------------------------------x

QUIGLEY COMPANY, INC.'S  MOTION FOR AN ORDER AUTHORIZING
PAYMENT OF PREPETITION WAGES AND COMPENSATION AND
AUTHORIZING AND DIRECTING FINANCIAL INSTITUTIONS TO HONOR
AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS

Quigley Company, Inc. ("Quigley"), debtor and debtor in possession, submits this motion (the "Motion") pursuant to sections 363(b) and 105(a) of title 11, United States Code (the "Bankruptcy Code") for an order authorizing, but not directing, Quigley to pay prepetition wages and compensation and authorizing and directing financial institutions to honor and process checks and transfers in connection therewith.

JURISDICTION AND VENUE

1. The Court has jurisdiction to consider this motion pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

9712648.6

## BACKGROUND

2. On September 3, 2004 (the "Petition Date"), Quigley commenced this case under chapter 11 of the Bankruptcy Code. Quigley continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. Prior to 1992, Quigley was engaged in the refractories business, where it developed, produced and marketed a broad range of refractories and related products to various industries, including the iron, steel and glass industries. Quigley became a wholly-owned subsidiary of Pfizer Inc. ("Pfizer") on August 25, 1968 and remains so today.

4. In September 1992, Quigley exited the refractories business, and sold its business to Minteq International, Inc., which acquired substantially all of Quigley's assets and assumed certain of Quigley's liabilities. Quigley, however, retained all of its liabilities stemming from products it sold prior to the sale of the business, including its liabilities for present personal injury claims and future personal injury demands allegedly arising from exposure to asbestos, silica, mixed dust, talc and/or vermiculite contained in products formerly made, used or sold by Quigley.

5. Quigley was first named as a defendant in asbestos-related personal injury claims in 1979 or 1980. Although Quigley ceased manufacturing any products containing asbestos in the 1970s, and exited the refractories business in 1992, as of August 23, 2004, it has been named as a defendant in approximately 424,100 personal injury claims in approximately 147,000 civil actions brought in federal and state courts throughout the United States. As of August 23, 2004, there are approximately 162,000 personal injury claims pending against Quigley in approximately 59,000 civil actions. Quigley's principal business today is managing the defense and resolution of the personal injury claims brought against it.

9712648.6

-2-

6. It is Quigley's intention to file a chapter 11 plan as soon as practicable, and to seek confirmation at the earliest possible time. Shortly before the commencement of this chapter 11 case, Pfizer entered into settlement agreements with numerous law firms who represent, upon information and belief, more than 80% of all personal injury claims against Quigley. Pfizer and Quigley have also engaged in discussions with an independent third party who has agreed to serve as a futures representative in this case, subject to appropriate approval. The settlement agreements and other negotiations have resulted in consensus on the principal elements of a chapter 11 plan which would establish a trust under section 524(g) of the Bankruptcy Code. Pfizer and Quigley would make substantial contributions to the trust, including substantial insurance and insurance proceeds and would seek the benefit of a channeling injunction.

7. Quigley has commenced this chapter 11 case to conserve its remaining assets and to afford it time to formulate a chapter 11 reorganization plan that would satisfy the requirements of section 524(g) of the Bankruptcy Code, and treats all present and future plaintiffs fairly and equitably.

## WAGES AND OTHER COMPENSATION

Payroll

8. Quigley currently employs a total of approximately nine employees, set forth on <u>Exhibit A</u> hereto (collectively, the "Employees"). All of the Employees are employees at will that are paid semimonthly. In the ordinary course of Quigley's business, Quigley incurs payroll obligations to the Employees for the performance of services rendered by such employees. Employees are paid semimonthly in arrears on the 15th and last day of each month. The average weekly gross payroll for Employees is approximately $42,500.

9712648.6

9. In addition to the Employees, Quigley retains the services of approximately twenty-three independent contractors, set forth on Exhibit B hereto, who provide contract labor, consulting and full time temporary services to Quigley. These independent contactors are paid on an hourly basis billed in arrears. Twenty-two of the independent contractors are retained through several temporary employment agencies.[1] The independent contractors that are hired through a temporary employment agency are paid through their respective agencies. The average monthly expense for these independent contractors is approximately $158,000.

