```
UNITED STATES BANKRUPTCY COURT              FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re:                                      :
                                            :
        QUIGLEY COMPANY, INC.               :   Chapter 11
                                            :   Case No. 04-15739 (SMB)
                        Debtor.             :
---------------------------------------------------------------X
```

## MEMORANDUM DECISION AND ORDER
## REGARDING INSURERS' STANDING

**A P P E A R A N C E S:**

SCHULTE ROTH & ZABEL LLP
Attorneys for the Debtor
919 Third Avenue
New York, New York 10022

 Michael L. Cook, Esq.
 Lawrence V. Gelber, Esq.
 Victoria A. Lepore, Esq.
 Jessica L. Fainman, Esq.
  Of Counsel

CADWALADER, WICKERSHAM & TAFT LLP
Attorneys for Pfizer, Inc.
One World Financial Center
New York, New York 10281

 John H. Bae, Esq.
 Gary D. Ticoll, Esq.
  Of Counsel

GILBERT RANDOLPH LLP
Attorneys for Pfizer, Inc.
1100 New York Avenue, NW, Suite 700
Washington, DC 20005

 David B. Killalea, Esq.
 Jonathan M. Cohen, Esq.
  Of Counsel

BROWN RUDNICK BERLACK ISRAELS LLP
Attorneys for the Ad-Hoc Committee of Tort Victims
Seven Times Square
New York, New York 10036

    Gregory T. Arnold, Esq.
        Of Counsel


CAPLIN & DRYSDALE, CHTD.
Attorneys for the Official Unsecured Creditors
  Committee of Quigley Co., Inc.
375 Park Ave., 35th Floor
New York, New York 10152

    Elihu Inselbuch, Esq.
    Rita C. Tobin, Esq.
    Peter Van N. Lockwood, Esq.
    Ronald E. Reinsel, Esq.
        Of Counsel


WILMER CUTLER PICKERING HALE AND DORR LLP
Attorneys for Hartford Accident and Indemnity Company,
  First State Insurance Company, New England Insurance Company, and
  Twin City Fire Insurance Company
399 Park Avenue
New York, New York 10022

    Craig Goldblatt, Esq.
    Nancy Manzer, Esq.
    Michelle Goldis, Esq.
        Of Counsel


HOGAN & HARTSON LLP
Attorneys for Hartford Accident and Indemnity Company,
  First State Insurance Company, New England Insurance Company, and
  Twin City Fire Insurance Company
555 Thirteenth Street, N.W.
Washington, D.C. 20004

    William J. Bowman, Esq.
    James P. Ruggeri, Esq.
    Edward B. Parks, II, Esq.
        Of Counsel

WHITE AND WILLIAMS LLP
Attorneys for Allianz Global Risks U.S. Insurance Company
  (f/k/a Allianz Insurance Company) and Allianz Underwriters
  Insurance Company (f/k/a Allianz Underwriters, Inc.)
One Penn Plaza, Suite 1801
New York, New York 10019

      Karel S. Karpe, Esq.
      James S. Yoder, Esq.
      Elit. R. Felix, II, Esq.
          Of Counsel


SEYFARTH SHAW LLP
Attorneys for Continental Casualty Company and
  The Continental Insurance Company
620 Eighth Avenue
New York, New York 10018

      Robert W. Dremluk, Esq.
      David C. Christian, II, Esq.
          Of Counsel


CARROLL BURDICK & MCDONOUGH LLP
Attorneys for Continental Casualty Company and
  The Continental Insurance Company
44 Montgomery Street, Suite 400
San Francisco, California 94104

      Rodney Eshelman, Esq.
      Shay Aaron Gilmore, Esq.
      Gretchen Ramos, Esq.
          Of Counsel


LEVIN & GLASSER, P.C.
Attorneys for OneBeacon America Insurance Company
420 Lexington Avenue
New York, New York 10170

      Paul G. Burns, Esq.
          Of Counsel

CROWELL & MORING LLP
Attorneys for OneBeacon America Insurance Company
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

 Mark D. Plevin, Esq.
 Leslie A. Epley, Esq.
 Kelly R.Cusick, Esq.
  Of Counsel


MENDES & MOUNT, LLP
Attorneys for Korean Reinsurance Company
750 Seventh Avenue
New York, New York 10019

