Michael L. Cook
Robert J. Ward
Lawrence V. Gelber
SCHULTE ROTH & ZABEL LLP
Attorneys for the Debtor and Debtor in Possession
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Facsimile: (212) 593-5955

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
|                                      | :: |                          |
| In re                                | :: | Chapter 11               |
|                                      | :: |                          |
| QUIGLEY COMPANY, INC.,               | :: | Case No. 04-15739 (SMB)  |
|                                      | :: |                          |
|                         Debtor.      | :: |                          |
------------------------------------------------------------x

## NOTICE OF PLAN SUPPLEMENT DOCUMENTS IN EXECUTION VERSION

**PLEASE TAKE NOTICE** that the execution version of the Pfizer/AIG Annuity[1] is attached as <u>Exhibit A</u>; the execution version of the Pfizer Annuity is attached as <u>Exhibit B</u>; and the execution version of the Pfizer Claims Services Agreement is attached as <u>Exhibit C</u>. Each exhibit includes a blackline comparing the execution version to the version filed on August 27, 2008 [Docket No. 1531].

Dated: New York, New York
      February 1, 2010

SCHULTE ROTH & ZABEL LLP
Attorneys for the Debtor
and Debtor in Possession

By: _/s/ Michael L. Cook_____
Michael L. Cook
Robert J. Ward
Lawrence V. Gelber
(Members of the Firm)
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Facsimile: (212) 593-5955

---

[1] All capitalized terms not otherwise defined herein will have the meanings ascribed to them in Quigley's Fourth Amended and Restated Plan of Reorganization (as modified as of August 6, 2009) [Docket No. 1883].

# EXHIBIT A

# PFIZER/ASBESTOS TRUST ANNUITY CONTRACT

In this Pfizer/Asbestos Trust Annuity contract (the "Pfizer/Asbestos Annuity"), entered into as of its Effective Date by and between Quigley Company, Inc., its successors and assigns ("Quigley") and Pfizer Inc., its successors and assigns ("Pfizer"), Pfizer agrees to provide benefits and other rights to the Quigley Company, Inc. Asbestos Personal Injury Trust (the "Asbestos PI Trust") as specified below.

## RECITALS

**WHEREAS**, the Fourth Amended and Restated Plan of Reorganization of Quigley Company, Inc., as modified March 28, 2008, as it has been or may be amended, supplemented, or modified (the "Plan") has been confirmed by the Bankruptcy Court and, to the extent required, affirmed by the District Court; and

**WHEREAS**, the Plan establishes the Quigley Company, Inc. Asbestos PI Trust, to which certain asbestos personal injury claims against Quigley and Pfizer will be channeled; and

**WHEREAS**, the Plan provides that Pfizer will contribute this Pfizer/Asbestos Annuity, there referred to as the "Pfizer/AIG Annuity," to the Asbestos PI Trust; and

**WHEREAS**, in the AIG Assignment Agreement, Pfizer and Quigley agreed, in exchange for Quigley's assignment to Pfizer of the "AIG Payments" as defined therein and other consideration, that Pfizer would "mak[e] the Pfizer Contribution, which includes, without limitation, (a) Pfizer's contribution to the Asbestos PI Trust of the Pfizer Annuity";

**NOW, THEREFORE**, in consideration of the covenants contained herein and in the AIG Assignment Agreement, and intending to be legally bound hereby, Pfizer agrees as follows:

1.  <u>Contribution of Annuity to the Asbestos PI Trust</u>. Pfizer hereby contributes this Pfizer/Asbestos Annuity, and the right to the payments specified herein in the amount of four

hundred five million dollars and zero cents ($405,000,000.00), to the Asbestos PI Trust. It is the intention of the parties that Pfizer's contribution of these payments to the Asbestos PI Trust shall be absolute and irrevocable and shall provide the Asbestos PI Trust with the full benefits of the right, title and interest in and to the payments.

2.　　Schedule of Payments. Pfizer hereby unconditionally and irrevocably promises and agrees to pay in full to the Asbestos PI Trust, and for its benefit, each payment specified in Exhibit A attached hereto ("Payment," and collectively, the "Payments "). Each Payment shall be in the amount specified in Exhibit A and shall be paid so that it will be received no later than the date on which the Payment is due as specified in Exhibit A. If the due date is not a Business Day, payment may be made on the next Business Day. Each Payment shall be made without any set-off, counterclaim, diminution or any other deduction whatsoever.

3.　　Rights of Enforcement. Pfizer agrees that the Asbestos PI Trust is an intended beneficiary of this Pfizer/Asbestos Annuity, that the Asbestos PI Trust is and will be relying on performance of the terms of this Pfizer/Asbestos Annuity from and after the Pfizer/Asbestos Annuity's execution by Pfizer, and that the Asbestos PI Trust shall have unrestricted rights to enforce any and all of this Pfizer/Asbestos Annuity's terms.

4.　　Waiver of Defenses. As a clarification of, and not a limitation on, its unconditional and irrevocable obligations hereunder, Pfizer hereby (a) agrees that its obligations to make the Payments are direct, absolute, unconditional and enforceable, (b) waives any and all defenses to payment, including defenses relating to fraud, fraud in the inducement or performance of fact, it may have now or hereafter, (c) waives any right of set-off, deduction, diminution, abatement, suspension, deferment, or recoupment of claims or counterclaims it may have now or hereafter, (d) agrees that it will not contend that the AIG Assignment Agreement or

any other agreement between Quigley and Pfizer provides Pfizer with a defense to any part of its obligation to make any of the Payments, (e) agrees that it will not contend that the Plan provides Pfizer with a defense to any part of its obligation to make any of the Payments, and (f) agrees that it will not assert any of the following, without limitation, as a defense to payment, as a basis for nonpayment or reduction of payment, or as a right or basis for set-off, deduction, diminution, abatement, suspension, deferment or recoupment of claims or as a counterclaim:

A.      any indulgence, concession, waiver or consent given to or by Quigley, Pfizer or the Asbestos PI Trust;

B.      any taking, exchange, release, amendment, non-perfection, realization or application of or on any security for, or guarantee of, the Payments or any release of Pfizer by Quigley or the Asbestos PI Trust;

C.      any defect as to the valid creation or existence of the Asbestos PI Trust;

D.      the insolvency, failure to pay, or inability or unwillingness to pay any sum due, of (1) Quigley; (2) the Asbestos PI Trust; (3) Pfizer or any of its affiliates; (4) any of the "AIG Companies" named in the Addendum to Settlement Agreement among Pfizer Inc., Quigley Company, Inc. and Certain AIG Member Companies; or (5) any of the successors or affiliates of any of the "AIG Companies" named in that Addendum;

E.      any order, decree, decision, judgment or legislation requiring Pfizer to pay any Payment to any natural person, corporation, limited liability company, syndicate, trust, joint venture, association, company, partnership, governmental authority or entity other than the Asbestos PI Trust;

F.      the failure of Quigley or the Asbestos PI Trust to perform any covenant, condition or obligation set forth in the Plan or elsewhere; or

G.      any other act or omission, circumstance, occurrence, happening or event whatsoever, whether similar or dissimilar to the foregoing, whether foreseen or unforeseen, that might otherwise constitute a legal or equitable discharge or defense, or breach of any explicit or implied duty under law.

Pfizer agrees and acknowledges that the foregoing clarification of certain defenses it has waived in connection with this Pfizer/Asbestos Annuity (the "Waiver of Defenses") was specifically drafted and agreed for the purposes of this Pfizer/Asbestos Annuity, that the Waiver of Defenses shall not be deemed or considered standard form or "boilerplate" even if it is similar to or resembles waivers of defenses in other contracts, that the Waiver of Defenses was reviewed and evaluated by counsel to Pfizer prior to the execution of this Pfizer/Asbestos Annuity, and that principles of construction and interpretation that would void any term of the Waiver of Defenses or deem any term of the Waiver of Defenses unenforceable shall not apply to the interpretation or application of the Waiver of Defenses. Pfizer understands, accepts and acknowledges that it has waived fraud-related defenses.

5.      <u>Covenant to Oppose</u>. Pfizer covenants and agrees that it shall not consent to, and shall oppose including by litigation and by taking any good faith appeal, the entry of any order, decree, judgment or injunction that would require Pfizer to pay any Payment to, or for the benefit of, any natural person, corporation, limited liability company, syndicate, trust, joint venture, association, company, partnership, governmental authority or entity other than the Asbestos PI Trust or that would prohibit, divert, channel or otherwise limit or restrict payment to the Asbestos PI Trust of any Payment, or would have any such effect, without the consent of the Asbestos PI Trust.  Pfizer shall also provide the Asbestos PI Trust, as soon as reasonably practical, with written notice of any motion, request to file a motion or other effort or request by

any person or entity to obtain an order, decree, judgment or injunction of the type described in the first sentence of this paragraph.

6.     <u>Assignment</u>. Pfizer and Quigley recognize and agree that the Asbestos PI Trust has the absolute and unconditional right to sell, assign, or otherwise hypothecate, in its sole discretion and without any restriction whatsoever, any or all of the Payments and any or all of its rights under the Pfizer/Asbestos Annuity.  Any such assignment shall be in a writing signed on behalf of the Asbestos PI Trust and, upon receipt of written notice of the assignment, Pfizer shall cooperate in assisting the Asbestos PI Trust to effect it.

7.     <u>Manner of Payments</u>. All Payments to be made pursuant to this Pfizer/Asbestos Annuity shall be made in U.S. dollars so as to be received no later than the due date specified in Exhibit A, in the full amount of the Payment without any set-off, counterclaim, diminution or any other deduction whatsoever. The Payments shall be made by wire transfer pursuant to the following payment instructions (provided that the Asbestos PI Trust or its designee may change the payment instructions with respect to any Payment by written notice to Pfizer in the manner specified in Section 11 of this Pfizer/Asbestos Annuity at least 10 days prior to the date the Payment is due):

_____

_____

8.     <u>Supplemental Payments</u>. Any Payment that is not made when due shall bear interest from (and including) the day after the payment was due at (a) an interest rate equal to the prime rate of Citibank, N.A. on the date the Payment was due plus three percent (3%), compounded daily, or (b) the federal judgment interest rate as set forth on the date payment was due in section 1961 of title 28 of the United States Code (or in a successor statute), whichever is

higher.  For the purposes of subparagraph (a) of this paragraph, if a Citibank, N.A. prime rate is not available, the prime rate of JP Morgan Chase will be utilized in lieu thereof.

In addition, if any portion of a Payment remains unpaid on the forty-fifth day after the Payment was due, Pfizer shall pay a further supplemental amount of $5 million (a "Supplemental Payment"). A Supplemental Payment shall be due, provided that any portion of a Payment remains unpaid on the forty-fifth day after its due date, within three days after Quigley or the Asbestos PI Trust has given notice to Pfizer in the manner specified in Section 11 of this Pfizer/Asbestos Annuity that it is required to make a Supplemental Payment.  Interest shall accrue on any unpaid Supplemental Payment from the date it is due until the date it is paid at the rate specified in this Pfizer/Asbestos Annuity for overdue Payments.

9.     <u>Acceleration</u>. The occurrence of any of the following events shall constitute a default by Pfizer under this Pfizer/Asbestos Annuity and an "Acceleration Event":

A.     Any failure to pay any Payment or interest in full when it becomes due and payable which has not been cured in full within 30 days; provided that no Acceleration Event shall be deemed to occur to the extent that the failures to pay and to cure would not have occurred except for (i) an act of God; (ii) a suspension or material limitation in trading in securities generally on the New York Stock Exchange or on NASDAQ; (iii) a general moratorium on commercial banking activities declared by either Federal or New York State banking authorities; or (iv) the declaration by the United States of a national emergency or war.

B.     Any failure to pay any Supplemental Payment in full when it becomes due and payable which has not been cured in full within 15 days after notice of the failure to pay has been sent to Pfizer in the manner specified in Section 11 of this Pfizer/Asbestos Annuity; provided that no Acceleration Event shall be deemed to occur to the extent that the failures to

pay and to cure would not have occurred except for (i) an act of God; (ii) a suspension or material limitation in trading in securities generally on the New York Stock Exchange or on NASDAQ; (iii) a general moratorium on commercial banking activities declared by either Federal or New York State banking authorities; or (iv) the declaration by the United States of a national emergency or war.

C.     The fact that any representation or warranty by Pfizer in this Pfizer/Asbestos Annuity has proved to have been false or incorrect in any material respect on the Effective Date;

D.     Pfizer, Inc., or any of its affiliates, successors or assigns that is or may be obligated to make Payments under this Pfizer/Asbestos Annuity (each, a "Pfizer Payor"):

(i)     Admits its insolvency or inability to pay its debts generally in writing;

(ii)     Makes a general assignment for the benefit of creditors;

(iii)     Files or becomes the subject of a bankruptcy petition or proceeding seeking to adjudicate it a bankrupt or insolvent, or seeking liquidation, winding-up, reorganization, arrangement, adjustment, protection, relief, or composition of it or its debts under any law relating to bankruptcy, insolvency, reorganization or relief of debtors, or seeking the entry of an order for relief or the appointment of a receiver, trustee, administrator or other similar official for it or for any substantial part of its property and assets, provided that, if the Pfizer Payor is diligently seeking dismissal of the proceeding in good faith, the proceeding has remained undismissed for at least 60 consecutive days after its commencement;

(iv)     Authorizes, consents to or becomes the subject of any of the actions sought in a proceeding of the type listed in sub-paragraph (iii) of this paragraph,

including, without limitation, the entry of an order for relief against, or the appointment of a receiver, trustee, custodian or other similar official for, a Pfizer Payor or any substantial part of its property and assets;

(v)     Authorizes, consents to or becomes the subject of any event or action analogous to, or having a substantially similar effect to, any of the events or actions set forth above in sub-paragraph (iii) of this paragraph under the requirements of law of any jurisdiction;

(vi)     Takes any corporate or other similar action to authorize any of the actions set forth above in this paragraph (b); or

(vii)     Fails in any material respect to perform or comply with any term of this Pfizer/Asbestos Annuity.

If an Acceleration Event occurs of the types described in subparagraphs A, B or C of this section, the Asbestos PI Trust may immediately or at any time, and in its sole discretion, declare the entire outstanding balance of all of the Payments and any other sums due under this Pfizer/Asbestos Annuity (together, the "Outstanding Balance") to be immediately due and payable by a notice in writing to Pfizer in the manner specified in Section 11 of this Pfizer/Asbestos Annuity (a "Declaration of Acceleration").

If an Acceleration Event of any of the types described in subparagraph D of this section has occurred, the Outstanding Balance shall immediately and automatically become due and payable (an "Automatic Acceleration") irrespective of whether the Asbestos PI Trust has provided a notice of the acceleration to Pfizer.

Upon an Automatic Acceleration or Declaration of Acceleration, the entire unpaid principal amount of this Pfizer/Asbestos Annuity, together with interest accrued thereon and

unpaid and any other sums due hereunder, shall immediately be due and payable, without presentment, demand, protest or further notice of any kind, all of which are hereby expressly waived.

At any time after any sums due under this Pfizer/Asbestos Annuity have been accelerated and before a judgment or decree for payment of the sums due has been obtained, the Asbestos PI Trust, by written notice to Pfizer in the manner specified in Section 11 of this Pfizer/Asbestos Annuity, may rescind and annul such declaration and its consequences. No such rescission shall affect any subsequent Acceleration Event or impair any right consequent thereon.

Pfizer agrees that, upon the occurrence of an Acceleration Event and declaration thereof that is not rescinded and annulled in the manner described in the preceding paragraph, it shall promptly execute such documents as the Asbestos PI Trust shall require acknowledging Pfizer's indebtedness to the Asbestos PI Trust for the outstanding balance of all of the Payments and confessing judgment for such amount in favor of the Asbestos PI Trust. In addition, within one month after the Effective Date, Pfizer shall execute such documents as the Asbestos PI Trust shall reasonably require confessing judgment for the full amount of the payments due under this Pfizer/Asbestos Annuity, which the Asbestos PI Trust agrees to hold in escrow unless and until an Acceleration Event has been declared.

10.     <u>Other Remedies</u>. If any Acceleration Event has occurred and is continuing, and irrespective of whether this Pfizer/Asbestos Annuity has been declared due and payable, the Asbestos PI Trust shall have the right, in its sole discretion, to take any and all steps to enforce or protect its rights or collect sums due under this Pfizer/Asbestos Annuity by an action at law, suit in equity or other appropriate proceeding. In addition, once an Acceleration Event has been declared, the Asbestos PI Trust shall have the right, in its sole discretion, to file and enforce the

confession of judgment required by Paragraph 9 of this Pfizer/Asbestos Annuity and take any other appropriate steps to enforce its rights or collect sums due under this Pfizer/Asbestos Annuity.

No course of dealing and no delay on the part of the Asbestos PI Trust in exercising any right, power or remedy shall operate as a waiver thereof or otherwise prejudice the Asbestos PI Trust's rights, powers or remedies. No right, power or remedy conferred by this Pfizer/Asbestos Annuity upon the Asbestos PI Trust shall be exclusive of any other right, power or remedy referred to herein or now or hereafter available at law, in equity, by statute or otherwise.

The Asbestos PI Trust, and any assignee or successor in interest of the Asbestos PI Trust, shall be entitled to reimbursement of any costs and expenses incurred in connection with enforcing any of its rights under this Pfizer/Asbestos Annuity, including reasonable attorney's fees. Pfizer shall reimburse these costs and expenses within 30 days of written notice to Pfizer in the manner specified in Section 11 of this Pfizer/Asbestos Annuity, provided that the Asbestos PI Trust or its assignee or successor shall be entitled to reimbursement only if it obtains all or part of the relief it sought by enforcing its rights.

11. <u>Notices</u>. Any and all statements, communications or notices to be provided pursuant to or in connection with this Pfizer/Asbestos Annuity shall be in writing and shall be delivered by hand or sent by overnight courier service. Such notices shall be sent to each of the individuals listed below, or to such other individuals as hereafter may be designated in writing:

To Pfizer Inc.:        Pfizer Inc.
250 E. 42nd Street
New York, NY 10017
Attention:    Michele S. Suggs, Esq.

With a copy to:      Greenberg Traurig, LLP
MetLife Building

|                          | 200 Park Avenue |
|                          | New York, NY 10166 |
|                          | Attention: Bruce Zirinsky, Esq. or |
|                          | John H. Bae, Esq. |

To Quigley Company, Inc.:    Quigley Company, Inc.
52 Vanderbilt Avenue
New York, NY 10017
Attention:    Kim Jenkins

With a copy to:    Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022
Attention:    Michael L. Cook, Esq. or
Lawrence V. Gelber, Esq.

To the Future Demand    Togut, Segal & Segal, LLP
Holders' Representative:    One Penn Plaza
Suite 3335
New York, NY 10119-0002
Attention:    Albert Togut, Esq.

With a copy to:    Togut, Segal & Segal, LLP
One Penn Plaza
Suite 3335
New York, NY 10119-0002
Attention:    Scott Ratner, Esq. or
Richard Milin, Esq.

To the Creditors'    Caplin & Drysdale, Chartered
Committee:    375 Park Avenue
36th Floor
New York, NY 10152
Attention:    Elihu Inselbuch, Esq.

and

Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, DC 20005
Attention:    Peter V.N. Lockwood, Esq. or
Ronald Reinsel, Esq.

To the Asbestos PI Trust:    _____
_____

_____

Attention:

12.      <u>Security interest</u>.   Upon an Acceleration Event, Pfizer grants the Asbestos PI Trust a security interest in all of the "AIG Payments" as defined in the AIG Assignment Agreement and in any other sums that Pfizer is due to receive (but has not yet received) under the AIG Assignment Agreement (each such AIG Payment, an "AIG Receivable"). If any Payments, sums due because of acceleration, or other amounts are overdue to the Asbestos PI Trust under this Pfizer/Asbestos Annuity on the date that Pfizer receives an AIG Receivable, then Pfizer shall immediately assign the AIG Receivable and all of Pfizer's rights to it, and all subsequent AIG Receivables it is scheduled to receive until no amounts that Pfizer owes to the Asbestos PI Trust are overdue, to the Asbestos PI Trust. Any successor in interest to the Asbestos PI Trust shall have the same rights and obligations under this paragraph that the Asbestos PI Trust itself would have.  Following an Acceleration Event, Pfizer agrees to sign an appropriate pledge agreement promptly, at the option of the Asbestos PI Trust, to effectuate this paragraph.

13.      <u>Diverted Amounts</u>.  Notwithstanding anything contained herein, if any legislation, or order, decree, decision or judgment seeking to enforce such legislation, requires Pfizer to divert any Payments, Supplemental Payments, and/or any other sums due under this Pfizer/Asbestos Annuity (each such amount, a "Diverted Amount"), then Pfizer shall not be required to pay such Diverted Amount(s) to the Asbestos PI Trust or its designee.

14.      <u>Merger, Consolidation, etc</u>. If Pfizer consolidates with or merges with any other entity (and that entity is the surviving entity), or Pfizer transfers all or substantially all of its assets in a single transaction or series of transactions to any entity, then such entity shall succeed

to, and be substituted for, Pfizer and shall assume all of Pfizer's obligations under this Pfizer/Asbestos Annuity.

15.     <u>Entire Agreement</u>. This Pfizer/Asbestos Annuity shall constitute the entire agreement and understanding of the parties with respect to the subject matter hereof, and shall supersede all prior agreements and understandings, oral or written, relating to the subject matter hereof. There are no representations, warranties, promises, or inducements, whether oral, written, expressed, or implied, that in any way affect or condition the validity of this Pfizer/Asbestos Annuity or alter its terms.

16.     <u>Amendment, Modification and Waiver</u>. No amendment or modification of this Pfizer/Asbestos Annuity shall be valid unless it is made in writing and signed by authorized representatives of Pfizer and the Asbestos PI Trust. If required by law at the time such an amendment or modification is made, Bankruptcy Court approval shall also be required for an amendment or modification to be valid.

17.     <u>Jurisdiction, Venue and Governing Law</u>. This Pfizer/Asbestos Annuity, its validity, interpretation and application, and the rights and obligations of Pfizer hereunder, shall be governed by, and be construed and enforced in accordance with, the substantive laws of the State of New York, without regard to any conflicts of law provisions thereof that would result in the application of the laws of any other jurisdiction. Pfizer hereby irrevocably consents and submits to the jurisdiction and venue of the United States Bankruptcy Court for the Southern District of New York for all actions and proceedings arising out of or relating to this Pfizer/Asbestos Annuity. If that Court lacks or declines to exercise jurisdiction, Pfizer hereby irrevocably consents and submits to the non-exclusive jurisdiction and venue of any State, Federal or Bankruptcy Court sitting in New York County, New York, or having jurisdiction to

review decisions of courts sitting in New York County, New York, for all actions and proceedings arising out of or relating to this Pfizer/Asbestos Annuity. Pfizer further waives any objection to any action or proceeding brought in accord with the preceding sentences of this paragraph that Pfizer might assert based on the doctrine of *forum non conveniens*.

18.     <u>Service of Process</u>. Pfizer irrevocably consents to service of process in connection with any proceeding seeking to enforce rights under the Pfizer/Asbestos Annuity if the process is provided to Pfizer in the manner specified in Section 11 of this Pfizer/Asbestos Annuity.

19.     <u>Severability</u>. The invalidity, illegality, or unenforceability of any provision of this Pfizer/Asbestos Annuity pursuant to a judicial or tribunal decree shall not affect the validity or enforceability of any other provision hereof and all other provisions of this Pfizer/Asbestos Annuity shall remain in full force and effect.

20.     <u>Effective Date</u>. This Pfizer/Asbestos Annuity shall become effective only upon the Effective Date of the Plan, and no obligations of Pfizer hereunder shall become legally binding unless and until the occurrence of the Effective Date.

21.     <u>Representations and Warranties</u>. Pfizer represents and warrants that this Pfizer/Asbestos Annuity is a legal, valid and binding obligation of Pfizer enforceable against Pfizer in accord with its terms. The individual executing this Pfizer/Asbestos Annuity on behalf of Pfizer has corporate authority to bind Pfizer. The execution, delivery and performance of this Pfizer/Asbestos Annuity has been and remains duly authorized by all necessary organizational actions on Pfizer's behalf and does not result in a contravention by Pfizer of any provision of law or of Pfizer's organizational documents or any material contractual restrictions binding on Pfizer or its assets. Quigley, the Asbestos PI Trust, and any assignee or successor in interest of either of

them shall be entitled to rely on Pfizer's representations and warranties in this Pfizer/Asbestos Annuity, which shall inure to all of their benefit.

Quigley represents and warrants that the individual executing this Pfizer/Asbestos Annuity on behalf of Quigley has corporate authority to bind Quigley.

**[Concluded on following page]**

IN WITNESS WHEREOF, Pfizer and Quigley have caused this PFIZER/ASBESTOS ANNUITY, consisting of sixteen (16) pages and one (1) attachment to be executed by their duly authorized representatives.

Dated: New York, New York
_____, 2009

PFIZER INC.


By:_____
Name:_____
Title:_____


QUIGLEY COMPANY, INC.


By:_____
Name:_____
Title:_____

**Exhibit A**

| Payment # | Payment Date | Payment Amount |
|:---:|:---:|:---:|
| 1 | Effective Date | $10,125,000.00 |
| 2 | First Anniversary of Effective Date | $10,125,000.00 |
| 3 | Second Anniversary of Effective Date | $10,125,000.00 |
| 4 | Third Anniversary of Effective Date | $10,125,000.00 |
| 5 | Fourth Anniversary of Effective Date | $10,125,000.00 |
| 6 | Fifth Anniversary of Effective Date | $10,125,000.00 |
| 7 | Sixth Anniversary of Effective Date | $10,125,000.00 |
| 8 | Seventh Anniversary of Effective Date | $10,125,000.00 |
| 9 | Eighth Anniversary of Effective Date | $10,125,000.00 |
| 10 | Ninth Anniversary of Effective Date | $10,125,000.00 |
| 11 | Tenth Anniversary of Effective Date | $10,125,000.00 |
| 12 | Eleventh Anniversary of Effective Date | $10,125,000.00 |
| 13 | Twelfth Anniversary of Effective Date | $10,125,000.00 |
| 14 | Thirteenth Anniversary of Effective Date | $10,125,000.00 |
| 15 | Fourteenth Anniversary of Effective Date | $10,125,000.00 |
| 16 | Fifteenth Anniversary of Effective Date | $10,125,000.00 |
| 17 | Sixteenth Anniversary of Effective Date | $10,125,000.00 |
| 18 | Seventeenth Anniversary of Effective Date | $10,125,000.00 |
| 19 | Eighteenth Anniversary of Effective Date | $10,125,000.00 |
| 20 | Nineteenth Anniversary of Effective Date | $10,125,000.00 |
| 21 | Twentieth Anniversary of Effective Date | $10,125,000.00 |
| 22 | Twenty-First Anniversary of Effective Date | $10,125,000.00 |

| Payment # | Payment Date | Payment Amount |
|:---:|:---:|:---:|
| 23 | Twenty-Second Anniversary of Effective Date | $10,125,000.00 |
| 24 | Twenty-Third Anniversary of Effective Date | $10,125,000.00 |
| 25 | Twenty-Fourth Anniversary of Effective Date | $10,125,000.00 |
| 26 | Twenty-Fifth Anniversary of Effective Date | $10,125,000.00 |
| 27 | Twenty-Sixth Anniversary of Effective Date | $10,125,000.00 |
| 28 | Twenty-Seventh Anniversary of Effective Date | $10,125,000.00 |
| 29 | Twenty-Eighth Anniversary of Effective Date | $10,125,000.00 |
| 30 | Twenty-Ninth Anniversary of Effective Date | $10,125,000.00 |
| 31 | Thirtieth Anniversary of Effective Date | $10,125,000.00 |
| 32 | Thirty-First Anniversary of Effective Date | $10,125,000.00 |
| 33 | Thirty-Second Anniversary of Effective Date | $10,125,000.00 |
| 34 | Thirty-Third Anniversary of Effective Date | $10,125,000.00 |
| 35 | Thirty-Fourth Anniversary of Effective Date | $10,125,000.00 |
| 36 | Thirty-Fifth Anniversary of Effective Date | $10,125,000.00 |
| 37 | Thirty-Sixth Anniversary of Effective Date | $10,125,000.00 |
| 38 | Thirty-Seventh Anniversary of Effective Date | $10,125,000.00 |
| 39 | Thirty-Eighth Anniversary of Effective Date | $10,125,000.00 |
| 40 | Thirty-Ninth Anniversary of Effective Date | $10,125,000.00 |

# PFIZER/~~AIG~~ASBESTOS TRUST ANNUITY CONTRACT

~~Pfizer Inc. ("Pfizer") agrees to provide the~~In this Pfizer/Asbestos Trust Annuity contract (the "Pfizer/Asbestos Annuity"), entered into as of its Effective Date by and between Quigley Company, Inc., its successors and assigns ("Quigley") and Pfizer Inc., its successors and assigns ("Pfizer"), Pfizer agrees to provide benefits and other rights to the Quigley Company, Inc. Asbestos Personal Injury Trust (the "Asbestos PI Trust ~~in accordance with the terms of this contract (the "Pfizer/AIG Annuity"~~") as specified below. ~~Capitalized terms used herein not otherwise defined shall have the meanings set forth in Quigley Company, Inc.'s ("Quigley")~~

## RECITALS

**WHEREAS**, the Fourth Amended and Restated Plan of Reorganization of Quigley Company, Inc., as modified March 28, 2008, as it has been or may be amended, supplemented, or modified (the "Plan")~~.~~

~~**RECITALS**~~**WHEREAS,** ~~the Plan~~ has been confirmed by the Bankruptcy Court and, to the extent required, affirmed by the District Court; and

**WHEREAS**, ~~in accordance with the terms of the Plan, Pfizer will contribute to the Asbestos PI Trust the Pfizer/AIG Annuity;~~the Plan establishes the Quigley Company, Inc. Asbestos PI Trust, to which certain asbestos personal injury claims against Quigley and Pfizer will be channeled; and

**WHEREAS**, the Plan provides that Pfizer will contribute this Pfizer/Asbestos Annuity, there referred to as the "Pfizer/AIG Annuity," to the Asbestos PI Trust; and

**WHEREAS**, in the AIG Assignment Agreement, Pfizer and Quigley agreed, in exchange for Quigley's assignment to Pfizer of the "AIG Payments" as defined therein and other

consideration, that Pfizer would "mak[e] the Pfizer Contribution, which includes, without limitation, (a) Pfizer's contribution to the Asbestos PI Trust of the Pfizer Annuity";

**NOW, THEREFORE**, in consideration of the covenants contained herein and in the AIG Assignment Agreement, and intending to be legally bound hereby, Pfizer agrees as follows:

1.     ~~1.     Nominal Face Value.   Pfizer hereby agrees to contribute~~Contribution of Annuity to the Asbestos PI Trust. Pfizer hereby contributes this Pfizer/~~AIG Annuity, having a total nominal face value~~Asbestos Annuity, and the right to the payments specified herein in the amount of four hundred five million dollars and zero cents ($405,000,000.00)~~, to the Asbestos~~ PI Trust. It is the intention of the parties that Pfizer's contribution of these payments to the Asbestos PI Trust shall be absolute and irrevocable and shall provide the Asbestos PI Trust with the full benefits of the right, title and interest in and to the payments.

