GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Bruce R. Zirinsky
John H. Bae
Gary D. Ticoll

CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666
Dennis J. Block

Attorneys for Pfizer Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

| | |
|---|---|
| In re : | |
| QUIGLEY COMPANY, INC., : | Chapter 11 |
| Debtor. : | Case No. 04-15739 (SMB) |

------------------------------------------------------x

### MOTION OF PFIZER INC. FOR LEAVE TO APPEAL FROM THE ORDER DENYING CONFIRMATION AND POST-TRIAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

Pfizer Inc. ("Pfizer") hereby moves for leave to appeal, pursuant to 28 U.S.C. § 158(a) and Federal Rule of Bankruptcy Procedure 8003 (the "Bankruptcy Rules"), from the Order Denying Confirmation of Quigley Company, Inc.'s ("Quigley") Fourth Amended Restated Plan of Reorganization (the "Plan") entered by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), on September 21, 2010 (the "Order Denying

Confirmation", attached hereto as Exhibit A) and the Bankruptcy Court's Post-Trial Findings of Fact and Conclusions of Law, issued by the Bankruptcy Court on September 8, 2010 (the "Confirmation Decision", attached hereto as Exhibit B). In support thereof, Pfizer respectfully represents as follows.

STATEMENT OF ISSUES ON APPEAL

Pfizer seeks leave to appeal the Order Denying Confirmation on the following issues:

(i) whether the Bankruptcy Court erred in (x) finding that the contribution of Pfizer under the Plan is not "fair and equitable" based on the conclusion that Pfizer is required under section 524(g)(4)(B)(ii) of title 11 of the United States Code (the "Bankruptcy Code") to contribute to the asbestos trust an amount equal to an estimate of its derivative liability for Quigley asbestos personal injury claims absent section 524(g) protection and (y) precluding Pfizer from introducing evidence of its non-liability for such derivative claims;

(ii) whether the Bankruptcy Court erred in finding that the Plan is not "feasible" under section 1129(a)(11) of the Bankruptcy Code based on the conclusion that Quigley is required to prove that its claims-handling business will be profitable beyond five years; and

(iii) whether the Bankruptcy Court erred in finding (after concluding that the amount available for distribution to claimants is greater than the amount that would be available in a Chapter 7 process) that the Plan fails to satisfy the "best interest of creditors test" based on the conclusion that section 1129(a)(7) of the Bankruptcy Code requires the Court to consider the value of the derivative claims against Pfizer that would be released by non-settling claimants under the Plan but retained by those claimants in a hypothetical chapter 7 liquidation.

PRELIMINARY STATEMENT

Leave to appeal an interlocutory order is governed by Section 1292(b) of title 28 of the United States Code, which provides that leave may be granted when the order (1) involves a controlling issue of law, (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. *MCI WorldCom Commc'ns. v. Commc'ns. Network Int'l Ltd. (In re WorldCom, Inc.)*,

358 B.R. 76, 78 (S.D.N.Y. 2006). All three prongs of this test are met with respect to each of the issues on which Pfizer seeks leave to appeal.

Quigley and Pfizer intend to negotiate a new, confirmable plan that will (i) fully incorporate the guidance offered by the Confirmation Decision on a number of factually-specific issues and (ii) comply with all governing legal rulings and standards. There are three purely legal rulings contained in the Confirmation Decision and Order Denying Confirmation, however, that Pfizer respectfully submits were rendered in error. Quigley and Pfizer are greatly hindered in their ability to make substantial progress in meaningful negotiations on a new plan absent appellate guidance on these issues for the reasons outlined below.

Specifically, under the Plan, Pfizer was to make a contribution that Pfizer believes would have satisfied the "fair and equitable" standard under section 524(g) when measured according to the statutory legal standard. The Bankruptcy Court, however, applied a different and, Pfizer respectfully submits, erroneous legal standard in holding that to satisfy section 524(g), Pfizer was required to contribute to the trust an amount equal to the benefit the Bankruptcy Court held Pfizer would obtain from the injunction -- *i.e.*, the alleged value of the derivative claims against Pfizer that would be channeled by the injunction over the next several decades. That is, the Bankruptcy Court sought to create a mathematical test -- in which *Pfizer's* contribution is measured against the Court's own estimate of Pfizer's potential future liability for Quigley's products. Pfizer does not here address computation issues; but rather, the purely legal question whether the Bankruptcy Court imposed the proper legal standard in tying the 524(g) fair and equitable standard to an estimation of Pfizer's derivative liability in the first place.[1]

---

[1] Pfizer notes that the Bankruptcy Court's computation itself raises certain important issues and does not accede to the Bankruptcy Court's methodology. Pfizer reserves its right to challenge the Bankruptcy Court's calculation.

