TRACY HOPE DAVIS
United States Trustee for Region 2
33 Whitehall Street, 21st Floor
New York, New York 10004
Telephone: 212-510–0500
By: Greg M. Zipes
Trial Attorney

HEARING DATE: January 13, 2011
HEARING TIME: 2:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
In re                                                        :   Case No. 04-15739 (SMB)
                                                             :
                                                             :   (Chapter 11)
QUIGLEY COMPANY, INC.,                                       :
                                                             :   <u>NOTICE OF MOTION</u>
                                  Debtor.                    :
                                                             :
------------------------------------------------------------ x

     PLEASE TAKE NOTICE that upon this Notice of Motion and the accompanying memorandum of law and declaration, the United States Trustee for Region 2 (the "United States Trustee") will move this Court before the Honorable Stuart M. Bernstein, Bankruptcy Judge, in the United States Bankruptcy Court, One Bowling Green, New York, New York 10004, on January 13, 2011 at 2:00 p.m., or as soon thereafter as counsel can be heard, for entry of an order dismissing this case, and for such other and further relief as this Court may deem just and proper. The original application is on file with the Clerk of the Bankruptcy Court.

     PLEASE TAKE FURTHER NOTICE that any responsive papers should be filed with the Court and personally served on the United States Trustee, at 33 Whitehall Street, 21st Floor, New York, New York 10004-2112, to the attention of Greg M. Zipes, Esq., no later than three (3) days

prior to the return date set forth above. Such papers shall conform to the Federal Rules of Civil Procedure and identify the party on whose behalf the papers are submitted, the nature of the response, and the basis for such response.

Dated: New York, New York
       December 22, 2010

                                        TRACY HOPE DAVIS
                                        UNITED STATES TRUSTEE

                           By:    /s/ Greg M. Zipes
                                  Greg M. Zipes (GMZ-4539)
                                  Trial Attorney

                                  33 Whitehall Street
                                  21st Floor
                                  New York, New York 10004-2112
                                  Tel. No. (212) 510-0500
                                  Fax. No. (212) 668-2255

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                      : Case No. 04-15739 (SMB)
In re                                     : (Chapter 11)
                                                  :
QUIGLEY COMPANY, INC.,            :
                                                  :
                                 Debtor.             :
                                                  :
------------------------------------------------------------x

**MEMORANDUM OF LAW OF THE UNITED STATES TRUSTEE
IN SUPPORT OF MOTION FOR AN ORDER DISMISSING THIS CASE**

**TO THE HONORABLE STUART M. BERNSTEIN,
UNITED STATES BANKRUPTCY JUDGE**:

       This memorandum of law is in support of the United States Trustee's motion for an order dismissing the above-captioned Chapter 11 case of Quigley Company, Inc. ("Quigley" or the "Debtor") to a case under Chapter 7 pursuant to 11 U.S.C. § 1112(b).

### INTRODUCTION

       The United States Trustee seeks dismissal of this case. As this Court is well aware, following a 15 day confirmation hearing, the Court denied the Debtor's Fourth Plan[1] finding, inter alia, that the proposed plan was not feasible and was proposed in bad faith. There has been no change in the Debtor's operations or circumstances - and apparently, negotiations between the Ad Hoc Creditors' Committee (the "AHC") and Pfizer have been unsuccessful despite the passage of several months. The Debtor is not a viable entity and, as the operating report for the month of November 2010 makes clear, the Debtor still continues to operate at a loss - not just a loss for the month of November, but an overall loss in the sum of over $55 million since the case was filed over six years ago.

---

[1] All capitalized terms used but not defined herein shall have the meaning ascribed to them in the Fourth Plan or the Court's opinion denying confirmation (the "Opinion"). See In re Quigley Co., 437 B.R. 102 (Bankr. S.D.N.Y. 2010).

The harm in delaying the inevitable dismissal of this case is to the individuals who have filed asbestos claims against the Debtor and Pfizer. For some of those individuals, time may be of the essence. For the reasons discussed below, and in accordance with 11 U.S.C. 1112(b), this case should be dismissed.[2]

## BACKGROUND

### A. General

On September 4, 2004 (the "Petition Date"), the Debtor filed for bankruptcy relief under Chapter 11 of the Bankruptcy Code. The Debtor proposed numerous plans, and the Court ultimately held the confirmation hearing on the Debtor's Fourth Plan starting in September of 2009. The Debtor, the Official Committee of Unsecured Creditors (the "Committee"), Albert Togut, Esq., the Future Claims Representative, and Pfizer, Quigley' parent, supported confirmation. The AHC and the United States Trustee opposed confirmation, and sought dismissal of the case. During the bench trial, the Court heard numerous fact and expert witnesses, and received scores of documentary exhibits. See In re Quigley Co., 437 B.R. 102, 111 (Bankr. S.D.N.Y. 2010). Following the trial, as stated, the Court denied confirmation. Id.

