Michael L. Cook
Robert J. Ward
Lawrence V. Gelber
SCHULTE ROTH & ZABEL LLP
Attorneys for the Debtor and Debtor in Possession
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Facsimile: (212) 593-5955

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| QUIGLEY COMPANY, INC., | : | |
| | : | |
| Debtor. | : | Case No. 04-15739 (SMB) |
---------------------------------------------------------x

# RESPONSE OF QUIGLEY COMPANY, INC. TO MOTIONS OF AD HOC COMMITTEE AND UNITED STATES TRUSTEE FOR ORDER UNDER 11 U.S.C. § 1112(b) DISMISSING QUIGLEY'S REORGANIZATION CASE

Quigley Company, Inc., debtor-in-possession ("Quigley"), objects to (i) the motion, dated October 5, 2010, of the Ad Hoc Committee ("AHC") seeking dismissal of this case pursuant to section 1112(b) of the Bankruptcy Code ("Code") [Docket No. 2135] (the "AHC Motion"), joined by (a) Hissey Kientz, L.L.P. and Hissey, Kientz & Herron P.L.L.C. [Docket No. 2165], and (b) Reaud, Morgan & Quinn, L.L.P. [Docket No. 2168], and (ii) the motion, dated December 22, 2010, of the United States Trustee ("UST"), seeking dismissal of this case [Docket No. 2188] (the "UST Motion," and together with the AHC Motion, the "Motions"), as follows:

## PRELIMINARY STATEMENT

1. The Court should grant Quigley the opportunity to file a new plan, with the backing of its parent, Pfizer Inc. ("Pfizer"). The Court's September 8, 2010 decision (the "Decision") showed all parties, particularly Pfizer, what is required for an improved -- and confirmable -- reorganization plan. Quigley and Pfizer are plotting a new course and intend for Quigley to propose the terms of a new plan no later than the January 13, 2011 status conference. Quigley and Pfizer should be given a reasonable amount of time to implement an acceptable plan for Quigley -- one with enhanced value for all parties -- to address the Court's concerns. The Motions are thus premature.

2. On September 27th, the Court held a status conference to consider the future of this case. The exact question presented by the Motions was raised by the Court and directed to the AHC:

> COURT: … But other things being equal, if Pfizer could come up with a plan now or if Quigley could come up with a plan now that was beneficial to creditors and didn't impede you from going forward, which is one of your principal arguments over the last few years, why not allow them to try and do that?
> …
> AHC: … Pfizer has an opportunity to make good on its offer to the Court….[a]nd if it does, my motion to dismiss, my motion for any other form of relief can always be halted.

Transcript of September 27, 2010 Status Conference, at 10:19-24; 11:10-14.[1]

3. A reasonable amount of additional time will allow Quigley and Pfizer to negotiate, solicit, and implement a successful plan. Quigley's case is complex, with claims of more than 200,000 current asbestos claimants and hundreds of thousands of future claimants. The treatment of those claims under a new plan will require substantive negotiations between

---

[1] Relevant portions of the September 27, 2010 status conference transcript are attached as Exhibit A.

Quigley, Pfizer, and the other major constituents in this case. Quigley and Pfizer should be permitted the necessary time to pursue those negotiations, particularly when Pfizer already has offered to contribute substantially more than it has in the past.

4. Finally, the relief requested in the Motions is simply not in the best interests of Quigley's creditors. Given the significantly smaller asset pool and the lack of a mechanism for claims administration if the case were dismissed, future claimants probably would be deprived of <u>any</u> recovery from Quigley's estate. Further, if this case were dismissed, there would be no trust distribution procedures in place to ensure orderly administration of current and future claims and distribution of assets. For these reasons, the Motions should be denied.

5. The Court has discretion in deciding whether cause exists to dismiss a chapter 11 case and may, in its equitable powers, find that dismissal is not in the best interests of Quigley's creditors, particularly when a third party such as Pfizer has committed to funding hundreds of millions of dollars more for an improved reorganization plan.

