SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Sheila L. Birnbaum, Esq.
Jay M. Goffman, Esq.
George A. Zimmerman, Esq.

Counsel for Pfizer Inc.

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                      :
In re:                                :     Chapter 11
                                      :
QUIGLEY COMPANY, INC.,                :     Case No. 04-15739 (SMB)
                                      :
                    Debtors.          :
                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PFIZER INC.'S RESPONSE IN OPPOSITION TO MOTION
## OF THE AD HOC COMMITTEE OF TORT VICTIMS FOR AN
## ORDER DISMISSING QUIGLEY COMPANY, INC.'S BANKRUPTCY CASE

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................3

I.    THE AD HOC COMMITTEE HAS NOT MET ITS BURDEN OF SHOWING
THAT QUIGLEY FILED ITS CHAPTER 11 PETITION IN BAD FAITH ....................4

    A.    The Ad Hoc Committee Failed To Show That The Debtor Lacked A Good
Faith Intent To Reorganize As Of The Petition Date...............................................5

          1.    Difficulty In Formulating A Plan And Prior Plan Infirmities Do
Not Evidence The Absence Of A Realistic Chance Of
Reorganizing Or An Inability To Effectuate A Plan ...................................5

          2.    Failure To File A Plan In Good Faith Under Section 1129(a)(3)
Does Not Render The Commencement Of The Chapter 11 Case A
Bad Faith Filing.........................................................................................8

          3.    Quigley Has An Ongoing Business With A Realistic Chance Of
Reorganizing ..............................................................................................9

          4.    The Bankruptcy Filing Was Not Improperly Filed To Shield Pfizer
From This Court's Jurisdiction Or As A Litigation Tactic .......................11

          5.    The Bankruptcy Filing Was Not An Abuse Of The Court's
Jurisdiction Or The Bankruptcy Process ..................................................13

II.    THE AD HOC COMMITTEE FAILED TO ESTABLISH CAUSE FOR
DISMISSAL UNDER SECTION 1112(B) OF THE BANKRUPTCY CODE...............14

    A.    An Extended Bankruptcy Case Does Not Constitute Unreasonable Delay
That Results In Prejudice To Creditors..................................................................15

    B.    The Ad Hoc Committee Failed To Meet Its Burden Under Section
1112(b)(1) Of Establishing That Quigley's Case Should Be Dismissed For
Continuing Loss To The Estate And The Absence Of A Reasonable
Likelihood Of Rehabilitation..................................................................................18

CONCLUSION.....................................................................................................................1

In re 68 W. 127 St., LLC, 285 B.R. 838 (Bankr. S.D.N.Y. 2002) ..................... 5, 8, 10, 13

In re ACandS, Inc., No. 02-12687 (Bankr. D. Del. May 6, 2008) .......................... 7,11,16

Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997) ............................................... 15

In re the Ad Brite Corp., 290 B.R. 209 (Bankr. S.D.N.Y. 2003) ..................................... 18

In re Apple Tree Partners, L.P., 131 B.R. 380 (Bankr. W.D. Tenn. 1991) ........................ 8

In re Armstrong World Industries, Inc., No. 00-4471 (JFK) (Bankr. D. Del. Aug. 18, 2006) ................................................................................................................... 16

In re Artra Group, Inc., No. 02 B 21522 (PSH) (Bankr. N.D. Ill. Dec. 2, 2003).............. 16

In re Babcock & Wilcox Co., No. 00-10992 (JAB) (Bankr. E.D. La. Apr. 8, 2009)........ 16

Baker v. Latham Sparrowbush Associates (In re Cohoes Industrial Terminal, Inc.), 931 F.2d 222 (2d Cir. 1991) ................................................................................. 4, 5, 9

In re Burns & Roe Enterprises, Inc., No. 00-41610 (RG) (Bankr. D.N.J. Feb. 4, 2009) ................................................................................................................... 16

In re Bush Industries, Inc., 315 B.R. 292 (Bankr. W.D.N.Y. 2004) .................................. 9

C-TC 9th Avenue Partnership v. Norton Co. (In re C-TC 9th Avenue Partnership), 113 F.3d 1304 (2d Cir. 1997) ................................................................................. 5, 9

Carolin Corp. v. Miller, 886 F.2d 693 (4th Cir. 1989) ...................................................... 5

In re Century/ML Cable Venture, 294 B.R. 9 (Bankr. S.D.N.Y. 2003) ............................. 5

In re Chemtura Corp., No. 09-11233, 2010 WL 4272727 (Bankr. S.D.N.Y. Oct. 21, 2010) ...................................................................................................................... 9

In re Combustion Engineering, Inc., No. 03-10495-JFK (Bankr. D. Del. Dec. 19, 2005) ................................................................................................................... 7, 11

In re Congoleum Corp., 414 B.R. 44 (D.N.J. 2009).................................................... 6, 17

In re Congoleum Corp., No. 03-51524 (KCF) (Bankr. D.N.J. June 7, 2010) ................. 16

In re Global Industrial Technologies, Inc., No. 02-21626 (JKF) (Bankr. W.D. Pa. May 4, 2006) ...........................................................................................16

In re D & F Meat Corp., 68 B.R. 39 (Bankr. S.D.N.Y. 1986) ............................................5

In re Delaco Co., No. 04-10899 (Bankr. S.D.N.Y. Feb. 17, 2006)...................................11

In re Eden Associates, 13 B.R. 578 (Bankr. S.D.N.Y. 1981) ......................................9, 11

In re Flintkote Co., No. 04-11300 (JKF) (Bankr. D. Del. 2004)......................................17

In re G-I Holdings, Inc., No. 09-CV-05031, 2009 U.S. Dist. LEXIS 108339 (D.N.J. Nov. 12, 2009).............................................................................................16

In re General Growth Properties Inc., 409 B.R. 43 (Bankr. S.D.N.Y. 2009) ................2, 3

Gideon v. Johns-Manville Sales Corp., 761 F.2d 1129 (5th Cir. 1985) ...........................15

