UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| In re | Chapter 11 |
|---|---|
| QUIGLEY COMPANY, INC., | Case No. 04-15739 (SMB) |
| Debtor. | |

**ORDER UNDER 11 U.S.C. §§ 105(a) AND 363 AND FED. R. BANKR. P. 6004 AND 9019 APPROVING SETTLEMENT AND CERTAIN INSURANCE POLICIES REPURCHASE AGREEMENT AND RELEASE**

Quigley Company, Inc. ("Quigley"), debtor and debtor-in-possession, having moved on October 25, 2010 (the "Motion"), for an order pursuant to sections 105(a) and 363 of title 11 of the United States Code, as amended (the "Bankruptcy Code") and rules 2002, 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i) authorizing Quigley to enter into and perform under a settlement agreement, dated August 24, 2010 (the "Agreement," a copy of which is annexed to the Motion as Exhibit A),[1] with Pfizer and Arrowood pursuant to which, among other things, Quigley and Pfizer will provide Arrowood releases under the Buyback Insurance Policies; (ii) authorizing the sale of all Interests relating to coverage for Claims under the Buyback Insurance Policies (collectively the "Sale" or the "Sale Coverages") to Arrowood subject and pursuant to the terms of the Agreement; (iii) approving the Agreement; and (iv) enjoining certain Claims against Arrowood Parties as described in Paragraph 9 below (the "Injunction").

The appearances of all interested parties and all responses and objections to the Motion, if any, have been duly noted in the record of the hearing held on January 13, 2011 (the

---

[1] Unless otherwise defined, capitalized terms used herein have the meanings ascribed to them in the Agreement.

DOC ID-14808128.2

"Hearing"). Upon the record of the Hearing, the Motion, and any responses and objections, and after due deliberation and sufficient cause appearing therefor, the Court hereby makes the following:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[2]

### Jurisdiction, Final Order and Statutory Predicates

A. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (0). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B. This Order constitutes a final and immediately appealable order with the meaning of 28 U.S.C. § 158(a).

C. The statutory predicates for the relief sought in the Motion are sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 6004 and 9019.

### Retention of Jurisdiction

D. It is necessary and appropriate for the Court to retain jurisdiction, among other things, to interpret and enforce the terms and provisions of this Order and the Agreement, and to adjudicate, if necessary, any and all disputes arising under or relating in any way to, or affecting, any of the transactions contemplated under the Agreement.

### Notice of the Motion

E. Quigley has provided due and adequate notice of the Motion, the Hearing, the Agreement and the subject matter thereof to all parties-in-interest pursuant to Bankruptcy Rules 2002 and 6004, including all Persons that, as of the date the Motion was filed, had filed a notice of appearance and demand for service of papers in the Bankruptcy Case or were otherwise listed on the

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2002 Service List maintained by Quigley in the Bankruptcy Case, and the United States Trustee. In addition, to ensure the broadest notice possible, Quigley has provided due and adequate notice of the Motion to all known holders of Asbestos PI Claims, through their counsel, and has published notice of the (i) Motion, (ii) Hearing and (iii) Agreement in the following publication on the following date(s): the national edition of USA Today on December 15, 2010. Such notice was good and sufficient under the particular circumstances and no other or further notice is or shall be required.

**Sound Business Judgment and Reasonableness**

F. The relief requested in the Motion is in the best interests of Quigley, its estate, its creditors, and the holders of Asbestos PI Claims. Quigley has demonstrated good, sufficient and sound business purposes and justifications for the relief requested in the Motion.

G. The Agreement, including, without limitation, the Sale, is fair and reasonable and in the best interests of Quigley and its estate and creditors. The Settlement Amount represents fair and reasonable consideration for the Sale, the release of all Claims, including without limitation Asbestos-Related Claims, Environmental Claims, and Silica Claims, under the Policies, and the other provisions as set forth in the Agreement. The Agreement also is in the best interests of the holders of Asbestos PI Claims because upon confirmation and consummation of the Plan, the proceeds of the sale will be paid to the Asbestos PI Trust established pursuant to the Plan.

H. Quigley has demonstrated that the probability of success for Quigley in litigation over the matters resolved by the Agreement, including without limitation, the Coverage Dispute and the Wellington ADR, is uncertain; that the litigation of the matters resolved by the Agreement would be complex and costly to Quigley's bankruptcy estate; and that the entry into the Agreement is appropriate to assist Quigley's reorganization, is consistent with the reasonable range of litigation outcomes and is in the best interests of Quigley, its bankruptcy estate, and the creditors, including

the holders of Asbestos PI Claims because, among other reasons, the Agreement contemplates a substantial payment to the Asbestos PI Trust upon confirmation and consummation of the Plan.

