Edward A. Friedman
William P. Weintraub
Hal Neier
FRIEDMAN KAPLAN SEILER & ADELMAN LLP
7 Times Square
New York, NY 10036-6516
(212) 833-1100
wweintraub@fklaw.com

*Attorneys for Reaud Morgan & Quinn, L.L.P.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                     )

In re:                                      )        Chapter 11

                                         )

QUIGLEY COMPANY, INC.,           )        Case No. 04-15739 (SMB)

                                       )

                       Debtor.      )

                                       )
------------------------------------------------------------x

**OBJECTION OF REAUD MORGAN & QUINN, L.L.P. TO EXPEDITED**
**MOTION OF QUIGLEY COMPANY, INC., FOR AN ORDER AUTHORIZING**
**QUIGLEY TO ENTER INTO PLAN SUPPORT AGREEMENT WITH PFIZER**
**INC. AND THE AD HOC COMMITTEE OF TORT VICTIMS**

        Reaud Morgan & Quinn, L.L.P. ("Reaud Morgan") hereby files its

objection (this "Objection") to the Expedited Motion of Quigley Company, Inc.

("Quigley" or the "Debtor") for an Order Authorizing Quigley to Enter into Plan Support

Agreement with Pfizer Inc. and the Ad Hoc Committee of Tort Victims (the "Motion")

[Docket No. 2244] and in support thereof, respectfully represents as follows:

971982.1

<u>**PRELIMINARY STATEMENT**</u>

The Court denied confirmation of the Debtor's Fourth Amended and Restated Plan of Reorganization (the "Fourth Amended Plan") on September 8, 2010, because, among other reasons, (i) the Fourth Amended Plan was proposed by Pfizer Inc. ("Pfizer"), the true plan proponent, in bad faith, (ii) Pfizer had procured votes in bad faith by creating a subclass of motivated claimants whose votes were purchased by Pfizer by means of various pre-petition settlement agreements, and (iii) the Fourth Amended Plan provided unequal treatment to settling and non-settling claimants.

The Debtor has filed this Motion to approve a Plan Support Agreement (the "PSA") on an expedited basis. As set forth in the Motion, the PSA derives from a new settlement agreement entered into between Pfizer and the Ad Hoc Committee of Tort Victims (the "Pfizer Settlement Agreement"). It appears the Debtor is (once again) a party in name only. As under the Fourth Amended Plan, the reorganization of the Debtor is incidental to Pfizer's global strategy, which includes obtaining the benefit of a channeling injunction. This is illustrated by, among other things, the Debtor's minimal participation in the development of the Pfizer Settlement Agreement and the PSA.

According to the Motion and supporting declarations, the Motion was required to be filed because (i) the Pfizer Settlement Agreement -- a document that has not been publicly disclosed -- required the Debtor, the Ad Hoc Committee of Tort Victims (the "Ad Hoc Committee"), and Pfizer (collectively, the "PSA Parties") to enter into the PSA and (ii) the Pfizer Settlement Agreement required the Debtor to seek approval of the PSA before Pfizer would support the Debtor's filing of its revised plan. Thus, an agreement that has not been filed with the Court (the Pfizer Settlement Agreement) is driving the Motion.

The Motion seeks highly unusual relief. It seeks approval of the PSA under the guise of a compromise under Bankruptcy Rule 9019. Yet the PSA does not settle any claims of the Debtor. It is also highly doubtful that the PSA involves the use, sale or lease of property of the estate for purposes of invoking Bankruptcy Code section 363.

Although the Motion might appear to be nothing more than an unnecessary request for a "comfort" order, Reaud Morgan opposes the Motion because it might also be a Trojan Horse. Hidden inside the Motion -- in the form of order filed as an exhibit thereto -- is a finding that the PSA was negotiated in good faith. If the Court finds at this early stage (and on an incomplete record) that the PSA was negotiated in good faith, it might be implicitly finding that Pfizer (the true plan proponent) acted in good faith in procuring the plan support (read "acceptances") of the Ad Hoc Committee and its voting constituents. Such a finding would also imply that Pfizer has acted in good faith in proposing the revised plan of reorganization that is appended in draft form to the PSA (the "Revised Plan"). This is the ultimate in bootstrapping.

Given the reasons for the demise of the Fourth Amended Plan and the Ad Hoc Committee's role in that demise, it is ironic that the Ad Hoc Committee and Pfizer would enter into a secret settlement and seek preemptive and expedited findings of Pfizer's and the Ad Hoc Committee's good faith in advance of (i) filing the full plan, (ii) publicly disclosing all of the terms of the settlement embodied in the Pfizer Settlement Agreement, (iii) permitting discovery similar to that taken by the Ad Hoc Committee the last time there was the specter of vote buying, and (iv) going through the normal disclosure statement and plan confirmation process.