10. Quigley estimates that, as of the Petition Date, approximately $8,823 in prepetition wages and compensation earned by its Employees prior to the Petition Date was unpaid, together with approximately $23,154 for the services of the independent contractors (the "Unpaid Compensation"). Items of Unpaid Compensation were due and owing on the Petition Date because, *inter alia*:

   a. Employees are paid in arrears in the ordinary course of Quigley's business;

   b. Quigley's chapter 11 petition was filed in the middle of Quigley's regular and customary payroll periods; and

   c. some payroll checks issued to Employees prior to the Petition Date may not have been presented for payment or cleared the banking system and, accordingly, have not been honored and paid as of the Petition Date.

11. The request to pay Unpaid Compensation relates solely to Employees and independent contractors who are employed or retained as of the Petition Date.

Reimbursable Business Expenses

12. Quigley reimburses its Employees for business expenses incurred in the performance of their duties. Reimbursable business expenses include, among other expenses,

---

[1] The independent contractors are retained through Forrest Edwards Group, LLC; Transworld Information Systems Inc., Starpoint Solutions and Venturi Technology Partners.

9712648.6

-4-

those incurred in connection with business travel, long distance and cellular phone charges, meals, and supplies (collectively, the "Reimbursable Business Expenses").

13. Quigley estimates that, as of the Petition Date, an aggregate of approximately $1,000 will be owed on account of Reimbursable Business Expenses, and will be payable upon submission of appropriate documentation and approval.

RELIEF REQUESTED

14. Quigley requests entry of an order: (i) authorizing Quigley to pay, in its sole discretion, prepetition obligations relating to the Employees and independent contractors, including the Unpaid Compensation and Reimbursable Business Expenses (together, the "Prepetition Employee Obligations") and all costs incident to the foregoing, and to continue to honor its practices, programs, and policies with respect to their Employees and independent contractors, as such practices, programs and policies were in effect as of the Petition Date; and (ii) authorizing and directing applicable banks and other financial institutions (collectively, the "Disbursement Banks") to receive, process and pay any and all checks drawn on Quigley's payroll and general disbursement accounts (collectively the "Disbursement Accounts"), and automatic payroll transfers to the extent that such checks or transfers relate to any of the foregoing.

BASIS FOR RELIEF REQUESTED

15. Pursuant to sections 507(a)(3) of the Bankruptcy Code, employee wages and an independent contractor's claims for commissions earned within 90 days before the date of the filing of the petition is afforded unsecured priority status to the extent of $4,650 per employee or in the case of an independent contractor "if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor." 11 U.S.C.

9712648.6

-5-

§ 507(a)(3)(B). During the 12 months preceding the Petition Date, the amount that each independent contractor earned by acting in the sale of goods or services from the debtor was at least 75 percent of the total earned.

16. Furthermore, section 363(b)(1) of the Bankruptcy Code provides, "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code further provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provisions of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

17. Quigley believes that substantially all of the Prepetition Employee Obligations constitute priority claims pursuant to 11 U.S.C. § 507(a)(3). Quigley submits that payment of such amounts at this time is necessary and appropriate. To the extent any Employee is owed in excess of $4,650 on account of the Prepetition Employee Obligations, Quigley submits that payment of such amounts is necessary and appropriate and is authorized under section 105(a) of the Bankruptcy Code pursuant to the "necessity of payment" doctrine, which "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor." In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); In re Chateaugay Corp., 80 B.R. 279 (S.D.N.Y. 1987). This doctrine is consistent with the paramount goal of chapter 11 of "facilitating the continued operation and rehabilitation of the debtor." Ionosphere Clubs, 98 B.R. at 176.

9712648.6

-6-

18. Any delay in paying the Prepetition Employee Obligations will adversely affect Quigley's relationship with its Employees and will irreparably impair the Employees' morale, dedication, confidence, and cooperation. The Employees' support for Quigley's reorganization efforts is critical to the success of those efforts. At this early stage, Quigley simply cannot risk the substantial damage that would inevitably attend any decline in the Employees' morale attributable to Quigley's failure to pay wages, compensation and other similar items.

19. Moreover, absent an order granting the relief requested by this Motion, the Employees will suffer undue hardship and, in many instances, serious financial difficulties, as the amounts in question are needed to enable Employees to meet their own personal financial obligations. Without the requested relief, the stability of Quigley will be undermined, perhaps irreparably, by the possibility that otherwise loyal Employees will seek other employment alternatives.