 Eileen T. McCabe, Esq.
  Of Counsel


STEPTOE & JOHNSON LLP
Attorneys for Travelers Casualty and Surety Company
750 Seventh Avenue, 19th Floor
New York, New York 10019

 Greg R. Yates, Esq.
 James E. Rocap, III, Esq.
 George R. Calhoun, V, Esq.
  Of Counsel


STEVENS & LEE, P.C.
Attorneys for Fireman's Fund Insurance Company,
 Associated Indemnity Corp., and The American Insurance Company
485 Madison Avenue, 20th Floor
New York, New York 10022

 Constantine D. Pourakis, Esq.
 Leonard P. Goldberger, Esq.
 Jocelyn Keynes, Esq.
  Of Counsel

TOGUT, SEGAL & SEGAL LLP
Attorneys for Albert Togut, as the Legal Representative
  for the Future Asbestos Personal Injury Claimants of Quigley Co., Inc.
One Penn Plaza, Suite 3335
New York, New York 10119

    Scott E Ratner, Esq.
    Richard K. Milin, Esq.
        Of Counsel


OFFICE OF THE U.S. TRUSTEE
33 Whitehall Street, 21st Floor
New York, New York 10004

    Greg M. Zipes, Esq.
        Of Counsel


**STUART M. BERNSTEIN**
**Chief United States Bankruptcy Judge:**

      Quigley Company, Inc. ("Quigley") commenced this chapter 11 case on September 3, 2004. It filed the Fourth Amended and Restated Quigley Company, Inc. Plan of Reorganization on May 18, 2007 (ECF Doc. # 1098), as further amended on March 28, 2008 (ECF Doc. # 1380), (the "Plan"). The Court approved Quigley's disclosure statement, and adjourned the confirmation hearing <u>sine die</u> to accommodate the filing of objections, appropriate discovery and the disposition of any legal issues.

      While no objections to confirmation have yet been filed, several insurance companies (the "Insurers") objected to earlier plans, and Quigley expects them to do so again. Of more immediate concern, the Insurers served discovery requests relating to confirmation of the Plan. Quigley and its parent company, Pfizer, Inc. ("Pfizer"), seek the entry of an order to the effect that the Insurers lack standing to participate, and are contractually foreclosed from participating, in the confirmation proceedings except with respect to one issue described below. This

5

memorandum decision outlines the considerations governing the Insurers' standing, and directs the parties to meet and confer regarding the pending discovery disputes in light of this opinion.

## BACKGROUND

The background leading to this bankruptcy case has been discussed at length in the Court's prior published decisions. See In re Quigley Co., Inc., 377 B.R. 110 (Bankr. S.D.N.Y. 2007); Continental Cas. Co. v. Pfizer, Inc. (In re Quigley Co., Inc.), 361 B.R. 723 (Bankr. S.D.N.Y. 2007); In re Quigley Co., Inc., 346 B.R. 647 (Bankr. S.D.N.Y. 2006). I assume familiarity with these decisions, and limit the present discussion to the facts and information relevant to the disposition of the pending motion.

Quigley and Pfizer have been named as defendants in thousands of asbestos-related personal injury lawsuits, and share insurance covering their asbestos-related liability. The Plan proposes to channel the claims against Quigley, and the derivative claims against Pfizer, into a trust, which will administer, and where appropriate, pay them. The trust will be funded, inter alia, through an assignment by Pfizer and Quigley of their rights in certain insurance policies and settlements (the "Insurance Rights"). It appears that the Insurers are the counter-parties to these insurance agreements.