2.     ~~2.~~     Schedule of Payments.   Pfizer hereby unconditionally and irrevocably ~~agrees directly with and for the benefit of the Asbestos PI Trust that Pfizer shall~~promises and agrees to pay in full to the Asbestos PI Trust, and for ~~the~~its benefit ~~of the Asbestos PI Trust~~, each payment~~, in the manner~~ specified in Exhibit A~~,~~ attached hereto (~~such scheduled payments,~~"Payment," and collectively, the "Payments"~~), in the applicable amount and on the applicable date (provided, that if such applicable ~~"). Each Payment shall be in the amount specified in Exhibit A and shall be paid so that it will be received no later than the date on which the Payment is due as specified in Exhibit A. If the due date is not a Business Day, ~~then such~~ payment ~~shall~~may be made on the ~~immediately subsequent~~next Business Day~~) in each case~~. Each Payment shall be made without any set-off, counterclaim, diminution or any other deduction whatsoever.

3.     Rights of Enforcement. Pfizer agrees that the Asbestos PI Trust is an intended beneficiary of this Pfizer/Asbestos Annuity, that the Asbestos PI Trust is and will be relying on performance of the terms of this Pfizer/Asbestos Annuity from and after the Pfizer/Asbestos Annuity's execution by Pfizer, and that the Asbestos PI Trust shall have unrestricted rights to enforce any and all of this Pfizer/Asbestos Annuity's terms.

4.     ~~3.~~     Waiver of Defenses.  As a clarification of, and not ~~as~~ a limitation ~~of~~on, its unconditional and irrevocable obligations hereunder, Pfizer hereby (a) agrees that its obligations ~~in respect of~~to make the Payments are direct, absolute, unconditional and enforceable, (b) waives any and all defenses to payment ~~and~~, including defenses relating to fraud, fraud in the inducement or performance of fact, it may have now or hereafter, (c) waives any right of set-off, deduction, diminution, abatement, suspension, deferment, or recoupment of claims or counterclaims it may ~~now or hereafter have, including defenses relating to fraud, or fraud in the inducement or performance of fact, and (c~~have now or hereafter, (d) agrees that it will not contend that the AIG Assignment Agreement or any other agreement between Quigley and Pfizer provides Pfizer with a defense to any part of its obligation to make any of the Payments, (e) agrees that it will not contend that the Plan provides Pfizer with a defense to any part of its obligation to make any of the Payments, and (f) agrees that it will not assert any of the following, without limitation, as a defense to payment, as a basis for nonpayment or reduction of payment, or as a right or basis for set-off, ~~without limitation, any of the following, among other things~~deduction, diminution, abatement, suspension, deferment or recoupment of claims or as a counterclaim:

A.     ~~A.~~     any indulgence, concession, waiver or consent given to or by Quigley, Pfizer or the Asbestos PI Trust;

B. ~~B.~~ any taking, exchange, release, amendment, non-perfection, realization or application of or on any security for, or guarantee of, the Payments or any release of Pfizer by Quigley or the Asbestos PI Trust ~~of Pfizer~~;

C. ~~C.~~ any defect as to the valid creation or existence of the Asbestos PI Trust;

D. the insolvency, failure to pay, or inability or unwillingness to pay any sum due, of (1) Quigley; (2) the Asbestos PI Trust; (3) Pfizer or any of its affiliates; (4) any of the "AIG Companies" named in the Addendum to Settlement Agreement among Pfizer Inc., Quigley Company, Inc. and Certain AIG Member Companies; or (5) any of the successors or affiliates of any of the "AIG Companies" named in that Addendum;

E. ~~D.~~ any order, decree, decision, judgment or legislation requiring Pfizer to ~~make payment of~~pay any Payment to any natural person, corporation, limited liability company, syndicate, trust, joint venture, association, company, partnership, governmental authority or ~~other~~ entity other than the Asbestos PI Trust;

F. ~~E.~~ the failure of Quigley or the Asbestos PI Trust to perform any covenant, condition or obligation set forth in the Plan or ~~the other Plan Documents~~elsewhere; or

G. ~~F.~~ any other act or omission, circumstance, occurrence, happening or event whatsoever, whether similar or dissimilar to the foregoing, whether foreseen or unforeseen, that might otherwise constitute a legal or equitable discharge or defense, or breach of any explicit or implied ~~duties~~duty under law.

Pfizer agrees and acknowledges that the foregoing clarification of ~~the~~certain defenses it has waived in connection with this Pfizer/~~AIG~~Asbestos Annuity (the "Waiver of Defenses") was

specifically drafted and agreed for the purposes of this Pfizer/~~AIG~~Asbestos Annuity, that the Waiver of Defenses shall not be deemed or considered standard form or "boilerplate" even if it is similar to or resembles waivers of defenses in other contracts, that the Waiver of Defenses was reviewed and evaluated by counsel to Pfizer prior to the execution of this Pfizer/~~AIG~~Asbestos Annuity, and that principles of construction and interpretation that would void any term of the Waiver of Defenses or deem any term of the Waiver of Defenses unenforceable shall not apply to the interpretation or application of the Waiver of Defenses. Pfizer understands, accepts and acknowledges that it has waived fraud-related defenses.

5. 4. Covenant to Oppose. Pfizer covenants and agrees that it shall not consent to, and shall oppose including by litigation and by taking any good faith appeal, the entry of any order, decree, judgment or injunction that would require Pfizer to ~~make payment of~~pay any Payment to, or for the benefit of, any natural person, corporation, limited liability company, syndicate, trust, joint venture, association, company, partnership, governmental authority or ~~other~~ entity ~~besides~~other than the Asbestos PI Trust or that would prohibit, divert, channel or otherwise limit or restrict payment to the Asbestos PI Trust of any Payment, or ~~which~~ would have any such effect, without the consent of the Asbestos PI Trust. Pfizer shall also provide the Asbestos PI Trust, as soon as reasonably practical, with written notice of any motion, request to file a motion or other effort or request by any person or entity to obtain an order, decree, judgment or injunction of the type described in the first sentence of this paragraph.

6. Assignment. Pfizer and Quigley recognize and agree that the Asbestos PI Trust has the absolute and unconditional right to sell, assign, or otherwise hypothecate, in its sole discretion and without any restriction whatsoever, any or all of the Payments and any or all of its rights under the Pfizer/Asbestos Annuity. Any such assignment shall be in a writing signed on

behalf of the Asbestos PI Trust and, upon receipt of written notice of the assignment, Pfizer shall cooperate in assisting the Asbestos PI Trust to effect it.

7. 5. Manner of Payments. All ~~payments~~Payments to be made ~~by Pfizer~~ pursuant ~~hereto~~to this Pfizer/Asbestos Annuity shall be made in U.S. dollars so as to be received no later than the due date ~~when due,~~specified in ~~U.S. dollars~~Exhibit A, in the full amount of the ~~applicable~~ Payment~~,~~ without any set-off, counterclaim, diminution or any other deduction whatsoever~~,~~. The Payments shall be made by wire transfer ~~or check and~~ pursuant to the following payment instructions (provided that the Asbestos PI Trust or its designee may change ~~such~~the payment instructions with respect to any Payment by written notice to Pfizer in the manner specified in Section ~~8~~11 of this Pfizer/~~AIG~~Asbestos Annuity at least 10 days prior to the date ~~of such~~the Payment is due):

~~If by Wire Transfer, to:~~ _____

_____ _____

~~If by Check, to:~~ _____

_____ _____

_____

_____

8. 6. Supplemental Payments. Any Payment that is not made when due shall bear interest from (and including) the ~~date that is three days after the date of notice of such overdue payment to Pfizer in the manner specified in Section 8 of this Pfizer/AIG Annuity to (but excluding) the date actually paid at~~day after the payment was due at (a) an interest rate equal to the prime rate of Citibank, N.A. on the date the Payment was due plus three percent (3%),

compounded daily, or (b) the federal judgment interest rate as set forth on the date payment was due in section 1961 of title 28, United States Code; provided that, if any portion of a Payment remains unpaid on the date that is 45 days after the date of notification to Pfizer that such Payment was overdue, Pfizer shall be required to pay, in addition to accrued interest with respect to such Payment, a supplemental amount of $5 million in addition to such Payment (each such payment of the supplemental amount plus accrued interest, a "Supplemental Payment") within three days after notice thereof to Pfizer in the manner specified in Section 8 of this Pfizer/AIG Annuity.28 of the United States Code (or in a successor statute), whichever is higher.  For the purposes of subparagraph (a) of this paragraph, if a Citibank, N.A. prime rate is not available, the prime rate of JP Morgan Chase will be utilized in lieu thereof.

In addition, if any portion of a Payment remains unpaid on the forty-fifth day after the Payment was due, Pfizer shall pay a further supplemental amount of $5 million (a "Supplemental Payment").  A Supplemental Payment shall be due, provided that any portion of a Payment remains unpaid on the forty-fifth day after its due date, within three days after Quigley or the Asbestos PI Trust has given notice to Pfizer in the manner specified in Section 11 of this Pfizer/Asbestos Annuity that it is required to make a Supplemental Payment.  Interest shall accrue on any unpaid Supplemental Payment from the date it is due until the date it is paid at the rate specified in this Pfizer/Asbestos Annuity for overdue Payments.

9.  7.  Acceleration Events. .  The occurrence of eitherany of the following events shall constitute an acceleration event (a default by Pfizer under this Pfizer/Asbestos Annuity and an "Acceleration Event"):

A.  Any failure to pay in full a Payment or any interest when it becomes due and payable, and failure to cure any such failure in full within 90

A.     Any failure to pay any Payment or interest in full when it becomes due and payable which has not been cured in full within 30 days; provided that no Acceleration Event shall be deemed to occur to the extent that the failures to pay and to cure would not have occurred except for (i) an act of God; (ii) a suspension or material limitation in trading in securities generally on the New York Stock Exchange or on NASDAQ; (iii) a general moratorium on commercial banking activities declared by either Federal or New York State banking authorities; or (iv) the declaration by the United States of a national emergency or war.

B.     Any failure to pay any Supplemental Payment in full when it becomes due and payable which has not been cured in full within 15 days after notice ~~thereof~~of the failure to pay has been sent to Pfizer in the manner specified in Section ~~8 of this Pfizer/AIG Annuity; provided that no Acceleration Event shall be deemed to occur to the extent that the failure to pay or to cure was the result of~~11 of this Pfizer/Asbestos Annuity; provided that no Acceleration Event shall be deemed to occur to the extent that the failures to pay and to cure would not have occurred except for (i) an act of God; (ii) a suspension or material limitation in trading in securities generally on the New York Stock ~~exchange~~Exchange or on NASDAQ; (iii) a general moratorium on commercial banking activities declared by either Federal or New York State banking authorities; or (iv) the ~~outbreak or escalation of hostilities involving the United States or the declaration by the United States of a national emergency or war.~~

C.     ~~B.     Any failure to pay in full a Supplemental Payment when it becomes due and payable, and failure to cure any such failure in full within 45 days after notice thereof to Pfizer in the manner specified in Section 8 of this Pfizer/AIG Annuity; provided that no Acceleration Event shall be deemed to occur to the extent that the failure to pay was the result of (i) an act of God; (ii) a suspension or material limitation in trading in securities generally on~~

the New York Stock Exchange or on NASDAQ; (iii) a general moratorium on commercial banking activities declared by either Federal or New York State banking authorities; or (iv) the outbreak or escalation of hostilities involving the United States or the declaration by the Untied States of a national emergency or war.declaration by the United States of a national emergency or war.

        D.     The fact that any representation or warranty by Pfizer in this Pfizer/Asbestos Annuity has proved to have been false or incorrect in any material respect on the Effective Date;

        E.     Pfizer, Inc., or any of its affiliates, successors or assigns that is or may be obligated to make Payments under this Pfizer/Asbestos Annuity (each, a "Pfizer Payor"):

        (i)     Admits its insolvency or inability to pay its debts generally in writing;

        (ii)     Makes a general assignment for the benefit of creditors;

        (iii)     Files or becomes the subject of a bankruptcy petition or proceeding seeking to adjudicate it a bankrupt or insolvent, or seeking liquidation, winding-up, reorganization, arrangement, adjustment, protection, relief, or composition of it or its debts under any law relating to bankruptcy, insolvency, reorganization or relief of debtors, or seeking the entry of an order for relief or the appointment of a receiver, trustee, administrator or other similar official for it or for any substantial part of its property and assets, provided that, if the Pfizer Payor is diligently seeking dismissal of the proceeding in good faith, the proceeding has remained undismissed for at least 60 consecutive days after its commencement;

        (iv)     Authorizes, consents to or becomes the subject of any of the actions sought in a proceeding of the type listed in sub-paragraph (iii) of this paragraph, including, without limitation, the entry of an order for relief against, or the appointment of a

receiver, trustee, custodian or other similar official for, a Pfizer Payor or any substantial part of its property and assets;

(v)     Authorizes, consents to or becomes the subject of any event or action analogous to, or having a substantially similar effect to, any of the events or actions set forth above in sub-paragraph (iii) of this paragraph under the requirements of law of any jurisdiction;

(vi)     Takes any corporate or other similar action to authorize any of the actions set forth above in this paragraph (b); or

(vii)     Fails in any material respect to perform or comply with any term of this Pfizer/Asbestos Annuity.

If an Acceleration Event occurs ~~and is continuing, then in every such case~~of the types described in subparagraphs A, B or C of this section, the Asbestos PI Trust may immediately or at any time, and in its sole discretion, declare the entire outstanding balance of all of the Payments and any other sums due under this Pfizer/Asbestos Annuity (together, the "Outstanding Balance") to be immediately due and payable by a notice in writing to Pfizer in the manner specified in Section ~~8 of this Pfizer/AIG Annuity, and upon any such declaration such outstanding balance~~11 of this Pfizer/Asbestos Annuity (a "Declaration of Acceleration").

If an Acceleration Event of any of the types described in subparagraph D of this section has occurred, the Outstanding Balance shall immediately and automatically become due and payable (an "Automatic Acceleration") irrespective of whether the Asbestos PI Trust has provided a notice of the acceleration to Pfizer.

Upon an Automatic Acceleration or Declaration of Acceleration, the entire unpaid principal amount of this Pfizer/Asbestos Annuity, together with interest accrued thereon and

unpaid and any other sums due hereunder, shall ~~become~~ immediately be due and payable, without presentment, demand, protest or further notice of any kind, all of which are hereby expressly waived.

At any time after ~~the outstanding balance of all of the Payments has~~ any sums due under this Pfizer/Asbestos Annuity have been accelerated and before a judgment or decree for payment of the ~~money~~ sums due has been obtained, the Asbestos PI Trust, by written notice to Pfizer in the manner specified in Section ~~8~~ 11 of this Pfizer/~~AIG~~ Asbestos Annuity, may rescind and annul such declaration and its consequences. No such rescission shall affect any subsequent Acceleration Event or impair any right consequent thereon.

Pfizer agrees that, upon the occurrence of an Acceleration Event and declaration thereof that is not rescinded and annulled in the manner described in the preceding paragraph, it shall promptly execute such documents as the Asbestos PI Trust shall require acknowledging Pfizer's indebtedness to the Asbestos PI Trust for the outstanding balance of all of the Payments and confessing judgment for such amount in favor of the Asbestos PI Trust. In addition, within one month after the Effective Date, Pfizer shall execute such documents as the Asbestos PI Trust shall reasonably require confessing judgment for the full amount of the payments due under this Pfizer/Asbestos Annuity, which the Asbestos PI Trust agrees to hold in escrow unless and until an Acceleration Event has been declared.

10. Other Remedies. If any Acceleration Event has occurred and is continuing, and irrespective of whether this Pfizer/Asbestos Annuity has been declared due and payable, the Asbestos PI Trust shall have the right, in its sole discretion, to take any and all steps to enforce or protect its rights or collect sums due under this Pfizer/Asbestos Annuity by an action at law, suit in equity or other appropriate proceeding. In addition, once an Acceleration Event has been

declared, the Asbestos PI Trust shall have the right, in its sole discretion, to file and enforce the confession of judgment required by Paragraph 9 of this Pfizer/Asbestos Annuity and take any other appropriate steps to enforce its rights or collect sums due under this Pfizer/Asbestos Annuity.

No course of dealing and no delay on the part of the Asbestos PI Trust in exercising any right, power or remedy shall operate as a waiver thereof or otherwise prejudice the Asbestos PI Trust's rights, powers or remedies. No right, power or remedy conferred by this Pfizer/Asbestos Annuity upon the Asbestos PI Trust shall be exclusive of any other right, power or remedy referred to herein or now or hereafter available at law, in equity, by statute or otherwise.

The Asbestos PI Trust, and any assignee or successor in interest of the Asbestos PI Trust, shall be entitled to reimbursement of any costs and expenses incurred in connection with enforcing any of its rights under this Pfizer/Asbestos Annuity, including reasonable attorney's fees. Pfizer shall reimburse these costs and expenses within 30 days of written notice to Pfizer in the manner specified in Section 11 of this Pfizer/Asbestos Annuity, provided that the Asbestos PI Trust or its assignee or successor shall be entitled to reimbursement only if it obtains all or part of the relief it sought by enforcing its rights.

11. 8. Notices. Any and all statements, communications or notices to be provided pursuant to or in connection with this Pfizer/AIGAsbestos Annuity shall be in writing and sent by e-mail, facsimile and first-class mail, postage prepaid. shall be delivered by hand or sent by overnight courier service. Such notices shall be sent to each of the individuals notedlisted below, or to such other individuals as hereafter may be designated in writing:

To Pfizer Inc.:        Pfizer Inc.

                              250 E. 42nd Street
                              New York, NY 10017

Attention: ~~Vijay Bondada~~ Michele S. Suggs, Esq.

With a copy to: ~~Cadwalader Wickersham and Taft LLP~~

~~One World Financial Center~~
~~New York, NY 10281~~
Greenberg Traurig, LLP
MetLife Building
200 Park Avenue
New York, NY 10166
Attention: Bruce Zirinsky, Esq. or
John H. Bae, Esq.

To Quigley Company, Inc.:   Quigley Company, Inc.
52 Vanderbilt Avenue
New York, NY 10017
Attention: Kim Jenkins

With a copy to: Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022
Attention: Michael L. Cook, Esq. or
Lawrence V. Gelber, Esq.

To the Future Demand ~~Holders'~~   Togut, Segal & Segal, LLP

Holders' Representative:   One Penn Plaza
Suite 3335
New York, NY 10119-0002
Attention: Albert Togut, Esq.

With a copy to: Togut, Segal & Segal, LLP
One Penn Plaza
Suite 3335
New York, NY 10119-0002
Attention: Scott Ratner, Esq. or
Richard Milin, Esq.

To the Creditors'
Committee:   Caplin & Drysdale, Chartered
375 Park Avenue
36th Floor

New York, NY 10152
Attention:      Elihu Inselbuch, Esq.

and

Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, DC 20005
Attention:      Peter V.N. Lockwood, Esq.

or

Ronald Reinsel, Esq.

To the Asbestos PI Trust: ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾Attention:
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Attention:

12.      Security interest.  Upon an Acceleration Event, Pfizer grants the Asbestos PI Trust a security interest in all of the "AIG Payments" as defined in the AIG Assignment Agreement and in any other sums that Pfizer is due to receive (but has not yet received) under the AIG Assignment Agreement (each such AIG Payment, an "AIG Receivable"). If any Payments, sums due because of acceleration, or other amounts are overdue to the Asbestos PI Trust under this Pfizer/Asbestos Annuity on the date that Pfizer receives an AIG Receivable, then Pfizer shall immediately assign the AIG Receivable and all of Pfizer's rights to it, and all subsequent AIG Receivables it is scheduled to receive until no amounts that Pfizer owes to the Asbestos PI Trust are overdue, to the Asbestos PI Trust. Any successor in interest to the Asbestos PI Trust shall have the same rights and obligations under this paragraph that the Asbestos PI Trust itself would have.  Following an Acceleration Event, Pfizer agrees to sign an

appropriate pledge agreement promptly, at the option of the Asbestos PI Trust, to effectuate this paragraph.

13. Diverted Amounts. Notwithstanding anything contained herein, if any legislation, or order, decree, decision or judgment seeking to enforce such legislation, requires Pfizer to divert any Payments, Supplemental Payments, and/or any other sums due under this Pfizer/Asbestos Annuity (each such amount, a "Diverted Amount"), then Pfizer shall not be required to pay such Diverted Amount(s) to the Asbestos PI Trust or its designee.

14. Merger, Consolidation, etc. If Pfizer consolidates with or merges with any other entity (and that entity is the surviving entity), or Pfizer transfers all or substantially all of its assets in a single transaction or series of transactions to any entity, then such entity shall succeed to, and be substituted for, Pfizer and shall assume all of Pfizer's obligations under this Pfizer/Asbestos Annuity.

15. 9. Entire Agreement. This Pfizer/AIGAsbestos Annuity, the Plan, the other Plan Documents, and the Confirmation Order shall constitute the entire agreement and understanding of the parties with respect to the subject matter hereof, and shall supersede all prior agreements and understandings, oral or written, relating to the subject matter hereof. There are no representations, warranties, promises, or inducements, whether oral, written, expressed, or implied, that in any way affect or condition the validity of this Pfizer/AIGAsbestos Annuity or alter its terms.

16. 10. Amendment, Modification and Waiver. No amendment or modification of this Pfizer/AIGAsbestos Annuity shall be valid unless it is made in writing and signed by an authorized representativerepresentatives of Pfizer and the Asbestos PI Trust. If required by law

at the time such an amendment or modification is made, Bankruptcy Court approval shall also be required for an amendment or modification to be valid.

17. 11. Jurisdiction, Venue and Governing Law. This Pfizer/AIGAsbestos Annuity, its validity, interpretation and application, and the rights and obligations of Pfizer hereunder, shall be governed by, and be construed and enforced in accordance with, the substantive laws of the stateState of New York, without regard to any conflicts of law provisions thereof that would result in the application of the laws of any other jurisdiction. Pfizer hereby irrevocably consents and submits to the jurisdiction and venue of the United States Bankruptcy Court for the Southern District of New York for all actions and proceedings arising out of or relating to this Pfizer/Asbestos Annuity. If that Court lacks or declines to exercise jurisdiction, Pfizer hereby irrevocably consents and submits to the non-exclusive jurisdiction and venue of any State, Federal or Bankruptcy Court sitting in New York County, New York, or having jurisdiction to review decisions of courts sitting in New York County, New York, for all actions and proceedings arising out of or relating to this Pfizer/Asbestos Annuity. Pfizer further waives any objection to any action or proceeding brought in accord with the preceding sentences of this paragraph that Pfizer might assert based on the doctrine of *forum non conveniens*.

12. Construction. This Pfizer/AIG Annuity is delivered pursuant to and is subject to the Plan. Nothing contained herein is intended to or shall be construed to modify, alter, amend, expand, interpret, supersede, or otherwise change any of the terms of the Plan. In the event of any conflict between the terms of the Plan and the terms of this Pfizer/AIG Annuity, the terms of the Plan shall prevail.

18. Service of Process. Pfizer irrevocably consents to service of process in connection with any proceeding seeking to enforce rights under the Pfizer/Asbestos Annuity if the process is provided to Pfizer in the manner specified in Section 11 of this Pfizer/Asbestos Annuity.

19. ~~13.~~ Severability. The invalidity, illegality, or unenforceability of any provision of this Pfizer/~~AIG~~Asbestos Annuity pursuant to a judicial or tribunal decree shall not affect the validity or enforceability of any other provision hereof and all other provisions of this Pfizer/~~AIG~~Asbestos Annuity shall remain in full force and effect.

20. ~~14.~~ Effective Date. This Pfizer/~~AIG~~Asbestos Annuity shall become effective only upon the Effective Date of the Plan, and no obligations of Pfizer hereunder shall become legally binding unless and until the occurrence of the Effective Date.

~~15. Authority to Bind.~~

21. Representations and Warranties. Pfizer represents and warrants that ~~the individual executing~~ this Pfizer/~~AIG~~Asbestos Annuity is a legal, valid and binding obligation of Pfizer enforceable against Pfizer in accord with its terms. The individual executing this Pfizer/Asbestos Annuity on behalf of Pfizer has corporate authority to bind Pfizer. The execution, delivery and performance of this Pfizer/Asbestos Annuity has been and remains duly authorized by all necessary organizational actions on Pfizer's behalf and does not result in a contravention by Pfizer of any provision of law or of Pfizer's organizational documents or any material contractual restrictions binding on Pfizer or its assets. Quigley, the Asbestos PI Trust, and any assignee or successor in interest of either of them shall be entitled to rely on Pfizer's representations and warranties in this Pfizer/Asbestos Annuity, which shall inure to all of their benefit.

Quigley represents and warrants that the individual executing this Pfizer/Asbestos Annuity on behalf of Quigley has corporate authority to bind Quigley.

**[Concluded on following page]**

IN WITNESS WHEREOF, Pfizer ~~has~~and Quigley have caused this PFIZER/~~AIG~~ASBESTOS ANNUITY, consisting of ~~ten~~sixteen (~~10~~16) pages and one (1) attachment to be executed by ~~its~~their duly authorized ~~representative~~representatives.

Dated: New York, New York
_____, 2009

PFIZER INC.


By: _____
Name: _____
Title: _____

~~By: _____~~
~~Name: _____~~
~~Title: _____~~
~~Date: _____~~

QUIGLEY COMPANY, INC.