3

Moreover, Pfizer submits that, if the Bankruptcy Court's interpretation is consistent with the Bankruptcy Code, and such a computation is appropriate, it nevertheless erred by precluding Pfizer from introducing evidence that Pfizer does not have any liability for Quigley's conduct in making or selling asbestos-containing products (the same products Quigley made and sold for decades before Pfizer purchased Quigley's stock and Quigley became a wholly-owned subsidiary of Pfizer in 1968) -- a factor that is surely a necessary component of any computation of the sort adopted by the Bankruptcy Court. Both these related errors involve questions of law: (i) what is the legal standard for assessing whether a non-debtor's contribution is "fair and equitable," and (ii) can a court estimate a corporate parent's derivative liability without permitting the parent to introduce facts demonstrating that it has no such liability. As Pfizer demonstrates herein, the law is clear that the Bankruptcy Court erred in both respects. Correction of these errors will materially advance the bankruptcy case because appellate guidance concerning whether Pfizer's contribution is fair and equitable within the meaning of section 524(g)(4)(B)(ii) of the Bankruptcy Code will enable the parties to negotiate a new plan in a manner that will comply with the Code, lead to confirmation, and enable Quigley to make distributions on allowed claims.

With respect to the feasibility issue, Pfizer respectfully submits that the Bankruptcy Court erred in determining that to satisfy the section 1129(a)(11) feasibility requirement, Quigley must demonstrate that it will be profitable for some indeterminate period beyond five years after the Plan effective date, during which period the Bankruptcy Court found Quigley would be profitable. There is no legal basis for the determination that five years of guaranteed profitability is insufficient to establish plan feasibility, and the Bankruptcy Court's decision affords little guidance as to what period beyond five years of guaranteed profitability would satisfy section

1129(a)(11). Absent such guidance, negotiations over a new plan will be extremely difficult, at best, and impossible, at worst, as the vagueness of the Bankruptcy Court's decision invites further disputes and controversies that an appellate ruling could avoid. Accordingly, Pfizer satisfies all three prongs of the Section 1292(b) test.

Finally, with respect to the section 1129(a)(7) "best interest of creditors" test, the Bankruptcy Court held that, in determining whether a creditor receives on account of its claim under a chapter 11 plan an amount equal to or greater than what it would receive in a hypothetical chapter 7 liquidation, a court is required to consider the value of any claims against third parties that are released under the plan of reorganization. The holding of the Bankruptcy Court conflicts with controlling law in the Second Circuit. *See WHBA Real Estate Ltd. P'ship v. Lafayette Hotel P'ship (In re Lafayette Hotel P'ship)*, 227 B.R. 445, 451 (S.D.N.Y. 1998) (holding creditor's potential right to begin foreclosure proceeding on estate property and extinguish non-debtor's lease not material to best interests test), *aff'd*, 198 F.3d 234 (2d Cir. 1999). Contrary to the holding of the Bankruptcy Court, section 1129(a)(7) requires a comparison only of distributions under the plan of reorganization against the amount available to the same creditors from a hypothetical chapter 7 estate as of the effective date of the plan.

Whether the Bankruptcy Court erred is a purely legal issue[2] that does not require an examination by the District Court of the factual record.[3] Absent an appellate determination of this issue, it will be difficult -- if not impossible -- for Quigley and Pfizer to propose a plan of reorganization that has any certainty of satisfying the "best interest" standard set by the

---

[2] As with the "fair and equitable" issue, this initial error was compounded by the fact that the Bankruptcy Court made an assessment of Pfizer's purported derivative liability after precluding Pfizer from introducing evidence of Pfizer's non-liability for Quigley's conduct in making or selling asbestos-containing products.

[3] Indeed, the Bankruptcy Court found that "[a]s a result of the Pfizer contribution to the Trust, the amount available for distribution to the Class 4 claimants under the Fourth Plan is certainly greater than the amount available to the same creditors <u>from a hypothetical Quigley chapter 7 estate</u>." Confirmation Decision at 62 (emphasis in original)

5

Bankruptcy Court. That standard would impose an impossible burden -- it requires not only a valuation of amounts available to dissenting creditors from a hypothetical chapter 7 estate, but also a valuation, for *each* dissenting creditor, of any claims against third parties potentially held by that creditor and released under the proposed plan. Accordingly, Pfizer satisfies all three prongs of the Section 1292(b) test. The District Court should grant Pfizer leave to appeal.