### B. The Court's Legal Findings

The Court made the following legal findings in the Opinion:

(a) *The Plan was not feasible*. The Court found that "Quigley failed to prove that its plan is feasible, or more generally, that it satisfied 11 U.S.C. § 1129(a)(11). Once a five year agreement with Pfizer ends, Quigley will not have sufficient business to continue operating, and in all likelihood, will need to seek further bankruptcy relief." Quigley, 437 B.R. at 143.

---

[2]The United States Trustee, in a motion dated May 11, 2007 (the "Prior UST Motion"), sought an order converting or dismissing Quigley's bankruptcy case. See Docket No. 1089. This Court reserved decision on the UST Motion to Dismiss, along with the AHC's contemporaneously filed motion to appoint a trustee, pending an evidentiary hearing to occur as part of the confirmation hearing. See Fifth Disclosure Statement, p. 51. This motion supersedes the Prior UST Motion.

(b)     *The Plan was not proposed in good faith*.  The Court found that "Pfizer created and incentivized an impaired subclass consisting of the majority of the members of Class 4 to vote in favor of Quigley's plan."  Id. at 129.  Through this "divide and conquer" strategy, the Court concluded that the "Fourth Plan was proposed in bad faith since it was designed to achieve acceptance through a tainted vote."  Id.

(c)     *The Plan did not meet the "best interest of creditors" test*.  The Court found that the Fourth Plan failed the "best interest" test.  "Under the Fourth Plan, the dissenting Non-Settling Claimants will receive an estimated 7.5% distribution on their allowed claims.  Even if they would receive nothing in a hypothetical Quigley chapter 7 bankruptcy, they would retain their rights to pursue their derivative claims against Pfizer, which I estimate to be worth 23% of that same claim based upon what Pfizer historically paid to settle derivative claims."  Id. at 146.

## C.     Events Following The Issuance Of The Opinion

On October 5, 2010, Pfizer filed the Motion for Leave to Appeal from the Order Denying Confirmation and Post-Trial Findings of Fact and Conclusions of Law (the "Motion for Leave").  On October 5, 2010, the AHC filed (i) the Motion for an Order Dismissing the Quigley Case (the "AHC Dismissal Motion") and (ii) the Motion for an Order (A) Dissolving the Existing Injunction and (B) if and to the Extent Necessary, Granting Relief from the Automatic Stay (the AHC motions, together with the Motion for Leave, the "Motions").

In a stipulation among Pfizer, the Debtor and the AHC (the United States Trustee was not a signatory), those parties agreed to extend the time to respond to the object to the Motions.  Most recently, the time to respond was extended to December 31, 2010, with a hearing on the Motions currently scheduled for January 13, 2011.  See Doc. No.  2177.

The monthly operating report for the month of November 2010, the last one filed, showed a loss for the month of $655,758 and aggregate losses since the Petition Date of $56,068,205 (the "November MOR").  Doc. No. 2185.  See Zipes Decl. Ex. A.

**BASIS FOR RELIEF**

A.  **Dismissal Is Appropriate Under
    The Enumerated Provisions of 11 U.S.C. § 1112(b)**

Section 1112(b) of the Bankruptcy Code prior to the 2005 amendments describes a variety of factors which may constitute "cause" for the conversion of a Chapter 11 case to a Chapter 7 case or for the dismissal of a Chapter 11 case in its entirety. See 11 U.S.C. § 1112(b).[3] Under this provision, the Court may find cause based upon the Debtor's inability to effectuate a plan. See 11 U.S.C. § 1112(b)(2).

Establishing the existence of any one of the enumerated grounds for conversion or dismissal is sufficient to establish cause justifying the relief sought. Loop Corp. v. United States Trustee, 379 F.3d 511, 515 n.2 (8th Cir. 2004), cert. denied, 543 U.S. 1055 (2005). At the same time, the specified circumstances constituting cause in the pre-amended Section 1112(b) are not exhaustive or limiting. C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship), 113 F.3d 1304, 1311 (2d Cir.1997); In re Gonic Realty Trust, 909 F.2d 624, 626 (1st Cir. 1990).