6. Quigley and Pfizer should be given a reasonable amount of time to try to implement a new reorganization plan. The Court never found that another plan could not be confirmed. After further negotiations with the other parties in this case, Quigley believes that a confirmable 524(g) plan is still achievable. Dismissal of this case is unnecessary and unwarranted at this time.

**OBJECTION**

A. **Quigley's Reorganization Must Not Be Dismissed For Bad Faith When Quigley and Pfizer are Committed to, and Capable of, Filing a Confirmable Plan.**

7. Code § 1112(b)[2] provides:

> (b) … on request of a party in interest … and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including-
>
> (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
>
> (2) inability to effectuate a plan;
>
> (3) unreasonable delay by the debtor that is prejudicial to creditors ….

8. The AHC and UST argue that the Court should dismiss this case on bad faith grounds. AHC Motion, at ¶¶ 13-19; UST Motion, at 6-8. In order for a Court to dismiss a case on bad faith grounds, the Court must find (1) objective futility of the reorganization process, and (2) subjective bad faith in the filing of the petition. In re Kingston Square Assoc., 214 B.R. 713, 724-25, 734 (Bankr. S.D.N.Y. 1997), citing In re RCM Global Long Term Capital Appreciation Fund, Ltd., 200 B.R. 514, 520 (Bankr. S.D.N.Y. 1996). Quigley's case should not be dismissed on bad faith grounds because, at the very least, Quigley's reorganization is far from objectively futile and dismissal is plainly not in the best interest of creditors.

        **(i) Quigley's Reorganization is Not Objectively Futile.**

9. This Court has denied dismissal of cases where objective futility was not shown. For example, in Kingston Square, the debtors' secured lenders moved for dismissal of the case

---

[2] Code § 1112(b) as in effect prior to the 2005 Bankruptcy Abuse and Prevention and Consumer Protection Act ("BAPCPA") applies to Quigley's reorganization because Quigley commenced its case prior to the enactment of BAPCPA. References to Code § 1112(b) in this objection are accordingly to the provisions in effect prior to BAPCPA's enactment.

because the debtors orchestrated with petitioning creditors the filing of involuntary Chapter 11 petitions. Kingston Square, 214 B.R. at 714-15. The Court held that although the "orchestration is suggestive of bad faith … it is not sufficient grounds for dismissal … [because] no record has been made relative to the objective futility of the reorganization." Id. at 735-36. Here, Quigley's reorganization is not objectively futile. Pfizer has stated its intent and has the ability to address the Court's concerns. Quigley, with Pfizer's financial support, should thus be given a reasonable opportunity to submit a confirmable reorganization plan.

10. The Decision has provided Quigley and Pfizer with guidance on the shortcomings of the prior reorganization plan. Quigley and Pfizer are committed to addressing each of the issues identified by the Court. They are currently formulating and negotiating the terms of a new reorganization plan (the "New Plan"). Among other things, the New Plan will provide for a sustainable business for Quigley; forgiveness of significant amounts of secured debt; a larger Pfizer cash contribution; and substantial insurance contributions.

11. Without fully addressing whether Quigley's reorganization is objectively futile, the AHC and UST argue that Quigley's reorganization should be dismissed on bad faith grounds. AHC Motion, at ¶¶ 13-19; UST Motion, at 6-8. The AHC, in a footnote, relies on In re Natural Land Corp., 825 F.2d 296 (11th Cir. 1987) for the proposition that "any proposed plan by Quigley likely will fail to comply with 1129's requirements." AHC Motion, at ¶ 13, n. 6. Natural Land, however, was a case in which the debtor "never had any paid employees, … never previously engaged in business, … had no legitimate creditors …, and … no assets …." Natural Land, 825 F.2d at 298. Quigley, on the other hand, operates a business with employees, has hundreds of thousands of asbestos personal injury creditors, has valuable insurance assets

available for distribution to its creditors, and, most important, has a corporate parent committed to contributing hundreds of millions of dollars for distribution to Quigley's creditors.