In re Johns-Manville Corp., 36 B.R. 727 (Bankr. S.D.N.Y. 1984)................... 7, 9, 13, 14

In re Landing Associates, Ltd., 157 B.R. 791 (Bankr. W.D. Tex. 1993) ..................6, 8, 9

In re Lizeric Realty Corp., 188 B.R. 499 (Bankr. S.D.N.Y. 1995) ............................18, 19

In re North American Refractories Co., No. 02-20198 (JKF) (Bankr. W.D. Pa. May 4, 2006) ...........................................................................................17

In re Owens Corning, No. 00-03837 (JKF) (Bankr. D. Del. Oct. 13, 2004) ...................17

In re Pittsburgh Corning Corp., No. 00-22876 (Bankr. W.D. Pa. 2000).........................17

In re RCM Global Long Term Capital Appreciation Fund, Ltd., 200 B.R. 514 (Bankr. S.D.N.Y. 1996) ....................................................... 2, 3, 4, 10, 18

In re Sletteland, 260 B.R. 657 (Bankr. S.D.N.Y. 2001) ....................................................5

In re Syndicom Corp., 268 B.R. 26 (Bankr. S.D.N.Y. 2001) ............................................5

In re USG Corp., No. 01-2094 (JKF) (Bankr. D. Del. June 16, 2006)............................17

In re W.R. Grace & Co., No. 01-1139 (Bankr. D. Del. 2001) .........................................17

**STATUTES**

11 U.S.C. § 1129(a)(3) .....................................................................................................8

11 U.S.C. § 1141(d)(3) ................................................................................ 11

11 U.S.C. § 524(g)(4)(A)(i) ........................................................................ 13

11 U.S.C. § 524(g)(2)(B)(III)(bb) .............................................................. 13

## OTHER AUTHORITIES

5 Lawrence King, <u>Collier on Bankruptcy</u>, ¶ 1112.03 at 1112-36 (16th ed) ....................... 2

Deborah Hensler, Stephen Caroll, Michelle White, & Jennifer Gross, <u>Asbestos</u>
<u>Litigation in the U.S.: A New Look at an Old Issue</u>, RAND Institute for Civil
Justice August 2001, at 31, <u>available at</u>
http://www.rand.org/pubs/documented_briefings/DB362.0/DB362.0.pdf ................ 16

Fairness in Asbestos Injury Resolution Act of 2005, S. Rep. No. 109-07 (2005) ............ 16

Pfizer Inc. hereby submits this response (the "**Response**") in opposition to the motion to dismiss this chapter 11 case (the "**Motion to Dismiss**") filed by the Ad Hoc Committee of Tort Victims (the "**Ad Hoc Committee**"), joined by Hissey Kientz LLP, Hissey, Kinetz & Herron PLLC, and Reaud, Morgan & Quinn L.L.P. and the motion to dismiss this case filed by the United States Trustee and in support thereof, respectfully states as follows:

## Introduction

1.      Since this Court's September 8, 2010 decision (the "**Decision**") denying confirmation of Quigley's Fourth Amended Plan, Quigley and Pfizer have worked assiduously to formulate a new plan of reorganization (the "**New Plan**") that will address each of the various rulings in the Decision.  Pfizer committed in open court to curing each and every defect the Court found in the last plan, and now is committed to contributing the money necessary to confirm the New Plan.  Pfizer has worked with Quigley to formulate a new Plan that, Pfizer submits, will meet every aspect of this Court's Decision and comply fully with the Bankruptcy Code.  Pfizer understands that Quigley will be prepared to file the New Plan in advance of the January 13, 2011 hearing on the instant motion and other matters.  Moreover, Pfizer has had many discussions with the Ad Hoc Committee, but notwithstanding a very serious offer from Pfizer, the parties have been unable to achieve consensus on settlement terms.  Finally, Pfizer has had initial conversations with professionals representing the Future Claimants' Representative and the Creditors Committee about the New Plan, and further discussions are planned.

2.      Accordingly, before argument on the instant motion is heard, a New Plan will have been filed that, Pfizer submits, satisfies the deficiencies the Court found in the prior plan.  Furthermore, Pfizer understands that Quigley is prepared to seek approval of a disclosure

statement and solicitation procedures as soon as the Court's calendar permits and to move promptly towards solicitation and confirmation of the New Plan. As the Court observed at the October 26, 2010 hearing, a confirmed plan in this case would be more beneficial to Quigley's creditors than would an outright dismissal of this case. <u>See</u> Oct 26 Tr. at 27:21-25 ("It seems to me that the creditors of Quigley are worse off without this plan than had the plan been confirmed because, in theory, they were going to get seven and a half percent from Quigley. Most of them have waived their rights against Pfizer.") Once the Court has had the opportunity to examine the New Plan, the Court will be able to determine for itself whether the New Plan is confirmable. If, as we submit, the New Plan is confirmable, then dismissal manifestly would be contrary to the interests of Quigley's creditors.

3. The Ad Hoc Committee has no reasonable basis for maintaining its Motion to Dismiss in the face of a confirmable New Plan. Indeed, in circumstances such as this, the case law in this Circuit uniformly mandates the motion be denied.

4. A motion to dismiss a Chapter 11 case must be denied unless the movant establishes, among other things, that a reorganization of the debtor is objectively futile. <u>In re Gen. Growth Props. Inc.</u>, 409 B.R. 43, 56 (Bankr. S.D.N.Y. 2009); <u>In re RCM Global Long Term Capital Appreciation Fund, Ltd.</u>, 200 B.R. 514, 520 (Bankr. S.D.N.Y. 1996). The burden of proof is on the movant and it is a stringent one. Specifically, "a court should reach the conclusion that there is no demonstrable ability to reorganize <u>only upon the strongest evidentiary showing</u>." <u>In re RCM Global</u>, 200 B.R. at 520 (emphasis added); <u>see also</u> 5 Lawrence King, Collier on Bankruptcy, ¶ 1112.03 at 1112-36 (16th ed).