**Good Faith of Purchaser of the Sale Coverages**

I. The Agreement was negotiated and proposed, and has been entered into by the Parties, in good faith, from arms'-length bargaining positions, and without collusion. Each Party to the Agreement was represented by counsel. The sale consideration to be realized by Quigley's bankruptcy estate pursuant to the Agreement is fair and reasonable. Arrowood is a good faith purchaser of Quigley's Interests in the Sale Coverages for value within the meaning of section 363(m) of the Bankruptcy Code and is entitled to the protection thereof. Quigley, Pfizer and Arrowood have not engaged in any conduct that would (1) cause or permit the Agreement, or the sale of the Sale Coverages contemplated therein, to be avoided under section 363(n) of the Bankruptcy Code, (2) cause or permit any amounts, costs, attorneys' fees, expenses or punitive damages to be recovered under section 363(n) of the Bankruptcy Code, or (3) prevent the application of section 363(m) of the Bankruptcy Code.

**Satisfaction of Section 363(f) Requirements**

J. Quigley may sell the Sale Coverages free and clear of Interests under section 363(f) of the Bankruptcy Code and applicable non-bankruptcy law. **SMB 1/14/11** ~~because, in each case, one or more of the criteria set forth in sections 363(f)(1)-(5) of the Bankruptcy Code have been satisfied. Further,~~ Each holder of an Interest in or against the Sale Coverages can be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Interest as contemplated by section 363(f)(5) of the Bankruptcy Code. Pfizer has consented to and has agreed to sell, transfer and convey to Arrowood all of Pfizer's Interests in the Sale Coverages.

K. To the extent any Person has an Interest in or against the Sale Coverages, such Interest is adequately protected as required by section 363(e) of the Bankruptcy Code by the attachment of such Interest to the proceeds of sale pursuant to Paragraphs 7 and 8 of this Order.

**No Successor Liability**

L. Arrowood is not assuming any of Quigley's or Pfizer's obligations to their employees by reason of the purchase of the Sale Coverages under the Agreement.

M. No common identity of officers or directors exists between Arrowood and Quigley or Pfizer.

N. Arrowood is purchasing only the Sale Coverages pursuant to the Agreement and this Order and is not purchasing any other assets of Quigley's estate. The Sale does not impose on Arrowood any responsibility or liability with respect to any of Quigley or Pfizer's other assets or for any liability of, or Claim against, Quigley or Pfizer.

O. A sale of the Sale Coverages other than one free and clear of Interests would be of substantially less benefit to Quigley, its estate and creditors than the sale for which Quigley seeks approval. Arrowood would not purchase the Sale Coverages and pay the Settlement Amount were the sale not free and clear of all Interests.

**Supplemental Injunction**

P. The supplemental injunction under section 105(a) of the Bankruptcy Code "Injunction" is essential to give effect to the sale of the Sale Coverages to Arrowood free and clear of Interests pursuant to section 363(f) of the Bankruptcy Code. Arrowood has asserted and Quigley has agreed that the Injunction, as set forth in Paragraph 8 below, is a necessary prerequisite for entry into the Agreement, and Arrowood will not consummate the sale of the Sale Coverages and pay the Settlement Amount in the absence of the Injunction.

Q. If and to the extent they have any Interest in the Sale Coverages, the holders of present and future Claims are adequately protected in that they will have the right to pursue their Claims against the proceeds of the sale of the Sale Coverages with the same validity and priority as against the Sale Coverages and subject to the terms and conditions of the Plan. The Interests, if any, of any other insurer are adequately protected because the Agreement provides that Quigley, Pfizer and/or the Asbestos PI Trust shall reduce any judgment, Claim against, or settlement with, any such insurer to the extent necessary to eliminate any such insurer's Claim for contribution, subrogation, indemnification or any similar Claims against the Sale Coverages (as provided in the Agreement) against Arrowood.

For all of the foregoing reasons and after due deliberation, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1. The Motion be, and hereby is, granted **to the extent indicated in this Order**.

**SMB 1/14/11**

2. The Agreement be, and hereby is, approved.

3. For the reasons set forth herein and on the record at the Hearing, all objections to the Motion and the relief requested therein and/or granted in this Order that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are overruled on the merits.

4. Pursuant to section 363(b) of the Bankruptcy Code, Quigley is authorized to enter into and consummate the Agreement, including to sell, transfer and convey the Sale Coverages to Arrowood in accordance with the terms, and subject only to the conditions, specified herein and in the Agreement. Quigley, Pfizer and Arrowood are each hereby authorized to take all actions and execute all documents and instruments that Quigley, Pfizer and Arrowood deem reasonably

necessary or appropriate to implement and effectuate the transactions contemplated by the Agreement.