There is no basis for an expedited determination of the good faith of the PSA Parties. How can there be a determination of the Debtor's good faith in negotiating the PSA if the PSA is predicated on, and required by, a settlement agreement that the Debtor is not a party to and had not even seen at the time it filed the Motion? How can there be a determination of Pfizer's and the Ad Hoc Committee's good faith if there is a risk that Pfizer has improperly purchased the support of the Ad Hoc Committee under the terms of the unfiled Pfizer Settlement Agreement? These are questions that answer themselves. It is simply too early in the plan confirmation process for the Court to make any findings that might be preclusive of issues that will arise in connection with confirmation.

Based on the foregoing and as discussed more fully below, the Motion should be denied.

## RELEVANT FACTUAL BACKGROUND

1.     On September 4, 2004 (the "Petition Date"), Quigley filed a voluntary case under chapter 11 of 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code).

2.     Beginning in September 2009, the Court convened a confirmation hearing on the Fourth Amended Plan.

3.     The Debtor, the Official Committee of Unsecured Creditors (the "Committee"), Albert Togut, Esq., as Future Claims Representative, and Pfizer supported confirmation of the Fourth Amended Plan. The Ad Hoc Committee and the United States Trustee, joined by Reaud Morgan, Hissey Kientz, L.L.P., and Hissey, Kientz and Herron P.L.L.C. (together with Hissey Kientz, L.L.P., "Hissey Kientz"), opposed confirmation, and sought dismissal of the case.

4.     Following extensive discovery and a 15-day hearing, the Court denied confirmation of the Fourth Amended Plan for the reasons set forth in its September 8, 2010 decision (the "September Decision"). *In re Quigley Co., Inc.*, 437 B.R. 102 (Bankr. S.D.N.Y. 2010).

5.     On October 5, 2010, the Ad Hoc Committee filed a motion to dismiss this chapter 11 case (the "Motion to Dismiss") [Docket No. 2135] and to dissolve the preliminary injunction entered by the Court to restrain parties from bringing derivative claims against Pfizer (the "Motion to Dissolve") [Docket No. 2136]. Reaud Morgan and Hissey Kientz joined in these motions [Docket Nos. 2165, 2166, 2167 & 2168].

6.     On March 15, 2011, this Court set a hearing on the Motion to Dismiss for April 27, 2011.

7.     The Debtor brought the present Motion by order to show cause on March 21, 2011. Through the Motion, the Debtor seeks this Court's "approval of and authorization to enter into" the PSA, dated as of March 20, 2011, by and among the Debtor, Pfizer, and the Ad Hoc Committee (including the members thereof). The Debtor seeks approval of the PSA pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Rule 9019") and Bankruptcy Code sections 363 and 1125. The Court granted the Debtor's request to hear the Motion on an expedited basis, setting the hearing for April 5, 2011.

8.     According to the Motion, the Debtor "has been informed" that on March 20, 2011, Pfizer and the ad Hoc Committee "entered into a settlement agreement pertaining to, among other things, (a) full and final settlement of Pfizer Personal Injury

Claims [held by the persons represented by the Ad Hoc Committee], (b) withdrawal by Pfizer and the Ad Hoc Committee of all pending litigation and appeals including the Motion to Dismiss . . . and (c) resolution of certain asserted rights of the Ad Hoc Committee to payment of their professionals fees incurred in connection with the Chapter 11 Case."  Motion ¶ 7.

9.     A copy of the Pfizer Settlement Agreement has not been filed with the Court nor does the Motion, the attached PSA, or Revised Plan describe any of the economic or other terms of that agreement.  The Motion does note that the Debtor is "informed" that the Pfizer Settlement Agreement requires the Ad Hoc Committee to enter into the PSA with and among Pfizer and the Debtor.[1]  *Id.* ¶ 8.  The PSA requires the Ad Hoc Committee to "support, recommend and use their best efforts to cause their respective clients . . . to vote in favor of Quigley's revised plan of reorganization" provided certain conditions are met (such as the receipt of a Court-approved disclosure statement) and provided the revised plan meets certain substantive criteria.  *Id.* According to the Motion, the draft Revised Plan attached to the PSA meets the criteria necessary to compel the Ad Hoc Committee's support.  *Id.* ¶ 10.

10.     As required by the Pfizer Settlement Agreement, Pfizer and the Ad Hoc Committee entered into the PSA on March 20, 2011.  *Id.* ¶ 9.  Quigley signed the PSA the same day.  *See* PSA at 15.

11.     According to the declaration submitted by the Debtor's counsel, counsel is "advised by counsel for Pfizer" that the terms of the Pfizer Settlement Agreement "preclude Pfizer from supporting Quigley's filing of a revised plan and

---

[1] The PSA itself recites that entry into the PSA is a requirement of the Pfizer Settlement Agreement.  *See* PSA at 3 ("WHEREAS, pursuant to the term of the [Pfizer] Settlement Agreement, Pfizer and the Ad Hoc Committee agreed to enter into a plan support agreement with Quigley . . .").

disclosure statement prior to any hearing on the Motion."  Decl. of Lawrence V. Gelber

in Supp. of Motion [Docket No. 2245] (the "Gelber Decl.") ¶ 5.

## OBJECTION

I.      **THE MOTION SHOULD BE DENIED TO THE EXTENT IT RELIES ON BANKRUPTCY RULE 9019, WHICH IS INAPPLICABLE TO THE PSA**

      A.      **Because the PSA Does Not Settle Any Claims of the Debtor, Rule 9019 Is Not Applicable to the PSA**

         12.     As an initial matter, the Motion should be denied to the extent the

Debtor is seeking approval of the PSA under Rule 9019 as a "settlement."  The PSA does

not purport to settle any claims or causes of action of the Debtor.  Rather, the PSA is

simply an agreement among the parties to support the Revised Plan.  Although the PSA

repeatedly refers to and even incorporates terms of the non-public Pfizer Settlement

Agreement, the Motion does not seek approval of that agreement.  Thus, Rule 9019 is

inapposite in this context.

         13.     For this reason, the Court should refrain from making any findings

typically associated with Rule 9019 settlements, including whether the purported

settlement was negotiated in good faith.  At bottom, the Debtor's request to approve the

PSA under Rule 9019 appears to be a mere contrivance by which the Debtor (or more

accurately, Pfizer) seeks to obtain such findings -- which are irrelevant to whether the

Debtor should be permitted to propose or support its own Revised Plan.

         14.     The Debtor's invocation of Rule 9019 in connection with the PSA

thus appears to be a Trojan Horse.  Buried within the proposed order attached to the

Motion (the "Proposed Order") are findings that seem to extend not only to Quigley, but

also to Pfizer and the Ad Hoc Committee.  Such findings are at best premature because

(i) the record is incomplete and (ii) the expedited nature of the Motion has not afforded

Reaud Morgan the protections of Bankruptcy Code sections 1125, 1126, and 1129 or

Bankruptcy Rules 2002(b)(1) and (b)(2). Specifically, the Proposed Order contains

proposed "determinations" that "the Plan Support Agreement was negotiated in good

faith and at arms-length and the relief requested in the Motion is fair and equitable,

represents a sound exercise of Quigley's business judgment, and is in the best interests of

Quigley, its estate, its creditors, its demand holders and other parties-in-interest." *See*

Motion, Ex. B at 2. These broad determinations purport to extend to all of the PSA

Parties. Such determinations -- which implicate Bankruptcy Code sections 1125(a),

1126(c) and (e), and 1129(a)(1), (2), and (3) -- are patently improper in the context of this

Motion for multiple reasons.

15. As highlighted in this Court's September Decision, whether or not

Pfizer has acted in good faith in procuring support of a given plan goes to the heart of

plan confirmation issues. *In re Quigley*, 437 B.R. at 127 (concluding that Fourth

Amended Plan was not proposed in good faith because "Pfizer bought enough votes to

assure that any plan would be accepted."); *see also id.* at 132 (holding that plan votes of

settling claimants should be designated because their support for plan was procured in

bad faith). The Debtor should not be permitted to preempt (or in any way prejudice) the

determination of these key confirmation issues by obtaining expedited findings that the

PSA -- the vehicle through which the Ad Hoc Committee's support for the Revised Plan

was procured by Pfizer and the document to which the Revised Plan is attached -- was

negotiated in good faith.[2] *See, e.g., In re Louise's, Inc.*, 211 B.R. 798, 802 (Bankr. D.

Del. 1997) (denying approval of Rule 9019 motion where court found the settlement

---

[2] The Proposed Order goes well beyond providing comfort that the PSA does not constitute unauthorized plan solicitation, and risks precluding substantive confirmation objections and potential vote designation requests.

agreement "would ultimately lead to a proposed plan of reorganization, the terms of which could reasonably be found to have been pre-determined . . . thereby circumventing a meaningful consideration of the requirements of Chapter 11 regarding confirmation of a reorganization plan.").

16.    The Debtor's request for a finding that the PSA was negotiated in good faith is particularly disturbing in light of the fact that the terms of the Pfizer Settlement Agreement (*i.e.*, the agreement from which the PSA emanates) have not been disclosed publicly or to the Court.[3]  In other words, the Debtor is asking the Court to make expedited determinations regarding good faith based on incomplete information. As noted above, the Court's conclusion that the Fourth Amended Plan was proposed in bad faith was based on the fact that Pfizer had inappropriately "bought" votes of certain claimants through prepetition settlement agreements.  *In re Quigley*, 437 B.R. at 127. The Court further determined that the votes of the settling claimants should be designated because Pfizer procured those votes in bad faith by means of those settlement agreements.  *Id.* at 132.  In light of this history, the question of whether Pfizer has once again acted in bad faith in motivating a controlling subclass to vote for its plan will be a potentially significant issue at the confirmation hearing for the Revised Plan.  A critical data point for measuring good faith will be the consideration being paid by Pfizer to the new group of settling claimants under the Pfizer Settlement Agreement.  Pfizer and the Debtor should not be permitted to preempt a full hearing on this and other related

---

[3] In response to a formal discovery request, Pfizer and the Ad Hoc Committee provided counsel to Reaud Morgan and Hissey Kientz with a copy of the Pfizer Settlement Agreement, along with other requested documents, more than a week after the Motion was filed and two days before the deadline for filing objections.  Counsel's receipt of the Pfizer Settlement Agreement, however, was conditioned on their keeping the terms of the agreement strictly confidential and not disclosing such terms to their clients.

confirmation issues under the guise of a good faith finding in connection with a completely unnecessary Rule 9019 motion.

17.     Likewise, the secrecy surrounding the terms of the Pfizer Settlement Agreement raises serious red flags.  Indeed, the Motion makes clear that the terms of the Pfizer Settlement Agreement had not even been fully disclosed to the Debtor at the time the PSA was signed or the Motion was filed.  *See* Motion ¶ 7 (noting that the Debtor "has been informed" that the Pfizer Settlement Agreement was executed); *id.* ¶ 8 (noting that the Debtor "has also been informed" that the terms of the Pfizer Settlement Agreement provided that Pfizer and the Ad Hoc Committee would enter into the PSA and that the Debtor "understands" that under the Pfizer Settlement Agreement, the Revised Plan will be deemed to be acceptable to the Ad Hoc Committee under certain circumstances); Gelber Decl. ¶ 5 (declaring that Debtor's counsel is "advised by counsel to Pfizer" that the terms of the Pfizer Settlement Agreement preclude Pfizer from supporting the Revised Plan prior to any hearing on the Motion).  Moreover, the documents Quigley produced in response to Reaud Morgan's and Hissey Kientz's document requests did not include any draft or the final version of the Pfizer Settlement Agreement, further indicating that the Debtor had not seen the Pfizer Settlement Agreement when it executed the PSA and filed the Motion.

18.     The Debtor's apparent lack of involvement in the development of the Pfizer Settlement Agreement and the PSA suggests it acted with neither good faith nor bad faith in connection with the negotiation of those agreements.  The Debtor was apparently a passive non-participant whose inactivity cannot support a finding of good

faith with respect to how the PSA came about, much less a finding that the PSA was the product of arms-length negotiations on the part of the Debtor.

19.     That the Debtor would file the Motion requesting a finding that the PSA was negotiated in good faith before it had apprised itself of the *actual terms* of the interrelated Pfizer Settlement Agreement is disquieting to say the least.  Such conduct certainly reinforces this Court's earlier determination that "this is a Quigley bankruptcy in name only" and that Pfizer is the actual plan proponent.  *In re Quigley*, 437 B.R. at 126.  If nothing else, the secrecy surrounding the terms of the Pfizer Settlement Agreement reinforces the notion that there can be no present "determination" that the related PSA was negotiated in good faith.  In any event, even if the terms of the Pfizer Settlement Agreement were placed before the Court, a determination as to whether the PSA was negotiated in good faith should nonetheless be deferred until confirmation because, as noted above, the presence or absence of good faith is inextricably tied to the confirmability of the Revised Plan.

20.     Approval of the PSA without the Court (or Quigley) knowing the terms of the interrelated Pfizer Settlement Agreement is also problematic because certain terms of the PSA are directly linked to the terms of the Pfizer Settlement Agreement.  *See, e.g.,* PSA § 6(a) ("This Agreement shall terminate automatically upon the termination of the Settlement Agreement.")  Other provisions of the PSA require Quigley to act in a manner consistent with the terms of the Pfizer Settlement Agreement.  *See, e.g.,* PSA § 6(d)(i) (allowing the Ad Hoc Committee to terminate the PSA if Quigley or Pfizer files a motion or pleading materially inconsistent with the Settlement Agreement); PSA § 7 (Quigley covenants and agrees to "negotiate in good faith the Plan and the Plan

Related Documents, each of which shall be consistent with [the PSA] and the [Pfizer] Settlement Agreement in all material respects . . . .").  Without knowing what the Pfizer Settlement Agreement provides -- and, thus, how Quigley must act in order to comply with that agreement -- it is impossible for the Court to fully evaluate Quigley's rights and obligations under the PSA.  This is yet another reason why the Motion should be denied.

21.     In sum, the PSA is not a true "settlement" and the Debtor should not be permitted to use Rule 9019 to obtain determinations from this Court (based on incomplete information) that could preempt or prejudice objections to confirmation of the Revised Plan.

**B.     The Cases Cited by Quigley Do Not Support Its Misuse of Rule 9019**

22.     The unreported orders the Debtor cites in support of it reliance on Rule 9019 are inapposite.  *See* Motion ¶ 12.  Rather than support the Motion, these cases highlight the fact that there is no settlement embodied in the PSA and that Rule 9019 is inapplicable.  More importantly, none of these unreported orders make early, potentially preclusive findings regarding disclosure statement, voting, or plan confirmation issues prior to the time those issues would be ripe for adjudication under the relevant provisions of the Bankruptcy Code and Bankruptcy Rules.

23.     In support of its contention that Rule 9019 is applicable, the Debtor cites an unreported order by Judge Gerber in *In re Chemtura Corp.*, No. 09-11223 (Bankr. S.D.N.Y. Aug. 9, 2010) (REG) [Docket No. 3527], in which the Court authorized chapter 11 debtors to enter into a plan support agreement with the official committee of unsecured creditors and certain noteholders.  The situation in *Chemtura* is distinguishable from this case for several important reasons.  First, the plan support agreement in

*Chemtura* was filed contemporaneously with a disclosure statement and proposed plan of reorganization, and the debtors in *Chemtura* did not execute or obtain Court approval of a plan support agreement until *after* the disclosure statement had been approved. *See In re Chemtura Corp.*, No. 09-11223, 8/4/2010 Hr'g Tr. at 108:8-109:5 (relevant portion of transcript annexed hereto as **Exhibit A**) ("Your Honor, the debtors did not sign the plan support agreement, although the terms of it have been fully negotiated. We've been waiting for Court authorization to do that, and the intent was only to do that after the disclosure statement had been approved so that the provisions of the plan support agreement binding the bondholders to vote in favor of the plan, if presented with an approved disclosure statement, would not, in any way, violate Section 1125 of the Bankruptcy Code.").[4]

24.     In contrast to *Chemtura*, the Debtor in this case has only filed the draft Revised Plan (with no accompanying schedules or exhibits), has not filed a disclosure statement explaining the provisions of that Revised Plan, and has not filed the Pfizer Settlement Agreement that the Debtor claims will facilitate its exit from chapter 11. Notwithstanding that any settlements forming the basis of a plan of reorganization should be addressed at confirmation, with such crucial information hidden from view, creditors and this Court cannot determine whether the PSA and the plan it

---

[4] Another reason that *Chemtura* is distinguishable is that the debtors in that case sought approval of a plan settlement agreement under Bankruptcy Code section 363(b)(1) and Rule 9019 because the agreement provided for the payment *by the debtors* of certain fees and expenses of an ad hoc bondholders committee (although the parties later agreed to modify that aspect of the agreement and defer the payment of such fees and expenses). In this case, any proposed payment of fees to the Ad Hoc Committee is not governed by the PSA but instead by the Pfizer Settlement Agreement, which presumably provides for the payment of such fees and expenses *by Pfizer, not Quigley*. *See* PSA at 3 ("Pfizer and the Ad Hoc Committee engaged in good faith and arms-length negotiations that led to an agreement regarding the material terms of a global settlement pertaining to, among other things, . . . (c) resolution of certain asserted rights of the Ad Hoc Committee to payment of their professional fees incurred in connection with the Chapter 11 case."). Accordingly, unlike *Chemtura*, in seeking approval of the PSA the Debtor is not seeking authority to use estate property to pay professional fees.

purports to support are in the best interests of the estate or were negotiated in good faith on an arms-length basis.

    25.    *Chemtura* is also distinguishable because the Court's order approving the plan support agreement contained no findings that any settlement "was negotiated in good faith and at arms-length," "was fair and equitable," or "represented a sound exercise of the debtors' business judgment" -- findings that the Debtor asks this Court to make in the Proposed Order.  *See* Order Authorizing the Debtors to Enter Into an Amended Plan Support Agreement with the Creditors' Committee and Certain Holders of the Debtors' 2009 Notes, 2016 Notes and 2026 Debentures, *In re Chemtura Corp.*, No. 09-11223 (Bankr. S.D.N.Y. Aug. 9, 2010) [Docket No. 3527] (a copy of this order is attached hereto as **<u>Exhibit B</u>**).  Indeed, it was made clear at the hearing at which Judge Gerber approved the *Chemtura* plan support agreement that such findings were inappropriate in the context of that motion and that all objections to the plan and the settlements embodied in the plan would be preserved for confirmation.  At that hearing, the following exchange took place between the Court and counsel to the official committee of equity security holders:

> MR ZIMMERMAN:  *** [W]e wanted to make it crystal clear that in approving the PSA it will not be viewed as the Court having made any finding with respect to or approval of any of the settlements encompassed with respect to the disputed claims: diacetyl, PBGC, environmental.  It will not be a finding or an approval of the valuation that is baked into the PSA, that all those issues are going to be litigated *ab initio*, based on the evidentiary record at confirmation, and all parties reserve all rights, all arguments and all objections to those issues.  And with that understanding, that does in fact eliminate the equity committee's objection to the PSA.

> THE COURT: Okay, thank you.  Does anybody believe that Mr. Zimmerman got it wrong?

(No Response)

THE COURT: There being no response, I'm going to
conclude that you got it right, Mr. Zimmerman.

*In re Chemtura Corp.*, No. 09-11223 (REG), 8/4/2010 Hr'g Tr. at 112:2-18.  Similarly,

this Court should not grant the Motion absent adequate disclosure by the Debtor

regarding the settlement between Pfizer and the Ad Hoc Committee, and should not at

this stage make findings on any plan confirmation issues that may implicitly be imbedded

in the PSA.[5]

26.     Quigley's reliance on the Court's unpublished order approving a

settlement agreement in *In re Lyondell Chemical Company*, No. 09-10023 (Bankr.

S.D.N.Y. Feb. 17, 2010) (REG) [Docket No. 3820], is also misplaced.  In *Lyondell*, the

Court was faced with a proposed settlement between the debtors and Bank of New York

Mellon ("BNY"), the indenture trustee for certain series of debt instruments.  Under that

settlement agreement, which resolved, *inter alia*, BNY's claim for an approximately

$361 million superpriority administrative expense under Bankruptcy Code section 507(b)

and a separate BNY motion and appeal standing in the way of plan confirmation, the

debtors and certain senior secured lenders agreed to modify the then-pending plan of

reorganization to improve recoveries for BNY's constituency and pay certain of BNY's

legal fees and expenses.  *See* Debtors' Motion for an Order Pursuant to Bankruptcy Rule

---

[5] This includes the reimbursement of any fees or expenses of the Ad Hoc Committee, which
should only be paid after such fees and expenses are approved by the Court pursuant to a properly noticed
fee application under Bankruptcy Code section 503(b).  *See In re Chemtura Corp.*, No. 09-11223 (REG),
8/4/2010 Hr'g Tr. at 109:12-111:3 (in response to objections to the plan support agreement, debtors revised
agreement to provide that fees and expenses of ad hoc committee of bondholders would only be paid after
the Court approved such fees and expenses pursuant to a section 503(b) fee application).  *See also*
Bankruptcy Code section 1129(a)(4) ("The court shall confirm a plan only if all of the following
requirements are met: . . . (4) Any payment made or to be made by the proponent, by the debtor, or by a
person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in
connection with the case, or in connection with the plan and incident to the case, has been approved by, or
is subject to the approval of, the court as reasonable.").

9019 Approving Settlement Agreement with Bank of New York Mellon. *In re Lyondell Chemical Company*, No. 09-10023 (Bankr. S.D.N.Y. Jan. 27, 2010) [Docket No. 3719].

27.     The situation in *Lyondell* is very different from the "settlement" Quigley proposes.  The settlement in *Lyondell* was an actual settlement of claims filed by BNY against the debtors for which Court approval under Bankruptcy Rule 9019 was necessary because both the Debtors and BNY were exchanging significant consideration. In addition, at the time the Court was considering the settlement agreement in *Lyondell*, parties-in-interest and the Court were aware of all of the terms of the settlement and that settlement's impact on a filed and pending plan of reorganization.  Here, on the other hand, the Pfizer Settlement Agreement and the final version of the Revised Plan are not publicly available and not before the Court.  Moreover, in this case, all the PSA does is bind Quigley, Pfizer, and the Ad Hoc Committee to supporting the Revised Plan.  Any actual exchange of consideration is instead provided for in the Pfizer Settlement Agreement, for which Court approval is *not* being sought.

28.     The Debtor's reliance on the unpublished order approving a plan support agreement in *In re Owens Corning*, No. 00-3837 (Bankr. D. Del. June 29, 2006) (JKF) [Docket No. 18208], is similarly unavailing.  In that case, the debtors sought approval of a plan support agreement that set forth the economic and other terms under which certain unsecured creditors joined the debtors and other stakeholders in supporting an amended plan of reorganization involving a global settlement of many complex issues that were the subject of protracted litigation.  The plan support agreement and global

settlement involved in *Owens Corning* actually represented a settlement and thus stand in sharp contrast to the manufactured "settlement" supposedly embodied in the PSA.[6]

29.     Moreover, unlike the Proposed Order submitted here, the court's order approving the *Owens Corning* plan support agreement made clear that "nothing contained in this Order shall constitute a determination that a plan of reorganization consistent with the Plan Support Agreement satisfies the requirements for confirmation under the Bankruptcy Code." Order Authorizing the Debtors to Execute and Implement the Terms of the Plan Support Agreement Pursuant to 11 U.S.C. §§ 105(a), 363(b) and Rule 9019 of the Federal Rules of Bankruptcy Procedure at ¶ 4, *In re Owens Corning*, No. 00-3837 (Bankr. D. Del. June 29, 2006) [Docket No. 18208] (a copy of this order is attached hereto as **Exhibit D**). In contrast, the PSA Parties in this case seek findings that could potentially preempt or prejudice such confirmation issues as vote designation and whether the plan was proposed in good faith.

## II.     THE MOTION SHOULD BE DENIED BECAUSE IT IS PROCEDURALLY UNNECESSARY

30.     The Motion should also be denied because it is procedurally unnecessary. This chapter 11 case was filed more than six years ago. The September Decision denying confirmation of the Fourth Amended Plan was entered more than six months ago and the Debtor has already drafted the Revised Plan. At this point in the case, if the Debtor wishes to propose the Revised Plan, the more sensible procedure is for

---

[6] Specifically, in *Owens Corning*, under the settlement term sheet (which, unlike in this case, was appended as an exhibit to the plan support agreement) parties agreed on, among other things, plan treatment for the various classes, enterprise valuation, a fixed amount for asbestos personal injury claims, the amount and structure of exit financing, corporate governance issues, payment of professional fees and expenses to certain stakeholders, and dismissal of pending litigation. *See* Notice of Filing of (A) April 28, 2006 - Settlement Term Sheet; and (B) Plan Support Agreement, In re Owens Corning, No. 00-3837 (Bankr. D. Del. May 10, 2006) [Docket No. 17710] (a copy of this notice is attached hereto as **Exhibit C**).

the Debtor to formally *file* the Revised Plan and *seek its confirmation*.  The intermediate

step of seeking approval of the PSA under Rule 9019 is at best superfluous.

        31.     Indeed, the Court has already cautioned the Debtor that seeking

separate approval of the PSA outside of the plan confirmation context "seems like an

unnecessary additional procedural delay."  Tr. of Hr'g of 3/15/2011 at 15:3-5; *see also id.*

at 15:10-13 ("I also don't understand why you're talking about making a separate 9019

motion and not just rolling your settlements into a plan.").  The Motion should be denied

and the Debtor should instead move forward with filing a disclosure statement and

seeking confirmation of the Revised Plan.

        32.     In support of the Motion, the Debtor indicates that under the Pfizer

Settlement Agreement, Pfizer's support of the Revised Plan is conditioned on the Debtor

seeking Court approval of its entry into the PSA.  *See* Gelber Decl. ¶ 5 (stating that

Debtor's counsel is "advised by counsel for Pfizer" that the terms of the Pfizer Settlement

Agreement "preclude Pfizer from supporting Quigley's filing of a revised plan and

disclosure statement prior to any hearing on the Motion [to approve the Debtor's entry

into the PSA].").  Thus, the Debtor suggests that its entry into the PSA is necessary to

secure Pfizer's support of the Revised Plan.  Any such requirement, however, appears

contrived to obtain:  (i) this Court's "blessing" of the PSA  (and, by extension, the non-

public Pfizer Settlement Agreement) and (ii) a finding that the PSA Parties have acted in

good faith.  As noted above, this latter finding would be premature on this Motion, and

will likely be a central issue when the amended disclosure statement and Revised Plan are

filed with the Court and presented for approval on regular notice.

33.     As this Court noted in the September Decision, "this is a Quigley bankruptcy in name only."  *In re Quigley*, 437 B.R. at 126-27 ("Pfizer conceived and executed the global strategy, including . . . the filing of the chapter 11 case . . . .  Pfizer, the parent of Quigley, the architect of the global strategy, the only source of chapter 11 and plan financing and the principal beneficiary of the channeling injunction, is the <u>real</u> proponent of this plan.") (emphasis in original).  Whether the Debtor supports the Revised Plan contemplated by the PSA is almost certainly within Pfizer's control.  Indeed, Pfizer's control over the Revised Plan does not appear to be any different than its control over the Fourth Amended Plan.  Then, as now, Pfizer was the principal beneficiary of the channeling injunction and the *real* proponent of the plan.  If the case dynamics and realities have changed at all, it is only insofar as Quigley's role and involvement have further diminished.  As such, any insistence by Pfizer and/or the Ad Hoc Committee -- both of whom are already parties to the PSA -- that the Debtor be separately bound by the PSA is both unnecessary and disingenuous.[7]

34.     Even if there were a valid reason for the Debtor to execute the PSA in advance of formally filing the Revised Plan, the Motion is still unwarranted.  As the Motion itself acknowledges, decades-old precedent from within this district holds that a debtor's entry into a plan support agreement does not require prior court approval.  *See* Motion ¶ 23 (citing *In re Texaco Inc.*, 81 B.R. 813, 818 (Bankr. S.D.N.Y. 1988)).  Indeed, there are several recent cases within this district where post-petition "lock-up" or plan support agreements have been entered into by the debtor without prior court

---

[7] In an especially apt footnote in the September Decision, the Court stated that "Quigley acquiesced in if not actively embraced Pfizer's actions in connection with its prosecution of its chapter 11 case, and Pfizer's bad faith may be attributed to Quigley as well." *Id.* at 127 n.32.  Quigley's apparent distance from the Pfizer Settlement Agreement highlights the tactical nature of this unnecessary Motion.

authorization. *See, e.g., In re U.S. Shipping Partners L.P.*, 09-12711 (RDD) (Bankr. S.D.N.Y. 2009) [Docket Nos. 265 & 412] (post-petition amendments to prepetition plan support agreement); *In re Refco Inc.*, No. 05-60006 (RDD) (Bankr. S.D.N.Y. 2006) [Docket No. 2861]; *In re Adelphia Commc'ns Corp,* 02-41729 (REG) (Bankr. S.D.N.Y. 2006) [Docket No. 12163]. In short, if the Debtor wants to enter into the PSA, it should do so without adding the procedural delays and infirmities attendant to the Motion.

<u>**CONCLUSION**</u>

35. For all of the reasons discussed herein, the Motion should be denied.[8]

36. Based on the foregoing, to the extent the Court determines that the Debtor's request for approval of its entry into the PSA should be granted, such approval should not be granted under Rule 9019 but instead under Bankruptcy Code section 363(b). *See, e.g., In re Visteon Corp.*, 09-11786 (CSS) (Bankr. D. Del. June 17, 2010) [Docket No. 3427] (authorizing debtor to enter into plan support agreement under Bankruptcy Code section 363(b)(1)). To that end, the Proposed Order should be revised to: (i) make clear that such approval is not pursuant to Rule 9019; (ii) omit any "determinations" regarding the facts and circumstances surrounding the negotiation of the PSA, including any finding or determination that the PSA Parties have acted in good faith or that the PSA was negotiated in good faith and at arms-length; (iii) make clear that

---

[8] Reaud Morgan notes that on March 31, 2011, the Future Claims Representative, Albert Togut, filed a statement in support of the Motion. Statement of Albert Togut, as Legal Representative for Future Asbestos Personal Injury Claimants, Regarding Debtor's Motion to Enter Into a Plan Support Agreement with Pfizer and the Ad Hoc Committee of Tort Victims (the "FCR Statement") [Docket No. 2248]. The FCR Statement is meaningless. In the same paragraph that Mr. Togut expresses his support for the granting of the Motion authorizing the Debtor to enter into the PSA (and further states that he is prepared to support the forthcoming Revised Plan envisioned by the PSA), he admits that he has not performed due diligence and "has yet to negotiate with Pfizer" the appropriate documentation. FCR Statement ¶ 5. Moreover, Mr. Togut does not indicate that he reviewed the confidential Pfizer Settlement Agreement, which underpins the PSA and the Revised Plan.

nothing in the Proposed Order will preclude or in any way prejudice confirmation-related objections, including, without limitation, any objections under Bankruptcy Code section 1129, or any motions to designate votes under Bankruptcy Code section 1126(e); and (iv) make clear that nothing in the Proposed Order will be deemed a finding that any self-serving recitals or statements in the PSA[9] are correct, established as facts, or approved by the Court.

Dated:    New York, New York
          April 1, 2011

                                              Respectfully submitted,

                                              FRIEDMAN KAPLAN SEILER &
                                              ADELMAN LLP


                                              /s/ Hal Neier
                                              Edward A. Friedman
                                              William P. Weintraub
                                              Hal Neier
                                              1633 Broadway
                                              New York, NY 10019-6708
                                              (212) 833-1100
                                              wweintraub@fklaw.com

                                              *Attorneys for Reaud Morgan &
                                              Quinn, L.L.P*

---

[9] These include, without limitation, the recital on page 3 of the PSA that "Pfizer and the Ad Hoc Committee engaged in good faith and arms-length negotiations that led to an agreement regarding the material terms of a global settlement . . ." and the statement in paragraph 16 of the PSA that "[t]his Agreement is not, and shall not be deemed to be, a solicitation of votes for the acceptance of the Plan or any plan of reorganization for the purposes of Sections 1125 and 1126 of the Bankruptcy Code or otherwise."