20. Quigley does not seek to alter the Employees' compensation or policies at this time. This Motion is intended only to permit Quigley, in its discretion, to make payments consistent with those policies to the extent that, without the benefit of an order approving this Motion, such payments would arguably be inconsistent with the Bankruptcy Code, and to permit Quigley, in its discretion, to continue to honor its practices, programs and policies with respect to their Employees, as such practices, programs and policies were in effect as of the Petition Date.

21. Courts in this district have routinely approved payment of prepetition claims for compensation, benefits and expense reimbursements. See, e.g., In re Bethlehem Steel Corp., Case No. 01-15288 (BRL) (Bankr. S.D.N.Y. 2001); In re Casual Male Corp., Case No. 01-41404 (REG) (Bankr. S.D.N.Y. 2001); In re Bradlees Stores, Inc., Case No. 00-16033, In re Ames Department Stores, Inc., Case No. 01-42217 (REG) (Bankr. S.D.N.Y. 2001) 00-16035 and

9712648.6

00-16036 (BRL) (Bankr. S.D.N.Y. 2000); In re CWT Specialty Stores, Inc., Case No. 00 B 10758 (JHG) (Bankr. S.D.N.Y. 2000); In re The Conran's Stores Inc., Case No. 94 B 40097 (JGH) (Bankr. S.D.N.Y. 1994); In re The Wiz, Inc., Case No. 97-48257 (Bankr. S.D.N.Y. 1997); In re R.H. Macy & Co., Case No. 92 B 40477 (BRL) (Bankr. S.D.N.Y. 1992); In re Best Products Co., Inc., Case Nos. 91 B 10048 (TLB) (Bankr. S.D.N.Y. 1991).

22. Accordingly, pursuant to sections 363(b) and 105(a) of the Bankruptcy Code, Quigley seeks authority to pay the Prepetition Employee Obligations that become due and owing during the pendency of this case and to continue at this time its practices, programs and policies with respect to its Employees, as such practices, programs and policies were in effect as of the Petition Date.

### APPLICABLE BANKS SHOULD BE AUTHORIZED TO HONOR AND PAY CHECKS ISSUED AND MAKE OTHER TRANSFERS TO PAY THE PREPETITION EMPLOYEE OBLIGATIONS

23. Quigley further requests that the Court authorize and direct the Disbursement Banks to honor and pay all prepetition and postpetition checks issued or to be issued, and fund transfers requested or to be requested, by Quigley on account of the Prepetition Employee Obligations that were not honored or paid as of the Petition Date. Quigley also seeks authority to issue new postpetition checks, or effect new fund transfers, on account of the Prepetition Employee Obligations to replace any prepetition checks or fund transfer requests that may be dishonored or rejected.

24. As a result of the commencement of Quigley's chapter 11 case, and in the absence of an order of the Court providing otherwise, Quigley's checks, wire transfers, and direct deposit transfers on account of the Prepetition Employee Obligations may be dishonored or rejected by the Disbursement Banks.

9712648.6

25. Quigley represents that each of these checks or transfers is or will be drawn on Quigley's payroll and general disbursement accounts and can be readily identified as relating directly to payment of the Prepetition Employee Obligations. Accordingly, Quigley believes that prepetition checks and transfers other than those for Prepetition Employee Obligations will not be honored inadvertently.

26. Authorization to pay amounts on account of the Prepetition Employee Obligations shall not be deemed to constitute postpetition assumption or adoption of any contract, program or policy pursuant to section 365 of the Bankruptcy Code. Quigley is in the process of reviewing these matters and reserves all rights under the Bankruptcy Code with respect thereto. Moreover, authorization to pay amounts on account of Prepetition Employee Obligations shall not affect Quigley's right to contest the amount or validity of any Prepetition Employee Obligations.

27. No previous application for the relief sought herein has been made to this or to any other court.

## NO MEMORANDUM OF LAW IS NECESSARY

28. Pursuant to Local Bankruptcy Rule 9013-1(b) for the Southern District of New York, Quigley respectfully requests that the Court dispense with the requirement that it file a memorandum of law. This Motion contains citations to legal authorities.

## NOTICE

29. Notice of this Motion has been given to (i) Quigley's twenty largest unsecured creditors, (ii) the United States Trustee for the Southern District of New York, and (iii) counsel for Pfizer. In light of the nature of the relief requested, Quigley submits that no further notice need be given.

WHEREFORE, Quigley requests entry of the attached order authorizing Quigley to pay prepetition wages and compensation, authorizing and directing financial institutions to honor and process checks and transfers related to such obligations, and granting such other and further relief as is just.

Dated: New York, New York
September 3, 2004

           SCHULTE ROTH & ZABEL LLP
           Proposed Attorneys for the Debtor
           and Debtor in Possession

           By: /s/ Michael L. Cook
           Michael L. Cook (MC 7887)
           (A Member of the Firm)
           919 Third Avenue
           New York, New York 10022
           Telephone: (212) 756-2000
           Facsimile: (212) 593-5955
           E-mail: Michael.Cook@srz.com

## **Exhibit A**

**Employees of Quigley Company, Inc.**

| Name | Title |
|---|---|
| Colby Feller | Data Support Specialist |
| Scott Heisman | Project Leader |
| Kim D. Jenkins | Director |
| John Lake | Sr. Programmer/Analyst |
| Gabriela Manzanillo | Supervisor, Settlement Processing |
| Melissa Miller | Data Support Specialist |
| Annabel Salas | Sr. Data Support Specialist |
| Wilma Seylaz | Supervisor |
| Carl Sonnenfeld | Assistant Manager, Insurer Billing |

-12-

## **Exhibit B**

### **Independent Contactors**

Tannika Corbett[*]
Jafer Kamsamohideen Ali*
Kerry Archer*
Tannika Corbett*
Antonio Hicks*
Cecilia Holder*
Morten Iversen
Kurt Kingsley*
Derek Minor*
Mary Nordin*
Pasupati Satish Nukala*
Richard Park*
Pardha Paruchuri*
Travis Peters*
Revone Simpson*
Gurpreet Singh*
Melissa Steinmetz*
Kenneth Stone*
Laurice Taylor*
Ron Testa*
Judith Tirado*
Aysah Williams*
Christine Wilson*

---

[*] Hired through a temporary employment agency.
9712648.6

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
:
In re                                                           :    Chapter 11
:
QUIGLEY COMPANY, INC.,                                          :    Case No. 04-_____ (___)
:
:
Debtor.                                                         :
----------------------------------------------------------------x

ORDER AUTHORIZING PAYMENT OF PREPETITION WAGES AND COMPENSATION
AND AUTHORIZING AND DIRECTING FINANCIAL INSTITUTIONS TO HONOR
AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS

Upon consideration of the motion (the "Motion")[2] of Quigley Company, Inc. ("Quigley"), debtor and debtor in possession, pursuant to sections 363(b) and 105(a), title 11, the United States Code (the "Bankruptcy Code") for an order authorizing, but not directing, Quigley to pay prepetition wages and compensation and authorizing and directing financial institutions to honor and process checks and transfers in connection therewith, as is more fully set forth in the Motion; and due and sufficient notice of the Motion having been given; and the Court having determined that the relief requested in the Motion is necessary and in the best interests of Quigley, its estate, creditors, and parties in interest; and upon the proceedings had before the Court; and good and sufficient cause appearing therefor; it is hereby

ORDERED that the Motion is granted and approved; and it is further

ORDERED that Quigley is authorized to pay any and all Prepetition Employee Obligations, and to continue its practices, programs and policies with respect to its Employees

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed in the Motion.
9712648.6

-2-

and independent contractors, as such practices, programs and policies were in effect as of the Petition Date; and it is further

ORDERED that each of Quigley's banks are authorized and directed to honor all checks and fund transfer requests relating to the Prepetition Employee Obligations, regardless of whether they were issued prior to or after the Petition Date, to the extent of funds available in Quigley's accounts; and it is further

ORDERED that Quigley is authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests in respect of their Prepetition Employee Obligations dishonored or rejected as a consequence of the commencement of this chapter 11 case; and it is further

ORDERED that nothing in this Order nor any actions taken by Quigley in the implementation thereof shall constitute the assumption of any executory contract pursuant to section 365 of the Bankruptcy Code.

Dated:      New York, New York
            September ___, 2004

_____
UNITED STATES BANKRUPTCY JUDGE

9712648.6