With one exception, the Plan purports to preserve all of the Insurers' defenses to coverage under the policies. Section 10.4, entitled "Insurance Neutrality" states:

> (a) All Asbestos PI Insurer Coverage Defenses[1] are preserved and nothing in the

---

[1] "Asbestos PI Insurer Coverage Defenses" are defined as

any and all rights and defenses at law or in equity that any Asbestos Insurance Entity may have under any Shared Asbestos Insurance Policy, any other insurance policy, any Insurance Settlement Agreement, any other settlement agreement with any Asbestos Insurance Entity, or applicable non-bankruptcy law to a Claim seeking insurance coverage for or on account of any Asbestos PI Claims that have been channeled to or have been or will be assumed or incurred by the Asbestos

>Plan, the Confirmation Order, any finding of fact and/or conclusion of law with respect to the Confirmation of the Plan, or any order or opinion entered on appeal from the Confirmation Order, shall limit the right of any Asbestos Insurance Entity, in any Asbestos Insurance Action, to assert any Asbestos PI Insurer Coverage Defense. Notwithstanding anything in this Section 10.4 to the contrary, nothing in this Section 10.4 shall affect or limit, or be construed as affecting or limiting, (i) the binding effect of the Plan and the Confirmation Order on Quigley, Reorganized Quigley, or the Asbestos PI Trust or the beneficiaries of such trust; (ii) the protection afforded to any Settling Asbestos Insurance Entity by the Settling Asbestos Insurance Entity Injunction; or (iii) the Non-Settling Asbestos Insurance Entity Injunction.
>
>(b) Nothing in this Section 10.4 is intended or shall be construed to preclude otherwise applicable principles of <u>res judicata</u> or collateral estoppel from being applied against any Asbestos Insurance Entity with respect to any issue that is actually litigated by such Asbestos Insurance Entity as part of its objections, if any, to confirmation of the Plan or as part of any contested matter or adversary proceeding in this Chapter 11 Case.

(<u>Plan</u> at § 10.4.)

The exception to the so-called "insurance neutrality" of the Plan concerns the assignment of the Insurance Rights. It appears that certain of the insurance policies, and possibly the settlements, include clauses that prohibit the assignment of the policy without the insurer's consent. A violation of the consent-to-assignment clause ordinarily provides a defense to coverage. The Plan proposes to assign the Insurance Rights with or without the Insurers' consents, and eliminate that particular coverage defense. Toward that end, the definition of the preserved "Asbestos PI Insurer Coverage Defenses" excludes any defenses based on the assignment of the Insurance Rights. In addition, Section 12 of the Plan identifies various

---

>PI Trust pursuant to the Plan, including, without limitation, any rights or defense based on the terms of the Plan or the Plan Documents or the manner in which the Plan or Plan Documents were negotiated; <u>provided, however</u>, that Asbestos PI Insurer Coverage Defenses shall not include any right or defense that (1) the Plan or any of the Plan Documents do not comply with the Bankruptcy Code, (2) is based on the assertion that either the Quigley Insurance Transfer or the Insurance Relinquishment Agreement is invalid or unenforceable or otherwise is prohibited; or (3) has been released, waived, altered or otherwise resolved in any Insurance Settlement Agreement, any other settlement agreement or by binding adjudication. (<u>Plan</u> at § 1.1.)

7

conditions precedent to confirmation and consummation of the Plan, and section 12(e) requires that the confirmation order contain, <u>inter alia</u>, the following findings of fact and conclusions of law:

> (ii) The Quigley Insurance Transfer, the Insurance Relinquishment Agreement and the AIG Assignment Agreement do not violate any consent-to assignment provisions of any Shared Asbestos Insurance Policy, any Insurance Settlement Agreement, the AIG Insurance Settlement Agreement or any other applicable insurance policy, agreement, or contract;
>
> (iii) The Quigley Insurance Transfer pursuant to the Plan is valid, effective and enforceable, and effectuates the transfer to the Asbestos PI Trust of the Quigley Transferred Insurance Rights; <u>provided</u>, <u>however</u>, that all Asbestos PI Insurer Coverage Defenses are preserved to the extent set forth in Section 10.4 of this Plan; [and]
>
> (iv) The duties, obligations and liabilities of any Asbestos Insurance Entity under all insurance policies, all Shared Asbestos Insurance Policies, all Insurance Settlement Agreements, and all other settlement agreements, are not diminished, reduced or eliminated by: (A) the discharge of Quigley and Reorganized Quigley from all Asbestos PI Claims; (B) the injunctive protection provided to Quigley, Reorganized Quigley, the Asbestos Protected Parties, and the Settling Asbestos Insurance Entities with respect to Asbestos PI Claims; or (C) the assumption of responsibility and liability for all Asbestos PI Claims by the Asbestos PI Trust; <u>provided</u>, <u>however</u>, that all Asbestos PI Insurer Coverage Defenses are preserved to the extent set forth in Section 10.4 of this Plan. . . .

(<u>Plan</u> at § 10.4.)

In an earlier proceeding, certain insurers sought, <u>inter alia</u>, a declaration that similar provisions in an previous plan constituted a repudiation of the policies that contained the consent-to-assignment clause. <u>Quigley</u>, 361 B.R. at 732. The Court dismissed the cause of action without prejudice. Quigley and Pfizer argued, and the Court agreed, that the plaintiff insurers could raise this objection at confirmation. <u>Id.</u> at 745-47.

8

Pg 9 of 19

**The Instant Proceedings**

      As noted, the Insurers served discovery requests on Pfizer and Quigley in connection with the confirmation hearing. The group referred to as the Certain Insurers[2] served interrogatories and document requests seeking, in the main, all discovery requests previously served on Quigley and Pfizer and their responses and document production, the identity of the confirmation hearing witnesses and the documents that they intend to use at the confirmation hearing. Continental and Allianz, subsets of the Certain Insurers, also served separate discovery requests. A few inquire directly into how confirmation will affect the Insurer's rights. For example, Allianz asked for "all documents regarding any evaluations of whether or how the Plan may affect the Asbestos Insurers or the Asbestos Insurers Policies." (See Quigley Company, Inc.'s Objections and Responses to Amended Second Request by Allianz Global Risks U.S. Insurance Company (f/k/a Allianz Insurance Company), and Allianz Underwriters Insurance Company (f/k/a Allianz Underwriters, Inc.) for Production of Documents, dated May 21, 2008)("Quigley's Objections").)[3] As discussed below, others focused on Plan issues that do not appear to affect the Insurers' rights directly. Quigley and Pfizer objected to all of the discovery on several grounds, including that the Insurers' lacked standing in light of the Plan's "insurance neutrality."

      In addition, Quigley and Pfizer filed a joint motion on May 22, 2008 (the "Declaration Motion"), seeking a determination that the Insurers lack standing, and are not entitled to take

---

[2]    The "Certain Insurers" include Hartford Accident and Indemnity Company, First State Insurance Company, New England Insurance Company, and Twin City Fire Insurance Company (collectively, "Hartford"), Allianz Global Risks U.S. Insurance Company (f/k/a Allianz Insurance Company) and Allianz Underwriters Insurance Company (f/k/a Allianz Underwriters, Inc.) (collectively, "Allianz"), Continental Casualty Company and The Continental Insurance Company and OneBeacon America Insurance Company (collectively, "Continental").

[3]    A copy of Quigley's Objections is annexed as Exhibit 7 to the Declaration of Charley S. Sung, Esq., dated June 16, 2008 (ECF Doc. # 1457) ("Sung Declaration").

discovery or participate in the confirmation proceedings with respect to all issues, except for the consent-to-assignment issue mentioned earlier.[4]  Although the motion, standing alone, arguably seeks an advisory opinion, or alternatively, the adjudication of issues that are not ripe, the Insurers' motions to compel discovery supply concreteness and immediacy.  Accordingly, the Court advised the parties that it would initially address the Insurers' standing before considering the discovery issues.

## DISCUSSION

**A.   Standing**

"[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." Warth v. Seldin, 422 U.S. 490, 498 (1975)(emphasis added).  Constitutional, or Article III standing, "imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." Id.  "As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." Id. at 498-99 (internal citations omitted); accord Singleton v. Wulff, 428 U.S. 106, 112 (1976)(The first question in the standing inquiry is "whether the plaintiff-respondents allege 'injury in fact,' that is, a sufficiently concrete interest in the outcome of their suit to make it a case or controversy subject to a federal court's Art. III jurisdiction").

---

[4]   See Motion of Quigley Company, Inc. and Pfizer Inc. for a Determination that Quigley's Insurers May Not Participate in Plan Confirmation Proceedings As To Issues That Do Not Affect Insurers' Contractual Rights, dated May 22, 2008 (ECF Doc. # 1416.)

10

In addition, the litigant must demonstrate prudential standing. Thus, "[w]hen the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, this Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Warth, 422 U.S. at 499:

> Federal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation. The reasons are two. First, the courts should not adjudicate such rights unnecessarily, and it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not. . . . Second, third parties themselves usually will be the best proponents of their own rights. The courts depend on effective advocacy, and therefore should prefer to construe legal rights only when the most effective advocates of those rights are before them. The holders of the rights may have a like preference, to the extent they will be bound by the courts' decisions under the doctrine of Stare decisis.

Singleton, 428 U.S. at 113-14 (citations omitted). The same limitations apply when a litigant attempts to assert the rights of a third party defensively. Warth, 422 U.S. at 501 n.12.

**B.      Standing in Bankruptcy Proceedings**

Section 1109(b) of the Bankruptcy Code provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." "Party in interest" is not defined in the Bankruptcy Code, Krys v. Official Comm. of Unsecured Creditors of Refco, Inc. (In re Refco, Inc.), 505 F.3d 109, 117 (2d Cir. 2007); Roslyn Sav. Bank v. Comcoach Corp. (In re Comcoach Corp.), 698 F.2d 571, 573 (2d Cir. 1983), and when interpreting the phrase, a court must be governed by the Bankruptcy Code's purpose. Comcoach Corp., 698 F.2d at 573; Southern Blvd., Inc. v. Martin Paint Stores (In re Martin Paint Stores), 207 B.R. 57, 61 (S.D.N.Y. 1997).

Section 1109(b) grants a broad right to all parties in interest to participate in the case, and

11

arguably eliminates the requirement to demonstrate prudential standing. It has not, however, been read so broadly. Prudential limitations on standing play an especially important role in bankruptcy proceedings. Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.), 843 F.2d 636, 644 (2d Cir. 1988)("Kane"). Bankruptcy is often a zero-sum game in which every creditor may be affected by a dispute involving the estate and a third party. For example, recoveries through preference and fraudulent transfer litigation, or successful objections to claims, generally inure to the benefit of the entire creditor body. Proceedings would quickly grind to a halt if the court had to hear every party on every issue:

> [I]t is important that a bankruptcy court is not too facile in granting applications for standing. Overly lenient standards may potentially over-burden the reorganization process by allowing numerous parties to interject themselves into the case on every issue, thereby thwarting the goal of a speedy and efficient reorganization.... Granting peripheral parties status as parties in interest thwarts the traditional purpose of bankruptcy laws which is to provide reasonably expeditious rehabilitation of financially distressed debtors with a consequent distribution to creditors who have acted diligently.

Refco, Inc., 505 F.3d at 118-19 (quoting In re Ionosphere Clubs, Inc., 101 B.R. 844, 850-51 (Bankr. S.D.N.Y. 1989)(internal citations and quotation marks omitted)).

Consequently, § 1109(b) has been interpreted to mean "that anyone who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which it pertains. . . ." In re James Wilson Assocs., 965 F.2d 160, 169 (7th Cir. 1992)(Posner, J.). A "party in interest" "must still satisfy the general requirements of the standing doctrine." Martin Paint Stores, 207 B.R. at 61; accord James Wilson Assocs., 965 F.2d at 169; EFL Ltd. v. Miramar Res., Inc. (In re Tascosa Petrol. Corp.), 196 B.R. 856, 862-63 (D. Kan. 1996). Thus, although "[a] party in interest may object to confirmation of a plan," 11 U.S.C. § 1128(b), it cannot challenge portions of the plan that do not affect its direct interests. E.g., Greer v. Gaston & Snow (In re Gaston & Snow), No. 93 Civ.

12

8517 (JGK), 1996 WL 694421, at *7 (S.D.N.Y. Dec. 4, 1996)(creditor, who did not allege that he would receive more under a chapter 7 liquidation than under the plan cannot argue that the plan violated the "best interest of the creditors" test as to other creditors); Tascosa Petrol. Corp., 196 B.R. at 863 (class 5 creditor could not assert rights of class 4 creditors in objecting to plan); In re Evans Prods. Co., 65 B.R. 870, 874 (S.D. Fla. 1986)(affiliated debtors lacked standing "to raise the rights of wrongly classified creditors as a means to attack the overall reorganization plan"); In re Simplot, No. 06-00002-TLM, 2007 WL 2479664, at *10 (Bankr. D. Idaho Aug. 28, 2007)(limiting standing of entity in which debtor owned stock to specific issues and rejecting standing to raise other issues); In re Orlando Inv., L.P., 103 B.R. 593, 596-97 (Bankr. E.D. Pa. 1989)(objectors could not challenge plan releases that only affected other interest holders); In re Johns-Manville Corp., 68 B.R. 618, 623 (Bankr. S.D.N.Y. 1986)("[N]o party may successfully prevent the confirmation of a plan by raising the rights of third parties who do not object to confirmation."), aff'd, 78 B.R. 407 (S.D.N.Y. 1987), aff'd sub nom. Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.), 843 F.2d 636, 644 (2d Cir. 1988).

Kane is directly on point. There, an asbestos creditor with an existing claim opposed confirmation on several grounds, including, inter alia, that the plan improperly discharged the rights of future asbestos victims that had not ripened into "claims." Affirming the lower court orders confirming the plan, the Second Circuit initially concluded that Kane was a "person aggrieved" and had standing to appeal from the confirmation order. 843 F.2d at 642. The Court then turned to the traditional prudential standing test to determine whose rights Kane would be permitted to assert:

> The prudential concerns limiting third-party standing are particularly relevant in the bankruptcy context. Bankruptcy proceedings regularly involve numerous parties, each of whom might find it personally expedient to assert the rights of another party even though that other party is present in the proceedings and is

13

> capable of representing himself. Third-party standing is of special concern in the bankruptcy context where, as here, one constituency before the court seeks to disturb a plan of reorganization based on the rights of third parties who apparently favor the plan. In this context, the courts have been understandably skeptical of the litigant's motives and have often denied standing as to any claim that asserts only third-party rights.

Id. at 644.

The Court concluded that Kane lacked standing to assert the rights of the future claimants. First, the interests of Kane and the future claimants were potentially in conflict. Second, the rights of the future claimants were already well represented by the court-appointed regal representative. The legal representative, in this regard, had expressly stated that he did not want Kane to assert the future claimants' rights, and the Second Circuit emphasized that "[t]his is precisely the situation where the third-party standing limitation should apply." Id. at 644-45. [5]

In In re A.P.I., Inc., 331 B.R. 828, 857 (Bankr. D. Minn. 2005), aff'd sub nom. One Beacon Am. Ins. Co. v. A.P.I., 2006 WL 1473004 (D. Minn. May 25, 2006), the bankruptcy court applied these principles in an asbestos bankruptcy case like this one, and limited the standing of insurers to object to confirmation. There, the debtor's liability insurers objected to confirmation on various grounds, some directly implicating their contract rights and others

---

[5] The Insurers suggest that because the "person aggrieved" standard only applies to bankruptcy appeals, decisions like Kane, involving questions of appellate standing, are not controlling. They are only partly correct. The "person aggrieved" standard, a carryover from the bankruptcy act of 1898, is an additional prudential limitation on standing in bankruptcy appeals. Duckor Spradling & Metzger v. Trust (In re P.R.T.C., Inc.), 177 F.3d 774, 777 (9th Cir. 1999); see In re Combustion Eng'g, Inc., 391 F.3d 190, 214 & n.20 (3d Cir. 2004). It concerns the "causal nexus between act and injury; appellant must show that he was 'directly and adversely affected pecuniarily by the order of the bankruptcy court' in order to have standing to appeal. Gibbs & Bruns, LLP v. Thomas & Culp, LLP (In re Coho Energy Inc.), 395 F.3d 198, 203 (5th Cir. 2004)(internal quotation marks and citation omitted).

The "person aggrieved" standard does not impose a limitation on the issues that the appellant can raise, the province of the general principles of prudential standing. Kane applied these general principles only after concluding that the appellant was a "person aggrieved." Kane, 843 F.2d at 642 ("Having determined that Kane may appeal the Bankruptcy Court's confirmation order, we must now decide whose rights Kane will be permitted to assert."). The same general principles of prudential standing apply in all federal courts, including the bankruptcy court.

14

involving the rights of creditors. The court heard but overruled the objections that invoked the insurers' contract rights. See 331 B.R. at 860-61. The court concluded, however, that the insurers lacked standing to challenge confirmation on the grounds that the plan improperly classified or improperly treated asbestos claims, id. at 861-63, that the debtor failed to solicit acceptances in accordance with the Bankruptcy Code, id. at 863-64, that the plan improperly released third party affiliates, id. at 864-66, and that the plan did not satisfy the funding requirements of 11 U.S.C. § 524(g). Id. at 866-67. These issues directly affected the creditors, who were the appropriate parties to raise them, or to choose not to raise them.

The case law cited and discussed above confirms two important principles that govern standing in bankruptcy proceedings. First, the court should decide questions of standing, particularly, in multi-party, multi-issue confirmation proceedings, on an issue-by-issue basis. A.P.I., 331 B.R. at 857. Second, a "party in interest" cannot assert third party rights defensively to defeat confirmation even if confirmation would directly and adversely affect its own rights. Instead, the objecting party can only challenge the parts of the plan that directly implicate its own rights and interests. [6]

These prudential rules limit the standing of the Insurers to object to Quigley's Plan. As in Kane, "[t]his is precisely the situation where the third-party standing limitation should apply."

---

[6] The bankruptcy court reached the opposite conclusion in In re Congoleum Corp., No. 03-51524, 2005 WL 712540 (Bankr. D. N.J. Mar. 24, 2005). There, the debtor in an asbestos case moved to limit the insurers' standing to participate in the confirmation hearing, arguing that the plan was "insurance neutral." The court disagreed, and rejected the debtor's fallback position that standing should be judged on an issue-by-issue basis. The court held that the debtor's argument was directly contrary to the language of § 1109(b), which states that the party in interest "may appear and be heard on any issue." Id. at *3. The court recognized that other courts have imposed standing limits on tangential parties or when the plan provision did not affect that party's interest, but concluded that the insurers' interests were neither tangential nor unaffected, and thus, "prudential limitations on standing have no application here." Id.

The Congoleum court's conclusion that § 1109(b) displaces the ordinary principles of prudential standing runs counter to the case law in this Circuit and the majority of the other courts that have considered this question.

843 F.2d at 644-45.  First, the Insurers' interests are directly in conflict with the creditors' interests.  The proceeds of the Insurance Rights will be used to pay the asbestos personal injury claims.  We may take as a given that the Insurers hope to pay less, while the creditors hope they will pay more.

Second, the official representatives of the various constituencies, each represented by competent counsel, support Quigley's and Pfizer's efforts to limit the Insurers' standing.  The Legal Representative for the future asbestos personal injury claimants joined in the Declaration Motion, stating that allowing the Insurers to object to those provisions that do not directly affect their rights "are likely to duplicate the objections of other parties and the Legal Representative believes they will increase litigation costs without providing a corresponding benefit to future asbestos personal injury claimants, whose interests differ materially from those of the Insurers."[7]  The Official Committee of Unsecured Creditors also joined in the Declaration Motion.[8]  Finally, the Ad Hoc Committee of Tort Victims, which did not join in the Declaration Motion, nevertheless appears poised to object to the Plan based upon the voting and treatment issues that impact the asbestos personal injury claimants that did not enter into pre-petition settlement agreements with Pfizer.  See Quigley, 377 B.R. at 119.  Accordingly, the Insurers' standing is limited to challenging the Plan provisions and raising the confirmation objections that directly affect their contractual rights and interests.

---

[7]  See Joinder of the Legal Representative for Future Asbestos Personal Injury Claimants to Motion of Quigley Company, Inc. and Pfizer Inc. for Determination that Quigley's Insurers May Not Participate in Plan Confirmation Proceedings As To Issues That Do Not Affect Insurers' Contractual Rights, dated June 25, 2008, at 1-2 (ECF Doc. # 1487).

[8]  See Unsecured Creditors Committees' Joinder in Reply of Quigley and Pfizer to Certain Insurer's Memorandum of Law in Opposition to Motion of Quigley Company, Inc. and Pfizer Inc. for Determination that Quigley's Insurers May Not Participate in Plan Confirmation Proceedings As To Issues That Do Not Affect Insurers' Contractual Rights, and Amended Supplemental Statement, dated June 25, 2008 (ECF Doc. # 1488).

16

**C.     The Insurers' Discovery Demands**

This conclusion leads to the consideration of the Insurers' demands, at least on a preliminary basis.  The Court has already ruled that the <u>affected</u> Insurers can object to the Plan's treatment of the consent-to-assignment provisions.  In addition, the Insurers have suggested that the trust procedures circumvent the insured's duty to cooperate.[9]  There may be other legitimate challenges, and the foregoing is not intended to exhaust the issues on which the Insurers may have standing, or pass on the merits of any potential objections.  It is enough to say that the Insurers are parties in interest, and have the right to object to confirmation to the extent indicated in the previous discussion.  They cannot, however, object to the Plan based on how it affects the rights of third parties, even if those objections may provide grounds to defeat confirmation.  Issues relating to classification, treatment, solicitation and voting come immediately to mind.  These are "creditor" issues that may be raised by the affected creditors, but not by non-creditors, such as the Insurers.

The Insurers' discovery demands must reflect this same limitation yet it seems that they do not.  For example, Allianz served document requests that sought all documents concerning "the Pfizer Claimant Settlement Agreement,"[10]  (See <u>Pfizer, Inc.'s Objections and Responses to Allianz Global Risks U.S. Insurance Company (f/k/a Allianz Insurance Company) and Allianz Underwriters Insurance Company (f/k/a Allianz Underwriters, Inc.) Amended Second Subpoena</u>

---

[9]     Generally, the insured is required to allow the insurer to control the defense and cooperate with the insurer.  14 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE §§ 199:7 & 199.17 (3d ed. 2008).  Typically, the right to accept or reject a settlement offer is reserved to the insurer.  <u>Id</u>. at § 203.2. Even where the policy does not contain a cooperation clause, the law may imply one. <u>Id</u>. at § 199.3.  Under the Plan, however, "[t]he Asbestos PI Trust will have the sole and exclusive authority as of the Effective Date to defend all Asbestos PI Claims."  (<u>Plan</u> at § 12.1(e)(i).)

[10]     The Pfizer settlement has been the subject of prior opinions.  <u>See</u> <u>In re Quigley Co.</u>, 377 B.R. 110 (Bankr. S.D.N.Y. 2007); <u>In re Quigley Co., Inc.</u>, 346 B.R. 647 (Bankr. S.D.N.Y. 2006).

17

04-15739-smb    Doc 1521    Filed 07/25/08    Entered 07/25/08 12:08:19    Main Document
Pg 18 of 19

Directed to Pfizer, Inc., dated May 27, 2008, at Req. No. 4) (see Sung Declaration, Ex. 6), "Pfizer's pre-petition negotiations with current holders of asbestos PI Claims [sic] as discussed in the Disclosure Statement at page 35," (id., at Req. No. 5), and "the number of claimants represented by each plaintiffs' law firm that agreed to the Pfizer Claimants [sic] Settlement Agreement." (Id. at Req. No. 14.)  Its interrogatories inquired into the identity of persons with knowledge of the voting procedures, (Quigley Co., Inc.'s Objections and Responses to Amended Second Set of Interrogatories of Allianz Global Risks U.S. Insurance Company (f/k/a Allianz Insurance Company); and Allianz Underwriters Insurance Company (f/k/a Allianz Underwriters, Inc.), dated May 21, 2008, at Req. No. 8 (see Sung Declaration, Ex. 8), as well as detailed information about prior settlements.  (Id. at 11, 15.)  As noted, matters pertaining to the Pfizer settlement, and related questions concerning the Pfizer contribution to the trust and the Pfizer discharge under 11 U.S.C. § 524(g) affect creditors who may otherwise have claims against Pfizer that will be discharged.  They do not, however, appear to directly affect the contractual rights of the Insurers.

Although the Court questions the propriety of these requests, it is not ruling on them, or on any particular discovery request, at this point.  The Court bifurcated the issues of the Insurers' standing and the objections to their discovery requests to clarify the former issue, and afford the parties another chance to meet and confer in good faith before presenting objections to the Court.  Beyond that, the Court declines to decide at this point whether the Plan is "insurance neutral," or

18

to list the specific issues that the Insurers can or cannot raise in objections that they have not yet made.

So ordered.

Dated: New York, New York
July 25, 2008

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
Chief United States Bankruptcy Court

19