By: _____
Name: _____
Title: _____

**Exhibit A**

~~Schedule of Payments~~

| Payment # | Payment Date | Payment Amount |
|:---:|:---:|:---:|
| 1 | Effective Date | $10,125,000.00 |
| 2 | First Anniversary of Effective Date~~+ 1 year~~ | $10,125,000.00 |
| 3 | Second Anniversary of Effective Date~~+ 2 years~~ | $10,125,000.00 |
| 4 | Third Anniversary of Effective Date~~+ 3 years~~ | $10,125,000.00 |
| 5 | Fourth Anniversary of Effective Date~~+ 4 years~~ | $10,125,000.00 |
| 6 | Fifth Anniversary of Effective Date~~+ 5 years~~ | $10,125,000.00 |
| 7 | Sixth Anniversary of Effective Date~~+ 6 years~~ | $10,125,000.00 |
| 8 | Seventh Anniversary of Effective Date~~+ 7 years~~ | $10,125,000.00 |
| 9 | Eighth Anniversary of Effective Date~~+ 8 years~~ | $10,125,000.00 |
| 10 | Ninth Anniversary of Effective Date~~+ 9 years~~ | $10,125,000.00 |
| 11 | Tenth Anniversary of Effective Date~~+ 10 years~~ | $10,125,000.00 |
| 12 | Eleventh Anniversary of Effective Date~~+ 11 years~~ | $10,125,000.00 |
| 13 | Twelfth Anniversary of Effective Date~~+ 12 years~~ | $10,125,000.00 |
| 14 | Thirteenth Anniversary of Effective Date~~+ 13 years~~ | $10,125,000.00 |
| 15 | Fourteenth Anniversary of Effective Date~~+ 14 years~~ | $10,125,000.00 |
| 16 | Fifteenth Anniversary of Effective Date~~+ 15 years~~ | $10,125,000.00 |
| 17 | Sixteenth Anniversary of Effective Date~~+ 16 years~~ | $10,125,000.00 |

| Payment # | Payment Date | Payment Amount |
|---|---|---|
| 18 | Seventeenth Anniversary of Effective Date + 17 years | $10,125,000.00 |
| 19 | Eighteenth Anniversary of Effective Date + 18 years | $10,125,000.00 |
| 20 | Nineteenth Anniversary of Effective Date + 19 years | $10,125,000.00 |
| 21 | Twentieth Anniversary of Effective Date + 20 years | $10,125,000.00 |
| 22 | Twenty-First Anniversary of Effective Date + 21 years | $10,125,000.00 |
| 23 | Twenty-Second Anniversary of Effective Date + 22 years | $10,125,000.00 |
| 24 | Twenty-Third Anniversary of Effective Date + 23 years | $10,125,000.00 |
| 25 | Twenty-Fourth Anniversary of Effective Date + 24 years | $10,125,000.00 |
| 26 | Twenty-Fifth Anniversary of Effective Date + 25 years | $10,125,000.00 |
| 27 | Twenty-Sixth Anniversary of Effective Date + 26 years | $10,125,000.00 |
| 28 | Twenty-Seventh Anniversary of Effective Date + 27 years | $10,125,000.00 |
| 29 | Twenty-Eighth Anniversary of Effective Date + 28 years | $10,125,000.00 |
| 30 | Twenty-Ninth Anniversary of Effective Date + 29 years | $10,125,000.00 |
| 31 | Thirtieth Anniversary of Effective Date + 30 years | $10,125,000.00 |
| 32 | Thirty-First Anniversary of Effective Date + 31 years | $10,125,000.00 |

| Payment # | Payment Date | Payment Amount |
|:---:|:---:|:---:|
| 33 | Thirty-Second Anniversary of Effective Date + 32 years | $10,125,000.00 |
| 34 | Thirty-Third Anniversary of Effective Date + 33 years | $10,125,000.00 |
| 35 | Thirty-Fourth Anniversary of Effective Date + 34 years | $10,125,000.00 |
| 36 | Thirty-Fifth Anniversary of Effective Date + 35 years | $10,125,000.00 |
| 37 | Thirty-Sixth Anniversary of Effective Date + 36 years | $10,125,000.00 |
| 38 | Thirty-Seventh Anniversary of Effective Date + 37 years | $10,125,000.00 |
| 39 | Thirty-Eighth Anniversary of Effective Date + 38 years | $10,125,000.00 |
| 40 | Thirty-Ninth Anniversary of Effective Date + 39 years | $10,125,000.00 |

**EXHIBIT B**

## PFIZER SUPPLEMENTAL ANNUITY CONTRACT

In this Pfizer Supplemental Annuity contract (the "Supplemental Annuity"), entered into as of its Effective Date by and between Quigley Company, Inc., its successors and assigns ("Quigley") and Pfizer Inc., its successors and assigns ("Pfizer"), Pfizer agrees to provide benefits and other rights to the Quigley Company, Inc. Asbestos Personal Injury Trust (the "Asbestos PI Trust") as specified below.

## RECITALS

**WHEREAS,** the Fourth Amended and Restated Plan of Reorganization of Quigley Company, Inc., as modified March 28, 2008, as it has been or may be amended, supplemented, or modified (the "Plan") has been confirmed by the Bankruptcy Court and, to the extent required, affirmed by the District Court; and

**WHEREAS,** the Plan establishes the Quigley Company, Inc. Asbestos PI Trust, to which certain asbestos personal injury claims against Quigley and Pfizer will be channeled; and

**WHEREAS,** the Plan provides that Pfizer will contribute this Supplemental Annuity to the Asbestos PI Trust;

**NOW, THEREFORE,** in consideration of the covenants contained herein and other agreements between the parties, and intending to be legally bound hereby, Pfizer agrees as follows:

1.     <u>Contribution of Annuity to the Asbestos PI Trust</u>.     Pfizer hereby contributes this Supplemental Annuity, and the right to the payments specified herein in the amount of forty-five million one hundred thousand dollars and zero cents ($45,100,000.00), to

the Asbestos PI Trust. It is the intention of the parties that Pfizer's contribution of these payments to the Asbestos PI Trust shall be absolute and irrevocable and shall provide the Asbestos PI Trust with the full benefits of the right, title and interest in and to the payments.

2.      <u>Schedule of Payments</u>.  Pfizer hereby unconditionally and irrevocably promises and agrees to pay in full to the Asbestos PI Trust, and for its benefit, each payment specified in Exhibit A attached hereto ("Payment," and collectively, the "Payments"). Each Payment shall be in the amount specified in Exhibit A and shall be paid so that it will be received no later than the date on which the Payment is due as specified in Exhibit A. If the due date is not a Business Day, payment may be made on the next Business Day. Each Payment shall be made without any set-off, counterclaim, diminution or any other deduction whatsoever.

3.      <u>Rights of Enforcement</u>.  Pfizer agrees that the Asbestos PI Trust is an intended beneficiary of this Supplemental Annuity, that the Asbestos PI Trust is and will be relying on performance of the terms of this Supplemental Annuity from and after the Supplemental Annuity's execution by Pfizer, and that the Asbestos PI Trust shall have unrestricted rights to enforce any and all of this Supplemental Annuity's terms.

4.      <u>Waiver of Defenses</u>.  As a clarification of, and not a limitation on, its unconditional and irrevocable obligations hereunder, Pfizer hereby (a) agrees that its obligations to make the Payments are direct, absolute, unconditional and enforceable, (b) waives any and all defenses to payment, including defenses relating to fraud, fraud in the inducement or performance of fact, it may have now or hereafter, (c) waives any right of set-off, deduction, diminution, abatement, suspension, deferment, or recoupment of claims or counterclaims it may have now or hereafter, (d) agrees that it will not contend that the AIG Assignment Agreement or

any other agreement between Quigley and Pfizer provides Pfizer with a defense to any part of its obligation to make any of the Payments, (e) agrees that it will not contend that the Plan provides Pfizer with a defense to any part of its obligation to make any of the Payments, and (f) agrees that it will not assert any of the following, without limitation, as a defense to payment, as a basis for nonpayment or reduction of payment, or as a right or basis for set-off, deduction, diminution, abatement, suspension, deferment or recoupment of claims or as a counterclaim:

A.      any indulgence, concession, waiver or consent given to or by Quigley, Pfizer or the Asbestos PI Trust;

B.      any taking, exchange, release, amendment, non-perfection, realization or application of or on any security for, or guarantee of, the Payments or any release of Pfizer by Quigley or the Asbestos PI Trust ;

C.      any defect as to the valid creation or existence of the Asbestos PI Trust;

D.      the insolvency, failure to pay, or inability or unwillingness to pay any sum due, of (1) Quigley; (2) the Asbestos PI Trust; (3) Pfizer or any of its affiliates; (4) any of the "AIG Companies" named in the Addendum to Settlement Agreement among Pfizer Inc., Quigley Company, Inc. and Certain AIG Member Companies; or (5) any of the successors or affiliates of any of the "AIG Companies" named in that Addendum;

E.      any order, decree, decision, judgment or legislation requiring Pfizer to pay any Payment to any natural person, corporation, limited liability company,

syndicate, trust, joint venture, association, company, partnership, governmental authority or entity other than the Asbestos PI Trust;

   F. the failure of Quigley or the Asbestos PI Trust to perform any covenant, condition or obligation set forth in the Plan or elsewhere; or

   G. any other act or omission, circumstance, occurrence, happening or event whatsoever, whether similar or dissimilar to the foregoing, whether foreseen or unforeseen, that might otherwise constitute a legal or equitable discharge or defense, or breach of any explicit or implied duty under law.

   Pfizer agrees and acknowledges that the foregoing clarification of certain defenses it has waived in connection with this Supplemental Annuity (the "Waiver of Defenses") was specifically drafted and agreed for the purposes of this Supplemental Annuity, that the Waiver of Defenses shall not be deemed or considered standard form or "boilerplate" even if it is similar to or resembles waivers of defenses in other contracts, that the Waiver of Defenses was reviewed and evaluated by counsel to Pfizer prior to the execution of this Supplemental Annuity, and that principles of construction and interpretation that would void any term of the Waiver of Defenses or deem any term of the Waiver of Defenses unenforceable shall not apply to the interpretation or application of the Waiver of Defenses. Pfizer understands, accepts and acknowledges that it has waived fraud-related defenses.

   5. <u>Covenant to Oppose</u>. Pfizer covenants and agrees that it shall not consent to, and shall oppose including by litigation and by taking any good faith appeal, the entry of any order, decree, judgment or injunction that would require Pfizer to pay any Payment to, or for the benefit of, any natural person, corporation, limited liability company, syndicate, trust, joint

venture, association, company, partnership, governmental authority or entity other than the Asbestos PI Trust or that would prohibit, divert, channel or otherwise limit or restrict payment to the Asbestos PI Trust of any Payment, or would have any such effect, without the consent of the Asbestos PI Trust.  Pfizer shall also provide the Asbestos PI Trust, as soon as reasonably practical, with written notice of any motion, request to file a motion or other effort or request by any person or entity to obtain an order, decree, judgment or injunction of the type described in the first sentence of this paragraph.

6.      Assignment. Pfizer and Quigley recognize and agree that the Asbestos PI Trust has the absolute and unconditional right to sell, assign, or otherwise hypothecate, in its sole discretion and without any restriction whatsoever, any or all of the Payments and any or all of its rights under the Supplemental Annuity.  Any such assignment shall be in a writing signed on behalf of the Asbestos PI Trust and, upon receipt of written notice of the assignment, Pfizer shall cooperate in assisting the Asbestos PI Trust to effect it.

7.      Manner of Payments. All Payments to be made pursuant to this Supplemental Annuity shall be made in U.S. dollars so as to be received no later than the due date specified in Exhibit A, in the full amount of the Payment without any set-off, counterclaim, diminution or any other deduction whatsoever. The Payments shall be made by wire transfer pursuant to the following payment instructions (provided that the Asbestos PI Trust or its designee may change the payment instructions with respect to any Payment by written notice to Pfizer in the manner specified in Section 11 of this Supplemental Annuity at least 10 days prior to the date the Payment is due):

_____

_____

8.    <u>Supplemental Payments</u>. Any Payment that is not made when due shall bear interest from (and including) the day after the payment was due at (a) an interest rate equal to the prime rate of Citibank, N.A. on the date the Payment was due plus three percent (3%), compounded daily, or (b) the federal judgment interest rate as set forth on the date payment was due in section 1961 of title 28 of the United States Code (or in a successor statute), whichever is higher.  For the purposes of subparagraph (a) of this paragraph, if a Citibank, N.A. prime rate is not available, the prime rate of JP Morgan Chase will be utilized in lieu thereof.

In addition, if any portion of a Payment remains unpaid on the forty-fifth day after the Payment was due, Pfizer shall pay a further supplemental amount of $500,000 (a "Supplemental Payment"). A Supplemental Payment shall be due, provided that any portion of a Payment remains unpaid on the forty-fifth day after its due date, within three days after Quigley or the Asbestos PI Trust has given notice to Pfizer in the manner specified in Section 11 of this Supplemental Annuity that it is required to make a Supplemental Payment.  Interest shall accrue on any unpaid Supplemental Payment from the date it is due until the date it is paid at the rate specified in this Supplemental Annuity for overdue Payments.

9.    <u>Acceleration</u>. The occurrence of any of the following events shall constitute a default by Pfizer under this Supplemental Annuity and an "Acceleration Event":

A.    Any failure to pay any Payment or interest in full when it becomes due and payable which has not been cured in full within 30 days; provided that no Acceleration Event shall be deemed to occur to the extent that the failures to pay and to cure would not have

occurred except for (i) an act of God; (ii) a suspension or material limitation in trading in securities generally on the New York Stock Exchange or on NASDAQ; (iii) a general moratorium on commercial banking activities declared by either Federal or New York State banking authorities; or (iv) the declaration by the United States of a national emergency or war.

B.     Any failure to pay any Supplemental Payment in full when it becomes due and payable which has not been cured in full within 15 days after notice of the failure to pay has been sent to Pfizer in the manner specified in Section 11 of this Supplemental Annuity; provided that no Acceleration Event shall be deemed to occur to the extent that the failures to pay and to cure would not have occurred except for (i) an act of God; (ii) a suspension or material limitation in trading in securities generally on the New York Stock Exchange or on NASDAQ; (iii) a general moratorium on commercial banking activities declared by either Federal or New York State banking authorities; or (iv) the declaration by the United States of a national emergency or war.

C.     The fact that any representation or warranty by Pfizer in this Supplemental Annuity has proved to have been false or incorrect in any material respect on the Effective Date;

D.     Pfizer, Inc., or any of its affiliates, successors or assigns that is or may be obligated to make Payments under this Supplemental Annuity (each, a "Pfizer Payor"):

(i)     Admits its insolvency or inability to pay its debts generally in writing;

(ii)     Makes a general assignment for the benefit of creditors;

(iii)     Files or becomes the subject of a bankruptcy petition or proceeding seeking to adjudicate it a bankrupt or insolvent, or seeking liquidation, winding-up, reorganization, arrangement, adjustment, protection, relief, or composition of it or its debts under any law relating to bankruptcy, insolvency, reorganization or relief of debtors, or seeking the entry of an order for relief or the appointment of a receiver, trustee, administrator or other similar official for it or for any substantial part of its property and assets, provided that, if the Pfizer Payor is diligently seeking dismissal of the proceeding in good faith, the proceeding has remained undismissed for at least 60 consecutive days after its commencement;

(iv)     Authorizes, consents to or becomes the subject of any of the actions sought in a proceeding of the type listed in sub-paragraph (iii) of this paragraph, including, without limitation, the entry of an order for relief against, or the appointment of a receiver, trustee, custodian or other similar official for, a Pfizer Payor or any substantial part of its property and assets;

(v)     Authorizes, consents to or becomes the subject of any event or action analogous to, or having a substantially similar effect to, any of the events or actions set forth above in sub-paragraph (iii) of this paragraph under the requirements of law of any jurisdiction;

(vi)     Takes any corporate or other similar action to authorize any of the actions set forth above in this paragraph (b); or

(vii)     Fails in any material respect to perform or comply with any term of this Supplemental Annuity.

If an Acceleration Event occurs of the types described in subparagraphs A, B or C of this section, the Asbestos PI Trust may immediately or at any time, and in its sole discretion, declare the entire outstanding balance of all of the Payments and any other sums due under this Supplemental Annuity (together, the "Outstanding Balance") to be immediately due and payable by a notice in writing to Pfizer in the manner specified in Section 11 of this Supplemental Annuity (a "Declaration of Acceleration").

If an Acceleration Event of any of the types described in subparagraph D of this section has occurred, the Outstanding Balance shall immediately and automatically become due and payable (an "Automatic Acceleration") irrespective of whether the Asbestos PI Trust has provided a notice of the acceleration to Pfizer.

Upon an Automatic Acceleration or Declaration of Acceleration, the entire unpaid principal amount of this Supplemental Annuity, together with interest accrued thereon and unpaid and any other sums due hereunder, shall immediately be due and payable, without presentment, demand, protest or further notice of any kind, all of which are hereby expressly waived.

At any time after any sums due under this Supplemental Annuity have been accelerated and before a judgment or decree for payment of the sums due has been obtained, the Asbestos PI Trust, by written notice to Pfizer in the manner specified in Section 11 of this Supplemental Annuity, may rescind and annul such declaration and its consequences. No such rescission shall affect any subsequent Acceleration Event or impair any right consequent thereon.

Pfizer agrees that, upon the occurrence of an Acceleration Event and declaration thereof that is not rescinded and annulled in the manner described in the preceding paragraph, it shall promptly execute such documents as the Asbestos PI Trust shall require acknowledging

Pfizer's indebtedness to the Asbestos PI Trust for the outstanding balance of all of the Payments and confessing judgment for such amount in favor of the Asbestos PI Trust. In addition, within one month after the Effective Date, Pfizer shall execute such documents as the Asbestos PI Trust shall reasonably require confessing judgment for the full amount of the payments due under this Supplemental Annuity, which the Asbestos PI Trust agrees to hold in escrow unless and until an Acceleration Event has been declared.

10.     Other Remedies. If any Acceleration Event has occurred and is continuing, and irrespective of whether this Supplemental Annuity has been declared due and payable, the Asbestos PI Trust shall have the right, in its sole discretion, to take any and all steps to enforce or protect its rights or collect sums due under this Supplemental Annuity by an action at law, suit in equity or other appropriate proceeding.   In addition, once an Acceleration Event has been declared, the Asbestos PI Trust shall have the right, in its sole discretion, to file and enforce the confession of judgment required by Paragraph 9 of this Supplemental Annuity and take any other appropriate steps to enforce its rights or collect sums due under this Supplemental Annuity.

No course of dealing and no delay on the part of the Asbestos PI Trust in exercising any right, power or remedy shall operate as a waiver thereof or otherwise prejudice the Asbestos PI Trust's rights, powers or remedies. No right, power or remedy conferred by this Supplemental Annuity upon the Asbestos PI Trust shall be exclusive of any other right, power or remedy referred to herein or now or hereafter available at law, in equity, by statute or otherwise.

The Asbestos PI Trust, and any assignee or successor in interest of the Asbestos PI Trust, shall be entitled to reimbursement of any costs and expenses incurred in connection with enforcing any of its rights under this Supplemental Annuity, including reasonable attorney's fees. Pfizer shall reimburse these costs and expenses within 30 days of written notice to Pfizer in

the manner specified in Section 11 of this Supplemental Annuity, provided that the Asbestos PI Trust or its assignee or successor shall be entitled to reimbursement only if it obtains all or part of the relief it sought by enforcing its rights.

11.    Notices. Any and all statements, communications or notices to be provided pursuant to or in connection with this Supplemental Annuity shall be in writing and shall be delivered by hand or sent by overnight courier service . Such notices shall be sent to each of the individuals listed below, or to such other individuals as hereafter may be designated in writing:

To Pfizer Inc.:

Pfizer Inc.
250 E. 42nd Street
New York, NY 10017
Attention: Michele S. Suggs, Esq.

With a copy to:
Greenberg Traurig, LLP
MetLife Building
200 Park Avenue
New York, NY 10166
Attention: Bruce Zirinsky, Esq. or
 John H. Bae, Esq.

To Quigley Company, Inc.:

Quigley Company, Inc.
52 Vanderbilt Avenue
New York, NY 10017
Attention: Kim Jenkins

With a copy to:

Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022
Attention: Michael L. Cook, Esq. or
 Lawrence V. Gelber, Esq.

To the Future Demand Holders'
Representative:

Togut, Segal & Segal, LLP
One Penn Plaza
Suite 3335
New York, NY 10119-0002
Attention: Albert Togut, Esq.

With a copy to:

Togut, Segal & Segal, LLP
One Penn Plaza
Suite 3335
New York, NY 10119-0002
Attention: Scott Ratner, Esq. or
              Richard Milin, Esq.

To the Creditors' Committee:          Caplin & Drysdale, Chartered
375 Park Avenue
36th Floor
New York, NY 10152
Attention: Elihu Inselbuch, Esq.

and

Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, DC 20005
Attention: Peter V.N. Lockwood, Esq. or
              Ronald Reinsel, Esq.

To the Asbestos PI Trust:     _____

_____

_____

Attention: _____

12.    <u>Security interest</u>.  Upon an Acceleration Event, Pfizer grants the Asbestos PI Trust a security interest in all of the "AIG Payments" as defined in the AIG Assignment Agreement and in any other sums that Pfizer is due to receive (but has not yet received) under the AIG Assignment Agreement (each such AIG Payment, an "AIG Receivable"). If any Payments, sums due because of acceleration, or other amounts are overdue to the Asbestos PI Trust under this Supplemental Annuity on the date that Pfizer receives an AIG Receivable, then Pfizer shall immediately assign the AIG Receivable and all of Pfizer's rights to it, and all subsequent AIG Receivables it is scheduled to receive until no amounts that Pfizer owes to the Asbestos PI Trust are overdue, to the Asbestos PI Trust. Any successor in interest to the

Asbestos PI Trust shall have the same rights and obligations under this paragraph that the Asbestos PI Trust itself would have. Following an Acceleration Event, Pfizer agrees to sign an appropriate pledge agreement promptly, at the option of the Asbestos PI Trust, to effectuate this paragraph.

13. <u>Diverted Amounts</u>. Notwithstanding anything contained herein, if any legislation, or order, decree, decision or judgment seeking to enforce such legislation, requires Pfizer to divert any Payments, Supplemental Payments, and/or any other sums due under this Pfizer/Asbestos Annuity (each such amount, a "Diverted Amount"), then Pfizer shall not be required to pay such Diverted Amount(s) to the Asbestos PI Trust or its designee.

14. <u>Merger, Consolidation, etc</u>. If Pfizer consolidates with or merges with any other entity (and that entity is the surviving entity), or Pfizer transfers all or substantially all of its assets in a single transaction or series of transactions to any entity, then such entity shall succeed to, and be substituted for, Pfizer and shall assume all of Pfizer's obligations under this Supplemental Annuity.

15. <u>Entire Agreement</u>. This Supplemental Annuity shall constitute the entire agreement and understanding of the parties with respect to the subject matter hereof, and shall supersede all prior agreements and understandings, oral or written, relating to the subject matter hereof. There are no representations, warranties, promises, or inducements, whether oral, written, expressed, or implied, that in any way affect or condition the validity of this Supplemental Annuity or alter its terms.

16. <u>Amendment, Modification and Waiver</u>. No amendment or modification of this Supplemental Annuity shall be valid unless it is made in writing and signed by authorized

representatives of Pfizer and the Asbestos PI Trust. If required by law at the time such an amendment or modification is made, Bankruptcy Court approval shall also be required for an amendment or modification to be valid.

17.    <u>Jurisdiction, Venue and Governing Law</u>.  This Supplemental Annuity, its validity, interpretation and application, and the rights and obligations of Pfizer hereunder, shall be governed by, and be construed and enforced in accordance with, the substantive laws of the State of New York, without regard to any conflicts of law provisions thereof that would result in the application of the laws of any other jurisdiction. Pfizer hereby irrevocably consents and submits to the jurisdiction and venue of the United States Bankruptcy Court for the Southern District of New York for all actions and proceedings arising out of or relating to this Supplemental Annuity. If that Court lacks or declines to exercise jurisdiction, Pfizer hereby irrevocably consents and submits to the non-exclusive jurisdiction and venue of any State, Federal or Bankruptcy Court sitting in New York County, New York, or having jurisdiction to review decisions of courts sitting in New York County, New York, for all actions and proceedings arising out of or relating to this Supplemental Annuity. Pfizer further waives any objection to any action or proceeding brought in accord with the preceding sentences of this paragraph that Pfizer might assert based on the doctrine of forum non conveniens.

18.    <u>Service of Process</u>. Pfizer irrevocably consents to service of process in connection with any proceeding seeking to enforce rights under the Supplemental Annuity if the process is provided to Pfizer in the manner specified in Section 11 of this Supplemental Annuity.

19.    <u>Severability</u>.  The invalidity, illegality, or unenforceability of any provision of this Supplemental Annuity pursuant to a judicial or tribunal decree shall not affect

the validity or enforceability of any other provision hereof and all other provisions of this Supplemental Annuity shall remain in full force and effect.

20.     <u>Effective Date</u>. This Supplemental Annuity shall become effective only upon the Effective Date of the Plan, and no obligations of Pfizer hereunder shall become legally binding unless and until the occurrence of the Effective Date.

21.     <u>Representations and Warranties</u>. Pfizer represents and warrants that this Supplemental Annuity is a legal, valid and binding obligation of Pfizer enforceable against Pfizer in accord with its terms. The individual executing this Supplemental Annuity on behalf of Pfizer has corporate authority to bind Pfizer. The execution, delivery and performance of this Supplemental Annuity has been and remains duly authorized by all necessary organizational actions on Pfizer's behalf and does not result in a contravention by Pfizer of any provision of law or of Pfizer's organizational documents or any material contractual restrictions binding on Pfizer or its assets. Quigley, the Asbestos PI Trust, and any assignee or successor in interest of either of them shall be entitled to rely on Pfizer's representations and warranties in this Supplemental Annuity, which shall inure to all of their benefit.

Quigley represents and warrants that the individual executing this Supplemental Annuity on behalf of Quigley has corporate authority to bind Quigley.

**[Concluded on following page]**

IN WITNESS WHEREOF, Pfizer and Quigley have caused this SUPPLEMENTAL ANNUITY, consisting of sixteen (16) pages and one (1) attachment to be executed by their duly authorized representatives.

Dated: New York, New York
       _____ \_\_\_, 2009

<div style="margin-left:40%">

PFIZER INC.

By: _____
Name:  _____
Title:  _____

QUIGLEY COMPANY, INC.

By: _____
Name:  _____
Title:  _____

</div>

<u>Exhibit A</u>
**Schedule of Payments**

| Payment # | Payment Date | Payment Amount |
|---|---|---|
| 1 | Fifth anniversary of Effective Date | $1,100,000.00 |
| 2 | Sixth anniversary of Effective Date | $1,100,000.00 |
| 3 | Seventh anniversary of Effective Date | $1,100,000.00 |
| 4 | Eighth anniversary of Effective Date | $1,100,000.00 |
| 5 | Ninth anniversary of Effective Date | $1,100,000.00 |
| 6 | Tenth anniversary of Effective Date | $1,100,000.00 |
| 7 | Eleventh anniversary of Effective Date | $1,100,000.00 |
| 8 | Twelfth anniversary of Effective Date | $1,100,000.00 |
| 9 | Thirteenth anniversary of Effective Date | $1,100,000.00 |
| 10 | Fourteenth anniversary of Effective Date | $1,100,000.00 |
| 11 | Fifteenth anniversary of Effective Date | $1,100,000.00 |
| 12 | Sixteenth anniversary of Effective Date | $1,100,000.00 |
| 13 | Seventeenth anniversary of Effective Date | $1,100,000.00 |
| 14 | Eighteenth anniversary of Effective Date | $1,100,000.00 |
| 15 | Nineteenth anniversary of Effective Date | $1,100,000.00 |
| 16 | Twentieth anniversary of Effective Date | $1,100,000.00 |
| 17 | Twenty-first anniversary of Effective Date | $1,100,000.00 |
| 18 | Twenty-second anniversary of Effective Date | $1,100,000.00 |
| 19 | Twenty-third anniversary of Effective Date | $1,100,000.00 |
| 20 | Twenty-fourth anniversary of Effective Date | $1,100,000.00 |

| | | |
|---|---|---|
| 21 | Twenty-fifth anniversary of Effective Date | $1,100,000.00 |
| 22 | Twenty-sixth anniversary of Effective Date | $1,100,000.00 |
| 23 | Twenty-seventh anniversary of Effective Date | $1,100,000.00 |
| 24 | Twenty-eighth anniversary of Effective Date | $1,100,000.00 |
| 25 | Twenty-ninth anniversary of Effective Date | $1,100,000.00 |
| 26 | Thirtieth anniversary of Effective Date | $1,100,000.00 |
| 27 | Thirty-first anniversary of Effective Date | $1,100,000.00 |
| 28 | Thirty-second anniversary of Effective Date | $1,100,000.00 |
| 29 | Thirty-third anniversary of Effective Date | $1,100,000.00 |
| 30 | Thirty-fourth anniversary of Effective Date | $1,100,000.00 |
| 31 | Thirty-fifth anniversary of Effective Date | $1,100,000.00 |
| 32 | Thirty-sixth anniversary of Effective Date | $1,100,000.00 |
| 33 | Thirty-seventh anniversary of Effective Date | $1,100,000.00 |
| 34 | Thirty-eighth anniversary of Effective Date | $1,100,000.00 |
| 35 | Thirty-ninth anniversary of Effective Date | $1,100,000.00 |
| 36 | Fortieth anniversary of Effective Date | $1,100,000.00 |
| 37 | Forty-first anniversary of Effective Date | $1,100,000.00 |
| 38 | Forty-second anniversary of Effective Date | $1,100,000.00 |
| 39 | Forty-third anniversary of Effective Date | $1,100,000.00 |
| 40 | Forty-fourth anniversary of Effective Date | $1,100,000.00 |
| 41 | Forty-fifth anniversary of Effective Date | $1,100,000.00 |

## PFIZER SUPPLEMENTAL ANNUITY CONTRACT

In this Pfizer ~~Inc. ("Pfizer") agrees to provide the~~Supplemental Annuity contract (the "Supplemental Annuity"), entered into as of its Effective Date by and between Quigley Company, Inc., its successors and assigns ("Quigley") and Pfizer Inc., its successors and assigns ("Pfizer"), Pfizer agrees to provide benefits and other rights to the Quigley Company, Inc. Asbestos Personal Injury Trust (the "Asbestos PI Trust ~~in accordance with the terms of this contract (the "Pfizer Annuity~~") as specified below. ~~Capitalized terms used herein not otherwise defined shall have the meanings set forth in Quigley Company, Inc.'s ("Quigley")~~

## RECITALS

**WHEREAS, the** Fourth Amended and Restated Plan of Reorganization of Quigley Company, Inc., as modified March 28, 2008, as it has been or may be amended, supplemented, or modified (the "Plan")~~—~~

~~RECITALSWHEREAS, the Plan~~ has been confirmed by the Bankruptcy Court and, to the extent required, affirmed by the District Court; and

**WHEREAS,** ~~in accordance with the terms of the Plan, Pfizer will contribute to the Asbestos PI Trust the Pfizer Annuity;~~the Plan establishes the Quigley Company, Inc. Asbestos PI Trust, to which certain asbestos personal injury claims against Quigley and Pfizer will be channeled; and

**WHEREAS,** the Plan provides that Pfizer will contribute this Supplemental Annuity to the Asbestos PI Trust;

**NOW, THEREFORE,** in consideration of the covenants contained herein and <u>other agreements between the parties, and</u> intending to be legally bound hereby, Pfizer agrees as follows:

1. ~~1.~~ ~~Nominal Face Value.~~ ~~Pfizer hereby agrees to contribute~~<u>Contribution of Annuity</u> to the Asbestos PI Trust<u>. Pfizer hereby contributes</u> this ~~Pfizer Annuity, having a total nominal face value~~<u>Supplemental Annuity, and the right to the payments specified herein in the amount</u> of forty-five million one hundred thousand dollars and zero cents ($45,100,000.00)~~, to the Asbestos PI Trust.~~<u>. It is the intention of the parties that Pfizer's contribution of these payments to the Asbestos PI Trust shall be absolute and irrevocable and shall provide the Asbestos PI Trust with the full benefits of the right, title and interest in and to the payments.</u>

2. ~~2.~~ <u>Schedule of Payments</u>. Pfizer hereby unconditionally and irrevocably ~~agrees directly with and for the benefit of the Asbestos PI Trust that Pfizer shall~~<u>promises and agrees to</u> pay in full to the Asbestos PI Trust<u>, and</u> for ~~the~~<u>its</u> benefit ~~of the Asbestos PI Trust~~, each payment~~, in the manner~~ specified in Exhibit A~~,~~ attached hereto (~~such scheduled payments,~~<u>"Payment," and</u> collectively, the "Payments")~~, in the applicable amount and on the applicable date (provided, that if such applicable.~~<u>. Each Payment shall be in the amount specified in Exhibit A and shall be paid so that it will be received no later than the date on which the Payment is due as specified in Exhibit A. If the due</u> date is not a Business Day, ~~then such~~ payment ~~shall~~<u>may</u> be made on the ~~immediately subsequent~~<u>next</u> Business Day~~) in each case~~<u>. Each Payment shall be made</u> without any set-off, counterclaim, diminution or any other deduction whatsoever.

3.    Rights of Enforcement.  Pfizer agrees that the Asbestos PI Trust is an intended beneficiary of this Supplemental Annuity, that the Asbestos PI Trust is and will be relying on performance of the terms of this Supplemental Annuity from and after the Supplemental Annuity's execution by Pfizer, and that the Asbestos PI Trust shall have unrestricted rights to enforce any and all of this Supplemental Annuity's terms.

4.    3.    Waiver of Defenses.  As a clarification of, and not as a limitation of on, its unconditional and irrevocable obligations hereunder, Pfizer hereby (a) agrees that its obligations in respect of to make the Payments are direct, absolute, unconditional and enforceable, (b) waives any and all defenses to payment and, including defenses relating to fraud, fraud in the inducement or performance of fact, it may have now or hereafter, (c) waives any right of set-off, deduction, diminution, abatement, suspension, deferment, or recoupment of claims or counterclaims it may now or hereafter have, including defenses relating to fraud, or fraud in the inducement or performance of fact, and (c have now or hereafter, (d) agrees that it will not contend that the AIG Assignment Agreement or any other agreement between Quigley and Pfizer provides Pfizer with a defense to any part of its obligation to make any of the Payments, (e) agrees that it will not contend that the Plan provides Pfizer with a defense to any part of its obligation to make any of the Payments, and (f) agrees that it will not assert any of the following, without limitation, as a defense to payment, as a basis for nonpayment or reduction of payment, or as a right or basis for set-off, without limitation, any of the following, among other things deduction, diminution, abatement, suspension, deferment or recoupment of claims or as a counterclaim:

A.    A.    any indulgence, concession, waiver or consent given to or by Quigley, Pfizer or the Asbestos PI Trust;

B.         ~~B.~~       any taking, exchange, release, amendment, non-perfection, realization or application of or on any security for, or guarantee of, the Payments or any release of Pfizer by Quigley or the Asbestos PI Trust ~~of Pfizer~~;

C.         ~~C.~~       any defect as to the valid creation or existence of the Asbestos PI Trust;

D.         the insolvency, failure to pay, or inability or unwillingness to pay any sum due, of (1) Quigley; (2) the Asbestos PI Trust; (3) Pfizer or any of its affiliates; (4) any of the "AIG Companies" named in the Addendum to Settlement Agreement among Pfizer Inc., Quigley Company, Inc. and Certain AIG Member Companies; or (5) any of the successors or affiliates of any of the "AIG Companies" named in that Addendum;

E.         ~~D.~~       any order, decree, decision, judgment or legislation requiring Pfizer to ~~make payment of~~pay any Payment to any natural person, corporation, limited liability company, syndicate, trust, joint venture, association, company, partnership, governmental authority or ~~other~~ entity other than the Asbestos PI Trust;

F.         ~~E.~~       the failure of Quigley or the Asbestos PI Trust to perform any covenant, condition or obligation set forth in the Plan or ~~the other Plan Documents~~elsewhere; or

G.         ~~F.~~       any other act or omission, circumstance, occurrence, happening or event whatsoever, whether similar or dissimilar to the foregoing, whether foreseen or unforeseen, that might otherwise constitute a legal or equitable discharge or defense, or breach of any explicit or implied ~~duties~~duty under law.

Pfizer agrees and acknowledges that the foregoing clarification of ~~the~~certain defenses it has waived in connection with this ~~Pfizer~~Supplemental Annuity (the "Waiver of Defenses") was specifically drafted and agreed for the purposes of this ~~Pfizer~~Supplemental Annuity, that the Waiver of Defenses shall not be deemed or considered standard form or "boilerplate" even if it is similar to or resembles waivers of defenses in other contracts, that the Waiver of Defenses was reviewed and evaluated by counsel to Pfizer prior to the execution of this ~~Pfizer~~Supplemental Annuity, and that principles of construction and interpretation that would void any term of the Waiver of Defenses or deem any term of the Waiver of Defenses unenforceable shall not apply to the interpretation or application of the Waiver of Defenses. Pfizer understands, accepts and acknowledges that it has waived fraud-related defenses.

5. ~~4.~~ Covenant to Oppose. Pfizer covenants and agrees that it shall not consent to, and shall oppose including by litigation and by taking any good faith appeal, the entry of any order, decree, judgment or injunction that would require Pfizer to ~~make payment of~~pay any Payment to, or for the benefit of, any natural person, corporation, limited liability company, syndicate, trust, joint venture, association, company, partnership, governmental authority or ~~other~~ entity ~~besides~~other than the Asbestos PI Trust or that would prohibit, divert, channel or otherwise limit or restrict payment to the Asbestos PI Trust of any Payment, or ~~which~~would have any such effect, without the consent of the Asbestos PI Trust. Pfizer shall also provide the Asbestos PI Trust, as soon as reasonably practical, with written notice of any motion, request to file a motion or other effort or request by any person or entity to obtain an order, decree, judgment or injunction of the type described in the first sentence of this paragraph.

6. Assignment. Pfizer and Quigley recognize and agree that the Asbestos PI Trust has the absolute and unconditional right to sell, assign, or otherwise hypothecate, in its sole

discretion and without any restriction whatsoever, any or all of the Payments and any or all of its rights under the Supplemental Annuity.  Any such assignment shall be in a writing signed on behalf of the Asbestos PI Trust and, upon receipt of written notice of the assignment, Pfizer shall cooperate in assisting the Asbestos PI Trust to effect it.

7.    5.    Manner of Payments.  All ~~payments~~Payments to be made ~~by Pfizer~~ pursuant ~~hereto~~to this Supplemental Annuity shall be made in U.S. dollars so as to be received no later than the due date ~~when due,~~specified in ~~U.S. dollars~~Exhibit A, in the full amount of the ~~applicable~~ Payment~~,~~ without any set-off, counterclaim, diminution or any other deduction whatsoever~~,~~.  The Payments shall be made by wire transfer ~~or check and~~ pursuant to the following payment instructions (provided that the Asbestos PI Trust or its designee may change ~~such~~the payment instructions with respect to any Payment by written notice to Pfizer in the manner specified in Section ~~8~~11 of this ~~Pfizer~~Supplemental Annuity at least 10 days prior to the date ~~of such~~the Payment is due):

~~If by Wire Transfer, to:~~

~~If by Check, to:~~

8.    6.    Supplemental Payments.  Any Payment that is not made when due shall bear interest from (and including) the ~~date that is three days after the date of notice of such~~

~~overdue payment to Pfizer in the manner specified in Section 8 of this Pfizer Annuity to (but excluding) the date actually paid at~~ day after the payment was due at (a) an interest rate equal to the prime rate of Citibank, N.A. on the date the Payment was due plus three percent (3%), compounded daily, or (b) the federal judgment interest rate as set forth on the date payment was due in section 1961 of title ~~28, United States Code; provided that, if any portion of a Payment remains unpaid on the date that is 45 days after the date of notification to Pfizer that such Payment was overdue, Pfizer shall be required to pay, in addition to accrued interest with respect to such Payment, a supplemental amount of $500,000.00 in addition to such Payment (each such payment of the supplemental amount plus accrued interest, a "Supplemental Payment") within three days after notice thereof to Pfizer in the manner specified in Section 8 of this Pfizer Annuity.~~ 28 of the United States Code (or in a successor statute), whichever is higher. For the purposes of subparagraph (a) of this paragraph, if a Citibank, N.A. prime rate is not available, the prime rate of JP Morgan Chase will be utilized in lieu thereof.

In addition, if any portion of a Payment remains unpaid on the forty-fifth day after the Payment was due, Pfizer shall pay a further supplemental amount of $500,000 (a "Supplemental Payment"). A Supplemental Payment shall be due, provided that any portion of a Payment remains unpaid on the forty-fifth day after its due date, within three days after Quigley or the Asbestos PI Trust has given notice to Pfizer in the manner specified in Section 11 of this Supplemental Annuity that it is required to make a Supplemental Payment. Interest shall accrue on any unpaid Supplemental Payment from the date it is due until the date it is paid at the rate specified in this Supplemental Annuity for overdue Payments.

9.    7.    Acceleration Events.   The occurrence of eitherany of the following events shall constitute an acceleration event (a default by Pfizer under this Supplemental Annuity and an "Acceleration Event");:

A.    Any failure to pay in full a Payment or any interest when it becomes due and payable, and failure to cure any such failure in full within 90 days after notice thereof

A.    Any failure to pay any Payment or interest in full when it becomes due and payable which has not been cured in full within 30 days; provided that no Acceleration Event shall be deemed to occur to the extent that the failures to pay and to cure would not have occurred except for (i) an act of God; (ii) a suspension or material limitation in trading in securities generally on the New York Stock Exchange or on NASDAQ; (iii) a general moratorium on commercial banking activities declared by either Federal or New York State banking authorities; or (iv) the declaration by the United States of a national emergency or war.

B.    Any failure to pay any Supplemental Payment in full when it becomes due and payable which has not been cured in full within 15 days after notice of the failure to pay has been sent to Pfizer in the manner specified in Section 8 of this Pfizer Annuity; provided that no Acceleration Event shall be deemed to occur to the extent that the failure to pay or to cure was the result of11 of this Supplemental Annuity; provided that no Acceleration Event shall be deemed to occur to the extent that the failures to pay and to cure would not have occurred except for (i) an act of God; (ii) a suspension or material limitation in trading in securities generally on the New York Stock exchangeExchange or on NASDAQ; (iii) a general moratorium on commercial banking activities declared by either Federal or New York State

banking authorities; or (iv) the ~~outbreak or escalation of hostilities involving the United States or the declaration by the United States of a national emergency or war.~~

C.        ~~B.        Any failure to pay in full a Supplemental Payment when it becomes due and payable, and failure to cure any such failure in full within 45 days after notice thereof to Pfizer in the manner specified in Section 8 of this Pfizer Annuity; provided that no Acceleration Event shall be deemed to occur to the extent that the failure to pay was the result of (i) an act of God; (ii) a suspension or material limitation in trading in securities generally on the New York Stock Exchange or on NASDAQ; (iii) a general moratorium on commercial banking activities declared by either Federal or New York State banking authorities; or (iv) the outbreak or escalation of hostilities involving the United States or the declaration by the Untied States of a national emergency or war.~~declaration by the United States of a national emergency or war.

D.        The fact that any representation or warranty by Pfizer in this Supplemental Annuity has proved to have been false or incorrect in any material respect on the Effective Date;

E.        Pfizer, Inc., or any of its affiliates, successors or assigns that is or may be obligated to make Payments under this Supplemental Annuity (each, a "Pfizer Payor"):

(i)        Admits its insolvency or inability to pay its debts generally in writing;

(ii)        Makes a general assignment for the benefit of creditors;

(iii)        Files or becomes the subject of a bankruptcy petition or proceeding seeking to adjudicate it a bankrupt or insolvent, or seeking liquidation, winding-up,

reorganization, arrangement, adjustment, protection, relief, or composition of it or its debts under any law relating to bankruptcy, insolvency, reorganization or relief of debtors, or seeking the entry of an order for relief or the appointment of a receiver, trustee, administrator or other similar official for it or for any substantial part of its property and assets, provided that, if the Pfizer Payor is diligently seeking dismissal of the proceeding in good faith, the proceeding has remained undismissed for at least 60 consecutive days after its commencement;

(iv)     Authorizes, consents to or becomes the subject of any of the actions sought in a proceeding of the type listed in sub-paragraph (iii) of this paragraph, including, without limitation, the entry of an order for relief against, or the appointment of a receiver, trustee, custodian or other similar official for, a Pfizer Payor or any substantial part of its property and assets;

(v)     Authorizes, consents to or becomes the subject of any event or action analogous to, or having a substantially similar effect to, any of the events or actions set forth above in sub-paragraph (iii) of this paragraph under the requirements of law of any jurisdiction;

(vi)     Takes any corporate or other similar action to authorize any of the actions set forth above in this paragraph (b); or

(vii)     Fails in any material respect to perform or comply with any term of this Supplemental Annuity.

If an Acceleration Event occurs ~~and is continuing, then in every such case~~of the types described in subparagraphs A, B or C of this section, the Asbestos PI Trust may immediately or at any time, and in its sole discretion, declare the entire outstanding balance of all

of the Payments and any other sums due under this Supplemental Annuity (together, the "Outstanding Balance") to be immediately due and payable by a notice in writing to Pfizer in the manner specified in Section 8 of this Pfizer Annuity, and upon any such declaration such outstanding balance11 of this Supplemental Annuity (a "Declaration of Acceleration").

If an Acceleration Event of any of the types described in subparagraph D of this section has occurred, the Outstanding Balance shall immediately and automatically become due and payable (an "Automatic Acceleration") irrespective of whether the Asbestos PI Trust has provided a notice of the acceleration to Pfizer.

Upon an Automatic Acceleration or Declaration of Acceleration, the entire unpaid principal amount of this Supplemental Annuity, together with interest accrued thereon and unpaid and any other sums due hereunder, shall become immediately be due and payable, without presentment, demand, protest or further notice of any kind, all of which are hereby expressly waived.

At any time after the outstanding balance of all of the Payments hasany sums due under this Supplemental Annuity have been accelerated and before a judgment or decree for payment of the moneysums due has been obtained, the Asbestos PI Trust, by written notice to Pfizer in the manner specified in Section 811 of this PfizerSupplemental Annuity, may rescind and annul such declaration and its consequences. No such rescission shall affect any subsequent Acceleration Event or impair any right consequent thereon.

Pfizer agrees that, upon the occurrence of an Acceleration Event and declaration thereof that is not rescinded and annulled in the manner described in the preceding paragraph, it shall promptly execute such documents as the Asbestos PI Trust shall require acknowledging Pfizer's indebtedness to the Asbestos PI Trust for the outstanding balance of all of the Payments

and confessing judgment for such amount in favor of the Asbestos PI Trust.  In addition, within one month after the Effective Date, Pfizer shall execute such documents as the Asbestos PI Trust shall reasonably require confessing judgment for the full amount of the payments due under this Supplemental Annuity, which the Asbestos PI Trust agrees to hold in escrow unless and until an Acceleration Event has been declared.

10.     Other Remedies. If any Acceleration Event has occurred and is continuing, and irrespective of whether this Supplemental Annuity has been declared due and payable, the Asbestos PI Trust shall have the right, in its sole discretion, to take any and all steps to enforce or protect its rights or collect sums due under this Supplemental Annuity by an action at law, suit in equity or other appropriate proceeding.  In addition, once an Acceleration Event has been declared, the Asbestos PI Trust shall have the right, in its sole discretion, to file and enforce the confession of judgment required by Paragraph 9 of this Supplemental Annuity and take any other appropriate steps to enforce its rights or collect sums due under this Supplemental Annuity.

No course of dealing and no delay on the part of the Asbestos PI Trust in exercising any right, power or remedy shall operate as a waiver thereof or otherwise prejudice the Asbestos PI Trust's rights, powers or remedies. No right, power or remedy conferred by this Supplemental Annuity upon the Asbestos PI Trust shall be exclusive of any other right, power or remedy referred to herein or now or hereafter available at law, in equity, by statute or otherwise.

The Asbestos PI Trust, and any assignee or successor in interest of the Asbestos PI Trust, shall be entitled to reimbursement of any costs and expenses incurred in connection with enforcing any of its rights under this Supplemental Annuity, including reasonable attorney's fees. Pfizer shall reimburse these costs and expenses within 30 days of written notice to Pfizer in the manner specified in Section 11 of this Supplemental Annuity, provided that the Asbestos PI

Trust or its assignee or successor shall be entitled to reimbursement only if it obtains all or part of the relief it sought by enforcing its rights.

11. 8. Notices. Any and all statements, communications or notices to be provided pursuant to or in connection with this Pfizer Supplemental Annuity shall be in writing and sent by e-mail, facsimile and first-class mail, postage prepaid. shall be delivered by hand or sent by overnight courier service . Such notices shall be sent to each of the individuals noted listed below, or to such other individuals as hereafter may be designated in writing:

To Pfizer Inc.:

Pfizer Inc.
250 E. 42nd Street
New York, NY 10017

Attention: Vijay Bondada Michele S. Suggs, Esq.

With a copy to:
Greenberg Traurig, LLP
MetLife Building
200 Park Avenue

Cadwalader Wickersham and Taft LLP
One World Financial Center
New York, NY 10281
10166
Attention: Bruce Zirinsky, Esq.
or

John H. Bae, Esq.

To Quigley Company, Inc.:

Quigley Company, Inc.
52 Vanderbilt Avenue
New York, NY 10017
Attention: Kim Jenkins

With a copy to:

Schulte Roth & Zabel LLP

919 Third Avenue

New York, NY 10022

Attention:     Michael L. Cook, Esq. or
 Lawrence V. Gelber, Esq.

To the Future Demand Holders'     Togut, Segal & Segal, LLP

Representative:     One Penn Plaza
Suite 3335

New York, NY 10119-0002

Attention:  Albert Togut, Esq.

With a copy to:

Togut, Segal & Segal, LLP

One Penn Plaza

Suite 3335

New York, NY 10119-0002

Attention: Scott Ratner, Esq.
 or 

                                        Richard Milin, Esq.

To the Creditors' Committee:                    Caplin & Drysdale, Chartered
375 Park Avenue

36th Floor

New York, NY 10152

Attention:  Elihu Inselbuch, Esq.

and

Caplin & Drysdale, Chartered

One Thomas Circle, N.W.

Washington, DC 20005

Attention:   Peter V.N. Lockwood, Esq. or
                          Ronald Reinsel, Esq.

To the Asbestos PI Trust:          ~~_____~~

~~_____~~

~~_____~~

~~_____Attention: _____~~   _____

                                        _____

                                        _____

_____Attention: _____

12.      Security interest.  Upon an Acceleration Event, Pfizer grants the Asbestos

PI Trust a security interest in all of the "AIG Payments" as defined in the AIG Assignment

Agreement and in any other sums that Pfizer is due to receive (but has not yet received) under the AIG Assignment Agreement (each such AIG Payment, an "AIG Receivable"). If any Payments, sums due because of acceleration, or other amounts are overdue to the Asbestos PI Trust under this Supplemental Annuity on the date that Pfizer receives an AIG Receivable, then Pfizer shall immediately assign the AIG Receivable and all of Pfizer's rights to it, and all subsequent AIG Receivables it is scheduled to receive until no amounts that Pfizer owes to the Asbestos PI Trust are overdue, to the Asbestos PI Trust. Any successor in interest to the Asbestos PI Trust shall have the same rights and obligations under this paragraph that the Asbestos PI Trust itself would have. Following an Acceleration Event, Pfizer agrees to sign an appropriate pledge agreement promptly, at the option of the Asbestos PI Trust, to effectuate this paragraph.

13. Diverted Amounts. Notwithstanding anything contained herein, if any legislation, or order, decree, decision or judgment seeking to enforce such legislation, requires Pfizer to divert any Payments, Supplemental Payments, and/or any other sums due under this Pfizer/Asbestos Annuity (each such amount, a "Diverted Amount"), then Pfizer shall not be required to pay such Diverted Amount(s) to the Asbestos PI Trust or its designee.

14. Merger, Consolidation, etc. If Pfizer consolidates with or merges with any other entity (and that entity is the surviving entity), or Pfizer transfers all or substantially all of its assets in a single transaction or series of transactions to any entity, then such entity shall succeed to, and be substituted for, Pfizer and shall assume all of Pfizer's obligations under this Supplemental Annuity.

15. 9. Entire Agreement. This ~~Pfizer Annuity, the Plan, the other Plan Documents, and the Confirmation Order~~Supplemental Annuity shall constitute the entire agreement and understanding of the parties with respect to the subject matter hereof, and shall supersede all prior agreements and understandings, oral or written, relating to the subject matter hereof. There are no representations, warranties, promises, or inducements, whether oral, written, expressed, or implied, that in any way affect or condition the validity of this ~~Pfizer~~Supplemental Annuity or alter its terms.

16. 10. Amendment, Modification and Waiver. No amendment or modification of this ~~Pfizer~~Supplemental Annuity shall be valid unless it is made in writing and signed by ~~an~~ authorized ~~representative~~representatives of Pfizer and the Asbestos PI Trust. If required by law at the time such an amendment or modification is made, Bankruptcy Court approval shall also be required for an amendment or modification to be valid.

17. 11. Jurisdiction, Venue and Governing Law. This ~~Pfizer~~Supplemental Annuity, its validity, interpretation and application, and the rights and obligations of Pfizer hereunder, shall be governed by, and be construed and enforced in accordance with, the substantive laws of the ~~state~~State of New York, without regard to any conflicts of law provisions thereof that would result in the application of the laws of any other jurisdiction. Pfizer hereby irrevocably consents and submits to the jurisdiction and venue of the United States Bankruptcy Court for the Southern District of New York for all actions and proceedings arising out of or relating to this Supplemental Annuity. If that Court lacks or declines to exercise jurisdiction, Pfizer hereby irrevocably consents and submits to the non-exclusive jurisdiction and venue of any State, Federal or Bankruptcy Court sitting in New York County, New York, or having jurisdiction to review decisions of courts sitting in New York County, New York, for all actions

and proceedings arising out of or relating to this Supplemental Annuity. Pfizer further waives any objection to any action or proceeding brought in accord with the preceding sentences of this paragraph that Pfizer might assert based on the doctrine of forum non conveniens.

12. Construction. This Pfizer Annuity is delivered pursuant to and is subject to the Plan. Nothing contained herein is intended to or shall be construed to modify, alter, amend, expand, interpret, supersede, or otherwise change any of the terms of the Plan. In the event of any conflict between the terms of the Plan and the terms of this Pfizer Annuity, the terms of the Plan shall prevail.

18. Service of Process. Pfizer irrevocably consents to service of process in connection with any proceeding seeking to enforce rights under the Supplemental Annuity if the process is provided to Pfizer in the manner specified in Section 11 of this Supplemental Annuity.

19. 13. Severability. The invalidity, illegality, or unenforceability of any provision of this PfizerSupplemental Annuity pursuant to a judicial or tribunal decree shall not affect the validity or enforceability of any other provision hereof and all other provisions of this PfizerSupplemental Annuity shall remain in full force and effect.

20. 14. Effective Date. This PfizerSupplemental Annuity shall become effective only upon the Effective Date of the Plan, and no obligations of Pfizer hereunder shall become legally binding unless and until the occurrence of the Effective Date.

15. Authority to Bind.

21. Representations and Warranties. Pfizer represents and warrants that the individual executing this Pfizerthis Supplemental Annuity is a legal, valid and binding obligation

of Pfizer enforceable against Pfizer in accord with its terms. The individual executing this Supplemental Annuity on behalf of Pfizer has corporate authority to bind Pfizer.  The execution, delivery and performance of this Supplemental Annuity has been and remains duly authorized by all necessary organizational actions on Pfizer's behalf and does not result in a contravention by Pfizer of any provision of law or of Pfizer's organizational documents or any material contractual restrictions binding on Pfizer or its assets. Quigley, the Asbestos PI Trust, and any assignee or successor in interest of either of them shall be entitled to rely on Pfizer's representations and warranties in this Supplemental Annuity, which shall inure to all of their benefit.

Quigley represents and warrants that the individual executing this Supplemental Annuity on behalf of Quigley has corporate authority to bind Quigley.

**[Concluded on following page]**

IN WITNESS WHEREOF, Pfizer ~~has~~and Quigley have caused this ~~PFIZER~~SUPPLEMENTAL ANNUITY, consisting of ~~ten~~sixteen (~~10~~16) pages and one (1) attachment to be executed by ~~its~~their duly authorized ~~representative~~representatives.

~~PFIZER INC.~~

~~By: _____~~
~~Name:~~
~~Title:~~

~~Date:_____~~

Dated: New York, New York
_____ ___, 2009

PFIZER INC.

By: _____
Name: _____
Title: _____

QUIGLEY COMPANY, INC.

By: _____
Name: _____
Title: _____

Exhibit A
**Schedule of Payments**

| Payment # | Payment Date | Payment Amount |
|---|---|---|
| 1 | Fifth anniversary of Effective Date | $1,100,000.00 |
| 2 | Sixth anniversary of Effective Date | $1,100,000.00 |
| 3 | Seventh anniversary of Effective Date | $1,100,000.00 |
| 4 | Eighth anniversary of Effective Date | $1,100,000.00 |
| 5 | Ninth anniversary of Effective Date | $1,100,000.00 |
| 6 | Tenth anniversary of Effective Date | $1,100,000.00 |
| 7 | Eleventh anniversary of Effective Date | $1,100,000.00 |
| 8 | Twelfth anniversary of Effective Date | $1,100,000.00 |
| 9 | Thirteenth anniversary of Effective Date | $1,100,000.00 |
| 10 | Fourteenth anniversary of Effective Date | $1,100,000.00 |
| 11 | Fifteenth anniversary of Effective Date | $1,100,000.00 |
| 12 | Sixteenth anniversary of Effective Date | $1,100,000.00 |
| 13 | Seventeenth anniversary of Effective Date | $1,100,000.00 |
| 14 | Eighteenth anniversary of Effective Date | $1,100,000.00 |
| 15 | Nineteenth anniversary of Effective Date | $1,100,000.00 |
| 16 | Twentieth anniversary of Effective Date | $1,100,000.00 |
| 17 | Twenty-first anniversary of Effective Date | $1,100,000.00 |
| 18 | Twenty-second anniversary of Effective Date | $1,100,000.00 |
| 19 | Twenty-third anniversary of Effective Date | $1,100,000.00 |
| 20 | Twenty-fourth anniversary of Effective Date | $1,100,000.00 |

| Payment # | Payment Date | Payment Amount |
|---|---|---|
| ~~1~~ | ~~Fifth anniversary of Effective Date~~ | ~~$1,100,000.00~~ |
| ~~2~~ | ~~Sixth anniversary of Effective Date~~ | ~~$1,100,000.00~~ |
| ~~3~~ | ~~Seventh anniversary of Effective Date~~ | ~~$1,100,000.00~~ |
| ~~4~~ | ~~Eighth anniversary of Effective Date~~ | ~~$1,100,000.00~~ |
| ~~5~~ | ~~Ninth anniversary of Effective Date~~ | ~~$1,100,000.00~~ |
| ~~6~~ | ~~Tenth anniversary of Effective Date~~ | ~~$1,100,000.00~~ |
| ~~7~~ | ~~Eleventh anniversary of Effective Date~~ | ~~$1,100,000.00~~ |
| ~~8~~ | ~~Twelfth anniversary of Effective Date~~ | ~~$1,100,000.00~~ |
| ~~9~~ | ~~Thirteenth anniversary of Effective Date~~ | ~~$1,100,000.00~~ |
| ~~10~~ | ~~Fourteenth anniversary of Effective Date~~ | ~~$1,100,000.00~~ |
| ~~11~~ | ~~Fifteenth anniversary of Effective Date~~ | ~~$1,100,000.00~~ |
| ~~12~~ | ~~Sixteenth anniversary of Effective Date~~ | ~~$1,100,000.00~~ |
| ~~13~~ | ~~Seventeenth anniversary of Effective Date~~ | ~~$1,100,000.00~~ |
| ~~14~~ | ~~Eighteenth anniversary of Effective Date~~ | ~~$1,100,000.00~~ |
| ~~15~~ | ~~Nineteenth anniversary of Effective Date~~ | ~~$1,100,000.00~~ |
| ~~16~~ | ~~Twentieth anniversary of Effective Date~~ | ~~$1,100,000.00~~ |
| ~~17~~ | ~~Twenty-first anniversary of Effective Date~~ | ~~$1,100,000.00~~ |
| ~~18~~ | ~~Twenty-second anniversary of Effective Date~~ | ~~$1,100,000.00~~ |
| ~~19~~ | ~~Twenty-third anniversary of Effective Date~~ | ~~$1,100,000.00~~ |
| ~~20~~ | ~~Twenty-fourth anniversary of Effective Date~~ | ~~$1,100,000.00~~ |
| 21 | Twenty-fifth anniversary of Effective Date | $1,100,000.00 |

| | | |
|---|---|---|
| 22 | Twenty-sixth anniversary of Effective Date | $1,100,000.00 |
| 23 | Twenty-seventh anniversary of Effective Date | $1,100,000.00 |
| 24 | Twenty-eighth anniversary of Effective Date | $1,100,000.00 |
| 25 | Twenty-ninth anniversary of Effective Date | $1,100,000.00 |
| 26 | Thirtieth anniversary of Effective Date | $1,100,000.00 |
| 27 | Thirty-first anniversary of Effective Date | $1,100,000.00 |
| 28 | Thirty-second anniversary of Effective Date | $1,100,000.00 |
| 29 | Thirty-third anniversary of Effective Date | $1,100,000.00 |
| 30 | Thirty-fourth anniversary of Effective Date | $1,100,000.00 |
| 31 | Thirty-fifth anniversary of Effective Date | $1,100,000.00 |
| 32 | Thirty-sixth anniversary of Effective Date | $1,100,000.00 |
| 33 | Thirty-seventh anniversary of Effective Date | $1,100,000.00 |
| 34 | Thirty-eighth anniversary of Effective Date | $1,100,000.00 |
| 35 | Thirty-ninth anniversary of Effective Date | $1,100,000.00 |
| 36 | Fortieth anniversary of Effective Date | $1,100,000.00 |
| 37 | Forty-first anniversary of Effective Date | $1,100,000.00 |
| 38 | Forty-second anniversary of Effective Date | $1,100,000.00 |
| 39 | Forty-third anniversary of Effective Date | $1,100,000.00 |
| 40 | Forty-fourth anniversary of Effective Date | $1,100,000.00 |
| 41 | Forty-fifth anniversary of Effective Date | $1,100,000.00 |

**EXHIBIT C**

**EXHIBIT N**

**TO**

**QUIGLEY COMPANY, INC. FOURTH AMENDED AND RESTATED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**PFIZER CLAIMS SERVICES AGREEMENT**

## CLAIMS SERVICES AGREEMENT

This CLAIMS SERVICES AGREEMENT (this **"Agreement")**, effective as of _____, 2009, is between Quigley Company, Inc. (**"Quigley"**), a New York corporation and the reorganized debtor in chapter 11 case number 04-15739 (SMB) (the **"Chapter 11 Case"**) pending in the United States Bankruptcy Court for the Southern District of New York (the **"Bankruptcy Court"**) and Pfizer Inc. (**"Pfizer"**), a Delaware corporation.

### RECITALS

**WHEREAS** prior to the date hereof, Quigley provided certain claims services to Pfizer, Warner-Lambert Company LLC (**"Warner-Lambert"**) and Pharmacia Corporation (**"Pharmacia"**, and together with Pfizer, Warner-Lambert and Pfizer's other affiliates not including Quigley, the **"Pfizer Group"**) under the Shared Services Agreement, dated as of August 31, 2004; and

**WHEREAS** the Quigley Company, Inc. Fourth Amended and Restated Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code, as amended, modified or supplemented from time to time (the **"Plan"**) provides that Quigley and Pfizer will enter into this Agreement, pursuant to which Quigley will service and process certain (i) asbestos-related claims brought against one or more members of the Pfizer Group that are not channeled to the asbestos personal injury trust created under the Plan (the **"Asbestos PI Trust"**); (ii) claims relating to the submission of medical and exposure evidence under the terms of the settlement agreements entered into between Pfizer and certain holders of asbestos personal injury claims or their counsel, pursuant to which the holders of such claims agreed to resolve all asbestos personal injury claims against Pfizer and Pfizer's affiliates (other than Quigley) (the **"Pfizer Claimant Settlement Agreements"**); and (iii) such other claims as have been or may be asserted against Pfizer as Quigley and Pfizer determine are appropriate for servicing and processing by Quigley, subject to the consent of the Asbestos PI Trust as specified below; and

**WHEREAS** Pfizer desires to use Quigley's services to process asbestos personal injury claims against Pfizer and other members of the Pfizer Group on the terms and subject to the conditions set forth herein; and

**WHEREAS** Pfizer has agreed to retain Quigley for its services for a minimum of $5 million per year for five years as specified in this Agreement, commencing on the Effective Date hereof (as defined below).

**NOW, THEREFORE**, in consideration of the mutual covenants and understandings contained herein of Quigley and Pfizer (each a **"Party"** and together the **"Parties"**), and subject to and on the terms and conditions herein set forth, the Parties hereby agree as follows:

# ARTICLE 1

## DEFINITIONS

Section 1.1 <u>Definitions</u>. The following terms used herein shall have the following meanings:

**"AAA"** means the American Arbitration Association.

**"Aggregate Cost"** means Quigley's aggregate fixed and variable costs reasonably attributable to processing claims subject to the Annual Claims Limit during an Agreement Year.

**"Anniversary Date"** means each anniversary of the Effective Date of this Agreement.

**"Annual Claims Limit"** means, in the aggregate, 35,000 New Claims and New Settlements.

**"Agreement"** shall have the meaning set forth in the recitals herein.

**"Agreement Year"** means any calendar year measured from the Effective Date or from any anniversary of the Effective Date.

**"Asbestos PI Channeling Injunction"** means the injunction described in Section 11.6 of the Plan.

**"Asbestos PI Trust"** shall have the meaning set forth in the recitals herein.

**"Bankruptcy Code"** shall mean title 11 of the United States Code.

**"Bankruptcy Court"** shall have the meaning set forth in the recitals herein.

**"Business Day"** means any day except: (i) Saturday; (ii) Sunday; (iii) any other day on which banking institutions in New York, New York are required to close by law or executive order; and (iv) the Friday after Thanksgiving.

**"CCR"** shall mean the Center for Claims Resolution.

**"Chapter 11 Case"** shall have the meaning set forth in the recitals herein.

**"Claim"** means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured or unsecured; or (b) a right to an equitable remedy for breach of performance if such right gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**"Claims Database"** shall have the meaning set forth in Schedule A to this Agreement.

**"Claims Database Services"** shall have the meaning set forth in Schedule A to this Agreement.

**"Confidential Information"** shall have the meaning set forth in Section 10.1 of this Agreement.

**"Confidentiality Agreement"** shall have the meaning set forth in Section 10.1 of this Agreement.

**"Confidentiality Injunction"** means the injunction contained in Section 11.11 of the Plan.

**"Confirmation Order"** means, as the context requires, the order or orders of the Bankruptcy Court and the District Court confirming the Plan under section 1129 of the Bankruptcy Code, including any order or orders of the District Court affirming an order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code, which shall contain, among other things, the Asbestos PI Channeling Injunction, the Settling Asbestos Insurance Entity Injunction, the Non-Settling Asbestos Insurance Entity Injunction, the Confidentiality Injunction and the Dividend Injunction.

**"Data"** shall have the meaning set forth in Section 3.3 of this Agreement.

**"Dispute"** means any controversy, dispute or claim arising out of or relating to this Agreement or the breach, enforceability or validity thereof.

**"Dispute Notice"** means a written notice, given by either Quigley or Pfizer to the other, setting forth with reasonable specificity the nature of the Dispute.

**"District Court"** means the United States District Court for the Southern District of New York.

**"Dividend Injunction"** means the injunction contained in Section 11.12 of the Plan.

**"Effective Date"** means the first Business Day on which all conditions precedent set forth in Section 12.2 of the Plan have been satisfied or waived as provided in Section 12.3 of the Plan.

**"Excess Claims Charge"** means $20.

**"Excess Claims"** shall have the meaning set forth in Section 4.1 of this Agreement.

**"Expenses"** shall have the meaning set forth in Section 4.2 of this Agreement.

**"Final Judgment"** means a judgment or an order, as the case may be, as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending; provided, however, if an appeal, writ of certiorari, reargument or rehearing thereof has been filed or sought, (i)(a) such judgment or order shall have been affirmed by the highest court to which such judgment or order was appealed, or (b) certiorari shall have been denied or reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, to petition for certiorari or to move for reargument or rehearing shall have expired, or (ii) such appeal, writ of certiorari or request for reargument or rehearing shall have been dismissed with prejudice by the filing or seeking Party.

**"Future Claims Representative"** means Albert Togut, Esq., or his designated successor, in his capacity as legal representative for the purpose of protecting the rights of persons that might subsequently assert demands against, and payable by, the Asbestos PI Trust.

**"Incremental Cost"** shall have the meaning set forth in Section 5.1(b) of this Agreement.

**"Intellectual Property Right"** and **"Intellectual Property Rights"** shall have the meanings set forth in Section 3.6 of this Agreement.

**"Negotiation Period"** means thirty (30) days after receipt of a Dispute Notice.

**"New Claim"** shall have the meaning set forth in Schedule A hereto.

**"New Settlement"** shall have the meaning set forth in Schedule A hereto.

**"Non-Settling Asbestos Insurance Entity Injunction"** means the injunction contained in Section 11.8 of the Plan.

**"Permitted Attendees"** shall have the meaning set forth in Section 11.2 of this Agreement.

**"Pharmacia"** shall have the meaning set forth in the recitals herein.

**"Pfizer"** shall have the meaning set forth in the recitals herein.

**"Pfizer Claimant Settlement Agreement"** shall have the meaning set forth in the recitals herein.

**"Pfizer Future Settled Claim"** means any Claim subject to this Agreement and resolved by Pfizer other than under the Pfizer Claimant Settlement Agreements.

**"Pfizer Group"** shall have the meaning set forth in the recitals herein.

**"Pfizer Non-Channeled Claims"** means asbestos-related claims brought against any member(s) of the Pfizer Group that are not channeled to the Asbestos PI Trust under the terms of the Plan.

**"Pfizer Settled Claims"** means claims connected with the submission of medical and exposure evidence under the terms of the Pfizer Claimant Settlement Agreements.

**"Plan"** shall have the meaning set forth in the recitals herein.

**"Processing Cost"** shall have the meaning set forth in Section 6.6 of this Agreement.

**"Processing Cost Charge"** means $20.

**"Processing Year"** means the twelve month period commencing on the Effective Date and each subsequent twelve month period commencing on each anniversary of the Effective Date, so long as this Agreement shall continue in force.

**"Quigley"** shall have the meaning set forth in the recitals herein.

**"Quigley Services"** shall have the meaning set forth in Section 2.1 of this Agreement.

**"Reorganized Quigley"** means Quigley, or any successor thereto by merger, consolidation or otherwise, on and after the Effective Date.

**"Retention Fee"** shall have the meaning set forth in Section 4.1 of this Agreement.

**"Services"** means the Quigley Services, or any portion thereof, as applicable.

**"Services Representative"** means a representative designated to be the primary liaison between the Parties for the provision of the Quigley Services under this Agreement.

**"Settlement Processing Services"** shall have the meaning set forth in Schedule A to this Agreement.

**"Settling Asbestos Insurance Entity Injunction"** means the injunction contained in Section 11.7 of the Plan.

**"Supplemental Fee"** shall have the meaning set forth in Section 4.1 of this Agreement.

**"TAC"** means the Trust Advisory Committee.

**"Termination Date"** shall have the meaning set forth in Section 6.2 of this Agreement.

**"Tort Claim"** shall have the meaning set forth in Schedule A to this Agreement.

**"Warner-Lambert"** shall have the meaning set forth in the recitals herein.

# ARTICLE 1

## REFERENCES

Section 1.1 <u>References</u>. Unless indicated otherwise, all references in this Agreement to a particular Article or Section number are references to Articles or Sections of this Agreement.

# ARTICLE 2

## QUIGLEY SERVICES

Section 2.1 The services to be provided by Quigley to Pfizer under this Agreement shall be referred to herein as the **"Quigley Services,"** namely, servicing and processing Pfizer Non-Channeled Claims, Pfizer Settled Claims, and Pfizer Future Settled Claims.

Section 2.2 The Quigley Services shall include, to the extent reasonably necessary or incidental to servicing and processing Pfizer Non-Channeled Claims, Pfizer Settled Claims, and Pfizer Future Settled Claims, the services set forth in Schedule A hereto, which may be supplemented or modified from time to time by mutual written consent of the Parties, subject to the written consent of the Asbestos PI Trust, in accordance with the provisions of this Agreement.

Section 2.3 To the extent reasonably necessary to implement the terms of this Agreement, each of the Parties shall cooperate with and assist the other Party in obtaining any consent, authorization, order or approval of, or any exemption by, any third party required to be obtained or made for the performance by the Parties of their obligations under this Agreement. Reasonable costs or expenses that Quigley incurs in doing so shall be reimbursed by Pfizer. If the Parties are unable to obtain any required consents, the Parties shall negotiate in good faith reasonable modifications of the Quigley Services such that such consents are not required.

Section 2.4 Quigley and Pfizer shall each designate a Services Representative. Such Services Representatives shall be designated within 30 days of the Effective Date. The two Services Representatives shall meet regularly in person, telephonically, or as they otherwise agree, at least monthly for the first year following the date hereof, to discuss any issues arising under this Agreement and the need for any modifications or additions hereto.

# ARTICLE 3

## EMPLOYEES, SYSTEMS AND MATERIALS

Section 3.1 Quigley shall at all times maintain such staff as it reasonably determines to be sufficient to provide the Quigley Services.

Section 3.2        Pfizer agrees that (i) Quigley will own all right, title and interest including without limitation all Intellectual Property Rights (as defined in clause 3.7 below), in and to all systems, data, programs, business methods, operating instructions, documentation, pre-existing Intellectual Property Rights and other materials developed or owned by Quigley, including the source code and all modifications to the source code that constitute work product or otherwise result from, or source code modifications which are created in connection with, Quigley's performance of the Quigley Services under this Agreement; and (ii) Quigley will own all right, title and interest in and to all work product that results from, or is created in connection with, the performance of the Quigley Services under this Agreement, including without limitation all reports and analyses created or derived therefrom, and all Intellectual Property Rights in or related thereto, and further including any of the foregoing created, in whole or in part, jointly with Quigley and its employees, subcontractors and/or agents.

Section 3.3        Notwithstanding anything to the contrary in this Agreement, (A) information concerning individual personal injury claims provided to Quigley by Pfizer or any other member(s) of the Pfizer Group and any documentation or compilation (including without limitation, electronic and manual compilations) by which such information is and has been maintained and organized (**"Data"**) shall not be deemed to be Quigley property, (B) any and all Data, all data output reports and documents relating to the Data and/or services provided by Quigley pursuant to this Agreement shall be the exclusive property of Pfizer and (C) any new system, data, programs, business methods, operating instructions, documentation and other materials prepared by Quigley at the express direction of Pfizer and specifically agreed to in writing by the Parties and paid for by Pfizer after the Effective Date under the terms of this Agreement shall be the exclusive property of Pfizer.

Section 3.4        All Data, documentation and other materials delivered by or on behalf of Pfizer and/or any other member(s) of the Pfizer Group to Quigley hereunder shall be and remain the exclusive property of the respective member(s) of the Pfizer Group; provided, however, that to the extent Quigley needs to use, execute, reproduce, display, perform, modify and distribute, and create derivative works of, any Data in order to provide the Quigley Services hereunder, Pfizer hereby grants Quigley, and its subcontractors and agents, a limited, personal, nonexclusive, royalty-free license to use such Data for the purpose of providing the Quigley Services hereunder.

Section 3.5        The applicable member of the Pfizer Group will be responsible for its Data and media while such Data and media are in transit to Quigley and Quigley shall be responsible for the Data and media while such Data and media are in transit from Quigley.

Section 3.6        For purposes hereof, **"Intellectual Property Right"** and **"Intellectual Property Rights"** mean (i) all rights under all copyright laws of the United States of America and all other jurisdictions and countries for the full terms thereof (as well as all rights accruing by virtue of copyright treaties and conventions), including, but not limited to, all renewals, extensions, reversions or restorations of copyrights now or hereafter provided by law and all rights to make applications for and obtain copyright registrations therefor and recordations thereof and all works of originality; (ii) all rights to and under new and useful inventions, discoveries, designs, technology and art and all other patentable subject matter, and

all applications for and all letters patent that issue therefrom in the United States and all other jurisdictions and countries of the world and all reissues, extensions, renewals, divisional applications, registrations and continuations (including continuations-in-part) thereof together with all know-how owned, created and/or developed by a party in whole or in part; (iii) all technologies and know-how not otherwise included in the above; (iv) all trade secrets; (v) all signs, business designations, trademarks, service marks and Internet domain names, goodwill, fame, reputation and the like throughout the world; and (vi) all other intellectual and industrial property and proprietary rights throughout the universe not otherwise included in the foregoing, including, without limitation, all techniques, methodologies and concepts and trade dress, improvements, enhancements, developments and the like.

## ARTICLE 4

## COMPENSATION

Section 4.1 (a) <u>Retention fee</u>. In consideration for Quigley's agreement to perform the Quigley Services set forth on Schedule A hereto, Pfizer shall pay to Quigley a retention fee in the aggregate amount of $25 million (the **"Retention Fee"**). The Retention Fee shall be paid in advance in five equal annual installments of $5 million. The first installment shall be paid so as to be received by Quigley within twenty days after the Effective Date of this Agreement and each subsequent installment shall be paid so as to be received by Quigley on or before the Anniversary Date of this Agreement for as long as this Agreement shall continue in force. The Retention Fee may be increased with the consent of the Parties if the Parties agree to modify Schedule A hereto.

(b) <u>Supplemental fee</u>. (i) In addition to the Retention Fee, if Pfizer submits to Quigley in any given Processing Year an aggregate of New Claims and New Settlements in excess of the Annual Claims Limit (the **"Excess Claims"**), Pfizer shall pay Quigley an amount equal to the Excess Claims multiplied by the Excess Claims Charge (the **"Supplemental Fee"**). The Supplemental Fee shall be calculated and invoiced annually as of this Agreement's Anniversary Date unless this Agreement terminates before its Termination Date. If this Agreement terminates before the Termination Date, the Supplemental Fee shall be calculated for the portion of the preceding year, measured from the last Anniversary Date (or the Effective Date, if termination occurs prior to the first Anniversary Date), during which the Agreement remained in effect, and the Excess Claims for this purpose shall be the total of New Claims and New Settlements submitted by Pfizer to Quigley since the last Anniversary Date (or the Effective Date, if termination occurs prior to the first Anniversary Date) in excess of the product of (x) the Annual Claims Limit and (y) the number of calendar days having elapsed since, but not including, the last Anniversary Date (or the Effective Date, if termination occurs prior to the first Anniversary Date), through and including the date of such termination, divided by 365. Pfizer shall pay the Supplemental Fee within thirty days after Pfizer's receipt of Quigley's invoice for it. (ii) The parties have established the Annual Claims Limit in reliance on their understanding that the vast majority of claims Quigley processes under this Agreement will be New Claims that require only the Claims Database Services set forth in Schedule A, Part A and that the cost Quigley incurs for processing claims under this Agreement will not, on average, exceed the Excess Claims Charge. Accordingly, absent Quigley's consent, the

Aggregate Cost Quigley incurs for processing claims subject to the Annual Claims Limit shall not exceed $1 million in any Agreement Year. If Quigley determines in good faith that its Aggregate Cost is likely to exceed $1 million during an Agreement Year, Quigley may unilaterally reduce the Annual Claims Limit for such Agreement Year, provided that (a) upon Pfizer's request, Quigley shall promptly provide to Pfizer information sufficient to explain and provide a reasonable justification for the reduction, and (b) the Annual Claims Limit shall be readjusted at the end of such Agreement Year (or sooner if practicable) so that Quigley's Aggregate Cost does not exceed $1 million to process up to a maximum of 35,000 claims in such Agreement Year, with a corresponding adjustment, as appropriate, in the sums paid or owed to Quigley.

Section 4.2    <u>Reimbursement of expenses</u>. Pfizer agrees to reimburse Quigley for reasonable out-of-pocket costs Quigley incurs in providing the Quigley Services under this Agreement (**"Expenses"**). For the avoidance of doubt, Expenses do not include (i) Quigley's overhead, including without limitation insurance and rent and related expenses, or (ii) Quigley's general business expenses, including without limitation office supplies, computing services, professional fees, and salaries and other payroll expenses. Expenses shall include charges imposed by the CCR with respect to claims filed against any of the Pfizer Group and shall include the actual out of pocket travel expenses incurred by Quigley if Pfizer specifically requests that a Quigley employee travel on behalf of Pfizer. In the event that Pfizer determines that the Claims Database should be maintained on a platform or in a format different from that existing as of the Effective Date, then Pfizer shall be responsible to pay the actual cost of any programming required to transfer such format or platform. Quigley shall send invoices to Pfizer monthly, or on another reasonable schedule, identifying the Expenses Quigley has incurred in connection with performing the Quigley Services. Quigley shall retain copies of supporting bills and receipts, as appropriate, for at least eighteen months and shall keep the bills and receipts available during that time for Pfizer's inspection. Pfizer shall reimburse Quigley for Quigley's reasonable incurred Expenses within thirty days of receiving an invoice for them.

Section 4.3    <u>Interest</u>. In the event that Pfizer fails to pay, when due, any portion of the Retention Fee, any Supplemental Fee, any Expense, or any other amount due under this Agreement, interest shall accrue on such unpaid amount until payment is made at the prime rate of interest published by the Wall Street Journal on the date that is one day after the due date of such unpaid amount plus 2 % per annum.

## ARTICLE 5

## STANDARD OF PERFORMANCE

Section 5.1    (a) The Parties acknowledge that Quigley's correct and timely completion of the Quigley Services may depend upon the Pfizer Group's provision of information and/or services to Quigley. Quigley shall not be responsible for any failure to provide any Quigley Services if, and to the extent that, such failure results from (i) Pfizer's failure to provide relevant information and/or services to Quigley in a timely manner, or (ii) occurrences beyond Quigley's reasonable control.

(b) In no event shall Quigley or Pfizer have any liability for loss of profit, diminution in value, loss of goodwill or consequential, incidental, punitive, exemplary or other special damages as a result of breach of this Agreement, except as provided in section 6.6 hereof. Quigley's maximum liability to, and the sole remedy of, the Pfizer Group for breach of this Agreement shall be the greater of (i) the Pfizer Group's incremental cost of performing the Quigley Services itself, and (ii) the Pfizer Group's incremental cost of obtaining the Quigley Services from a third party; provided that the Pfizer Group shall exercise reasonable efforts under the circumstances to minimize the cost of any such alternatives to Quigley providing the Quigley Services by selecting the most cost-effective alternatives which provide the functional equivalent of the Quigley Services replaced (the cost of which shall be referred to herein as **"Incremental Cost"**).

## ARTICLE 6

## TERM OF SERVICES

Section 6.1        <u>Term</u>.  The term of this Agreement shall be five years, commencing on the Effective Date, unless the term is extended pursuant to Section 6.2.

Section 6.2        <u>Termination date</u>.  This Agreement shall terminate five years from the Effective Date (the **"Termination Date"**), unless Quigley and Pfizer agree in writing to renew this Agreement, in which event this Agreement shall be deemed to have been renewed in accordance with the terms of the Parties' written agreement.

Section 6.3        <u>Assistance in winding down</u>.  To the extent this Agreement terminates pursuant to Section 6.2 above, or any of the Quigley Services are discontinued prior to the Termination Date or any extension thereof, Quigley shall provide Pfizer with reasonable assistance in winding down the terminated Quigley Services or, if applicable, transferring responsibility for those Quigley Services to a new provider.  Pfizer shall reimburse Quigley for reasonable costs and expenses Quigley incurs pursuant to this paragraph within 30 days of the completion of wind-down and termination.

Section 6.4        <u>Termination of Shared Services Agreement</u>.  Immediately upon the Effective Date of this Agreement, the Shared Services Agreement shall terminate pursuant to Section 4.1(b) thereof.

Section 6.5        <u>Termination upon default by Pfizer</u>.   Quigley may terminate this Agreement on five Business Days notice upon the delivery to Pfizer of written notice of termination if Pfizer fails to pay, on or prior to the date when due, any amounts owed to Quigley under this Agreement, which default remains uncured sixty (60) days after Quigley provides Pfizer with written notice of such default.

Section 6.6        <u>Effect of Termination</u>.        (a)      If this Agreement is terminated prior to the Termination Date (x) by Quigley pursuant to section 6.5 or Article 11 hereof  or (y) by Pfizer other than in accordance with Article 11 hereof, (i) Quigley shall have no further obligation to provide Quigley Services to Pfizer, (ii) all unpaid amounts due and owing from Pfizer to Quigley shall become immediately due and payable by Pfizer as of the date of the

early termination, and (iii) any unpaid portions of the Retention Fee that would be due at any time on or prior to the Termination Date if this Agreement had not been terminated early, shall become immediately due and payable, without presentment, demand, protest or further notice of any kind, all of which are hereby expressly waived; provided, however, that Pfizer may reduce the payments of the amounts set forth in (ii) and (iii) of this paragraph by the Processing Cost. If the Processing Cost exceeds the aggregate of the amounts set forth in (ii) and (iii) of this paragraph, Quigley shall pay to Pfizer the Processing Cost minus the sum of the amounts set forth in (ii) and (iii) of this paragraph. The **"Processing Cost"** shall equal 1.42857 times the Processing Cost Charge multiplied by the product of (x) the Annual Claims Limit and (y) the number of calendar days from, but not including, the early termination date through and including the Termination Date divided by 365. The Parties agree that the exact amount of damages that Quigley would suffer upon an early termination is difficult to predict with certainty and that the amounts specified in this paragraph are a reasonable estimate of those damages.

(b) If this Agreement is terminated prior to the Termination Date (x) by Pfizer in accordance with Article 11 hereunder or (y) by Quigley other than as set forth in section 6.6(a)(x) hereof, (i) Quigley shall have no further obligation to provide Quigley Services to Pfizer, (ii) all unpaid amounts due and owing from Pfizer to Quigley shall be paid by Pfizer in accord with the terms of this Agreement, and (iii) any unpaid portions of the Retention Fee that would be due at any time on or prior to the Termination Date if this Agreement had not been terminated early, shall be paid by Pfizer in accord with the terms of this Agreement; provided, however, that Pfizer may reduce the payments of the amounts set forth in (ii) and (iii) of this paragraph by the amount of any unpaid damages awarded to Pfizer in accord with section 5.1(b) and Article 11 hereunder. If the amount of any unpaid damages awarded to Pfizer exceeds the aggregate of the amounts set forth in (ii) and (iii) of this paragraph, Quigley promptly shall pay to Pfizer such unpaid damages minus the sum of the amounts set forth in (ii) and (iii) of this paragraph.

(c) Notwithstanding any other provision of this Agreement, Pfizer will not be relieved of its obligation to make full and timely payments of the Retention Fee, including any accelerated payments, based on an allegation that Quigley failed to perform the Quigley Services adequately, but the Retention Fee may be reduced by the amount of any unpaid damages awarded to Pfizer in accord with section 5.1(b) and Article 11 herein.

## ARTICLE 7

### ACCESS TO RECORDS

Section 7.1        Quigley shall grant Pfizer reasonable access to Quigley's books and records, but solely insofar as they relate to the Quigley Services provided hereunder. Quigley shall grant reasonable access to any agent, auditor (internal or external), employee or other representative of Pfizer during regular business hours and after at least three Business Days prior written notice, provided, however, that such access:  (a) is not disruptive to Quigley's business or operations; (b) shall be at the sole expense of Pfizer; and (c) shall only be provided to the extent necessary to verify Quigley's proper performance of the Quigley Services.  Pfizer shall be responsible for ensuring that any person or entity granted access under this Section 7.1 executes appropriate confidentiality agreements.

Section 7.2.    Pfizer shall grant Quigley reasonable access to Pfizer's offsite storage solely to permit Quigley to obtain releases or other documents relevant to the performance of the Quigley Services and for purposes of processing the claims for the Asbestos PI Trust.  In the alternative, Pfizer may elect to retrieve any such documents at its own expense upon the request of Quigley.

## ARTICLE 8

## ASSIGNMENT

Section 8.1          The provisions of this Agreement shall be binding upon and inure to the benefit of Quigley, Pfizer and their respective successors, except that neither Quigley nor Pfizer may assign or otherwise transfer any of their rights or obligations under this Agreement without the prior written consent of the other Parties, which consent shall not be unreasonably delayed or withheld.  For the avoidance of doubt, Pfizer may withhold consent to any assignment or transfer if Pfizer has reasonable concerns regarding confidentiality and/or the claims processing experience of the proposed transferee or assignee.

## ARTICLE 9

## REPRESENTATIONS AND WARRANTIES OF QUIGLEY

Section 9.1          Quigley hereby represents and warrants to Pfizer as follows:

(a)  Quigley is a corporation duly organized, validly existing and in good standing under the laws of the State of New York.

(b)   Quigley has the requisite financial resources, assets, personnel, corporate power and authority to execute, deliver and perform satisfactorily this Agreement.   The execution, delivery and performance of this Agreement by Quigley have been duly authorized by all necessary corporate action.   This Agreement has been duly executed and delivered by Quigley and constitutes a legal, valid and binding obligation of Quigley, enforceable in accordance with its terms, except as such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other laws of general application affecting enforcement of creditors' rights or by general principles of equity.

Section 9.2          Pfizer hereby represents and warrants to Quigley as follows:

(a)  Pfizer is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware.

(b)  Pfizer has the requisite financial resources, assets, corporate power and authority to execute, deliver and perform satisfactorily its obligations under this Agreement. Pfizer's execution, delivery and performance of this Agreement have been duly authorized by all necessary corporate action.  This Agreement has been duly executed and delivered by Pfizer and

constitutes a legal, valid and binding obligation of Pfizer, enforceable in accordance with its terms, except as such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other laws of general application affecting enforcement of creditors' rights or by general principles of equity.

# ARTICLE 10

## CONFIDENTIALITY

Section 10.1          The Parties acknowledge that they each may provide the other Parties with confidential information, data and documents in connection with Quigley's performance under this Agreement.  If it has a good faith basis for doing so, either Party may designate any information, data or document as "confidential" in writing.  During the term of this Agreement and at all times thereafter, the Parties shall not directly or indirectly use, divulge, furnish or make available any such information which has been designated confidential (the **"Confidential Information"**) to anyone for any purpose whatsoever, except Quigley or Pfizer Group personnel (including temporary personnel, consultants, attorneys and other professionals) whose duties reasonably justify their review or use of the Confidential Information.  A Party receiving Confidential Information shall inform anyone to whom it provides Confidential Information of the confidential nature of that information and shall require agreement in writing to be bound by terms of this Article 10.  Each of Pfizer and Quigley shall provide such forms of agreement as applicable under this Section 10.1.

Section 10.2          Each Party agrees to consider in good faith any further proposed confidentiality restrictions or agreements that the other Party may reasonably propose.

Section 10.3          As soon as reasonably practicable following the Termination Date, including any extensions thereof, pursuant to Article 6, and after receipt of a written request by a producing Party, the Party that received Confidential Information from that Party shall (a) deliver to the producing Party, or to such other person or entity as may be designated by the producing Party, all copies and embodiments, in whatever form, including all partial or complete copies or duplicates, of all Confidential Information (including but not limited to written records, photographs, manuals, notes and notebooks, magnetic media, disks, diskettes, tapes and all other materials containing any Confidential Information), or (b) destroy or cause to be destroyed all such copies and embodiments, in whatever form, of all Confidential Information, and such destruction shall be certified in writing to the producing Party by an authorized officer of the receiving Party.

Section 10.4          Quigley may determine to maintain the Claims Database and Confidential Information either on its own internal servers or it may decide to use external servers for purposes of hosting the Claims Database and Confidential Information;  provided, however, that Quigley shall at all times employ practices and procedures consistent with industry business practices and procedures to ensure that such Claims Database and Confidential Information are secure and not accessible by any unauthorized person or entity.  In the event that Quigley determines to use external servers for such purpose, Quigley shall notify Pfizer at least 60 calendar days in advance of moving the Claims Database and/or Confidential Information. Pfizer shall have the right to complete information about the security systems that would be

employed and shall have the right to refuse to allow Quigley to use such external resource to host the Claims Database and/or Confidential Information. In the event that Pfizer unreasonably refuses to allow the use of such external resource and such refusal results in increased out of pocket cost to Quigley to maintain internal servers, then Quigley shall be entitled to charge Pfizer the incremental cost (defined as the expense actually incurred by Quigley in excess of the cost to Quigley of maintaining the Claims Database and/or Confidential Information on external servers).

## ARTICLE 11

### DISPUTE RESOLUTION

Section 11.1        Quigley and Pfizer shall attempt in good faith to resolve any Dispute promptly by negotiation between officers of Quigley and Pfizer who shall have authority to settle the Dispute. Either Party may give the other a Dispute Notice. Upon receipt of a Dispute Notice, the representatives of the Parties shall meet as soon as is practicable at a mutually acceptable time and place to negotiate in good faith a settlement of the Dispute, and shall meet thereafter as they reasonably deem necessary.

Section 11.2        If the Dispute has not been resolved within the Negotiation Period, it shall be resolved through binding arbitration. The following provisions shall cover any such arbitration:

(a)  Within ten days after the termination of the Negotiation Period, the Parties to the arbitration shall jointly select a single arbitrator. If for any reason the Parties are unable to select an arbitrator, the arbitrator shall be chosen, or caused to be chosen, by the AAA, or any successor organization, in accordance with its then current rules.

(b)  The arbitrator shall hold his or her first hearing on the Dispute as promptly as possible, but not later than ten days after the arbitrator is selected. All hearings and proceedings of the arbitration shall be conducted in New York, New York, unless the Parties agree otherwise.

(c)  The arbitrator shall have the right to issue any and all orders, final or otherwise, including interim or injunctive relief, and any and all awards that a court of competent jurisdiction sitting at law or in equity could issue, including awards of monetary damages. Under no circumstances, however, shall punitive or exemplary damages, non-compensatory damages or damages for pain and suffering be awarded. In the event interim or injunctive relief is sought before an arbitrator is selected, either Party may seek such relief by applying to the AAA for such relief under its Rules for Emergency Measure of Protection. Each Party shall be entitled to present to the arbitrator written briefs on all issues in the arbitration, and the arbitrator shall be authorized to rule on motions for summary judgment or other motions. The Parties shall also be entitled to cause a transcript of the arbitration proceedings to be made. Unless otherwise agreed by the Parties, the cost of the transcript shall be borne by the Party requesting the transcription, unless the arbitrator requests a transcript, in which case, the arbitrator shall determine who shall bear such cost at the termination of the proceedings. If the arbitrator does

not request transcription, then neither Party shall provide any transcribed portions of the proceedings to the arbitrator unless that Party furnishes the entire transcript to the other Party.

(d)  The decision of the arbitrator shall be final and binding on the Parties and may be confirmed and entered by any court of competent jurisdiction at the request of any Party hereto.  It may not be appealed to any court except upon a claim of fraud or evident bias on the part of the arbitrator.

(e)  Quigley and Pfizer shall each bear one half of the fees and expenses of the arbitrator, and one half of the costs of conducting the arbitration, as well as the party's own costs, expenses, and attorney's fees.  Promptly after commencing proceedings, the arbitrator shall estimate the entire cost of the arbitration and shall require each Party to deposit its share of such cost with the arbitrator, as soon as practicable following release of the estimate.  If the estimate is later determined to be insufficient, the arbitrator may require further deposits.  The arbitrator shall be compensated, and shall cause the costs of the arbitration to be paid, from the amounts so deposited by the Parties.

(f)  The arbitrator shall be compensated for his or her services at a reasonable hourly rate to be agreed by the Parties.  The arbitrator shall be reimbursed for any and all reasonable expenses incurred by him or her in connection with the arbitration between the Parties.  The arbitrator shall be entitled to be indemnified, defended and held harmless by each of the Parties for any and all loss, cost, expense, claim, action, demand or suit arising from or relating to the arbitration.

(g)  Issues of arbitration procedure shall be resolved in accord with AAA rules.  New York substantive law, without regard to conflicts of law, shall govern all Disputes.  Any arbitration hereunder is intended to be administered by the arbitrator selected as provided herein, except to the extent that resort may be made to the AAA, as specified herein.  However, the Parties incorporate the rules of the AAA for Large, Complex Disputes and the rules for Emergency Measures of Protection as they may exist on the date an arbitrator is selected, to the extent not inconsistent herewith.  If any such inconsistency exists, this Agreement shall govern, unless otherwise agreed by the Parties in dispute.  The Parties recognize that Disputes, which may arise hereunder, may be complex and may require discovery of documents and depositions, which may be ordered by the arbitrator as deemed reasonable and necessary.

(h)  This Agreement is intended to provide a mechanism whereby Disputes may be resolved in a confidential manner, without publicity and the attendant distractions.  Accordingly, (i) no person shall be present at any hearing or other proceeding of the arbitrator except the Parties, the arbitrator, representatives of any of the Asbestos PI Trust, the TAC and the Future Claims Representative, such witnesses and producers of documents as the arbitrator shall allow, counsel to any of the foregoing, court reporters employed to produce a transcript of such hearing or other proceedings and such other persons allowed by the arbitrator consistent with the purpose of confidentiality (**"Permitted Attendees"**); (ii) each Permitted Attendee shall keep both the facts of the Dispute and all proceedings related thereto confidential, except to the extent necessary to preserve and maintain its position; and (iii) all testimony before the arbitrator and any whole or partial transcript of any hearing or other proceeding related to the arbitration shall be kept confidential and shall in no event be released, shown or distributed to

any person other than the Potential Attendees, their counsel and the arbitrator.  If any Permitted Attendee shall breach this subsection, the arbitrator is authorized to award compensation for any resulting harm suffered by any Party or Parties and/or any other Permitted Attendee(s) as appropriate.

## ARTICLE 12

### GENERAL PROVISIONS

Section 12.1    Force Majeure.  No party shall be liable to any other Party for its failure to perform hereunder caused by contingencies beyond its reasonable control, including, but not limited to, acts of God, fire, flood, wars, acts of terrorism, sabotage, strike, government actions and any other similar occurrence beyond the non-performing Party's reasonable control.  Any Party asserting its inability to perform any obligation hereunder for any such contingency shall promptly notify the other Party of the existence of any such contingency, and shall use its reasonably diligent efforts to re-commence its performance of such obligation as soon as commercially practicable.

Section 12.2    Amendments.  Quigley and Pfizer may only modify or amend this Agreement in writing subject to the written consent of the Asbestos PI Trust. Notwithstanding anything contained in this Agreement to the contrary, this Agreement shall not be modified or amended in any way that could jeopardize, impair or modify the applicability of section 524(g) of the Bankruptcy Code, the efficacy or enforceability of the Asbestos PI Channeling Injunction, the Settling Asbestos Insurance Entity Injunction and the Non-Settling Asbestos Insurance Entity Injunction set out in the Plan and Confirmation Order, the Asbestos PI Trust's "qualified settlement fund" status under section 468B of the Internal Revenue Code or the rights and protections provided to Quigley or the Pfizer Protected Parties under the Plan Documents.

Section 12.3    Third Party Beneficiaries.  Except for members of the Pfizer Group, the Asbestos PI Trust, the TAC and the Future Claims Representative, this Agreement grants no person other than the Parties any rights whatsoever with respect to the enforcement of any of the rights or obligations hereunder.

Section 12.4    Notices.  All notices and other communications hereunder shall be deemed to have been duly given and made if in writing and if served by personal delivery upon the Party for whom it is intended, if delivered by registered or certified mail, return receipt requested, or by a national courier service, or if sent by facsimile, provided that the facsimile is promptly confirmed by telephone confirmation thereof, to the Party at the address set forth below, or such other address as may be designated in writing hereafter, in the same manner, by such Party:

To Pfizer Inc.:

Pfizer Inc.
250 E. 42nd Street
New York, NY 10017
Attention:  Michele S. Suggs, Esq.

With a copy to:
Greenberg Traurig LLP
MetLife Building
200 Park Avenue
New York, NY 10166
Attention:  Bruce Zirinsky, Esq.
                    John H. Bae, Esq.
                    Gary D. Ticoll, Esq.

To Quigley:

Quigley Company, Inc.
52 Vanderbilt Avenue
13th Floor
New York, New York 10017
Attention:  Kim Jenkins

With a copy to:

(a) Schulte Roth & Zabel LLP
      919 Third Avenue
      New York, New York 10022
      Attention:  Michael L. Cook, Esq.
                        Lawrence V. Gelber, Esq.

(b) **Error! Bookmark not defined.** LLP
      One Penn Plaza, Suite 3335
      New York, New York 10119
      Attention:  Scott E. Ratner, Esq.
                        Richard K. Milin, Esq.

(c) The Quigley Asbestos Personal Injury Trust

[Address to be provided to the Parties in writing]

Section 12.5          Governing Law.  This Agreement shall be governed by the substantive law of the State of New York, its conflict of laws rules notwithstanding.

Section 12.6          Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same agreement.

Section 12.7 <u>Headings</u>. The headings contained in this Agreement are for reference purposes only and shall not in any way affect the meaning or interpretation of this Agreement.

Section 12.8 <u>Entire Agreement</u>. This Agreement contains the entire understanding and agreement between the Parties hereto as to the services being performed hereunder.

Section 12.9 <u>Waiver</u>. Any provision of this Agreement may be waived if, and only if, such waiver is in writing and signed by the Party against whom the waiver is to be effective. No failure or delay by any Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

Section 12.10 <u>Severability</u>. The provisions of this Agreement shall be deemed severable and the invalidity or unenforceability of any provision shall not affect the validity or enforceability of the other provisions hereof. If any term or other provision of this Agreement, or the application thereof to any person or entity or any circumstance, is invalid, illegal or unenforceable: (a) a suitable and equitable provision shall be substituted therefor in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision; and (b) the remainder of this Agreement and the application of such provision to other persons, entities or circumstances shall not be affected by such invalidity, illegality or unenforceability, nor shall such invalidity, illegality or unenforceability affect the validity or enforceability of such provision, or the application thereof, in any other jurisdiction.

Section 12.11 <u>*Contra Proferentum* Not Applicable</u>. This Agreement is the product of extensive discussions and negotiations between Quigley and Pfizer. Each of the foregoing was represented by counsel who either participated in the formulation and documentation of, or was afforded the opportunity to review and provide comments on, this Agreement. Accordingly, the rule of contract construction known as *"contra proferentum"* shall not apply to the interpretation of this Agreement.

Section 12.12 <u>Independent Contractor</u>. The relationship between Quigley and Pfizer under this Agreement shall be that of independent contractor. Nothing herein shall be construed as constituting a partnership, joint venture or agency between the Parties. Quigley shall have sole discretion to determine the manner and means by which its employees, contractors and temporary hourly staff perform their duties, their hours of work, and when and where such services are to be performed. Quigley shall be solely responsible for all wages, salaries and benefits of all Quigley employees.

Section 12.13 <u>No Duty of Verification</u>. Quigley shall have no responsibility for verifying the correctness of any information given to it by or on behalf of Pfizer or other members of the Pfizer Group for the purpose of providing the Quigley Services.

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the day and year first above written.

QUIGLEY COMPANY, INC.


By:‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Name:
Title:




PFIZER INC.


By:‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Name:
Title:

SCHEDULE A

QUIGLEY SERVICES

Consistent with the terms of the foregoing Agreement, in a reasonable time and in accord with the standards prevailing in the industry, Quigley agrees to provide the following services to Pfizer and the Pfizer Group:

A.  Claims Database Services.

A.1.  Claims Database Services shall mean the following:  Subject to Section 5.1(a) of the Agreement, Quigley shall maintain a database of Tort Claims (defined for these purposes as Claims related to asbestos, silica, talc and/or mixed dust and including without limitation Pfizer Settled Claims, Pfizer Non-Channeled Claims, and Pfizer Future Settled Claims) asserted against Pfizer and/or other members of the Pfizer Group, including without limitation Tort Claims relating to American Optical Corporation, Warner Lambert and Pharmacia (**"Claims Database"**).

(a)  For purposes of this Schedule A, the duty to "maintain" the Claims Database shall mean that Quigley shall update the Claims Database and enter information into the Claims Database to the extent that Quigley is provided with information by Pfizer, any member of the Pfizer Group, or by the CCR and that Quigley shall expand the Claims Database to include **"New Claims"** asserted against any of the Pfizer Group to the extent that Pfizer provides such information to Quigley.

(b)  For purposes of this Agreement and this Schedule A, a New Claim shall mean a Claim asserted against any member of the Pfizer Group by (i) an individual claimant who does not have an "Injured Party ID" (as defined in the Data Dictionary dated as of May 19, 2008 and attached hereto as Exhibit []) in the Claims Database as of the Effective Date, or (ii) an individual claimant who has an Injured Party ID in the Claims Database as of the Effective Date but who commences an additional lawsuit against a member of the Pfizer Group after the Effective Date.

(c)  The Claims Database shall include the fields maintained in the bundled and unbundled databases that the Quigley Claims Handling Unit has maintained under the Shared Services Agreement, dated August 31, 2004, and such other fields that Pfizer and Quigley shall agree to maintain.  Subject to sub-paragraph (a) above, the information recorded in the Claims for each claim shall include without limitation: the pleadings filed, plaintiff's counsel, defense counsel, injury alleged, disposition, and such other information as the Parties reasonably agree.  Quigley shall maintain imaged copies of all documents provided to Quigley regarding all claims tracked in the Claims Database and such images shall be linked to the Claims Database so that Quigley is able to provide to

Pfizer upon written request copies of any documents related to any claim that is recorded in the Claims Database.

A.2.  Quigley shall manage the Claims Database so that it can identify claims filings and resolutions that match other claims asserted against member(s) of the Pfizer Group by the same Injured Party.  In conducting this matching analysis, Quigley shall apply generally accepted matching criteria and shall include information available to Quigley concerning claims filed and/or settled and/or dismissed at any time including during the time when Pfizer was a member of the CCR.

Quigley shall not change the format or content of the Claims Database without approval from Pfizer, which approval shall not be unreasonably withheld. Quigley shall notify Pfizer in writing of any proposed change in the format or content of the Claims Database.  Pfizer shall notify Quigley in writing of its approval or rejection of the proposed change within 5 business days of the date of Quigley's notification to Pfizer.

A.3.  Quigley shall incorporate into the Claims Database any updated information provided to Pfizer by the CCR and that is provided to Quigley.

A.4.  Quigley shall reconcile the Claims Database with defense counsel's and plaintiffs' counsel's databases; provided, that each such counsel provide to Quigley, as Quigley reasonably requests, adequate identifying information including social security numbers so that Quigley can perform this function.

A.5.  Quigley shall provide reports to Pfizer of all claims activity as requested by Pfizer including without limitation detailed reports on individual claims and detailed reports on the claims activity with respect to particular law firms and reports on trends in claims activity and claims that remain outstanding.  Pfizer shall specify a standard reporting package that Quigley will use to provide reports.  The content and format of such reports shall be agreed between Pfizer and Quigley.  Quigley shall provide such reports at least monthly.  Quigley shall provide such reports to persons designated by Pfizer.  Quigley shall provide notification of claims filings to insurers as directed by Pfizer.  Quigley shall also provide ad hoc reports upon Pfizer's request.  Pfizer shall provide Quigley at least 3 business days notice of any ad hoc query or report.  Quigley shall notify Pfizer immediately upon receipt of such request if the request cannot reasonably be completed under the time schedule or if compliance with the request would necessitate overtime charges.  Pfizer shall determine whether Quigley should proceed and if so, Pfizer agrees to pay any overtime charges necessitated by the request.

A.6.  Quigley shall provide Pfizer with information relating to the Quigley Services as reasonably requested by Pfizer in writing in connection with alternative dispute resolution proceedings or litigation in the tort system relating to claims comprising the Claims Database.

A.7.  Upon written request, Quigley shall provide to Pfizer or any person or entity designated by Pfizer either direct access to data from the Claims Database or an electronic copy of the data from the Claims Database with all fields requested by Pfizer.  Quigley shall not be required to compile and provide an electronic copy of such data more than once per calendar month.

B.  Settlement Processing Services.

Settlement Processing Services shall mean all services outlined in this Section B.

B.1.  Quigley shall provide all services necessary to receive, review, process and assess whether to pay or deny Pfizer Settled Claims that are submitted to Quigley for Settlement Processing Services.  These services shall ordinarily include: (i) reviewing and processing incoming proof of claim forms and medical, exposure and other evidence required by the Pfizer Claimant Settlement Agreements to determine eligibility under the Pfizer Claimant Settlement Agreements for settlement and payment of an asbestos personal injury claim; (ii) recording the receipt of materials related to such Pfizer Claimant Settlement Agreements and documenting all processing activity including the results of Quigley's evaluation, actions taken by Quigley with respect to the claims such as notifications to counsel, claimant information that may be relevant to preparing claims and bills for insurance recovery and data that may be relevant for the purpose of recording claims trends and claims status; and (iii) imaging and maintaining images of claims materials submitted to Quigley.

B.2.  Quigley shall provide all services necessary (and as set forth above with respect to Pfizer Settled Claims) to receive, review, process and assess whether to pay or deny  any Pfizer Future Settled Claims that are presented to Quigley for Settlement Processing Services.

B.3.  Quigley shall coordinate with Pfizer to obtain approval for payment of settlement amounts to plaintiffs' counsel for claims found to be eligible for settlement under the Pfizer Claimant Settlement Agreements or with respect to any Pfizer Future Settled Claim.   Pfizer shall provide to Quigley written directions regarding obtaining such approvals.

B.4.  Any database tracking and/or managing any Pfizer Claimant Settlement Agreements or any other settlements regarding claims within the scope of the Claims Database shall be deemed for purposes of the obligations under this Claims Services Agreement to be part of the Claims Database.

B.5.  For purposes of this Agreement **"New Settlement"** shall mean any claim that is subject to resolution under a Pfizer Claimant Settlement Agreement but that has not been submitted for settlement before the Effective Date and any Pfizer Future Settled Claim.

C.  General Services Applicable to Both Claims Database Services and Settlement Processing Services.

C.1.  Audit.

Quigley shall host audits by Pfizer's insurers as reasonably directed by Pfizer and as provided in Section 7.1 of this Claims Services Agreement.  Pfizer shall have the sole authority to direct the terms and conditions of such reviews and audits by Pfizer's insurers.  Quigley shall agree to provide such documents and access as Pfizer directs.  Pfizer shall notify Quigley at least five business days in advance of any such audit and Pfizer shall advise Quigley of all requirements of the audit process.

Quigley shall work with Pfizer to develop and implement, as necessary, a claims audit program.

C.2.  Insurance Billing.

Quigley shall prepare files and claims information as reasonably directed by Pfizer for purposes of insurance billing.  In the event that Quigley determines to offer insurance billing services, Pfizer may request that Quigley perform such services.  Pfizer and Quigley shall agree on a separate fee schedule for such services.

Pfizer may request that Quigley oversee and track insurance billings and accounts receivables.  Upon such request, Quigley shall provide such services and if Quigley receives payments from insurers payable to Pfizer or any member of the Pfizer Group, Quigley shall deliver such payments to Pfizer.  If Pfizer receives payments from insurers payable to Quigley, Pfizer shall deliver such payments to Quigley.

C.3.  Maintenance of Files

Quigley shall manage paper files as requested by Pfizer and shall provide for the delivery of such files to offsite storage for Pfizer at Pfizer's expense.

C.4  Claims Processing Volume

If Quigley determines in good faith that it would not have the capacity to perform the Quigley Services with respect to certain Excess Claims in a reasonable time and in accord with the standards prevailing in the industry, Quigley shall have the right to delay the processing of such Excess Claims by no more than the lesser of (i) the amount of additional time Quigley's capacity permits the performance of the Quigley Services with respect to such Excess Claims in accord with the standards prevailing in the industry and (ii) six months.  Quigley shall notify Pfizer promptly of any such delay and Pfizer shall have the right, in its sole discretion to (x) withdraw such Excess Claims from Quigley or (y) pay Quigley the excess cost of performing the Quigley Services with respect to such Excess

Claims in a reasonable time and in accord with the standards prevailing in the industry, in which case Quigley shall perform the Quigley Services with respect to such Excess Claims in a reasonable time and in accord with the standards prevailing in the industry.

If Quigley determines in good faith that it is unable to process certain Excess Claims profitably for the Excess Claims Charge specified in this Agreement, it may decline to process those Excess Claims for the Excess Claims Charge, but Quigley agrees to negotiate in good faith with Pfizer concerning a reasonable processing fee for those Excess Claims.

**EXHIBIT N**

**TO**

**QUIGLEY COMPANY, INC. FOURTH AMENDED AND RESTATED PLAN OF
REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**PFIZER CLAIMS SERVICES AGREEMENT**

# CLAIMS SERVICES AGREEMENT

This CLAIMS SERVICES AGREEMENT (this "~~Claims Services~~ Agreement"), effective as of _____, ~~2008~~2009, is between Quigley Company, Inc. ("**Quigley**"), a New York corporation and the reorganized debtor in chapter 11 case number 04-15739 (SMB) (the "**Chapter 11 Case**") pending in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") and Pfizer Inc. ("**Pfizer**"), a Delaware corporation.

## RECITALS

**WHEREAS** prior to the date hereof, Quigley provided certain claims services to Pfizer, Warner-Lambert Company LLC ("**Warner-Lambert**") and Pharmacia Corporation ("**Pharmacia**", and together with Pfizer ~~and~~, Warner-Lambert and Pfizer's other affiliates not including Quigley, the "**Pfizer ~~Parties~~Group**") under the Shared Services Agreement, dated as of August 31, 2004; and

**WHEREAS** the Quigley Company, Inc. Fourth Amended and Restated Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code, as amended, modified or supplemented from time to time (the "**Plan**") provides that Quigley and Pfizer will enter into this ~~Claims Services~~ Agreement, pursuant to which Quigley will service and process certain (i) asbestos-related claims brought against one or more members of the Pfizer Group that are not channeled to the asbestos personal injury trust created under the Plan (the "**Asbestos PI Trust**"); (ii) claims relating to the submission of medical and exposure evidence under the terms of the settlement agreements entered into between Pfizer and certain holders of asbestos personal injury claims or their counsel, pursuant to which the holders of such claims agreed to resolve all ~~current and future~~ asbestos personal injury claims against Pfizer and Pfizer's affiliates (other than Quigley) (the "**Pfizer Claimant Settlement Agreements**"); and (iii) such other claims as have been or may be asserted against Pfizer as Quigley and Pfizer determine are appropriate for servicing and processing by Quigley, subject to the consent of the Asbestos PI Trust as specified below; and

**WHEREAS** Pfizer desires to use Quigley's services to process asbestos personal injury claims against Pfizer and other members of the Pfizer Group on the terms and subject to the conditions set forth herein; and

**WHEREAS** Pfizer has agreed to retain Quigley for its services for a minimum of $5 million per year for five years as specified in this Agreement, commencing on the Effective Date hereof (as defined below).

**NOW, THEREFORE**, in consideration of the mutual covenants and understandings contained herein of Quigley and Pfizer (each a "**Party**" and together the "**Parties**"), and subject to and on the terms and conditions herein set forth, the ~~parties~~Parties hereby agree as follows:

# ARTICLE 1

## DEFINITIONS

Section 1.1          <u>Definitions</u>.  The following terms used herein shall have the following meanings:

"**AAA**" means the American Arbitration Association.

"**Aggregate Cost**" means Quigley's aggregate fixed and variable costs reasonably attributable to processing claims subject to the Annual Claims Limit during an Agreement Year.

"**Anniversary Date**" means each anniversary of the Effective Date of this Agreement.

"**Annual Claims Limit**" means, in the aggregate, 35,000 New Claims and New Settlements.

"**Agreement**" shall have the meaning set forth in the recitals herein.

"**Agreement Year**" means any calendar year measured from the Effective Date or from any anniversary of the Effective Date.

"**Asbestos PI Channeling Injunction**" means the injunction described in Section 11.6 of the Plan.

"**Asbestos PI Trust**" shall have the meaning set forth in the recitals herein.

"**Bankruptcy Code**" shall mean title 11 of the United States Code.

"**Bankruptcy Court**" shall have the meaning set forth in the recitals herein.

"**Business Day**" means any day except: (i) Saturday; (ii) Sunday; (iii) any other day on which banking institutions in New York, New York are required ~~or authorized~~ to close by law or executive order; and (iv) the Friday after Thanksgiving.

"**CCR**" shall mean the Center for Claims Resolution.

"**Chapter 11 Case**" shall have the meaning set forth in the recitals herein.

"**Claim**" means ~~a~~ (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured or unsecured; or (b) a right to an equitable remedy for breach of performance if such right gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"Claims **Database" shall have the meaning set forth in Schedule A to this Agreement.**

"**Claims Database** Services ~~Agreement~~" shall have the meaning set forth in ~~the recitals herein.~~ Schedule A to this Agreement.

"**Confidential Information**" shall have the meaning set forth in Section 10.1 of this ~~Claims Services~~ Agreement.

"**Confidentiality Agreement" shall have the meaning set forth in Section 10.1 of this** Agreement.

"**Confidentiality Injunction**" means the injunction contained in Section 11.11 of the Plan.

"**Confirmation Order**" means, as the context requires, the order or orders of the Bankruptcy Court and the District Court confirming the Plan under section 1129 of the Bankruptcy Code, including any order or orders of the District Court affirming an order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code, which shall contain, among other things, the Asbestos PI Channeling Injunction, the Settling Asbestos Insurance Entity Injunction, the Non-Settling Asbestos Insurance Entity Injunction, the Confidentiality Injunction and the Dividend Injunction.

"**Data" shall have the meaning set forth in Section 3.3 of this Agreement.**

"**Dispute**" means any controversy, dispute or claim arising out of or relating to this ~~Claims Services~~ Agreement or the breach, enforceability or validity thereof~~; provided, however, that "Dispute" shall not include a controversy, dispute or claim arising out of or relating to the termination of this Claims Services Agreement by Pfizer or Quigley pursuant to Article 6 hereof~~.

"**Dispute Notice**" means a written notice, given by either Quigley or Pfizer to the other, setting forth with reasonable specificity the nature of the Dispute.

"**District Court**" means the United States District Court for the Southern District of New York.

"**Dividend Injunction**" means the injunction contained in Section 11.12 of the Plan.

"**Effective Date**" means the first Business Day on which all conditions precedent set forth in Section 12.2 of the Plan have been satisfied or waived as provided in Section 12.3 of the Plan.

"**Excess Claims Charge" means $20.**

"**Excess Claims" shall have the meaning set forth in Section 4.1 of this Agreement.**

**"Expenses"** shall have the meaning set forth in Section 4.2 of this Agreement.

**"Final Judgment"** or **"Final Order"** means a judgment or an order, as the case may be, as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending; provided, however, if an appeal, writ of certiorari, reargument or rehearing thereof has been filed or sought, (i)(a) such judgment or order shall have been affirmed by the highest court to which such judgment or order was appealed, or (b) certiorari shall have been denied or reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, to petition for certiorari or to move for reargument or rehearing shall have expired, or (ii) such appeal, writ of certiorari or request for reargument or rehearing shall have been dismissed with prejudice by the filing or seeking party Party.

**"Future Claims Representative"** means Albert Togut, Esq., or his designated successor, in his capacity as legal representative for the purpose of protecting the rights of persons that might subsequently assert demands against, and payable by, the Asbestos PI Trust.

**"Incremental Cost"** shall have the meaning set forth in Section 5.1(b) of this Agreement.

**"Intellectual Property Right"** and **"Intellectual Property Rights"** shall have the meanings set forth in Section 3.6 of this Agreement.

**"Negotiation Period"** means thirty (30) days after receipt of a Dispute Notice.

**"New Claim"** shall have the meaning set forth in Schedule A hereto.

**"New Settlement"** shall have the meaning set forth in Schedule A hereto.

**"Non-Settling Asbestos Insurance Entity Injunction"** means the injunction contained in Section 11.8 of the Plan.

**"Permitted Attendees"** shall have the meaning set forth in Section 11.2 of this Agreement.

**"Pharmacia"** shall have the meaning set forth in the recitals herein.

**"Pfizer"** shall have the meaning set forth in the recitals herein.

**"Pfizer Claimant Settlement Agreement"** shall have the meaning set forth in the recitals herein.

**"Pfizer Future Settled Claim"** means any Claim subject to this Agreement and resolved by Pfizer other than under the Pfizer Claimant Settlement Agreements.

**"Pfizer Group"** shall have the meaning set forth in the recitals herein.

**"Pfizer Non-Channeled Claims"** means asbestos-related claims brought against any member(s) of the Pfizer Group that are not channeled to the Asbestos PI Trust under the terms of the Plan.

~~**"Pfizer Parties"** shall have the meaning set forth in the recitals herein.~~

**"Pfizer Settled Claims"** means claims connected with the submission of medical and exposure evidence under the terms of the Pfizer Claimant Settlement Agreements.

**"Plan"** shall have the meaning set forth in the recitals herein.

**"Processing Cost"** shall have the meaning set forth in Section 6.6 of this Agreement.

**"Processing Cost Charge"** means $20.

**"Processing Year"** means the twelve month period commencing on the Effective Date and each subsequent twelve month period commencing on each anniversary of the Effective Date, so long as this Agreement shall continue in force.

**"Quigley"** shall have the meaning set forth in the recitals herein.

**"Quigley Services"** shall have the meaning set forth in Section 2.1 of this ~~Claims Services~~ Agreement.

**"Reorganized Quigley"** means Quigley, or any successor thereto by merger, consolidation or otherwise, on and after the Effective Date.

**"Retention Fee"** shall have the meaning set forth in Section 4.1 of this Agreement.

**"Services"** means the Quigley Services, or any portion thereof, as applicable.

**"Services Representative"** means a representative designated to be the primary liaison between the ~~parties~~Parties for the provision of the Quigley Services under this ~~Claims~~Agreement.

**"Settlement Processing** Services**"** shall have the meaning set forth in Schedule A to this Agreement.

**"Settling Asbestos Insurance Entity Injunction"** means the injunction contained in Section 11.7 of the Plan.

**"Supplemental Fee"** shall have the meaning set forth in Section 4.1 of this Agreement.

**"TAC"** means the Trust Advisory Committee.

"**Termination Date**" shall have the meaning set forth in Section 6.2 of this ~~Claims Services~~Agreement.

"**Tort Claim**" shall have the meaning set forth in Schedule A to this Agreement.

"**Warner-Lambert**" shall have the meaning set forth in the recitals herein.

# ARTICLE 1

# REFERENCES

Section ~~1.2~~1.1  __References__.  Unless indicated otherwise, all references in this ~~Claims Services~~ Agreement to a particular Article or Section number are references to Articles or Sections of this ~~Claims Services~~ Agreement.

# ARTICLE 2

# QUIGLEY SERVICES

Section 2.1  The services to be provided by Quigley to Pfizer under this ~~Claims Services~~ Agreement shall ~~generally~~ be referred to herein as the "**Quigley Services,**" namely~~,~~ servicing and processing Pfizer Non-Channeled Claims, Pfizer Settled Claims ~~and such other claims as are designed in the future by Pfizer and Quigley.~~, and Pfizer Future Settled Claims.

Section 2.2  The Quigley Services ~~are~~shall include, to the extent reasonably necessary or incidental to servicing and processing Pfizer Non-Channeled Claims, Pfizer Settled Claims, and Pfizer Future Settled Claims, the services set forth in Schedule A hereto, ~~as such Schedule A~~which may be ~~from time to time~~ supplemented or modified from time to time by mutual written consent of the Parties, subject to the written consent of the Asbestos PI Trust, in accordance with the provisions of this ~~Claims Services~~ Agreement.

~~Section 2.2  The parties shall cooperate and endeavor in good faith to modify and supplement Schedule A of this Claims Services Agreement to accurately identify the Quigley Services and to specify the manner and terms under which the Quigley Services shall be performed.~~

Section 2.3  ~~In furtherance of the principles set forth in this Article 2, each party~~To the extent reasonably necessary to implement the terms of this Agreement, each of the Parties shall cooperate with and assist the other ~~party~~Party in obtaining any consent, authorization, order or approval of, or any exemption by, any third party required to be obtained or made for the performance by the ~~parties~~Parties of their obligations under this ~~Claims Services Agreement at no cost to either party.  If the parties~~Agreement.  Reasonable costs or expenses that Quigley incurs in doing so shall be reimbursed by Pfizer.  If the Parties are unable to obtain any required consents, the ~~parties~~Parties shall negotiate in good faith reasonable modifications of the Quigley Services such that such consents are not required.

Section 2.4 ~~Each party~~Quigley and Pfizer shall each designate a Services Representative. ~~The~~Such Services Representatives shall be designated within 30 days of the Effective Date. The two Services Representatives shall meet regularly in person, telephonically, or as they otherwise agree, at least monthly for the first year following the date hereof, to discuss any issues arising under this ~~Claims Services~~ Agreement and the need for any modifications or additions hereto.

# ARTICLE 3

## EMPLOYEES, SYSTEMS AND MATERIALS

Section 3.1 Quigley shall at all times maintain such staff as it reasonably determines to be sufficient to provide the Quigley Services.

Section 3.2 Pfizer agrees that (i) Quigley will own all right, title and interest including without limitation all Intellectual Property Rights (as defined in clause 3.7 below), in and to all systems, data, programs, business methods, operating instructions, documentation, pre-existing Intellectual Property Rights and other materials developed or owned by Quigley, including the source code and all modifications to the source code that constitute work product or otherwise result from, or source code modifications which are created in connection with, Quigley's performance of the Quigley Services under this Agreement; and (ii) Quigley will own all right, title and interest in and to all work product that results from, or is created in connection with, the performance of the Quigley Services under this Agreement, including without limitation all reports and analyses created or derived therefrom, and all Intellectual Property Rights in or related thereto, and further including any of the foregoing created, in whole or in part, jointly with Quigley and its employees, subcontractors and/or agents.

Section 3.3 Notwithstanding anything to the contrary in this Agreement, (A) information concerning individual personal injury claims provided to Quigley by Pfizer or any other member(s) of the Pfizer Group and any documentation or compilation (including without limitation, electronic and manual compilations) by which such information is and has been maintained and organized (**"Data"**) shall not be deemed to be Quigley property, (B) any and all Data, all data output reports and documents relating to the Data and/or services provided by Quigley pursuant to this Agreement shall be the exclusive property of Pfizer and (C) any new system, data, programs, business methods, operating instructions, documentation and other materials prepared by Quigley at the express direction of Pfizer and specifically agreed to in writing by the Parties and paid for by Pfizer after the Effective Date under the terms of this Agreement shall be the exclusive property of Pfizer.

Section 3.4 All Data, documentation and other materials delivered by or on behalf of Pfizer and/or any other member(s) of the Pfizer Group to Quigley hereunder shall be and remain the exclusive property of the respective member(s) of the Pfizer Group; provided, however, that to the extent Quigley needs to use, execute, reproduce, display, perform, modify and distribute, and create derivative works of, any Data in order to provide the Quigley Services hereunder, Pfizer hereby grants Quigley, and its subcontractors and agents, a limited, personal, nonexclusive, royalty-free license to use such Data for the purpose of providing the Quigley Services hereunder.

Section 3.5 The applicable member of the Pfizer Group will be responsible for its Data and media while such Data and media are in transit to Quigley and Quigley shall be responsible for the Data and media while such Data and media are in transit from Quigley.

Section 3.6 For purposes hereof, **"Intellectual Property Right"** and **"Intellectual Property Rights"** mean (i) all rights under all copyright laws of the United States of America and all other jurisdictions and countries for the full terms thereof (as well as all rights accruing by virtue of copyright treaties and conventions), including, but not limited to, all renewals, extensions, reversions or restorations of copyrights now or hereafter provided by law and all rights to make applications for and obtain copyright registrations therefor and recordations thereof and all works of originality; (ii) all rights to and under new and useful inventions, discoveries, designs, technology and art and all other patentable subject matter, and all applications for and all letters patent that issue therefrom in the United States and all other jurisdictions and countries of the world and all reissues, extensions, renewals, divisional applications, registrations and continuations (including continuations-in-part) thereof together with all know-how owned, created and/or developed by a party in whole or in part; (iii) all technologies and know-how not otherwise included in the above; (iv) all trade secrets; (v) all signs, business designations, trademarks, service marks and Internet domain names, goodwill, fame, reputation and the like throughout the world; and (vi) all other intellectual and industrial property and proprietary rights throughout the universe not otherwise included in the foregoing, including, without limitation, all techniques, methodologies and concepts and trade dress, improvements, enhancements, developments and the like.

## ARTICLE 4

## ~~FEES~~COMPENSATION

Section 4.1 ~~Quigley shall provide the services as set forth herein for a fee of $5 million per year, such fee to be paid within twenty days of~~(a) Retention fee. In consideration for Quigley's agreement to perform the Quigley Services set forth on Schedule A hereto, Pfizer shall pay to Quigley a retention fee in the aggregate amount of $25 million (the **"Retention Fee"**). The Retention Fee shall be paid in advance in five equal annual installments of $5 million. The first installment shall be paid so as to be received by Quigley within twenty days after the ~~effective date~~Effective Date of this ~~Claims Services Agreement and on each anniversary thereof~~Agreement and each subsequent installment shall be paid so as to be received by Quigley on or before the Anniversary Date of this Agreement for as long as this ~~Claims Services~~ Agreement shall continue in force. The Retention Fee may be increased with the consent of the Parties if the Parties agree to modify Schedule A hereto.

(b) Supplemental fee. (i) In addition to the Retention Fee, if Pfizer submits to Quigley in any given Processing Year an aggregate of New Claims and New Settlements in excess of the Annual Claims Limit (the **"Excess Claims"**), Pfizer shall pay Quigley an amount equal to the Excess Claims multiplied by the Excess Claims Charge (the **"Supplemental Fee"**). The Supplemental Fee shall be calculated and invoiced annually as of this Agreement's Anniversary Date unless this Agreement terminates before its Termination Date. If this Agreement terminates before the Termination Date, the Supplemental Fee shall be

calculated for the portion of the preceding year, measured from the last Anniversary Date (or the Effective Date, if termination occurs prior to the first Anniversary Date), during which the Agreement remained in effect, and the Excess Claims for this purpose shall be the total of New Claims and New Settlements submitted by Pfizer to Quigley since the last Anniversary Date (or the Effective Date, if termination occurs prior to the first Anniversary Date) in excess of the product of (x) the Annual Claims Limit and (y) the number of calendar days having elapsed since, but not including, the last Anniversary Date (or the Effective Date, if termination occurs prior to the first Anniversary Date), through and including the date of such termination, divided by 365. Pfizer shall pay the Supplemental Fee within thirty days after Pfizer's receipt of Quigley's invoice for it. (ii) The parties have established the Annual Claims Limit in reliance on their understanding that the vast majority of claims Quigley processes under this Agreement will be New Claims that require only the Claims Database Services set forth in Schedule A, Part A and that the cost Quigley incurs for processing claims under this Agreement will not, on average, exceed the Excess Claims Charge. Accordingly, absent Quigley's consent, the Aggregate Cost Quigley incurs for processing claims subject to the Annual Claims Limit shall not exceed $1 million in any Agreement Year. If Quigley determines in good faith that its Aggregate Cost is likely to exceed $1 million during an Agreement Year, Quigley may unilaterally reduce the Annual Claims Limit for such Agreement Year, provided that (a) upon Pfizer's request, Quigley shall promptly provide to Pfizer information sufficient to explain and provide a reasonable justification for the reduction, and (b) the Annual Claims Limit shall be readjusted at the end of such Agreement Year (or sooner if practicable) so that Quigley's Aggregate Cost does not exceed $1 million to process up to a maximum of 35,000 claims in such Agreement Year, with a corresponding adjustment, as appropriate, in the sums paid or owed to Quigley.

Section 4.2       Reimbursement of expenses. Pfizer agrees to reimburse Quigley for reasonable out-of-pocket costs Quigley incurs in providing the Quigley Services under this Agreement ("**Expenses**"). For the avoidance of doubt, Expenses do not include (i) Quigley's overhead, including without limitation insurance and rent and related expenses, or (ii) Quigley's general business expenses, including without limitation office supplies, computing services, professional fees, and salaries and other payroll expenses. Expenses shall include charges imposed by the CCR with respect to claims filed against any of the Pfizer Group and shall include the actual out of pocket travel expenses incurred by Quigley if Pfizer specifically requests that a Quigley employee travel on behalf of Pfizer. In the event that Pfizer determines that the Claims Database should be maintained on a platform or in a format different from that existing as of the Effective Date, then Pfizer shall be responsible to pay the actual cost of any programming required to transfer such format or platform. Quigley shall send invoices to Pfizer monthly, or on another reasonable schedule, identifying the Expenses Quigley has incurred in connection with performing the Quigley Services. Quigley shall retain copies of supporting bills and receipts, as appropriate, for at least eighteen months and shall keep the bills and receipts available during that time for Pfizer's inspection. Pfizer shall reimburse Quigley for Quigley's reasonable incurred Expenses within thirty days of receiving an invoice for them.

Section 4.3       Interest. In the event that Pfizer fails to pay, when due, any portion of the Retention Fee, any Supplemental Fee, any Expense, or any other amount due under this Agreement, interest shall accrue on such unpaid amount until payment is made at the

prime rate of interest published by the Wall Street Journal on the date that is one day after the due date of such unpaid amount plus 2 % per annum.

## ARTICLE 5

## STANDARD OF PERFORMANCE

Section 5.1 (a) ~~Quigley shall provide the Quigley Services with reasonable skill and care.(b)~~ The ~~parties~~Parties acknowledge that ~~the~~Quigley's correct and timely completion of the Quigley Services ~~by Quigley~~ may depend upon the Pfizer Group's provision of information and/or services to Quigley ~~by Pfizer~~. Quigley shall not be responsible for any failure to provide ~~the~~any Quigley Services if, and to the extent that, such failure results from (i) Pfizer's failure to provide ~~all~~relevant information and/or services to Quigley in a timely manner, or (ii) occurrences beyond Quigley's reasonable control.

(b) In no event shall Quigley or Pfizer have any liability for loss of profit, diminution in value, loss of goodwill or consequential, incidental, punitive, exemplary or other special damages as a result of breach of this Agreement, except as provided in section 6.6 hereof. Quigley's maximum liability to, and the sole remedy of, the Pfizer Group for breach of this Agreement shall be the greater of (i) the Pfizer Group's incremental cost of performing the Quigley Services itself, and (ii) the Pfizer Group's incremental cost of obtaining the Quigley Services from a third party; provided that the Pfizer Group shall exercise reasonable efforts under the circumstances to minimize the cost of any such alternatives to Quigley providing the Quigley Services by selecting the most cost-effective alternatives which provide the functional equivalent of the Quigley Services replaced (the cost of which shall be referred to herein as **"Incremental Cost"**).

## ARTICLE 6

## TERM OF SERVICES

Section 6.1 Term. The ~~initial~~ term of this ~~Claims Services~~ Agreement shall be five years, commencing on the ~~effective date hereof.~~Effective Date, unless the term is extended pursuant to Section 6.2.

Section 6.2 Termination date. This ~~Claims Services~~ Agreement shall terminate ~~on the fifth anniversary of the effective date of this Claims Services Agreement~~five years from the Effective Date (the **"Termination Date"**), unless~~, not later than the Termination Date, Pfizer~~ and Quigley and Pfizer agree in writing to ~~continue~~renew this ~~Claims Services~~ Agreement, in which event this ~~Claims Services~~ Agreement shall be deemed to have been renewed in accordance with the terms of ~~such~~the Parties' written agreement.

Section 6.3 Assistance in winding down. To the extent this ~~Claims Services~~ Agreement terminates pursuant to Section 6.2 above, or any of the Quigley Services are discontinued prior to the Termination Date or any extension thereof, Quigley shall provide Pfizer with reasonable assistance in winding down the terminated Quigley Services or, if applicable, transferring responsibility for ~~such~~those Quigley Services to ~~the new provider of such services.~~a

new provider.  Pfizer shall reimburse Quigley for reasonable costs and expenses Quigley incurs pursuant to this paragraph within 30 days of the completion of wind-down and termination.

Section 6.4  Termination of Shared Services Agreement.  Immediately upon ~~effect~~the Effective Date of this ~~Claims Services~~ Agreement, the Shared Services Agreement shall terminate pursuant to Section 4.1(b) thereof.

Section 6.5  Termination upon default by Pfizer.  Quigley may terminate this Agreement on five Business Days notice upon the delivery to Pfizer of written notice of termination if Pfizer fails to pay, on or prior to the date when due, any amounts owed to Quigley under this Agreement, which default remains uncured sixty (60) days after Quigley provides Pfizer with written notice of such default.

Section 6.6  Effect of Termination.  (a)  If this Agreement is terminated prior to the Termination Date (x) by Quigley pursuant to section 6.5 or Article 11 hereof  or (y) by Pfizer other than in accordance with Article 11 hereof, (i) Quigley shall have no further obligation to provide Quigley Services to Pfizer, (ii) all unpaid amounts due and owing from Pfizer to Quigley shall become immediately due and payable by Pfizer as of the date of the early termination, and (iii) any unpaid portions of the Retention Fee that would be due at any time on or prior to the Termination Date if this Agreement had not been terminated early, shall become immediately due and payable, without presentment, demand, protest or further notice of any kind, all of which are hereby expressly waived; provided, however, that Pfizer may reduce the payments of the amounts set forth in (ii) and (iii) of this paragraph by the Processing Cost.  If the Processing Cost exceeds the aggregate of the amounts set forth in (ii) and (iii) of this paragraph, Quigley shall pay to Pfizer the Processing Cost minus the sum of the amounts set forth in (ii) and (iii) of this paragraph.  The **"Processing Cost"** shall equal 1.42857 times the Processing Cost Charge multiplied by the product of (x) the Annual Claims Limit and (y) the number of calendar days from, but not including, the early termination date through and including the Termination Date divided by 365.  The Parties agree that the exact amount of damages that Quigley would suffer upon an early termination is difficult to predict with certainty and that the amounts specified in this paragraph are a reasonable estimate of those damages.

(b) If this Agreement is terminated prior to the Termination Date (x) by Pfizer in accordance with Article 11 hereunder  or (y) by Quigley other than as set forth in section 6.6(a)(x) hereof, (i) Quigley shall have no further obligation to provide Quigley Services to Pfizer, (ii) all unpaid amounts due and owing from Pfizer to Quigley shall be paid by Pfizer in accord with the terms of this Agreement, and (iii) any unpaid portions of the Retention Fee that would be due at any time on or prior to the Termination Date if this Agreement had not been terminated early, shall be paid by Pfizer in accord with the terms of this Agreement; provided, however, that Pfizer may reduce the payments of the amounts set forth in (ii) and (iii) of this paragraph by the amount of any unpaid damages awarded to Pfizer in accord with section 5.1(b) and Article 11 hereunder.  If the amount of any unpaid damages awarded to Pfizer exceeds the aggregate of the amounts set forth in (ii) and (iii) of this paragraph, Quigley promptly shall pay to Pfizer such unpaid damages minus the sum of the amounts set forth in (ii) and (iii) of this paragraph.

(c) Notwithstanding any other provision of this Agreement, Pfizer will not be relieved of its obligation to make full and timely payments of the Retention Fee, including any accelerated payments, based on an allegation that Quigley failed to perform the Quigley Services adequately, but the Retention Fee may be reduced by the amount of any unpaid damages awarded to Pfizer in accord with section 5.1(b) and Article 11 herein.

## ARTICLE 7

## ACCESS TO RECORDS

Section 7.1 Quigley shall grant Pfizer shall be entitled to have reasonable access to the Quigley's books, and records and premises of Quigley (, but solely insofar as it relates they relate to the Quigley Services provided hereunder) and. Quigley shall grant reasonable access to any agent, auditor (internal and or external), employee or other representative of Quigley Pfizer during regular business hours and upon reasonable notice to Quigley after at least three Business Days prior written notice, provided, however, that such access: (a) is not disruptive to Quigley's business and or operations; (b) shall be at the sole expense of Pfizer; and (c) shall only be provided to the extent necessary to verify the Quigley's proper performance by Quigley of the Quigley Services. Pfizer shall be responsible for ensuring that any person or entity granted access under this Section 7.1 executes appropriate confidentiality agreements.

Section 7.2. Pfizer shall grant Quigley reasonable access to Pfizer's offsite storage solely to permit Quigley to obtain releases or other documents relevant to the performance of the Quigley Services and for purposes of processing the claims for the Asbestos PI Trust. In the alternative, Pfizer may elect to retrieve any such documents at its own expense upon the request of Quigley.

## ARTICLE 8

## ASSIGNMENT

Section 8.1 The provisions of this Claims Services Agreement shall be binding upon and inure to the benefit of Quigley, Pfizer and their respective successors, except that neither Quigley nor Pfizer may assign or otherwise transfer any of its, or his or her, their rights or obligations under this Claims Services Agreement without the prior written consent of the other Parties, which consent shall not be unreasonably delayed or withheld. For the avoidance of doubt, Pfizer may withhold consent to any assignment or transfer if Pfizer has reasonable concerns regarding confidentiality and/or the claims processing experience of the proposed transferee or assignee.

# ARTICLE 9

## REPRESENTATIONS AND WARRANTIES OF QUIGLEY

Section 9.1　　　　　Quigley hereby represents and warrants to Pfizer as follows:

(a)  Quigley is a corporation duly organized, validly existing and in good standing under the laws of the State of New York.

(b)  Quigley has the requisite financial resources, assets, personnel, corporate power and authority to execute, deliver and perform satisfactorily this ~~Claims Services~~ Agreement.  The execution, delivery and performance of this ~~Claims Services~~ Agreement by Quigley have been duly authorized by all necessary corporate action.  This ~~Claims Services~~ Agreement has been duly executed and delivered by Quigley and constitutes ~~the~~a legal, valid and binding obligation of Quigley, enforceable in accordance with its terms, except as such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other laws of general application affecting enforcement of creditors' rights or by general principles of equity.

Section 9.2　　　　　Pfizer hereby represents and warrants to Quigley as follows:

(a)  Pfizer is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware.

(b)  Pfizer has the requisite financial resources, assets, corporate power and authority to execute, deliver and perform satisfactorily its obligations under this Agreement.  Pfizer's execution, delivery and performance of this Agreement have been duly authorized by all necessary corporate action.  This Agreement has been duly executed and delivered by Pfizer and constitutes a legal, valid and binding obligation of Pfizer, enforceable in accordance with its terms, except as such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other laws of general application affecting enforcement of creditors' rights or by general principles of equity.

# ARTICLE 10

## CONFIDENTIALITY

Section 10.1　　　　　~~Quigley acknowledges that the~~The Parties acknowledge that they each may provide the other Parties with confidential information, data and documents ~~obtained by~~in connection with Quigley ~~from Pfizer during the course of its~~'s performance under this ~~Claims Services Agreement are the property of Pfizer~~Agreement.  If it has a good faith basis for doing so, either Party may designate any information, data or document as "confidential" in writing.  During the term of this ~~Claims Services~~ Agreement and at all times thereafter, ~~Quigley~~the Parties shall not~~, and shall not permit any of Quigley's employees or affiliates to~~ directly or indirectly use, divulge, furnish or make available ~~to anyone, including, without~~

limitation, the Asbestos PI Trust and all representatives or trustees thereof, for any purpose whatsoever, any such proprietary information or other Pfizer confidential information, including but not limited to information relating to Pfizer Non-Channeled Claims, Pfizer Settled Claims and/or such other claims as have been or may be asserted against Pfizer as Quigley and Pfizer determine are appropriate for servicing and processing by Quigley (collectively, any such information which has been designated confidential (the **"Confidential Information")**. Quigley shall only disclose Confidential Information to its internal personnel whose duties justify their need to review and know to anyone for any purpose whatsoever, except Quigley or Pfizer Group personnel (including temporary personnel, consultants, attorneys and other professionals) whose duties reasonably justify their review or use of the Confidential Information, who are informed. A Party receiving Confidential Information shall inform anyone to whom it provides Confidential Information of the confidential nature of suchthat information and who agreesshall require agreement in writing to be bound by terms of this Article 10. By making Confidential Information available to its internal personnel, Quigley agrees that it may be held responsible for any damages suffered by Pfizer as a result of the disclosure of the contents of the Confidential Information by any such internal personnel.Each of Pfizer and Quigley shall provide such forms of agreement as applicable under this Section 10.1.

Section 10.2          Quigley further agrees that it shall not use or disclose at any time any Confidential Information, except (a) as expressly permitted by the terms of an agreement between Quigley and Pfizer, where such agreement contains explicit written authorization by Pfizer to disclose Confidential Information; or (b) as to information which must be disclosed under applicable law. Quigley acknowledges that disclosure of the Confidential Information will give rise to irreparable injury to Pfizer and such injury will be inadequately compensable in damages. Accordingly, if Pfizer is harmed or likely to be harmed by the actual or threatened violation of this Section, Pfizer shall be entitled to seek and obtain any remedy available under any applicable principle of law or equity.

Section 10.2          Each Party agrees to consider in good faith any further proposed confidentiality restrictions or agreements that the other Party may reasonably propose.

Section 10.3          As soon as reasonably practicable following the Termination Date, including any extensions thereof, pursuant to Article 6, Quigleyand after receipt of a written request by a producing Party, the Party that received Confidential Information from that Party shall (a) deliver to Pfizerthe producing Party, or to such other person or entity as may be designated by Pfizerthe producing Party, all copies and embodiments, in whatever form, including all partial or complete copies or duplicates, of all Confidential Information (including but not limited to written records, photographs, manuals, notes and notebooks, magnetic media, disks, diskettes, tapes and all other materials containing Confidential Information), or (b) destroy or cause to be destroyed all such copies and embodiments, in whatever form, of all Confidential Information, and such destruction shall be certified in writing to Pfizerthe producing Party by an authorized officer supervising such destructionof the receiving Party.

Section 10.4          Quigley may determine to maintain the Claims Database and Confidential Information either on its own internal servers or it may decide to use external servers for purposes of hosting the Claims Database and Confidential Information;  provided,

however, that Quigley shall at all times employ practices and procedures consistent with industry business practices and procedures to ensure that such Claims Database and Confidential Information are secure and not accessible by any unauthorized person or entity. In the event that Quigley determines to use external servers for such purpose, Quigley shall notify Pfizer at least 60 calendar days in advance of moving the Claims Database and/or Confidential Information. Pfizer shall have the right to complete information about the security systems that would be employed and shall have the right to refuse to allow Quigley to use such external resource to host the Claims Database and/or Confidential Information. In the event that Pfizer unreasonably refuses to allow the use of such external resource and such refusal results in increased out of pocket cost to Quigley to maintain internal servers, then Quigley shall be entitled to charge Pfizer the incremental cost (defined as the expense actually incurred by Quigley in excess of the cost to Quigley of maintaining the Claims Database and/or Confidential Information on external servers).

## ARTICLE 11

## DISPUTE RESOLUTION

Section 11.1 ~~Subject to Section 11.3 hereof,~~ Quigley and Pfizer shall attempt in good faith to resolve any Dispute promptly by ~~negotiations~~negotiation between officers of Quigley and Pfizer who shall have authority to settle the Dispute. Either ~~party~~Party may give the other a Dispute Notice. Upon ~~the~~ receipt of a Dispute Notice, the representatives of ~~both parties~~the Parties shall meet as soon as is practicable at a mutually acceptable time and place to negotiate in good faith a settlement of the Dispute, and shall meet thereafter as they reasonably deem necessary.

Section 11.2 ~~Subject to Section 11.3 hereof, if~~If the Dispute has not been resolved within the Negotiation Period ~~then the Dispute~~, it shall be resolved through binding arbitration. The following provisions shall cover any such arbitration:

(a) Within ten days after the termination of the Negotiation Period, the ~~parties~~Parties to the arbitration shall jointly select a single arbitrator. If for any reason the ~~parties~~Parties are unable to select an arbitrator, the arbitrator shall be chosen, or caused to be chosen, by the AAA, or any successor organization, in accordance with its then current rules.

(b) The arbitrator shall hold his or her first hearing on the Dispute as promptly as possible, but ~~in no event~~not later than ten days after the arbitrator is selected. All hearings and proceedings of the arbitration shall be conducted in New York, New York, unless ~~both parties~~the Parties agree otherwise.

(c) The arbitrator shall have the right to issue any and all orders, final or otherwise, including interim or injunctive relief, and any and all awards that a court of competent jurisdiction sitting at law or in equity could issue, including ~~the awarding~~awards of monetary damages. Under no circumstances, however, shall punitive or exemplary damages, non-compensatory damages or damages for pain and suffering be awarded. In the event interim or injunctive relief is sought before an arbitrator is selected, either ~~party~~Party may seek such relief by applying to the AAA for such relief under its Rules for Emergency Measure of Protection.

Each ~~party~~Party shall be entitled to present to the arbitrator written briefs on all issues in the arbitration, and the arbitrator shall be authorized to rule on motions for summary judgment or other motions. The ~~parties~~Parties shall also be entitled to cause a transcript of the arbitration proceedings to be made. Unless otherwise agreed by the ~~parties~~Parties, the cost of the transcript shall be borne by the ~~party~~Party requesting the transcription, unless the arbitrator requests a transcript, in which case, the arbitrator shall determine who shall bear such cost at the termination of the proceedings. If the arbitrator does not request transcription, then neither ~~party~~Party shall provide any transcribed portions of the proceedings to the arbitrator unless that ~~party~~Party furnishes the entire transcript to the other ~~party~~Party.

(d)    The decision of the arbitrator shall be final and binding on the ~~parties~~Parties and may be confirmed and entered by any court of competent jurisdiction at the request of any ~~party~~Party hereto. It may not be appealed to any court ~~of competent jurisdiction~~ except upon a claim of fraud or evident bias on the part of the arbitrator.

(e)    ~~Each party~~Quigley and Pfizer shall each bear one half of the fees and expenses of the arbitrator, and one half of the costs of conducting the arbitration, as well as the party's own costs ~~and~~, expenses, and attorney's fees. Promptly after commencing proceedings, the arbitrator shall estimate the entire cost of the arbitration and shall require each ~~party~~Party to deposit its share of such cost with the arbitrator, as soon as practicable following release of the estimate. If the estimate is later determined to be insufficient, the arbitrator may require further deposits. The arbitrator shall be compensated, and ~~pay~~shall cause the costs of the arbitration to be paid, from the amounts so deposited by the ~~parties. Each party shall bear its own attorneys' fees.~~Parties.

(f)    The arbitrator shall be compensated for his or her services at a reasonable hourly rate to be agreed ~~to~~ by the ~~parties~~Parties. The arbitrator shall be reimbursed for any and all reasonable expenses incurred by him or her in connection with the ~~rendering of such services~~arbitration between the Parties. The arbitrator shall be entitled to be indemnified, defended and held harmless by each of the ~~parties~~Parties for any and all loss, cost, expense, claim, action, demand or suit arising from or relating to the arbitration.

(g)    ~~The laws of the United States regarding~~Issues of arbitration procedure shall ~~govern the arbitration~~be resolved in accord with AAA rules. New York substantive law, without regard to conflicts of law, shall govern all Disputes. Any arbitration hereunder is intended to be administered by the arbitrator selected as provided herein, except to the extent that resort may be made to the AAA, as specified herein. However, the ~~parties~~Parties incorporate the rules of the AAA for Large, Complex Disputes and the rules for Emergency Measures of Protection as they may exist on the date an arbitrator is selected, to the extent not inconsistent herewith. If any such inconsistency exists, ~~these rules~~this Agreement shall govern, unless otherwise agreed by the ~~parties~~Parties in dispute ~~hereunder. It is recognized by the parties hereto~~. The Parties recognize that Disputes, which may arise hereunder, may be complex and may require discovery of documents and depositions, which may be ordered by the arbitrator as deemed reasonable and necessary.

(h)    This ~~Claims Services~~ Agreement is intended to provide a mechanism whereby Disputes may be resolved in a confidential manner, without publicity and the attendant

distractions. Accordingly, (i) no person shall be present at any hearing or other proceeding of the arbitrator except the ~~parties~~Parties, the arbitrator, representatives of any of the Asbestos PI Trust, the TAC and the Future Claims Representative, such witnesses and producers of documents as the arbitrator shall allow, counsel to any of the ~~parties~~foregoing, court reporters employed to produce a transcript of such hearing or other proceedings and such other persons allowed by the arbitrator consistent with the purpose of confidentiality ("Permitted Attendees"); (ii) each ~~party~~Permitted Attendee shall keep both the facts of the Dispute and all proceedings related thereto confidential, except to the extent necessary ~~in order~~ to preserve and maintain its position; and (iii) all testimony before the arbitrator and any whole or partial transcript of any hearing or other proceeding related to the arbitration shall be kept confidential and shall in no event be released, shown or distributed to any person other than the ~~parties~~Potential Attendees, their counsel and the arbitrator. If ~~either party~~any Permitted Attendee shall breach this subsection, the arbitrator is authorized to award compensation ~~to the other party~~for any resulting harm suffered by any Party or Parties and/or any other Permitted Attendee(s) as appropriate.

~~Section 11.3 Notwithstanding Sections 11.1 and 11.2 hereof, Pfizer may commence and prosecute an action in a court of competent jurisdiction in connection with any Dispute arising out of or relating to the breach, enforceability or validity of Article 10 of this Claims Services Agreement.~~

## ARTICLE 12

## GENERAL PROVISIONS

Section 12.1 **Force Majeure.** No party ~~hereunder~~ shall be liable to ~~the~~any other Party for its failure to perform hereunder caused by contingencies beyond its reasonable control, including, but not limited to, acts of ~~god~~God, fire, flood, wars, acts of terrorism, sabotage, strike, government actions and any other similar occurrence beyond the non-performing ~~party~~Party's reasonable control. Any ~~party~~Party asserting its inability to perform any obligation hereunder for any such contingency shall promptly notify the other ~~party~~Party of the existence of any such contingency, and shall use its reasonably diligent efforts to re-commence its performance of such obligation as soon as commercially practicable.

Section 12.2 **Amendments.** Quigley and Pfizer may only modify or amend this ~~Claims Services~~ Agreement in ~~a~~ writing ~~executed by each of them~~subject to the written consent of the Asbestos PI Trust. Notwithstanding anything contained in this ~~Claims Services~~ Agreement to the contrary, this ~~Claims Services~~ Agreement shall not be modified or amended in any way that could jeopardize, impair or modify the applicability of section 524(g) of the Bankruptcy Code, the efficacy or enforceability of the Asbestos PI Channeling Injunction, the Settling Asbestos Insurance Entity Injunction and the Non-Settling Asbestos Insurance Entity Injunction set out in the Plan and Confirmation Order, the Asbestos PI Trust's "qualified settlement fund" status under section 468B of the Internal Revenue Code or the rights and protections provided to Quigley or the Pfizer Protected Parties under the Plan Documents.

Section 12.3 **Third Party Beneficiaries. Except for members of the Pfizer Group, the Asbestos PI Trust, the TAC and the Future Claims Representative, this**

Agreement grants no person other than the Parties any rights whatsoever with respect to the enforcement of any of the rights or obligations hereunder.

        Section 12.4          Notices.    All notices ~~or~~and other communications hereunder shall be deemed to have been duly given and made if in writing and if served by personal delivery upon the ~~party~~Party for whom it is intended, if delivered by registered or certified mail, return receipt requested, or by a national courier service, or if sent by facsimile, provided that the facsimile is promptly confirmed by telephone confirmation thereof, to the ~~party~~Party at the address set forth below, or such other address as may be designated in writing hereafter, in the same manner, by such ~~party~~Party:

To Pfizer Inc.:

Pfizer Inc.
250 E. 42nd Street
New York, NY 10017
Attention:  ~~Vijay Bondada~~Michele S. Suggs, Esq.

With a copy to:
Greenberg Traurig LLP
MetLife Building
200 Park Avenue
~~Cadwalader Wickersham and Taft LLP~~
~~One World Financial Center~~
New York, NY ~~10281~~10166
Attention:  Bruce Zirinsky, Esq.
           John H. Bae, Esq.
           Gary D. Ticoll, Esq.

To Quigley:

Quigley Company, Inc.
52 Vanderbilt Avenue
13th Floor
New York, New York 10017
Attention:  Kim Jenkins

With a copy to:

(a) Schulte Roth & Zabel LLP
   919 Third Avenue
   New York, New York 10022
   Attention:  Michael L. Cook, Esq.
           Lawrence V. Gelber, Esq.

(b) Togut, Segal & Segal LLP
   One Penn Plaza, Suite 3335
   New York, New York 10119
   Attention:  Scott E. Ratner, Esq.
            Richard K. Milin, Esq.

(c) The Quigley Asbestos Personal Injury Trust

[Address to be provided to the Parties in writing]

Section ~~12.4~~12.5 **Governing Law**.  This ~~Claims Services~~ Agreement shall be governed by the ~~laws~~substantive law of the State of New York, its ~~rules of~~ conflict of laws rules notwithstanding.

Section ~~12.5~~12.6 **Counterparts**.  This ~~Claims Services~~ Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same agreement.

~~Section 12.6~~ Section 12.7 **Headings**.  The headings contained in this ~~Claims Services~~ Agreement are for reference purposes only and shall not in any way affect the meaning or interpretation of this ~~Claims Services~~ Agreement.

~~Section 12.7~~ Section 12.8 **Entire Agreement**.  This ~~Claims Services~~ Agreement contains the entire understanding and agreement between the ~~parties~~Parties hereto as to the services being performed hereunder.

Section ~~12.8~~12.9 **Waiver**.  Any provision of this ~~Claims Services~~ Agreement may be waived if, and only if, such waiver is in writing and signed by the ~~party~~Party against whom the waiver is to be effective.  No failure or delay by any ~~party~~Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

Section ~~12.9~~12.10 **Severability**.  The provisions of this ~~Claims Services~~ Agreement shall be deemed severable and the invalidity or unenforceability of any provision shall not affect the validity or enforceability of the other provisions hereof.  If any term or other provision of this ~~Claims Services~~ Agreement, or the application thereof to any person or entity or any circumstance, is invalid, illegal or unenforceable: (a) a suitable and equitable provision shall be substituted therefor in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision; and (b) the remainder of this ~~Claims Services~~ Agreement and the application of such provision to other persons, entities or circumstances shall not be affected by such invalidity, illegality or unenforceability, nor shall such invalidity, illegality or unenforceability affect the validity or enforceability of such provision, or the application thereof, in any other jurisdiction.

Section ~~12.10~~12.11 *Contra Proferentum* Not Applicable.  This ~~Claims Services~~ Agreement is the product of extensive discussions and negotiations between Quigley and Pfizer.  Each of the foregoing was represented by counsel who either participated in the

formulation and documentation of, or was afforded the opportunity to review and provide comments on, this ~~Claims Services~~ Agreement. Accordingly, the rule of contract construction known as *"contra proferentum"* shall not apply to the interpretation of this ~~Claims Services~~ Agreement ~~or any agreement or document gathered in connection herewith.~~.

Section 12.12    Independent Contractor. The relationship between Quigley and Pfizer under this Agreement shall be that of independent contractor. Nothing herein shall be construed as constituting a partnership, joint venture or agency between the Parties. Quigley shall have sole discretion to determine the manner and means by which its employees, contractors and temporary hourly staff perform their duties, their hours of work, and when and where such services are to be performed. Quigley shall be solely responsible for all wages, salaries and benefits of all Quigley employees.

Section 12.13    No Duty of Verification. Quigley shall have no responsibility for verifying the correctness of any information given to it by or on behalf of Pfizer or other members of the Pfizer Group for the purpose of providing the Quigley Services.

IN WITNESS WHEREOF, the parties have duly executed this ~~Claims Services~~ Agreement as of the day and year first above written.

QUIGLEY COMPANY, INC.

By:_____
Name:
Title:

PFIZER INC.

By:_____
Name:
Title:

SCHEDULE A

QUIGLEY SERVICES

Consistent with the terms of the foregoing ~~Claims Services Agreement, Quigley will~~ Agreement, in a reasonable time and in accord with the standards prevailing in the industry, Quigley agrees to provide the following services to ~~one or more of the~~ Pfizer ~~Parties, as applicable~~ and the Pfizer Group:

- ~~Assisting with reconciling the general ledger on a monthly basis.~~

- ~~Coordinating the preparation and distribution of Quarterly Settlement Approval Memos.~~

- ~~Hosting audits by Pfizer's insurers.~~

A.  Claims Database Services.

A.1.  Claims Database Services shall mean the following:  Subject to Section 5.1(a) of the Agreement, Quigley shall maintain a database of Tort Claims (defined for these purposes as Claims related to asbestos, silica, talc and/or mixed dust and including without limitation Pfizer Settled Claims, Pfizer Non-Channeled Claims, and Pfizer Future Settled Claims) asserted against Pfizer and/or other members of the Pfizer Group, including without limitation Tort Claims relating to American Optical Corporation, Warner Lambert and Pharmacia (**"Claims Database"**).

(a)  For purposes of this Schedule A, the duty to "maintain" the Claims Database shall mean that Quigley shall update the Claims Database and enter information into the Claims Database to the extent that Quigley is provided with information by Pfizer, any member of the Pfizer Group, or by the CCR and that Quigley shall expand the Claims Database to include **"New Claims"** asserted against any of the Pfizer Group to the extent that Pfizer provides such information to Quigley.

(b)  For purposes of this Agreement and this Schedule A, a New Claim shall mean a Claim asserted against any member of the Pfizer Group by (i) an individual claimant who does not have an "Injured Party ID" (as defined in the Data Dictionary dated as of May 19, 2008 and attached hereto as Exhibit []) in the Claims Database as of the Effective Date, or (ii) an individual claimant who has an Injured Party ID in the Claims Database as of the Effective Date but who commences an additional lawsuit against a member of the Pfizer Group after the Effective Date.

(c)  The Claims Database shall include the fields maintained in the bundled and unbundled databases that the Quigley Claims Handling Unit has maintained under the Shared Services Agreement, dated August 31, 2004, and

such other fields that Pfizer and Quigley shall agree to maintain. Subject to sub-paragraph (a) above, the information recorded in the Claims for each claim shall include without limitation: the pleadings filed, plaintiff's counsel, defense counsel, injury alleged, disposition, and such other information as the Parties reasonably agree. Quigley shall maintain imaged copies of all documents provided to Quigley regarding all claims tracked in the Claims Database and such images shall be linked to the Claims Database so that Quigley is able to provide to Pfizer upon written request copies of any documents related to any claim that is recorded in the Claims Database.

A.2. Quigley shall manage the Claims Database so that it can identify claims filings and resolutions that match other claims asserted against member(s) of the Pfizer Group by the same Injured Party. In conducting this matching analysis, Quigley shall apply generally accepted matching criteria and shall include information available to Quigley concerning claims filed and/or settled and/or dismissed at any time including during the time when Pfizer was a member of the CCR.

Quigley shall not change the format or content of the Claims Database without approval from Pfizer, which approval shall not be unreasonably withheld. Quigley shall notify Pfizer in writing of any proposed change in the format or content of the Claims Database. Pfizer shall notify Quigley in writing of its approval or rejection of the proposed change within 5 business days of the date of Quigley's notification to Pfizer.

A.3. Quigley shall incorporate into the Claims Database any updated information provided to Pfizer by the CCR and that is provided to Quigley.

A.4. Quigley shall reconcile the Claims Database with defense counsel's and plaintiffs' counsel's databases; provided, that each such counsel provide to Quigley, as Quigley reasonably requests, adequate identifying information including social security numbers so that Quigley can perform this function.

A.5. Quigley shall provide reports to Pfizer of all claims activity as requested by Pfizer including without limitation detailed reports on individual claims and detailed reports on the claims activity with respect to particular law firms and reports on trends in claims activity and claims that remain outstanding. Pfizer shall specify a standard reporting package that Quigley will use to provide reports. The content and format of such reports shall be agreed between Pfizer and Quigley. Quigley shall provide such reports at least monthly. Quigley shall provide such reports to persons designated by Pfizer. Quigley shall provide notification of claims filings to insurers as directed by Pfizer. Quigley shall also provide ad hoc reports upon Pfizer's request. Pfizer shall provide Quigley at least 3 business days notice of any ad hoc query or report. Quigley shall notify Pfizer immediately upon receipt of such request if the request cannot reasonably be completed under the time schedule or if compliance with the request would necessitate overtime charges. Pfizer shall determine whether Quigley should

proceed and if so, Pfizer agrees to pay any overtime charges necessitated by the request.

A.6.  Quigley shall provide Pfizer with information relating to the Quigley Services as reasonably requested by Pfizer in writing in connection with alternative dispute resolution proceedings or litigation in the tort system relating to claims comprising the Claims Database.

A.7.  Upon written request, Quigley shall provide to Pfizer or any person or entity designated by Pfizer either direct access to data from the Claims Database or an electronic copy of the data from the Claims Database with all fields requested by Pfizer.  Quigley shall not be required to compile and provide an electronic copy of such data more than once per calendar month.

B.  Settlement Processing Services.

Settlement Processing Services shall mean all services outlined in this Section B.

• Implementing the terms of the Pfizer Claimant Settlement Agreements with plaintiff's counsel, namely B.1.  Quigley shall provide all services necessary to receive, review, process and assess whether to pay or deny Pfizer Settled Claims that are submitted to Quigley for Settlement Processing Services.  These services shall ordinarily include: (i) reviewing and processing all incoming proof of claim forms and medical, exposure or any and other evidence required by the Pfizer Claimant Settlement Agreements to determine eligibility under the Pfizer Claimant Settlement Agreements for settlement and payment of an asbestos personal injury claim; and (ii) managing the process of obtaining approval from Pfizer's management for payment of settlement amounts to plaintiffs' counsel. (ii) recording the receipt of materials related to such Pfizer Claimant Settlement Agreements and documenting all processing activity including the results of Quigley's evaluation, actions taken by Quigley with respect to the claims such as notifications to counsel, claimant information that may be relevant to preparing claims and bills for insurance recovery and data that may be relevant for the purpose of recording claims trends and claims status; and (iii) imaging and maintaining images of claims materials submitted to Quigley.

B.2.  Quigley shall provide all services necessary (and as set forth above with respect to Pfizer Settled Claims) to receive, review, process and assess whether to pay or deny  any Pfizer Future Settled Claims that are presented to Quigley for Settlement Processing Services.

B.3.  Quigley shall coordinate with Pfizer to obtain approval for payment of settlement amounts to plaintiffs' counsel for claims found to be eligible for settlement under the Pfizer Claimant Settlement Agreements or with respect to any Pfizer Future Settled Claim.   Pfizer shall provide to Quigley written directions regarding obtaining such approvals.

B.4.   Any database tracking and/or managing any Pfizer Claimant Settlement Agreements or any other settlements regarding claims within the scope of the Claims Database shall be deemed for purposes of the obligations under this Claims Services Agreement to be part of the Claims Database.

- ~~Determining allocation of settlement and defense costs among the insurers.~~

- ~~Managing and tracking accounts receivables from insurers.~~

- ~~Managing offsite storage for Quigley.~~

- ~~Managing the transfer to Quigley of claims that were previously handled by the Center for Claims Resolution.~~

- ~~Providing insurers with notification of SV40 and premises claims.~~

- ~~Managing the process of imaging all complaints and related pleadings.~~

- ~~Providing documentation for expense accruals.~~

- ~~Providing Pfizer's legal finance team with the necessary documentation and backup to ensure that there are adequate reserves and expense accruals.~~

- ~~Not less than monthly, or more often if requested by Pfizer in writing, providing Pfizer's General Counsel, Board of Directors and legal finance team with claims and insurance information, as well as a written summary of all information being tracked or monitored.~~

- ~~Providing Pfizer with information relating to the Quigley Services as requested by Pfizer in connection with any alternative dispute resolution proceeding or litigation in the tort system.~~

B.5.   For purposes of this Agreement **"New Settlement"** shall mean any claim that is subject to resolution under a Pfizer Claimant Settlement Agreement but that has not been submitted for settlement before the Effective Date and any Pfizer Future Settled Claim.

C.   General Services Applicable to Both Claims Database Services and Settlement Processing Services.

C.1.   Audit.

Quigley shall host audits by Pfizer's insurers as reasonably directed by Pfizer and as provided in Section 7.1 of this Claims Services Agreement.   Pfizer shall have the sole authority to direct the terms and conditions of such reviews and audits by Pfizer's insurers.   Quigley shall agree to provide such documents and access as Pfizer directs.   Pfizer shall notify Quigley at least five business days in advance of

any such audit and Pfizer shall advise Quigley of all requirements of the audit process.

- ~~Working~~Quigley shall work with Pfizer to develop and implement, as necessary, a claims audit program.

- ~~Providing internal support for special projects (i.e., discovery requests).~~

- ~~Providing reports of American Optical Corporation and Warner-Lambert claims and insurance statuses.~~

- ~~Receiving new lawsuits for Pfizer, Pharmacia and Warner-Lambert, including inputting data into the database and tracking the naming of related entities (including claims for asbestos, silica, talc, mixed dust and SV40).~~

- ~~Tracking new filings against Pharmacia.~~

- ~~Providing support to outside insurance counsel on insurance matters.~~

- ~~Reconciling Quigley's database with defense counsel's and plaintiffs' counsel's databases.~~

- ~~Processing cash receipts from insurers to Pfizer's treasury.~~

- ~~Providing field counsel with support regarding the status of plaintiffs' lawsuits.~~

- ~~Monitoring defense costs and comparing them with the budget.~~

- ~~Tracking dismissal of plaintiffs' claims.~~

- ~~Tracking resettlement costs.~~

C.2.  Insurance Billing.

Quigley shall prepare files and claims information as reasonably directed by Pfizer for purposes of insurance billing.  In the event that Quigley determines to offer insurance billing services, Pfizer may request that Quigley perform such services.  Pfizer and Quigley shall agree on a separate fee schedule for such services.

Pfizer may request that Quigley oversee and track insurance billings and accounts receivables.  Upon such request, Quigley shall provide such services and if Quigley receives payments from insurers payable to Pfizer or any member of the Pfizer Group, Quigley shall deliver such payments to Pfizer.  If Pfizer receives payments from insurers payable to Quigley, Pfizer shall deliver such payments to Quigley.

C.3.  Maintenance of Files

- ~~Performing other services~~Quigley shall manage paper files as requested by Pfizer and shall provide for the delivery of such files to offsite storage for Pfizer at Pfizer's expense.

C.4  Claims Processing Volume

If Quigley determines in good faith that it would not have the capacity to perform the Quigley Services with respect to certain Excess Claims in a reasonable time and in accord with the standards prevailing in the industry, Quigley shall have the right to delay the processing of such Excess Claims by no more than the lesser of (i) the amount of additional time Quigley's capacity permits the performance of the Quigley Services with respect to such Excess Claims in accord with the standards prevailing in the industry and (ii) six months.  Quigley shall notify Pfizer promptly of any such delay and Pfizer shall have the right, in its sole discretion to (x) withdraw such Excess Claims from Quigley or (y) pay Quigley the excess cost of performing the Quigley Services with respect to such Excess Claims in a reasonable time and in accord with the standards prevailing in the industry, in which case Quigley shall perform the Quigley Services with respect to such Excess Claims in a reasonable time and in accord with the standards prevailing in the industry.

If Quigley determines in good faith that it is unable to process certain Excess Claims profitably for the Excess Claims Charge specified in this Agreement, it may decline to process those Excess Claims for the Excess Claims Charge, but Quigley agrees to negotiate in good faith with Pfizer concerning a reasonable processing fee for those Excess Claims.