## STATEMENT OF FACTS

A. <u>Quigley and Pfizer's History and Asbestos Liability</u>

Quigley, founded in 1916, was a manufacturer of refractory products used primarily in the iron, steel, power generation, petroleum, chemical, and glass industries. Between the 1940s and 1970s,[4] Quigley manufactured and sold three asbestos-containing products: Insulag, Panelag, and Damit. Confirmation Decision at 4.

Pfizer acquired Quigley in 1968 and remains Quigley's sole shareholder. Before it streamlined its business to focus on pharmaceuticals, Pfizer also manufactured certain asbestos-containing products. After Quigley became a Pfizer subsidiary, many of Pfizer's liability insurance policies provided joint coverage to both companies. Confirmation Decision at 4-5.

Quigley was first named as a defendant in asbestos-related personal injury claims in 1979 or 1980, and by September 3, 2004 (the "<u>Petition Date</u>"), had been named as a defendant with respect to approximately 411,100 asbestos personal injury claims asserted in approximately 131,500 civil actions in federal and state courts throughout the United States. As of the Petition Date, 212,000 asbestos personal injury claims were either actually pending or expected to be asserted against Quigley -- not including future demands. Confirmation Decision at 5.

---

[4] Quigley stopped manufacturing asbestos-containing products in 1973 or early 1974.

NY 240,654,622 10-5-10

Pfizer was also a defendant with respect to 280,343 of the 411,100 claims asserted against Quigley. The Bankruptcy Court found that most if not all of these claims were based on exposure to Quigley's products rather than Pfizer's products. Confirmation Decision at 6.

Quigley's only significant remaining assets consist of its rights under certain shared insurance policies with Pfizer and to a portion of the proceeds of certain of those policies. Quigley and Pfizer have access to such assets to the extent of their covered liabilities and associated defense costs on a first-billed, first-paid basis, consistent with their respective rights under the shared insurance policies and related settlement agreements. (Tr. 236:14–237:12 (Berland).)[5]

B.  Global Resolution of Asbestos Liability

Quigley and Pfizer spent decades seeking to address and resolve their alleged asbestos-related liabilities. All of their efforts failed, and by late 2003, it had become apparent that Quigley could not continue to defend and settle asbestos claims in the tort system with its limited and quickly-diminishing assets. Quigley and Pfizer made the decision to pursue a two-pronged strategy to address and resolve the asbestos litigation. First, subject, *inter alia*, to the approval of its newly-appointed independent board of directors, Quigley would address its alleged liabilities by seeking chapter 11 relief and confirming a plan that would implement a channeling injunction for itself and Pfizer under section 524(g) of the Bankruptcy Code. Second, Pfizer would address its own alleged liabilities by (a) independently settling any and all asbestos-related claims against Pfizer, with Pfizer's own assets;[6] and (b) seeking a section 524(g) channeling injunction for all

---

[5] Attached hereto as Exhibit C. Citations to the trial transcripts are in the following format: (Tr. starting page number:line number–ending page number:line number (name of witness).)

[6] Pfizer committed not to access the Quigley-Pfizer shared insurance assets in the event a Quigley reorganization plan was confirmed; that commitment, however, is dependent on confirmation of an acceptable Quigley plan.

7

unsettled asbestos claims that are derivative of claims against Quigley. *See generally* Confirmation Decision at 7-8.

Throughout the summer of 2004, Quigley's financial situation "worsen[ed] dramatically every day." Confirmation Decision at 15. After considering its options, Quigley's board concluded that filing a chapter 11 petition with financial support from Pfizer was the best alternative. Absent reorganization, Quigley's claimants would receive payment on a first-come-first-served basis, and nothing would remain for future claimants. On September 3, 2004, Quigley filed its chapter 11 petition. Confirmation Decision at 15-16.

C. Quigley's Claims Handling Unit

In 2001, after a comprehensive assessment of their options, Quigley and Pfizer decided to create their own asbestos Claims Handling Unit (the "CHU"). Since January 2002, the CHU has administered and processed asbestos personal injury claims and certain other personal injury claims on behalf of Quigley and Pfizer. *See* Confirmation Decision at 7.

The Plan provides that Quigley and Pfizer will enter into the Pfizer Claims Services Agreement (the "CSA") on the effective date of the Plan. Under the CSA, Pfizer will pay Quigley $5 million per year to provide claim processing services to Pfizer, yielding total revenue of $25 million during Quigley's first five years of operation. *See* Confirmation Decision at 22.

The CSA caps the number of claims Pfizer can ask Quigley to process at 35,000 claims per year, and the parties have agreed to cap Quigley's processing costs at $1 million per year. Pfizer will pay Quigley a minimum of an additional $20 per claim for any claim Quigley processes above the 35,000 claim cap, subject to Quigley's right to renegotiate if $20 per claim would be unprofitable. *See* Confirmation Decision at 22-23. Quigley will earn net profits of at least $20 million under the CSA during the first five years after the effective date of the Plan.

(J47b (Liquidation Analysis), at 2, attached hereto as <u>Exhibit D</u>; Tr. 1187:4-12 (Charboneau), attached hereto as <u>Exhibit E</u>.) Indeed, the Bankruptcy Court found that "Quigley will remain viable and profitable for the five years that it operates under the Pfizer Claims Services Agreement," although it further found that "Quigley's prospects after five years are less certain." Confirmation Decision at 58.

ARGUMENT

Appeals from interlocutory bankruptcy court orders may be taken with leave of the district court. 28 U.S.C. § 158(a)(3). Neither the Bankruptcy Code nor the Bankruptcy Rules provide standards for evaluating a motion for leave to appeal. However, the District Court is to be guided by Section 1292 of title 28 the United States Code, which sets out the standards for appeals from the district court to the court of appeals for discretionary appeals. *Law Debenture Trust Co. of N.Y. v. Calpine Corp. (In re Calpine Corp.)*, 356 B.R. 585, 592-93 (S.D.N.Y. 2007); *In re WorldCom, Inc.*, 358 B.R. at 78.

Under Section 1292(b), leave to appeal an interlocutory order may be granted when the order (1) involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. *In re WorldCom, Inc.*, 358 B.R. at 78. An application for leave to appeal should be liberally granted where it can help the expeditious resolution of the case. *In re Manville Forest Prods. Corp.*, 31 B.R. 991, 995 n.5 (S.D.N.Y. 1983) (citation omitted).

A controlling question of law "need not affect a wide range of pending cases." *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990). "In regard to the first prong, the question of law must refer to a pure question of law that the reviewing court could decide

9

quickly and cleanly without having to study the record." *In re WorldCom, Inc.*, 358 B.R. at 79 (citation omitted).

The second prong, whether there is substantial ground for a difference of opinion as to the question of law, requires a genuine doubt as to whether the bankruptcy court applied the correct legal standard. *Id*. To determine if there is substantial ground for a difference of opinion, the court must "analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a *substantial* ground for dispute." *Flor v. Bot Fin. Corp. (In re Flor)*, 79 F.3d 281, 284 (2d Cir. 1996) (citation omitted) (emphasis in original).

The final prong is whether an interlocutory appeal would materially advance the ultimate termination of the litigation and will not result in piecemeal litigation. This section constitutes "a rare exception to the final judgment rule that generally prohibits piecemeal appeals." *Koehler v. Bank of Bermuda, Ltd.*, 101 F.3d 863, 865-66 (2d Cir. 1996) (Section 1292(b)'s requirement that appeal materially advance the termination of the litigation is "for those cases where an intermediate appeal may avoid protracted litigation" and is "aimed to vindicate the final [goal] of saving trial court time by avoiding fruitless litigation"); *In re WorldCom Inc. Sec. Litig.*, No. 02-CIV-3288, 2003 WL 22953644, at *4 (S.D.N.Y. Dec 16, 2003) ("[O]ne of the chief concerns of Section 1292 is the efficiency of the federal court system, and efficiency is of particular concern in large complex cases … [i]n 'so-called 'big' cases,' courts may grant [appeal] more freely …") (internal citations omitted).

Pfizer requests that the District Court grant leave to appeal three issues, each of which involves a pure question of law that satisfies Section 1292(b) of title 28.

10

A. The Court Should Grant Pfizer Leave to Appeal
Based on the Bankruptcy Court's Interpretation of Section
524(g)'s "Fair and Equitable" Requirement and Related Decision Excluding
Evidence that Pfizer Bears No Derivative Liability for Quigley's Conduct

The Bankruptcy Court held that in order to satisfy the "fair and equitable" standard under Bankruptcy Code Section 524(g), Pfizer must contribute to Quigley's asbestos trust an amount equivalent to the derivative liability that Pfizer would have without the benefit of the channeling injunction under the Plan. Confirmation Decision at 4. No other court has so ruled, and the Bankruptcy Court's finding is inconsistent with the plain meaning of section 524(g).

(i) *The Bankruptcy Court Applied the Wrong Test to Determine Whether the Channeling Injunction Would be "Fair and Equitable."*

Section 524(g) of the Bankruptcy Code authorizes a channeling injunction to bar demands against a qualified third-party, such as Pfizer, where the court finds that "such injunction with respect to such demands for purposes of this subparagraph is fair and equitable with respect to the persons that might subsequently assert such demands, in light of the benefits provided, or to be provided, to such trust on behalf of such . . . third-party." 11 U.S.C. § 524(g)(4)(B)(ii).

Contrary to the plain and unambiguous language of section 524(g) and the holdings of every court that has considered this issue, the Bankruptcy Court held that the "fair and equitable" determination is based on the benefits that *Pfizer*, the contributing party, will derive *from* the injunction as opposed to the benefits *that will be provided to* the future demand holders who may subsequently assert derivative claims. Relying on that incorrect legal conclusion, the Bankruptcy Court incorrectly determined that Pfizer's contribution was not "fair and equitable." Confirmation Decision at 54.

11

The Bankruptcy Court erred. Section 524(g)(4)(B)(ii) is crystal clear. The contribution must be "fair and equitable with respect to persons that might subsequently assert such demands, in light of the benefits provided . . . on behalf of . . . such third party." Nowhere does section 524(g) suggest that the contribution should be measured based upon the benefits received by the third party from the injunction. *See, e.g., In re U.S. Mineral Prods. Co.*, No. 01-2471 (JKF), 2005 WL 5898300, at *24 (Bankr. D. Del. Nov. 29, 2005) (determining that "in light of the benefits provided, or to be provided, to the Asbestos Trusts by or on behalf of each Protected Party, the Permanent Channeling Injunction is fair and equitable *with respect to persons* that might subsequently assert Demands") (emphasis added). Courts that have considered the "fair and equitable" language in section 524(g) have focused on whether the contribution was "substantial," or simply focused on the benefit provided to the 524(g) trust, or both.[7] Not a single court has utilized the test adopted by the Bankruptcy Court in this case -- for good reason: it is not possible to determine the precise amount of potential "liability" any entity might have for future asbestos related injuries. There are risks in the litigation system and a multitude of factors (including, for example, the decision of individuals to assert claims in litigation) that

---

[7] For example, in *Kaiser Aluminum*, the "fair and equitable" finding was based on the "substantial" contributions made by the reorganized debtors, which included $13 million and 94% of the shares of one of the debtors (without regard to either ability to pay or extent of alleged liability). *In re Kaiser Aluminum Corp.*, No. 02-10429 (JKF), 2006 Bankr. LEXIS 3945, at *58 (Bankr. D. Del. Feb. 6, 2006); *see also In re J T Thorpe Co.*, 308 B.R. 782, 790 (Bankr. S.D. Tex. 2003) (holding in light of the benefits provided to the trust, the extension of the channeling injunction to the third parties is fair and equitable), *aff'd*, 2004 U.S. Dist. LEXIS 13589 (S.D. Tex. Mar. 3, 2004). In *Congoleum*, by contrast, the court held that the parent's contribution of only $250,000 was not substantial and thus did not satisfy the fair and equitable requirement. *See In re Congoleum Corp.,* 362 B.R. 167, 175-82 (Bankr. D.N.J. 2007).
In *ABB Lummus*, the court found that because the plan included "significant financial contributions" from the debtor, as well as the debtor's affiliates, and created a "sufficient and reliable pool of assets," the plan satisfied the best interests test. *In re ABB Lummus Global, Inc.*, No. 06-10401 (JKF), 2006 WL 2052409, at *10 (Bankr. D. Del. June 29, 2006). The court then applied the same standard in determining whether the plan was fair and equitable to future demand holders. The court held that the channeling injunction was fair and equitable with respect to future claimants "in light of the benefits provided and to be provided to the Lummus Asbestos PI Trust." *Id.* After determining that the Plan satisfied both tests, the court concluded that "confirmation of the Plan is in the best interests of, and is fair and equitable to, persons [that] might subsequently assert Demands against the Asbestos Protected Parties." *Id.*

12

contribute to a determination of liability and damages. It is not possible to create a precise mathematical formula to determine the "benefit" to the contributing entity.

    (ii)    *The Bankruptcy Court Improperly Precluded Pfizer From Introducing Evidence of its Non-liability for Quigley's Products and Erroneously Addressed That Issue Without a Competent Record or Legal Basis.*

Although the Bankruptcy Court, in addressing the "fair and equitable" issue, incorrectly considered the benefits to Pfizer from the channeling of the derivative claims to the trust, the Bankruptcy Court precluded Pfizer from introducing evidence that would have been determinative of the fact that Pfizer has no derivative liability relating to Quigley's asbestos-containing products, the overwhelming preponderance of which were made and sold long before Quigley became a subsidiary of Pfizer. (*See* Tr. 5:21-15:21 (granting Ad Hoc Committee's motion to preclude evidence of Pfizer's non-liability for derivative claims arising from Quigley's products), attached hereto as <u>Exhibit F</u>.) By excluding this evidence, while measuring the adequacy of Pfizer's contribution under both section 524(g) and 1129(a)(7), the Bankruptcy Court improperly deprived Pfizer of the ability to demonstrate that it has no liability for Quigley's asbestos-containing products -- an issue that is unquestionably relevant to an analysis of a company's future liability. Although this evidence should not be necessary under the proper legal standard, it certainly was necessary under the erroneous standard imposed by the Bankruptcy Court.[8]

---

[8] In estimating Pfizer's derivative liability, the Bankruptcy Court relied on its own, "back of the envelope" calculation. To perform that calculation, the Bankruptcy Court simply multiplied by a factor of 23% the estimate of Quigley's (not Pfizer's) future aggregate asbestos liability calculated by the futures representative's expert. *See* Confirmation Decision at 43. The 23% factor was "derived" by adding together the total of each company's respective asbestos settlement costs over the decades and then computing the percentage of the aggregate amount that Pfizer's settlement costs represented. That factor, however, was nothing more than an historical artifact, reflecting the cumulation of amounts that had been "billed" to each company and their insurers based on numerous considerations and was never intended to reflect a division of liability as between Quigley and Pfizer for Quigley's products. (*See* Tr. 231-3-8; 232:19-233-23 (Berland) (noting that Pfizer never settled a derivative claim and that settlements were paid 100% by either Pfizer or Quigley, and an allocation would only be made where a plaintiff

13

Clearly, the immediate determination of this issue would materially advance the ultimate termination of the litigation. In determining how to proceed toward development and confirmation of a new plan, the parties require clear guidance as to the appropriate standard to be applied in determining whether Pfizer's contribution is fair and equitable within the meaning of section 524(g)(4)(B)(ii) of the Bankruptcy Code. The District Court should grant Pfizer leave to appeal.

B. The Court Should Grant Pfizer Leave to Appeal Based on the Bankruptcy Court's Legal Error in Holding that Quigley's Business, With Five Years of Guaranteed Profitability, is Not Feasible Under Section 1129(a)(11)

The Bankruptcy Court incorrectly held that Quigley is required to prove that its claims-processing business would be profitable beyond five years from the effective date of the Plan. While finding that "Quigley will remain viable and profitable for the five years that it operates under the Pfizer Claims Services Agreement," the Bankruptcy Court nonetheless incorrectly determined that the Plan fails the feasibility test under section 1129(a)(11) of the Bankruptcy Code because "Quigley's prospects after five years are less certain." Confirmation Decision at 58. Once again, no other court has so ruled.

Section 1129(a)(11) of the Bankruptcy Code requires that the plan proponent demonstrate that "confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). The plan must be workable and stand a reasonable likelihood of success. *Kane v. Johns-Manville*

---

alleged exposure to products of both companies), attached hereto as <u>Exhibit G</u>; Tr. 2695:2-13 (Berland) (discussing allocations of settlements)), attached hereto as <u>Exhibit H</u>.) The Quigley liability estimate was based on assumptions about the future claiming rate against Quigley (not Pfizer) and a schedule of assumed claim values. In short, having barred Pfizer from introducing competent evidence to demonstrate that it has no derivative liability for Quigley's products, the Bankruptcy Court, without any legal basis, went on to make its own erroneous finding and assessment based upon "data" that was never intended, does not show, and could never support any finding of derivative liability on Pfizer's part.

14

*Corp.*, 843 F.2d 636, 649 (2d Cir. 1988) ("[T]he feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed."); *In re Leslie Fay Cos., Inc.*, 207 B.R. 764, 788 (Bankr. S.D.N.Y. 1997); ("The court must find that the plan is workable and has a reasonable likelihood of success."). "To establish feasibility, the debtor must present proof through reasonable projections, which are not speculative, conjectural or unrealistic, that there will be sufficient cash flow to fund the plan and maintain operations." *Leslie Fay.,* 207 B.R. at 789; *accord In re Repurchase Corp.*, 332 B.R. 336, 343 (Bankr. N.D. Ill. 2005) ("Confirmation should neither be based on speculation nor the visionary projections of a debtor's champion."); *In re Prudential Energy Co.*, 58 B.R. 857, 862-63 (Bankr. S.D.N.Y. 1986) ("[A] plan based on impractical or visionary expectations cannot be confirmed. . . . [The president] testified that he ha[d] continuing contact[] with prospective investors. But that unsubstantiated and optimistic testimony hardly rises to the level of orders in hand.").

Here, the Bankruptcy Court found that "Quigley will remain viable and profitable for the five years that it operates under the Pfizer Claims Services Agreement." There is no factual issue to be determined. Confirmation Decision at 58.

Neither the Bankruptcy Code nor case law requires that a debtor demonstrate guaranteed viability for some period greater than five years. In fact, the case law is clear that "[s]uccess need not be guaranteed" at all. *Kane v. Johns-Manville Corp.*, 843 F.2d at 649. Here, the CSA *assures* Quigley's viability for a minimum of five years. As a matter of law, this is more than the Bankruptcy Code requires.

The Bankruptcy Court incorrectly held that because Quigley's success was not *certain* beyond five years, the Plan was not feasible. The Bankruptcy Court's finding is wrong as a matter of law. Indeed, bankruptcy courts have consistently confirmed plans that provide

15

projections of five years or less, and even where (unlike here) there is no assurance of success within those five years. *See, e.g.*, *Leslie Fay*, 207 B.R. at 789 (finding plan feasible where debtor would need to refinance within two to three years of emergence from chapter 11); *In re DBSD N. Am., Inc.*, 419 B.R. 179, 203 (Bankr. S.D.N.Y. 2009) (finding plan feasible where it was "reasonable" that debtor would be able to obtain a secured financing commitment or a strategic investment or partner within two years.); *In re Idearc Inc.*, 423 B.R. 138, 168 (Bankr. N.D. Tex. 2009) (finding plan feasible based on five year projections); *In re Trans World Airlines, Inc.*, 185 B.R. 302, 317 (Bankr. E.D. Mo. 1995) (finding plan feasible based on three year projections). A thorough review of case law has failed to uncover a single case where a court found a plan of reorganization failed the feasibility test because the debtor's prospects after a five-year period were "less certain," notwithstanding a finding of viability for five years after the plan effective date. It would be virtually impossible for a debtor to satisfy the section 1129(a)(11) test if it had to prove that its prospects beyond five years were not less certain than in the first five years. Indeed, few companies -- in or out of bankruptcy -- could make such a showing.

The immediate determination of this issue would materially advance the ultimate termination of this chapter 11 case. Absent such a determination, it will be extremely difficult for Quigley and Pfizer to propose a plan of reorganization that will have any certainty of satisfying the feasibility standard set by the Bankruptcy Court, which requires the certainty of profitability for an indeterminate period of time beyond five years from the plan effective date. Accordingly, all three prongs of Section 1292(b) are met. The District Court should grant Pfizer leave to appeal.

C.  The Court Should Grant Pfizer Leave to Appeal
    Based on the 1129(a)(7) "Best Interest of Creditors" Issue

Section 1129(a)(7) of the Bankruptcy Code provides, in relevant part, that a court "shall confirm a plan only if" each creditor in an impaired class "(i) has accepted the plan; or (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date."  The Bankruptcy Court held that, in determining whether a creditor receives on account of its claims under a chapter 11 plan an amount not less than what it would receive in a hypothetical chapter 7, a court is required to consider the value of any claims against third parties that are released under the plan of reorganization.  Confirmation Decision at 63.

Based on this holding and the Bankruptcy Court's determination of Pfizer's derivative liability estimated by the Bankruptcy Court using the 23% historical billing allocation, the Bankruptcy Court determined that the Plan fails the "best interest" test.  Confirmation Decision at 64.  Pfizer respectfully submits that the Bankruptcy Court erred in its interpretation of the "best interest" test and compounded that error by using its evaluation of Pfizer's derivative liability in applying its test while precluding Pfizer from introducing key and determinative evidence that Pfizer has no derivative liability for Quigley's asbestos-containing products.

When determining the treatment of creditors under the best interests test, courts consider only the assets of the estate that can be liquidated for the benefit of creditors as of the effective date.  *See In re 203 N. LaSalle St. Ltd. P'ship*, 190 B.R. 567, 584 (Bankr. N.D. Ill. 1995) (interpreting "liquidate" in section 1129(a)(7) as being able to pay or settle liabilities by first determining actual liabilities as of the effective date and then applying assets to their discharge), *rev'd on other grounds*, 526 U.S. 434 (1999).

17

In *Lafayette*, the Second Circuit affirmed the District Court's finding that a creditor's potential right to assert a legal action against a non-debtor third-party is "immaterial" to the best interests test, given that the test only examines assets and claims that can be liquidated as of the effective date of the plan. *In re Lafayette Hotel P'ship,* 227 B.R. at 451 (holding creditor's potential right to begin foreclosure proceeding on estate property and extinguish non-debtor's lease not material to best interests test), *aff'd*, 198 F.3d 234 (2d Cir. 1999).

The Bankruptcy Court declined to follow *Lafayette*, reasoning that the derivative claims "presently exist and would exist at the time of any date selected for valuation in a hypothetical Quigley chapter 7." Confirmation Decision at 64. Pfizer respectfully submits that *Lafayette* is controlling in the Second Circuit and the Bankruptcy Court erred in refusing to follow it. Like the third-party claims in *Lafayette*, the derivative claims against Pfizer are claims against a third party that cannot be liquidated as of the effective date, and are immaterial to the "best interest" test.

Other courts that have confronted the issue have reached a similar conclusion. For example, in *Dow Corning*, the court held that "[w]hen employing the best-interest-of-creditors test, courts look at the dividend the creditor would receive from the chapter 7 trustee - *and only that amount* - for comparison with the dividend available under the plan." *In re Dow Corning Corp.*, 237 B.R. 380, 411 (Bankr. E.D. Mich. 1999) (citing 7 Collier on Bankruptcy ¶ 1129.03[7][b]) (emphasis added). This determination was a vital part of the court's holding.

The immediate determination of this issue would materially advance the ultimate termination of the litigation. In determining how to proceed, and whether to seek confirmation of a new plan, the parties require clear guidance as to the appropriate standard to be applied in determining whether a new plan of reorganization satisfies the "best interest" of creditors test

18

under section 1123(a)(4) of the Bankruptcy Code. This is particularly important because the interpretation of the Bankruptcy Court would require an evaluation of the cost to *each* claimant of the potential third party liability that is being released under the plan -- a task that is impossible - especially given the uncertainties that are inherent in valuing derivative tort claims. The District Court should grant Pfizer leave to appeal.

## CONCLUSION

For all of the foregoing reasons, Pfizer requests that the District Court grant Pfizer leave to appeal from the Bankruptcy Court's determination that (i) the Plan is not "fair and equitable" within the meaning of section 524(g)(4)(B)(ii) the Bankruptcy Code, (ii) the Plan is not feasible as required by section 1129(a)(11) of the Bankruptcy Code, and (iii) the Plan does not satisfy the best interests test as required under section 1129(a)(7) of the Bankruptcy Code.

New York, New York
October 5, 2010

                                              GREENBERG TRAURIG, LLP

                                              */s/ John H. Bae*

                                              Bruce R. Zirinsky
                                              John H. Bae
                                              Gary D. Ticoll
                                              MetLife Building
                                              200 Park Avenue
                                              New York, New York  10281
                                              Telephone:  (212) 801-9200
                                              Facsimile:  (212) 801-6400
                                              zirinskyb@gtlaw.com
                                              baej@gtlaw.com
                                              ticollg@gtlaw.com

                                              CADWALADER, WICKERSHAM & TAFT LLP
                                              One World Financial Center
                                              New York, New York  10281
                                              Telephone:  (212) 504-6000
                                              Facsimile:  (212) 504-6666
                                              Dennis J. Block
                                              dennis.block@cwt.com

                                              Attorneys for Pfizer Inc.