The Debtor is unable to effectuate a plan. 11 U.S.C. § 1112(b)(2); In re Tornheim,181 B.R. 161, 164 (Bankr. S.D.N.Y. 1995) (case dismissed when debtors did not file a plan and disclosure statement sixteen months after the filing date, with the court stating that the debtor "cannot wallow in chapter 11"); In re William Steiner, Inc., 139 B.R. 356, 358 (Bankr. D. Md. 1992) (dismissal warranted because, among other reasons, no plan had been filed within two years, an unreasonable delay under the circumstances); see also BH S&B Holdings, LLC, 2010 WL

---

[3]  This section was amended, pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "BAPCPA"), Pub. L. 109-8, 119 Stat. 23 (codified as amended sections of 11 U.S.C.). However, as this case was filed in 2004, these amendments are not applicable to this case. In re Dapontes, 364 B.R. 866 (Bankr.D.Conn.2007) (effective date of BAPCPA is October 17, 2005; BAPCPA does not apply to cases filed before October 15, 2005).

4644440 * 7 (Bankr. S.D.N.Y. 2010) (cause for conversion found where the debtors's exclusive period expired after several extensions were granted and no plan had been filed).

The case is approaching its seventh anniversary. The Court has already made considered legal and factual findings following an extensive trial. In reaching its legal conclusions as outlined above, the Court found that Quigley was a "moribund" shell company until a few months before the Petition Date when Pfizer "resuscitat[ed]" Quigley and transferred its subsidiary to its own money-losing claims handling unit so it could look like a real business (notwithstanding that Quigley is merely processing its own liability claims). Id. at 126.

Specifically, "[i]n January 2002, Pfizer formed a claims-handling unit ('CHU') to process asbestos personal-injury claims and certain other personal-injury claims asserted against Quigley and Pfizer." Id. at 113. That CHU was transferred to Quigley. However, the CHU has not been profitable, and "Quigley has been sustained largely through loans from Pfizer. Between August 31, 2004 and August 31, 2009, Quigley received a total of $3.2 million under the Shared Services Agreement, but suffered operating losses of roughly $46 million." Id. at 114. As demonstrated by the November MOR, the Debtor continues to lose money after the Opinion was rendered, simply confirming the obvious.

As set forth in the Fourth Plan, Quigley was to enter into a Pfizer Claims Services Agreement. The Court found that, once the Pfizer Claims Services Agreement expires, Quigley will not have sufficient business to continue operating, and in all likelihood, will need to seek further bankruptcy relief. Id. at 143. Calling Quigley's business plan offered in the Fourth Plan "speculative at best and visionary at worst," the Court noted that despite marketing efforts, Quigley has been unable to attract any new business since the Petition Date. Id. at 142.

The law of the case provides "that where a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." See In re Manhattan Invest. Fund Ltd., 343 B.R. 63, 67 (S.D.N.Y. 2006) (citing Arizona v. California, 460 U.S. 605, 618-19 (1983)). As found by the Court, the Debtor is not viable and cannot reorganize.

In addition, the delay has resulted in the use of estate assets through the consumption of shared insurance proceeds to fund Quigley's operating losses and professional fees. The Court should dismiss the case because of the continuing losses and the inability to confirm a plan.

### B. Dismissal Is Appropriate For The Debtor's Lack of Good Faith

While section 1112(b) provides fifteen instances for which cause may be found, this Court may convert or dismiss a Chapter 11 case for reasons other than specified in section 1112(b) as long as those reasons satisfy "cause." In re State Street Assocs., L.P., 348 B.R. 627, 639 n. 24 (Bankr. N.D.N.Y. 2006) (while the list of examples of cause has changed, "the fact that they are illustrative, not exhaustive has not") (citing In re 3 RAM, Inc., 343 B.R. 113, 117 (Bankr. E.D. Pa. 2006)).

Thus, pre-BAPCPA, a lack of good faith in filing a chapter 11 case constituted cause to dismiss a case under 11 U.S.C. § 1112(b). In re AdBrite Corp., 290 B.R. 209, 217 (Bankr. S.D.N.Y. 2003) (courts commonly consider whether the debtor's bankruptcy petition was filed in good faith in assessing whether "cause" exists to dismiss the case); In re 698 Flushing Realty Corp., 335 B.R. 17, 20-21 (Bankr. E.D.N.Y. 2005). A bad faith filing is one where the "totality of the circumstances" indicates that reorganization is not the "proper course of action in a particular case." In re Fraternal Composite Serv, Inc., 315 B.R. 247, 249 (Bankr. N.D.N.Y. 2003). Although there is no particular test for determining whether a debtor has filed a petition for reorganization in good faith, "[i]n finding a lack of good faith, courts have emphasized an intent to abuse the judicial process and the purposes of the reorganization provisions." In re Natural Land Corp., 825 F.2d 296 (11th Cir. 1987) (citing In re Albany Partners, Ltd., 749 F.2d 670, 674 (11 Cir. 1984)).

Here, the Court has made a finding of bad faith in connection with the Plan. Many of the factual and legal findings focused on Pfizer's pre-petition conduct. In re Adler, 329 B.R. 406, 410 (Bankr. S.D.N.Y. 2005) ("To protect against dismissal pursuant to section 1112(b), a debtor must exhibit good faith at each stage of the bankruptcy case: in its commencement, during its

prosecution and at confirmation. The good faith requirements to prevent abuse of the provision, purpose or spirit of the Bankruptcy Code.") (internal citations omitted).

For example, the Court made the specific factual findings that "Pfizer wrongfully manipulated the voting process to assure confirmation of the Quigley plan, and thereby gain the benefit of the channeling injunction for itself and the other Pfizer Protected Parties." Id. at 126. "In a nutshell, Pfizer bought enough votes to assure that any plan would be accepted." Id. at 127.

Finding that the bankruptcy case was "a Quigley bankruptcy in name only," the Court stated that "Pfizer conceived and executed the global strategy, including the resuscitation of the moribund Quigley and the filing of the chapter 11 case contemplated in the Pfizer Settlement Agreements." Id. at 126.

Moreover, the Fourth Plan, the one that was being considered by the Court for confirmation, like the ones that preceded it, was "designed to free the Pfizer Protected Parties from derivative liability, and only incidentally, to reorganize Quigley to the extent necessary to confirm the plan. Pfizer, the parent of Quigley, the architect of the global strategy, the only source of chapter 11 and plan financing and the principal beneficiary of the channeling injunction, is the real proponent of this plan." Id. at 126-127. The Court found that "Quigley acquiesced in if not actively embraced Pfizer's actions in connection with the prosecution of its chapter 11 cases, and Pfizer's bad faith may be attributed to Quigley as well." Quigley, at 127, n. 32.

The delay is causing manifest prejudice to claimants. As stated by the AHC, while the case has been pending, creditors have been unable to pursue their state law claims against Pfizer and "many of these asbestos claimants have died during the prolonged delay." See AHC Dismissal Motion at ¶ 24. As the Court found, the Fourth Plan did not meet the "best interest of creditors" test. Under the Fourth Plan, the dissenting Non-Settling Claimants will receive an estimated 7.5%, but the Court found that, absent the bankruptcy, these same claimants could pursue their derivative claims against Pfizer, which the Court estimated to be worth 23% of that same claim based upon what Pfizer historically paid to settle derivative claims. Id. at 146.

The AHC, while apparently allowing a certain amount of time to come to an agreement with Pfizer after the Opinion was rendered, has made its opinion clear, stating most recently that the "charade that is Quigley's bankruptcy represents the quintessential case for dismissal. Quigley is nothing but an asset-less dummy entity that was resurrected, handed Pfizer's money-losing claims handling unit, and then propped up by Pfizer pursuant to a non-arm's-length contract of limited duration - all in order to provide Quigley's extremely well-heeled non-debtor parent Pfizer with a channeling injunction against present and future asbestos claims." See AHC Dismissal Motion at ¶ 3. Because of the the Debtor's bad faith, established after trial, the United States Trustee recommends that the case be dismissed.

WHEREFORE, the United States Trustee respectfully requests that this Court issue an order dismissing this case pursuant to 11 U.S.C. § 1112(b); and grant such other and further relief as this Court deems appropriate.

Dated: New York, New York
December 22, 2010

        Respectfully submitted,

        TRACY HOPE DAVIS
        UNITED STATES TRUSTEE

By: /s/ Greg M. Zipes
     Trial Attorney
     33 Whitehall Street
     21st Floor
     New York, New York 10004
     (212) 510-0500