12. Moreover, Pfizer has been working, and will continue to work, with Quigley to address all of the Court's concerns in formulating the New Plan, including the Pfizer settlement agreements.

### (ii) Allowing Quigley and Pfizer to Propose a New Plan Serves the Best Interests of Creditors.

13. When disposing of a motion to dismiss under Code § 1112(b) on bad faith grounds, courts also ask whether dismissal will serve the best interests of creditors. Kingston Square, 214 B.R. at 737; In re Weber, 209 B.R. 793, 801 (Bankr. D. Mass. 1997). Allowing Quigley, with increased Pfizer support, to amend its reorganization plan is in the best interest of creditors. The New Plan will include trust distribution procedures for orderly distribution of assets, and, more important, a large, enhanced Pfizer contribution to present and future asbestos personal injury claimants. If Quigley's case were dismissed, present and future creditors would stand to receive little or no distribution from Quigley's estate. Kingston Square, 214 B.R. at 737 (dismissal may not be in best interest of creditors when dismissal would only benefit movants while other interested parties, including unsecured creditors, would be left with nothing); Weber, 209 B.R. at 801 (denying United States trustee's motion to convert case to chapter 7 case when "it seems to be in the best interests of creditors to allow the Debtor to amend the Plan … [because] [c]onversion may result in no distribution to creditors ….").[3]

---

[3] BAPCPA subsequently codified the requirement that the Court consider the best interest of creditors. See post-BAPCPA Code §§ 1112(b)(1) and 1112(b)(2).

14. The Court has discretion to determine whether cause exists to dismiss a case. In re Gucci, 174 B.R. 401, 410 (Bankr. S.D.N.Y. 1994). Because dismissal here is not in the best interest of creditors, the Court should deny the Motions.

**B. Quigley's Case Must Not Be Dismissed For Any "Cause" Enumerated in Code § 1112(b).**

15. The AHC and UST also argue for dismissal on the following three enumerated grounds under Code § 1112(b): (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation; (2) inability to effectuate a plan; and (3) unreasonable delay by the debtor that is prejudicial to creditors. AHC Motion, at ¶¶ 20-24; UST Motion, at 4-6. As discussed below, the AHC's and UST's arguments lack merit.

### (i) Quigley's Losses Have Been Borne By Pfizer.

16. Code § 1112(b)(1)'s two-prong test for "cause" to dismiss or convert a case provides that cause may exist if there is "continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation." Code § 1112(b)(1) (emphasis added). The AHC and UST assert that Quigley's operating losses are sufficient to meet the first prong of Code § 1112(b)(1). AHC Motion, at ¶ 20; UST Motion, at 5-6.

17. The AHC and UST failed to mention, however, that Quigley, with Court authorization, has used Pfizer's cash collateral to fund its operating losses. No party, including the AHC and UST, ever challenged the validity of Pfizer's lien or Quigley's use of Pfizer's cash collateral. Assuming Pfizer waives its pre-petition secured loan and DIP loan claims, as contemplated under the New Plan, Pfizer will have paid for all of Quigley's losses during the case.

18. Continued losses and estate diminution is immaterial when a non-debtor is funding the losses. In re Western Pacific Airlines, Inc., 218 B.R. 590, 594 (Bankr. D. Colo.

1998).  In <u>Western Pacific Airlines</u>, the Court discounted the creditor's committee argument that the debtor was incurring losses finding, among other things, that the costs of the case were "being paid by the DIP Lenders."  <u>Id.</u>  As in <u>Western Pacific Airlines</u>, Quigley's losses are being borne by Pfizer.  Thus, the AHC's and UST's Code § 1112(b)(1) argument fails.

    **(ii)  Quigley, With Pfizer's Support, Has the Ability to Effectuate a Plan.**

19.  The AHC and UST also argue that Quigley is unable "to effectuate a plan."  AHC Motion, at ¶ 23; UST Motion, at 4-6.  As shown above, however, Quigley, with Pfizer's financial support, is currently working on the New Plan.  Creditors should welcome an enhanced plan with Pfizer's support.

    **(iii)  There Has Been No Prejudicial Delay.**

20.  The AHC also argues that Quigley's case should be dismissed under Code § 1112(b)(3) because of Quigley's "unreasonable delay."  AHC Motion, at ¶ 24.  Quigley's case has seen large amounts of contentious litigation, discovery, and negotiation over the last six years, most of which was initiated by the AHC.  With the Decision as a guide for Pfizer, Quigley hopes to implement confirmation of the New Plan expeditiously.[4]

21.  Further, creditors would be far more prejudiced if the case were dismissed than by having to wait a short time until the New Plan is confirmed.

---

[4] The UST also asserts that the law of the case doctrine applies to the Court's decision on feasibility.  UST Motion, at 5 ("The law of the case provides that where a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.  As found by the Court, the Debtor is not viable and cannot reorganize (internal quotations and citations omitted).").  However, the Court's decision on Quigley's viability was a factual finding, not a legal conclusion.  As a practical matter, if denial of confirmation based on factual findings constituted law of the case, then no debtor would ever be able to amend its reorganization plan to remedy a factual infirmity.

WHEREFORE, Quigley requests that the Court deny the Motions, and grant it such other relief as is just.

Dated: New York, New York
December 31, 2010

                        SCHULTE ROTH & ZABEL LLP
                        Attorneys for Quigley Company, Inc.

                        By: __/s/ Lawrence V. Gelber_____
                        Michael L. Cook
                        Robert J. Ward
                        Lawrence V. Gelber
                        919 Third Avenue
                        New York, New York 10022
                        Telephone: (212) 756-2000
                        Facsimile: (212) 593-5955
                        E-mail: michael.cook@srz.com
                        E-mail: robert.ward@srz.com
                        E-mail: lawrence.gelber@srz.com

# EXHIBIT A

# September 27, 2010 Transcript

```
 1                    UNITED STATES BANKRUPTCY COURT
                      SOUTHERN DISTRICT OF NEW YORK
 2

 3                                       .   Chapter 11
        IN RE:                           .   Case No. 04-15739 (smb)
 4                                       .
        QUIGLEY COMPANY, INC., et al,    .   New York, New York
 5                                       .   Monday, September 27, 2010
                          Debtors.       .   2:12 p.m.
 6      . . . . . . . . . . . . . . .

 7                  TRANSCRIPT OF COURT-ORDERED CONFERENCE
                   BEFORE THE HONORABLE STUART M. BERNSTEIN
 8                      UNITED STATES BANKRUPTCY JUDGE

 9
        APPEARANCES:
10

11      For the Debtors:             Michael L. Cook, Esq.
                                     SCHULTE, ROTH & ZABEL, LLP
12                                   919 Third Avenue
                                     New York, New York 10022
13
        For the U.S. Trustee:        Gregory Zipes, Esq.
14                                   U.S. DEPARTMENT OF JUSTICE
                                     U.S. TRUSTEE'S OFFICE
15                                   33 Whitehall Street, 21st Floor
                                     New York, New York  10004
16

17      (Appearances continued.)

18

19
        Audio Operator:              Electronically Recorded
20                                   by Chantel Greene, ECRO

21
        Transcription Company:       Rand Reporting & Transcription, LLC
22                                   80 Broad Street, Fifth Floor
                                     New York, New York 10004
23                                   (212) 504-2919
                                     www.randreporting.com
24
        Proceedings recorded by electronic sound recording,
25      transcript produced by transcription service.
```

```
 1  APPEARANCES:    (Continued)

 2  For Pfizer:                    John H. Bae, Esq.
                                   GREENBERG TRAURIG, LLP
 3                                 MetLife Building
                                   200 Park Avenue
 4                                 New York, New York   10166

 5                                 Sharla J. Frost, Esq.
                                   POWERS FROST
 6                                 1221 McKinney Street, Suite 2400
                                   Houston, TX   77010
 7
    For Albert Togut,
 8  Future Claims
    Representative:                Richard K. Milin, Esq.
 9                                 Scott E. Ratner, Esq.
                                   Albert Togut, Esq.
10                                 TOGUT, SEGAL & SEGAL, LLP
                                   One Penn Plaza
11                                 New York, New York   10110

12  For the Unsecured
    Creditors' Committee:          Ronald E. Reinsel, Esq.
13                                 CAPLIN & DRYSDALE, CHARTERED
                                   One Thomas Circle, NW
14                                 Suite 1100
                                   Washington, D.C.   20005
15
    For the Ad Hoc Committee: Edward S. Weisfelner, Esq.
16                                 BROWN RUDNICK, LLP
                                   One Financial Center
17                                 Boston, Massachusetts   02111

18  Appearing Telephonically:

19  For Baron & Budd:              Andrea Ducayet, Esq.
                                   STUTZMAN, BROMBERG, ESSERMAN &
20                                  PLIFKA, P.C.
                                   2323 Bryan Street, Suite 2200
21                                 Dallas, Texas   75201

22

23

24

25
```

1  but it does afford Pfizer the opportunity to say, what me,
2  it's Quigley's fault, Quigley's in Chapter 11.
3       THE COURT: But you'd always have to prove that
4  Pfizer was independently liable.
5       MR. WEISFELNER: You're right, Your Honor. It just
6  seems to me that after six years in Chapter 11 we can and
7  will seek relief from the injunction, but is that all we
8  need? And does that mean that we're then happy to let Pfizer
9  spend another chunk of time figuring out what it wants to do?
10 The answer is no. I think we're entitled to two forms of
11 relief, primarily dismissal of the case. That subsumes the
12 injunction, quite frankly, as opposed to just having the
13 injunction dissolve and leave the case in Chapter 11
14 continuing to incur expenses where we continue to have to do
15 battle with whatever their plan is.
16      So, Your Honor, I don't think one does us, you know,
17 enough to be able to avoid the other. It's not like Pfizer
18 hasn't had a chance over six years to address the issues.
19      THE COURT: Okay. That's been six years. But other
20 things being equal, if Pfizer could come up with a plan now
21 or if Quigley could come up with a plan now that was
22 beneficial to creditors and didn't impede you from going
23 forward, which is one of your principal arguments over the
24 last few years, why not allow them to try and do that? After
25 all, Combustion Engineering managed to confirm a plan.

1  MR. WEISFELNER: Because I think the way the case
2  law operates, the way the statute was designed is that a
3  debtor who finds itself availing itself of the jurisdiction
4  of this Court in bad faith who is merely the puppet of Pfizer
5  for whose entire benefit the bankruptcy was created and the
6  case was filed and the company was resurrected is not only an
7  abuse of the non-settling parties, but is an abuse of the
8  process.
9  And, Your Honor, again, at the end of the day there
10 are principles and there are principles. Pfizer has an
11 opportunity to make good on its offer to the Court which,
12 unfortunately, we've heard before. And if it does, my motion
13 to dismiss, my motion for any other form of relief can always
14 be halted. But it's our experience that Pfizer concerns
15 itself with and is responsive to deadlines and the legal
16 process to an extent. And we think we're entitled to relief
17 under the legal process as a consequence of Your Honor's
18 findings, and we intend to pursue it.
19 THE COURT: Okay.
20 MR. BAE: Your Honor, may I respond to that?
21 We can focus on the six years, but we can also focus
22 on today, Your Honor. And I was serious when I said that we
23 read Your Honor's opinion and took it seriously. And we have
24 every intention of addressing each of those concerns.
25 We're not asking for an indefinite status quo here.