5. As set forth below, the Ad Hoc Committee cannot approach, let alone satisfy, this stringent evidentiary burden. Its entire argument on this point rests on the notion that

"[f]irst and foremost . . . it likely is difficult for Quigley to submit a confirmable plan of reorganization." (Motion at ¶ 2.) On its face, this argument falls woefully short of "the strongest evidentiary showing" that a reorganization of Quigley is objectively futile. <u>RCM Global</u>, 200 B.R. at 520. And, the Ad Hoc Committee's invective to the side, there is no reason to believe that the type of reorganization authorized by Congress in section 524(g) cannot be effected here. On the contrary, although the Court's previous denial of confirmation is a very serious and significant event, thirty-plus years of experience under the Bankruptcy Code shows that debtors whose plans are initially denied confirmation can and do propose new plans that pass muster and ultimately are confirmed, to the benefit of all relevant constituencies.

6. Simply put, the New Plan will ensure Quigley's future viability as a reorganized entity, meet the requirements of sections 524(g) and 1129 of the Bankruptcy Code, and fully address the infirmities this Court found with the previously proposed plan. All relevant constituencies will reap the benefits of this reorganization with the New Plan's adherence to the rulings in the Court's Decision. If the Court is inclined to rule that the New Plan does not comply with the appropriate standards, the Court has ample tools to rectify the situation at the appropriate time. In either event, there is no basis in logic, evidence or law to grant the Ad Hoc Committee's motion now.

**ARGUMENT**

**<u>The Applicable Standards Governing the Motion to Dismiss</u>**

7. To obtain dismissal of a bankruptcy case under section 1112(b), a movant must show <u>both</u> that the bankruptcy case was filed in bad faith <u>and</u> that reorganizing is objectively futile. <u>In re Gen. Growth Props., Inc.</u>, 409 B.R. 43, 56 (Bankr. S.D.N.Y. 2009) ("[T]he standard in this Circuit is that a bankruptcy petition will be dismissed if <u>both</u> objective futility of the

reorganization process and subjective bad faith in filing the petition are found." (internal

quotation marks and citation omitted)); <u>Baker v. Latham Sparrowbush Assocs.</u> (In re Cohoes

Indus. Terminal, Inc.), 931 F.2d 222, 227 (2d Cir. 1991); <u>In re RCM Global Long Term Capital</u>

<u>Appreciation Fund, Ltd.</u>, 200 B.R. 514, 520 (Bankr. S.D.N.Y. 1996)  ("In this Circuit, a petition

will be dismissed if <u>both</u> objective futility of the reorganization process <u>and</u> subjective bad faith

in filing the petition are found.").

8.      In an effort to satisfy its burden to establish both prongs under section 1112(b),

the Ad Hoc Committee argues first that dismissal is warranted on the basis of a bad faith filing

because Quigley: (i) lacks an ongoing business with a realistic chance of reorganizing; (ii) filed

to shield Pfizer's assets from the Court's jurisdiction; (iii) abused the Court's jurisdiction and the

bankruptcy process; and (iv) filed as a litigation tactic rather than with the intent to reorganize.

Second, the Ad Hoc Committee contends that each of the first three enumerated grounds for

"cause" in section 1112(b)[1] are met and therefore justify dismissal: (1) continuing loss to or

diminution of the estate and absence of a reasonable likelihood of rehabilitation; (2) inability to

effectuate a plan; and (3) unreasonable delay by the debtor that is prejudicial to creditors.  As

set forth below, the Ad Hoc Committee's proffer on these elements falls far short of satisfying

its high burden on this Motion to Dismiss.

## I.      The Ad Hoc Committee Has Not Met Its Burden Of Showing That Quigley Filed Its Chapter 11 Petition In Bad Faith

9.      The burden is on the movant to prove bad faith, and dismissal for bad faith is to

be "used sparingly to avoid denying bankruptcy relief to statutorily eligible debtors except in

---

[1]      Section 1112(b) of the Bankruptcy Code, as in effect prior to the 2005 amendments, is applicable to the Ad Hoc Committee's request for relief.

extraordinary circumstances." <u>In re Century/ML Cable Venture</u>, 294 B.R. 9, 34 (Bankr. S.D.N.Y. 2003); <u>see also</u> <u>In re 68 W. 127 St., LLC</u>, 285 B.R. 838, 844 (Bankr. S.D.N.Y. 2002); <u>In re Sletteland</u>, 260 B.R. 657, 662 n.2 (Bankr. S.D.N.Y. 2001); <u>In re Syndicom Corp.</u>, 268 B.R. 26, 49 (Bankr. S.D.N.Y. 2001) (Gerber, J.) (citing <u>In re 234-6 West 22nd St.</u>, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997)); <u>Carolin Corp. v. Miller</u>, 886 F.2d 693, 698 (4th Cir. 1989); <u>In re D & F Meat Corp.</u>, 68 B.R. 39, 40 (Bankr. S.D.N.Y. 1986).

A.      **The Ad Hoc Committee Failed To Show That The Debtor Lacked A Good Faith Intent To Reorganize As Of The Petition Date**

10.      "The critical test of a debtor's bad faith remains whether on the filing date there was no reasonable likelihood that the debtor intended to reorganize and whether there is no reasonable possibility that the debtor will emerge from bankruptcy." <u>In re 68 W. 127 St., LLC</u>, 285 B.R. at 846; <u>see</u> <u>C-TC 9th Ave. P'ship v. Norton Co.</u> (In re C-TC 9th Ave. P'ship), 113 F.3d 1304, 1310 (2d Cir. 1997); <u>Baker v. Latham Sparrowbush Assocs.</u> (In re Cohoes Indus. Terminal, Inc.), 931 F.2d 222, 227 (2d Cir. 1991).

1.      **Difficulty In Formulating A Plan And Prior Plan Infirmities Do Not Evidence The Absence Of A Realistic Chance Of Reorganizing Or An Inability To Effectuate A Plan**

11.      In support of its contention that Quigley has no realistic chance of reorganizing or effectuating a plan, the Ad Hoc Committee extrapolates from the Court's denial of confirmation of the prior plan that: (1) "Quigley will have *difficulty* formulating a plan that satisfies section 1129(a)(11);" and (2) "Quigley *may* also be unable to submit a plan that is not tainted by . . . bad faith vote manipulation." (Motion to Dismiss at ¶¶ 2-3.) This argument is unavailing.

12.      The <u>Congoleum</u> asbestos bankruptcy case is instructive in this regard because it demonstrates that denial of confirmation does not preclude subsequent confirmation of a plan

of reorganization. In <u>Congoleum</u>, the bankruptcy court, like the Court here, refused to confirm the debtor's previous proposed plans and thereafter dismissed the chapter 11 case. The District Court reversed the bankruptcy court's dismissal order, holding that the bankruptcy court abused its discretion by failing to adequately take into account the debtor's ability to file a confirmable plan that addressed the court's objections and, in error, focused instead on the "significant difficulties in drafting an acceptable plan." <u>In re Congoleum Corp.</u>, 414 B.R. 44, 61 (D.N.J. 2009). Importantly, the District Court acknowledged that the debtor could constructively use the prior plan denials in fashioning a confirmable plan. <u>Id.</u> (holding that the bankruptcy court "did not adequately take into account whether the parties could submit a confirmable plan consistent with the court's objections, and instead presumed that they could not"). Quigley and Pfizer intend to do precisely that in this case and believe they successfully have done so, as demonstrated in the New Plan to be filed shortly.

13. The Ad Hoc Committee's argument that Quigley *may* be unable to propose a plan untainted by the previous plan's vote manipulation is equally unpersuasive because it is both speculative and legally flawed. In truth, a prior vote designation does not taint all subsequently proposed plans. "As with each plan, each vote cast by a creditor must be evaluated on its own merits, because, with each new plan, the circumstances surrounding the vote change." <u>In re Landing Assocs., Ltd.</u>, 157 B.R. 791, 805 (Bankr. W.D. Tex. 1993) (holding that prior vote designation does not foreclose counting of creditor vote under future plans).

14. The fact that Quigley's previously filed plan was denied confirmation does not vitiate the good faith of Quigley's chapter 11 filing. As the court stressed in the landmark <u>Johns-Manville</u> case, in evaluating whether dismissal is warranted "[t]he essential

determination here is the propriety of the filing, and whether 'cause' exists to vitiate it, not the confirmability of a particular plan. If [the debtor] is unable to effectuate a particular plan, that is not tantamount to finding that no plan can be effectuated." In re Johns-Manville Corp., 36 B.R. 727, 734 (Bankr. S.D.N.Y. 1984).

15.     It is undeniable, particularly in complex asbestos and other mass tort cases, that the chapter 11 plan process is an iterative one that should be allowed to continue despite denial of confirmation in the first instance. Thus, in previous asbestos cases where confirmation has been denied, courts subsequently have granted confirmation to new plans that address the infirmities in prior plans. See, e.g., Order Confirming ACandS'S Second Plan of Reorganization Dated November 19, 2007, In re ACandS, Inc., Case No. 02-12687 (Bankr. D. Del. May 6, 2008) (Dkt. No. 3309) (order confirming amended plan four years after confirmation of prior plan denied); Findings of Fact and Conclusions of Law Regarding Confirmation of Combustion Engineering, Inc.'s Plan of Reorganization, as Modified Through October 7, 2005 at 19-23, In re Combustion Eng'g, Inc., No. 03-10495-JKF (Bankr. D. Del. Dec. 19, 2005) (Dkt. No. 2753) (order confirming the twelfth amended plan, on remand from Third Circuit, wherein debtor proposed to use the section 524(g) channeling injunction to address liabilities of the debtor and its affiliates with potential derivative liability).

16.     There is every reason to believe that a confirmable plan of reorganization is achievable in this case. This Court's Decision provided guidance that Quigley and Pfizer used to formulate the New Plan that addresses all the Court's concerns raised in its Decision. This Court suggested at the September 27, 2010 status conference that Quigley and Pfizer should be afforded an opportunity to file a new plan. As Pfizer's counsel noted on the record of the October 26, 2010 status conference, the Court has "given us a roadmap and our job is to stay

within the yellow lines and try to get to confirmation of a plan consistent with your roadmap."
(Oct. 26 Tr. at 8:4-7.) Pfizer is committed to funding the New Plan that will ensure Quigley's
future viability as a reorganized entity and that fully addresses the prior plan infirmities
identified by the Court. All relevant constituencies will reap the benefits of this reorganization
if Quigley is afforded the opportunity to submit and seek confirmation of the New Plan that
satisfies Bankruptcy Code sections 1129 and 524(g) and addresses the issues raised in the
Court's Decision. As such, the Ad Hoc Committee's Motion to Dismiss this case should be
denied.

## 2. Failure To File A Plan In Good Faith Under Section 1129(a)(3) Does Not Render The Commencement Of The Chapter 11 Case A Bad Faith Filing

17. The Ad Hoc Committee's motion is based upon the premise that Quigley's
failure to satisfy section 1129(a)(3)'s "propose [the plan] in good faith" standard taints the
entirety of Quigley's chapter 11 case. 11 U.S.C. § 1129(a)(3). Because the Court denied
confirmation of the Plan based on a finding of a lack of good faith under section 1129(a)(3), the
Ad Hoc Committee contends that such finding ought to be applied to a section 1112(b) motion
to dismiss because any future proposed plan will be fatally flawed with the same defects and
therefore, a Quigley reorganization is objectively futile.

18. The Ad Hoc Committee's argument is legally unsupportable. The legal standard
employed for evaluating a good faith *filing* is quite different from the standard employed in
evaluating the good faith *proposal of a plan*. In re Apple Tree Partners, L.P., 131 B.R. 380, 393
(Bankr. W.D. Tenn. 1991) ("[T]here is a difference in a bad faith motive in filing the
bankruptcy and the good faith test for a plan confirmation under § 1129(a)(3)."); In re Landing
Assocs., 157 B.R. at 811-12 (distinguishing the good faith standards under Bankruptcy Code
sections 1112 and 1129(a)(3)). A debtor's good faith in commencing a case is assessed as of

the filing date, with a focus on the debtor's intent to reorganize. In re 68 W. 127 St., 285 B.R. at

846; see also C-TC 9th Ave. P'ship, 113 F.3d at 1310; In re Cohoes Indus. Terminal, 931 F.2d

at 227. By contrast, a debtor's good faith in the plan proposal process focuses on the "totality

of the circumstances" surrounding proposal of the plan itself. In re Chemtura Corp., No. 09-

11233, 2010 WL 4272727, at *32 (Bankr. S.D.N.Y. Oct. 21, 2010).

19.     Thus, failure to propose a plan in good faith does not taint the entirety of the

case from its inception and does not necessarily taint it going forward. See In re Johns-

Manville Corp., 36 B.R. at 734 (distinguishing between the propriety of a case filing and the

"confirmability of a particular plan"); Landing Assocs., 157 B.R. at 812 (noting that whether a

case is tainted from inception is a separate legal issue from whether a plan meets the 1129(a)(3)

standard). Moreover, failing to propose a particular plan in good faith does not taint a debtor's

ability to subsequently satisfy the section 1129(a)(3) standard. See In re Bush Indus., Inc., 315

B.R. 292, 308 (Bankr. W.D.N.Y. 2004) (noting that in proposing an amended plan, a debtor

may cure the underlying process through which a prior plan was negotiated and "may

demonstrate its good faith in a [number] of ways"). Thus, the premise upon which the Ad Hoc

Committee's motion relies is legally incorrect and its request for relief should be denied.

**3.      Quigley Has An Ongoing Business With A Realistic Chance Of Reorganizing**

20.     The Ad Hoc Committee's bad faith argument also focuses on its contention that

Quigley had, and continues to have, no ongoing business and thus has no realistic chance of

reorganizing. In support of its argument, the Ad Hoc Committee relies on In re Eden

Associates, 13 B.R. 578, 585 (Bankr. S.D.N.Y. 1981) where dismissal was granted because the

debtor, who was a product of the "new debtor" syndrome, was formed on the eve of the

bankruptcy filing and had no bona fide creditors. Quigley, by contrast, has several hundred

thousand existing and future unsecured creditors whose claims need addressing and for which a section 524(g) channeling trust provides the most benefit to all claimants. <u>See</u> Slip Op. at * 6 ("As of the Petition Date, 212,000 asbestos personal injury claims were either actually pending or expected to be asserted against Quigley – not including future demands").

21.     The fact that Quigley's primary source of cash as of the filing date was the Claims Services Agreement with Pfizer and that Quigley had no operations separate from its claims servicing function at that time does not render the commencement of the chapter 11 case a bad faith filing.  Debtors with far fewer resources have been afforded the opportunity to reorganize.  In this district, dismissal on bad faith grounds has been <u>denied</u> where, as of the filing date, the debtor had no income, no employees and a single asset.  <u>See</u> <u>In re 68 W. 127 St.</u>, 285 B.R. at 843.  Similarly, dismissal has been denied in this district where the debtor had no current operations, no cash flow and no employees as of the commencement of the case. <u>See</u> <u>In re RCM Global</u>, 200 B.R. at 520.

22.     These decisions apply with special force here.  In contrast to these cases, Quigley had income, cash flow and employees as of the petition date.  <u>See</u> Slip Op. at *4. Therefore, the denial of the motions to dismiss in those cases is <u>a</u> <u>fortiori</u> here.

23.     The Ad Hoc Committee's argument that dismissal is warranted because the expiration of the Claims Services Agreement after five years will leave Quigley without an ongoing business is equally unavailing as a basis for dismissal for bad faith.  The expiration of the Pfizer Claims Services Agreement is relevant to the issue of plan feasibility, not Quigley's good faith intent to reorganize as of the commencement of the case.  As the Court noted in its Decision, "[t]he evidence showed that Reorganized Quigley will operate profitably during the five year life of the Pfizer Claims Services Agreement, and generate excess income which, at

the Trustees' option, can be used to fund the Trust 'in part.'  Instead, the problem that Quigley

faces involves feasibility – what is likely to happen after the expiration of the Pfizer Claims

Services Agreement with Pfizer." Slip Op. at * 95.

24.    Since this Court's Decision was issued, Quigley and Pfizer have promptly begun

the process of considering and identifying further business opportunities for Quigley to

undertake in excess of five years to satisfy the Court's concerns regarding plan feasibility.[2]

Thus, the infirmity of Quigley's prior plan will be addressed in the New Plan.

### 4.    The Bankruptcy Filing Was Not Improperly Filed To Shield Pfizer From This Court's Jurisdiction Or As A Litigation Tactic

25.    In further support of its bad faith filing argument, the Ad Hoc Committee avers

that Quigley's bankruptcy case was improperly filed to shield Pfizer and its assets from the

Court's jurisdiction and that such filing qualifies as an improper litigation tactic. The Ad Hoc

Committee cites to a single inapposite case, In re Eden Associates, 13 B.R. 578 (Bankr.

S.D.N.Y. 1981), in which a new entity was established on the eve of the filing date to hold a

single real estate asset in order to shield a related company's assets from the bankruptcy court.

Id. at 582-83.  Moreover, in the Eden case, GEBC, the general partner of the newly formed

debtor, had represented to third parties prepetition that GEBC owned the real estate that it was

contending was owned by the debtor, had filed a deed confirming its ownership in the property,

---

[2]    Bankruptcy Code section 1141(d)(3) does not require a debtor to engage in the *same* business post-confirmation as it did pre-petition.  11 U.S.C. § 1141(d)(3).  Thus, Quigley is not required to continue only with the same business it had in the past.  See Order in In re Delaco Co., No. 04-10899 (Bankr. S.D.N.Y. Feb. 17, 2006) (Dkt. No. 738) (mass tort debtor granted discharge under section 1141 and section 105(a) channeling injunction issued.  Pre-petition, the company manufactured Dexatrim and other diet drugs; post-confirmation, the debtor managed the licensing for four trademarks that Delaco owned prepetition); Order in In re ACandS, Inc., No. 02-12687 (Bankr. D. Del. May 6, 2008) (Dkt. No. 3310) (asbestos debtor granted discharge under section 1141 and section 524(g) channeling injunction issued. Pre-petition, the debtor installed insulation; post-confirmation, the debtor became a real estate management business of an office building and parking lot); Order in In re Combustion Eng'g, No. 03-10495-JFK (Bankr. D. Del. Dec. 19, 2005) (Dkt. No. 2752) (asbestos debtor granted discharge under section 1141 and section 524(g).  Pre-petition, the debtor developed power systems; post-confirmation, the debtor managed a piece of contaminated real estate provided by its parent.).

recorded title in GEBC's name, and retained its titles even at the time of the filing of the debtor's petition. The court held that this estopped the debtor from claiming ownership of the asset and dismissed the case as a bad faith filing. Id.

26.     Unlike the scenario presented in Eden, Quigley was neither created on the eve of its bankruptcy filing nor created solely for the purpose of shielding Pfizer's assets from the court. See Slip Op. at 2. Moreover, unlike the legions of bad faith cases where a debtor commenced a bankruptcy case to frustrate its creditors, here the opposite holds true: Quigley commenced a bankruptcy case to appropriately address its liability on thousands of existing and future asbestos claims after its many years of prepetition efforts to do so were unsuccessful. See Slip Op. at 3 ("Over the years, Quigley and Pfizer tried various methods to deal with the growing number of asbestos claims [against Quigley]."). Quigley has real creditors and real liabilities, having been named as a defendant in over 400,000 asbestos cases which Quigley tried for years to address through other means of dispute resolution. See Slip Op. at 2 -3 (citing to PTO Undisputed Facts). Without the orderly process of a bankruptcy case and the marshalling of available insurance assets to address asbestos claims, Quigley's creditors will be engaged in a frustrated race to the courthouse – and without the benefit of Pfizer's contribution to their recovery that they stand to receive under the New Plan.

27.     As such, Quigley is a statutorily eligible debtor that is seeking protection of the bankruptcy laws for the purpose for which they were intended. The fact that Pfizer, as a non-debtor third party, will benefit from the channeling injunction does not render Quigley ineligible for reorganization or the commencement of its case a bad faith filing. Pfizer is merely realizing a benefit that the Bankruptcy Code expressly permits.

> Keeping the primary focus on the permissible uses of the Bankruptcy Code is
> important because, taken out of context, the exercise of certain rights under the

Code that are perfectly legitimate may appear hurtful, even malicious, <u>yet the exercise of a statutory right or remedy should rarely, if ever, be said to be in bad faith</u>. . . . "Thus, in evaluating a debtor's good faith, the court's only inquiry is to determine whether the debtor seeks to abuse the bankruptcy law by employing it for a purpose for which it was not intended.

<u>In re 68 W. 127 St.</u>, 285 B.R. at 844 (emphasis added) (quoting <u>In re Clinton Centrifuge, Inc.</u>, 72 B.R. 900, 905 (Bankr. E.D. Pa. 1987)).

28.     Pfizer has been involved in Quigley's bankruptcy case from the beginning and makes no secret of its intent to contribute substantial sums to fund Quigley's New Plan and its intent to benefit from the section 524(g) channeling injunction.  Section 524(g) of the Code expressly contemplates extension of the channeling injunction to a debtor's affiliates who are alleged to be directly or indirectly liable on claims against the debtor, <u>see</u> 11 U.S.C. § 524(g)(4)(A)(i), and funding of a debtor's section 524(g) trust with securities of its parent. <u>See</u> 11 U.S.C. § 524(g)(2)(B)(III)(bb).

### 5.     The Bankruptcy Filing Was Not An Abuse Of The Court's Jurisdiction Or The Bankruptcy Process

29.     The Ad Hoc Committee makes a similarly baseless bad faith argument by asserting that Quigley's bankruptcy filing was an abuse of this Court's jurisdiction or of the bankruptcy process and that the filing was made as a litigation tactic.  Once again, the Ad Hoc Committee fails to meet its burden.

30.     The Ad Hoc Committee relies entirely on the <u>Johns-Manville</u> case to support its contention that Quigley has abused the Court's jurisdiction and the bankruptcy process.  The Ad Hoc Committee highlights the fact that dismissal was not warranted in <u>Johns-Manville</u> where there was "no sham or hoax perpetrated on the Court in that Manville is a real business with real creditors in pressing need of economic reorganization."  <u>In re Johns-Manville Corp.</u>, 36 B.R. at 738.  The <u>Johns-Manville</u> Court's holding underscores exactly why dismissal is not

13

warranted in this case. Quigley has hundreds of thousands of existing and future creditors whose claims need to be addressed in this chapter 11 case.[3]

31.     The Ad Hoc Committee cannot credibly maintain that Quigley's filing is a hoax on the Court because Quigley has no real creditors: the Ad Hoc Committee represents the interests of thousands of claimants and is actively negotiating for a settlement of such claims. The Johns-Manville court underscores the utter lack of merit in Ad Hoc Committee's position: "the Asbestos Committee has belied its own contention that [debtor] has no debt and no real creditors by quantifying a benchmark settlement demand approaching one billion dollars for compensation of approximately 15,500 prepetition asbestos claimants." Id. at 738-39.

32.     The Ad Hoc Committee not only has failed to carry its burden in establishing that Quigley abused the Court's jurisdiction or the bankruptcy process, but it has highlighted one of the key reasons why a reorganization of Quigley is necessary and appropriate – it has several hundred thousand claims that need addressing in a court-supervised process.

## II.     The Ad Hoc Committee Failed To Establish Cause For Dismissal Under Section 1112(b) Of The Bankruptcy Code

33.     The Ad Hoc Committee asserts that dismissal is warranted for cause based on three subsections of section 1112(b): (i) inability to effectuate a plan under 1112(b)(2); (ii) unreasonable delay by the debtor that is prejudicial to creditors under 1112(b)(3); and (iii) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation under 1112(b)(1). The Ad Hoc Committee's failure to meet its strict standard for

---

[3]     As set forth more fully in Pfizer's opposition to the Ad Hoc Committee's motion to dissolve the preliminary injunction, filed concurrently herewith, a dismissal of the case would lead to an inequitable "race to the courthouse" by thousands of asbestos claimants in which the assets of Quigley will be made available to only a fraction of the claimants. Moreover, claimants' recoveries against Quigley outside of the chapter 11 process will be significantly reduced without the benefit of Pfizer's financial and insurance contributions that are committed to a Quigley plan.

dismissal due to an inability to effectuate a plan is discussed supra at I.A.1. and its failure to

carry its burden on 1112(b)(3) and (b)(1) is discussed below.

**A.      An Extended Bankruptcy Case Does Not Constitute Unreasonable Delay That Results In Prejudice To Creditors**

34.      The Ad Hoc Committee's argument that the length of this bankruptcy case is

cause for dismissal misses the mark.  Quigley's case is large and complex, with the claims of

more than 200,000 current asbestos claimants and hundreds of thousands of future claimants to

be addressed under the plan.  The fact that Quigley's Chapter 11 case is not an abbreviated one

is not indicative of unreasonable delay that prejudices creditors nor is it a determining factor

that reorganization is futile.

35.      Asbestos litigation of any kind is a slow moving process.  There is judicial

acknowledgment that outside the bankruptcy process, individual adjudication of asbestos

claims can take decades to resolve.

> The most objectionable aspects of asbestos litigation can be briefly summarized:
> dockets in both federal and state courts continue to grow; long delays are routine;
> trials are too long; the same issues are litigated over and over; transaction costs
> exceed victims' recovery by nearly two to one; exhaustion of assets threatens and
> distorts the process; and future claimants may lose altogether.

 Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 598 (1997) (quoting Report of the Judicial

Conference Ad Hoc Committee on Asbestos Litigation 2-3 (Mar. 1991)); Gideon v. Johns-

Manville Sales Corp., 761 F.2d 1129, 1146 (5th Cir. 1985) ("Traditional methods of litigation are

ill-designed to handle such a volume of [asbestos] cases, for their sheer number is inundating the

courts. . . . The case-by-case adjudication process will delay decision for years if not

decades . . . .").  While resolving asbestos liabilities through the Chapter 11 process typically

requires more time than a traditional chapter 11 proceeding, the bankruptcy process remains an

efficient mechanism for addressing present and future asbestos liabilities.  Complex chapter 11

asbestos cases last, on average, 6 years. <u>See</u> Fairness in Asbestos Injury Resolution Act of 2005, S. Rep. No. 109-07, at 145 (2005) (June 30, 2005) (noting that asbestos related bankruptcies take almost three times as long as other chapter 11 cases, "averaging more than 41 months and counting, as most remain pending"); Deborah Hensler, Stephen Caroll, Michelle White, and Jennifer Gross, <u>Asbestos Litigation in the U.S.: A New Look at an Old Issue</u>, RAND Institute for Civil Justice August 2001, at 31, <u>available at</u> http://www.rand.org/pubs/documented_briefings/DB362.0/DB362.0.pdf ("average length of time from petition to confirmation for these [major asbestos defendant] . . . bankruptcies is six years").

36. Indeed, recent successfully completed Chapter 11 cases illustrate that confirming a plan that satisfies the many competing interests in massive asbestos cases may require a more protracted chapter 11 proceeding. <u>See, e.g.</u>, <u>In re Burns & Roe Enters., Inc.</u>, No. 00-41610 (RG) (Bankr. D.N.J. Feb. 4, 2009) (Dkt. 2594) (debtor filed for bankruptcy in 2000; plan confirmed in 2009); <u>In re G-I Holdings, Inc.</u>, No. 09-CV-05031, 2009 U.S. Dist. LEXIS 108339 (D.N.J. Nov. 12, 2009) (debtor filed for bankruptcy in 2001; eighth amended plan confirmed in 2009); <u>In re ACandS, Inc.</u>, Case No. 02-12687 (Bankr. D. Del. May 6, 2008) Dkt. No. 3309 (debtor filed for bankruptcy in 2002; plan confirmed in 2008); <u>In re Armstrong World Indus., Inc.</u>, No. 00-4471 (JFK) (Bankr. D. Del. Aug. 18, 2006) (Dkt. 9754) (debtor filed for bankruptcy in 2000; plan confirmed in 2006); <u>In re Artra Group, Inc.</u>, No. 02 B 21522 (PSH) (Bankr. N.D. Ill. Dec. 2, 2003) (debtor filed for bankruptcy in 2002; plan confirmed in 2007); <u>In re Babcock & Wilcox Co.</u>, No. 00-10992 (JAB) (Bankr. E.D. La. Apr. 8, 2009) (debtor filed for bankruptcy in 2000; plan confirmed in 2008); <u>In re Congoleum Corp.</u>, No. 03-51524 (KCF) (Bankr. D.N.J. June 7, 2010) (Dkt. 8116) (debtor filed for bankruptcy in 2003; plan confirmed in 2010); <u>In re Global Indus. Techs., Inc.</u>, No. 02-21626 (JKF) (Bankr. W.D. Pa. May 4, 2006)

(debtor filed for bankruptcy in 2002; plan confirmed in 2007); In re N. Am. Refractories Co., No. 02-20198 (JKF) (Bankr. W.D. Pa. May 4, 2006) (debtor filed for bankruptcy in 2002; plan confirmed in 2007); In re Owens Corning, No. 00-03837 (JKF) (Bankr. D. Del. Oct. 13, 2004) (debtor filed for bankruptcy in 2000; plan confirmed in 2006); In re USG Corp., No. 01-2094 (JKF) (Bankr. D. Del. June 16, 2006) (Dkt. 11688) (debtor filed for bankruptcy in 2001; plan confirmed in 2006).

37.     In addition, several lengthy asbestos-related Chapter 11 cases are ongoing, in some cases almost a decade after the initial filing.  See, e.g., In re Flintkote Co., No. 04-11300 (JKF) (Bankr. D. Del 2004); In re Pittsburgh Corning Corp., No. 00-22876 (Bankr. W.D. Pa 2000); In re W.R. Grace & Co., No. 01-1139 (Bankr. D. Del 2001).

38.     In light of the foregoing, the duration of the Quigley case is unremarkable. The fact that the Court denied confirmation of Quigley's fourth amended plan is not indicative of unreasonable delay or prejudice to creditors.  In the Congoleum case, the District Court reversed the bankruptcy court's dismissal of the debtor's case, finding that its refusal to allow amendments to the twelfth amended plan to remedy the identified infirmities was an abuse of discretion.  In re Congoleum, 414 B.R. at 44.

39.     In denying confirmation of Quigley's fourth amended plan, this Court provided a roadmap for Quigley and Pfizer to follow in order to cure the plan's defects.  The Court noted on the record of the status conference on September 27, 2010:  "if Pfizer could come up with a plan now or if Quigley could come up with a plan now that was beneficial to creditors and didn't impede [the Ad Hoc Committee of Tort Victims] from going forward, which is one of your principal arguments over the last few years, why not allow them to try and do that?" Denying the requested relief will not result in prejudice to Quigley's creditors but granting the

requested relief will, as the existing and future creditors will receive a substantially smaller, if any, recovery. <u>See</u> Slip Op. at *25 ("Absent reorganization, Quigley's claimants would receive payment on a first-come-first-serve basis, and nothing would remain for the Futures."). That consequence would severely prejudice creditors.

**B.** **The Ad Hoc Committee Failed To Meet Its Burden Under Section 1112(b)(1) Of Establishing That Quigley's Case Should Be Dismissed For Continuing Loss To The Estate And The Absence Of A Reasonable Likelihood Of Rehabilitation**

40.     The Ad Hoc Committee also contends that Quigley's case should be dismissed under section 1112(b)(1) due to continuing loss to the estate and the absence of a reasonable likelihood of rehabilitation. Under section 1112(b)(1), a movant must show <u>both</u> that the estate is suffering a continuing loss <u>and</u> that no likelihood of rehabilitation exists, as the Code section is written in the conjunctive. <u>In re the Ad Brite Corp.</u>, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003); <u>In re Lizeric Realty Corp.</u>, 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995).

41.     The Ad Hoc Committee has failed to establish a continuing loss to or diminution of the estate to justify dismissal and relies merely on the assertion that Quigley has suffered millions of dollars in postpetition losses. That fact alone fails to support dismissal. The <u>Ad Brite</u> court, upon whose decision the Ad Hoc Committee relies, stated that a "continuing loss or diminution of the estate may be tolerated where reorganization is feasible and the pattern of unprofitable operations can be reversed as a result of a successful reorganization." <u>Ad Brite</u>, 290 B.R. at 215. The Ad Hoc Committee argues that no realistic chance of rehabilitation exists because there is no viable business to re-establish. [4] The Court's own findings contradict the Ad

---

[4]     The Ad Hoc Committee notes that courts define "rehabilitation" as putting the debtor back in good condition or re-establishing it on a firm, sound basis. The term "rehabilitation" as opposed to "reorganization" is employed in the statutory subsection to exclude companies who are undertaking an orderly liquidation. <u>Ad Brite</u>, 290 B.R. at 216; <u>In re RCM Global Long Term Capital Appreciation Fund Ltd.</u>, 200 B.R. 514, 521 (Bankr. S.D.N.Y. 1996).

*(cont'd)*

Hoc Committee's conclusion: "Quigley will remain viable and profitable for the five years that it operates under the Pfizer Claims Services Agreement . . ." <u>See</u> Slip Op. at *96-97. Thus, a viable business exists that is eligible and poised for rehabilitation. It was Quigley's business plan beyond five years post-effective date that was found wanting by the Court, resulting in a finding of lack of feasibility. As noted *supra*, Quigley and Pfizer will cure the feasibility issues that were found under the prior plan, thereby re-establishing Quigley on a firm, sound basis beyond the initial five year period. Because reorganization remains realistic, the Ad Hoc Committee also has failed this element of its attempted showing.

42.     Dismissing Quigley's case where reorganization is realistic and probable would thwart the entire purpose of section 1112(b)(1) because the statutory ground for dismissal is intended to "prevent[] the debtor-in-possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation." <u>Lizeric Realty</u>, 188 B.R. at 503. Here, no such gamble has been made at the creditors' expense. In fact, affording Quigley the opportunity to confirm a revised plan that addresses the issues raised by the Court in the Decision and cures the identified infirmities is in the best interests of all creditors in this case. "Absent reorganization, Quigley's claimants would receive payment on a first-come-first-serve basis, and nothing would remain for the Futures." Slip Op. at *25 (citing Street Tr. 697:10-16). Thus, Quigley is seeking court-supervised handling of its hundreds of thousands of asbestos claims through the most advantageous procedure – a section 524(g) trust – for the benefit of existing and future claimants. As such, the Ad Hoc Committee's motion should be denied on this ground as well.

_____

*(cont'd from previous page)*
        Because Quigley is pursuing a reorganization, not a liquidation, the distinction between rehabilitation and reorganization is a distinction with no relevance in this case.

## CONCLUSION

43.     For all of the foregoing reasons, Pfizer respectfully requests entry of an order

denying the Motion to Dismiss, and granting such other and further relief as the Court deems just,

necessary and appropriate.

Dated: December 31, 2010
        New York, New York


                                    SKADDEN, ARPS, SLATE, MEAGHER &
                                      FLOM, LLP


                            By:     *Jay M. Goffman*

                                    Jay M. Goffman

                                    Sheila L. Birnbaum
                                    Jay M. Goffman
                                    George A. Zimmerman
                                    Four Times Square
                                    New York, New York 10036-6522
                                    Telephone:  (212) 735-3000
                                    Facsimile:  (917) 735-2000
                                    E-mail:  Sheila.Birnbaum@skadden.com,
                                    Jay.Goffman@skadden.com,
                                    George.Zimmerman@skadden.com

                                    Counsel for Pfizer Inc.