5. The terms of the Agreement are approved, and this Order and the Agreement shall be valid and binding in accordance therewith upon Quigley, Pfizer, Arrowood, all Persons holding Interests in the Sale Coverages, all Persons holding Claims or demands against Quigley or its estate, the Futures' Representative and each of the Persons he represents, the Creditors' Committee, Quigley's and Pfizer's insurers other than Arrowood, any actual or potential insureds under the Sale Coverages, all other parties-in-interest, and each of the foregoing Persons' successors and assigns. Subject to the payment by Arrowood of the Settlement Amount as provided for in the Agreement, the sale of the Sale Coverages by Quigley and Pfizer to Arrowood shall constitute a legal, valid, and effective transfer of the Sale Coverages and shall vest Arrowood with all right, title, and interest in and to the Sale Coverages free and clear of all Interests pursuant to section 363(f) of the Bankruptcy Code.

6. Arrowood shall pay the Settlement Amount as provided in the Agreement.

7. Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, and subject to the consummation of the sale of the Sale Coverages on the Plan Effective Date or the Waiver Effective Date, whichever is earlier, the Buyback Insurance Policies shall be transferred to Arrowood, free and clear of all Interests of all Persons in the Sale Coverages, including without limitation any and all Claims and demands against Quigley, its estate or Pfizer that could give rise to a right of indemnity under the Sale Coverages, whether arising prior to, during, or subsequent to the Bankruptcy Case or imposed by agreement, understanding, law, equity or otherwise. Any and all such Interests shall attach, as described in Paragraph 9 below, to the

proceeds of the sale with the same validity, priority, force, and effect as such Interest holders had in the Sale Coverages and subject to the terms and conditions of the Plan.

8.  Pursuant to sections 105(a) and 363 of the Bankruptcy Code, all Persons that have held or asserted, which hold or assert or which may in the future hold or assert any Claim (including, but not limited to, any Asbestos PI Claim) against Arrowood based upon, arising out of, derived from or attributable to (1) activities of either of Quigley or Pfizer that give rise to the Claims under the Sale Coverages, or (2) the Sale Coverages, whenever or wherever arising or asserted (including all claims in the nature of or sounding in tort, contract, warranty or any other theory of law, equity or admiralty), shall, upon the occurrence of the Plan Effective Date or the Waiver Effective Date, whichever is earlier, be permanently stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payments from Arrowood to recover with respect to any such Claim.  Notwithstanding the foregoing, Quigley and Pfizer are not stayed, restrained or enjoined from asserting any Claims that are not released under the Agreement, and Arrowood may assert any and all defenses to any such Claims.

9.  Arrowood is not, and shall not be deemed to be, a successor to Quigley by reason of any theory of law or equity or as a result of the consummation of the transactions contemplated in the Agreement or otherwise. Arrowood shall not assume any liabilities of Quigley.

10.  The transactions contemplated by the Agreement, including, without limitation, the sale of Quigley's Interests in the Sale Coverages to Arrowood, are undertaken by Arrowood in good faith, as that term is used in section 363(m) of the Bankruptcy Code.  **SMB 1/14/11**
~~Accordingly, the reversal or modification on appeal of the authorization to consummate the sale~~

~~of the Sale Coverages as contemplated by the Agreement shall not affect the validity of the sale of the Sale Coverages to Arrowood, unless such authorization is duly stayed pending appeal. Arrowood is a purchaser in good faith of the Sale Coverages and shall be entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.~~

11. Pursuant to Bankruptcy Rule 9019, the settlement and mutual release of Claims as set forth in the Agreement are hereby approved and such releases shall be given effect by the Court to the full extent of the Court's power exercising its jurisdiction over the Policies to administer and dispose of property of Quigley's estate. This Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing and shall not be stayed under Bankruptcy Rule 6004(g).

12. In any proposed plan of reorganization that includes a Settling Asbestos Insurance Entity Injunction (as such term was defined in the Fourth Amended Plan), Quigley shall designate Arrowood as a Settling Asbestos Insurance Entity (as such term was defined in the Fourth Amended Plan).

13. This Court shall retain jurisdiction to interpret and enforce the provisions of the Agreement and this Order, and to adjudicate, if necessary, any and all disputes arising under or relating in any way to, or affecting, any of the transactions contemplated under the Agreement.

Dated: New York, New York
January 14, 2011

    /s/ STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE