UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re | : |
|  | :     Chapter 11 |
| QUIGLEY COMPANY, INC., | : |
|  | :     Case No. 04–15739 (SMB) |
| Debtor. | : |
|  | : |
|  | : |

**QUIGLEY COMPANY, INC.**
**~~FOURTH~~FIFTH AMENDED AND RESTATED PLAN OF REORGANIZATION**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**
**~~(AS MODIFIED AS OF AUGUST 6, 2009)~~**

Schulte Roth & Zabel LLP

Michael L. Cook
Lawrence V. Gelber
~~Victoria A. Lepore~~
~~Adam L. Hirsch~~
919 Third Avenue
New York, NY 10022
Telephone:  (212) 756-2000
Facsimile:  (212) 593-5955

Attorneys for Quigley Company, Inc.
Debtor and Debtor-in-Possession

Dated:  New York, New York
    ~~August~~April 6, ~~2009~~2011

# TABLE OF CONTENTS

Page

ARTICLE I DEFINITIONS AND RULES OF INTERPRETATION ................................................................. 1
    Section 1.1    Capitalized Terms ................................................................................................ 1
    Section 1.2    Interpretation; Application of Definitions; Rules of Construction and
                   Computation of Time ............................................................................. ~~21~~20
    Section 1.3    Exhibits ............................................................................................................... 21
    Section 1.4    Ancillary Documents .......................................................................................... 21
    Section 1.5    "*Contra Proferentem*" Rule Not Applicable ..................................................... 21

ARTICLE II CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS .................................... ~~22~~21
    Section 2.1    Claims and Equity Interests Classified .......................................................... ~~22~~21
    Section 2.2    Summary of Classification of Claims and Equity Interests ................................ 22
    Section 2.3    Classification .................................................................................................. ~~23~~22

ARTICLE III TREATMENT OF UNCLASSIFIED CLAIMS ............................................................ ~~24~~23
    Section 3.1    Allowed Administrative Claims ..................................................................... ~~24~~23
    Section 3.2    Professional Compensation and Reimbursement Claims ................................ ~~24~~23
    Section 3.3    Priority Tax Claims ............................................................................................ 24
    Section 3.4    DIP Claim ....................................................................................................... ~~25~~24

ARTICLE IV TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS ............... ~~25~~24
    Section 4.1    Class 1 – Priority Claims ............................................................................... ~~25~~24
    Section 4.2    Class 2 –Secured Claims ............................................................................... ~~25~~24
    Section 4.3    Class 3 – Allowed Unsecured Claims ........................................................... ~~27~~26
    Section 4.4    Class 4 – Asbestos PI Claims ........................................................................ ~~27~~26
    Section 4.5    Class 5 – Equity Interests .............................................................................. ~~28~~27

ARTICLE V ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE
            OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS ................... ~~28~~27
    Section 5.1    Classes Entitled to Vote ................................................................................ ~~28~~27
    Section 5.2    Class Acceptance Requirement ..................................................................... ~~28~~27
    Section 5.3    Issuance of Injunctions Pursuant to Section 524(g) of the Bankruptcy Code ....
                   ~~28~~27
    Section 5.4    Cramdown ...................................................................................................... ~~28~~27
    Section 5.5    Acceptance by Unimpaired Class .................................................................. ~~29~~28
    Section 5.6    Elimination of Vacant Classes ...................................................................... ~~29~~28

ARTICLE VI DISTRIBUTIONS UNDER THE PLAN ON ACCOUNT OF CLAIMS OTHER
            THAN ASBESTOS PI CLAIMS ................................................................... ~~29~~28
    Section 6.1    Distributions .................................................................................................. ~~29~~28
    Section 6.2    Pro Rata Share Distributions ........................................................................ ~~29~~28
    Section 6.3    Means of Cash Payment ................................................................................ ~~29~~28
    Section 6.4    Delivery of Distributions .............................................................................. ~~30~~28
    Section 6.5    Time Bar to Cash Payments ......................................................................... ~~30~~29

Section 6.6 Timing of Distributions .......................................................... ~~30~~29
Section 6.7 Record Date for Holders of Claims ...................................... ~~30~~29
Section 6.8 Distributions After Effective Date ........................................ ~~30~~29
Section 6.9 Fractional Cents ..................................................................... ~~30~~29
Section 6.10 Interest on Claims ................................................................. ~~30~~29
Section 6.11 *De Minimis* Distributions .................................................... ~~31~~30
Section 6.12 Setoffs .................................................................................. ~~31~~30

ARTICLE VII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ... ~~31~~30
Section 7.1 General Treatment ................................................................. ~~31~~30
Section 7.2 Rejected, Assumed or Assumed and Assigned Executory Contracts ... ~~31~~30
Section 7.3 Payments Related to Assumption of Executory Contracts ..... ~~32~~31
Section 7.4 Bar to Rejection Damages ..................................................... ~~32~~31
Section 7.5 Indemnification and Reimbursement Obligations ................. ~~32~~31

ARTICLE VIII PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS OTHER THAN ASBESTOS PI CLAIMS ................. ~~33~~32
Section 8.1 Disputed Claims .................................................................... ~~33~~32
Section 8.2 Objection Deadline ............................................................... ~~33~~32
Section 8.3 Prosecution of Objections ..................................................... ~~33~~32
Section 8.4 No Distributions Pending Allowance .................................... ~~33~~32

ARTICLE IX MEANS FOR IMPLEMENTATION OF THE PLAN ................. ~~33~~32
Section 9.1 General .................................................................................. ~~33~~32
Section 9.2 Transactions on the Effective Date ....................................... ~~33~~32
Section 9.3 The Asbestos PI Trust ........................................................... ~~34~~33
Section 9.4 Reorganized Quigley's Obligations under the Plan .............. 35
Section 9.5 Charter and Bylaws ............................................................... ~~36~~35
Section 9.6 The Board of Directors of Reorganized Quigley .................. ~~36~~35
Section 9.7 Exit Facility .......................................................................... ~~36~~35
Section 9.8 Operations of Quigley Between Confirmation and the Effective Date ... ~~36~~35
Section 9.9 Cancellation of Existing Securities ...................................... ~~36~~35
Section 9.10 Effectuating Documents; Further Transactions ..................... ~~36~~35
~~Section 9.11~~ ~~AIG Assignment Agreement~~ .......................................... ~~37~~

ARTICLE X EFFECT OF CONFIRMATION ...................................... ~~37~~36
Section 10.1 Revesting of Reorganized Quigley's Assets .......................... ~~37~~36
Section 10.2 Preservation of Certain Causes of Action; Defenses ............ ~~37~~36
Section 10.3 Quigley Insurance Transfer ................................................... ~~38~~37
Section 10.4 Insurance Neutrality .............................................................. ~~39~~38
Section 10.5 Reduction of Insurance Judgments ....................................... ~~42~~41
Section 10.6 Terms of Injunction and Automatic Stay .............................. ~~42~~41
Section 10.7 No Successor Liability; No Liability for Certain Released Claims ... ~~42~~41
Section 10.8 Title to Asbestos PI Trust Assets .......................................... ~~43~~42
Section 10.9 Dissolution of Creditors' Committee; Retention of Future Demand Holders' Representative; Creation of the Trust Advisory Committee ... ~~43~~42

~~DOC ID-10435617.9~~

Section 10.10 ~~Avoidance and~~ Recovery Actions ..................................................... ~~44~~43
~~Section 10.11 Tax Sharing Agreement~~ ..................................................... ~~44~~

ARTICLE XI RELEASES, ~~INJUNCTION~~INJUNCTIONS AND ~~WAIVER~~WAIVERS OF
  CLAIMS ..................................................... ~~44~~43
Section 11.1 Discharge of Quigley ..................................................... ~~44~~43
Section 11.2 Injunction ..................................................... ~~45~~43
Section 11.3 Exculpation ..................................................... ~~45~~44
Section 11.4 Release of Quigley's Officers and Directors ..................................................... ~~45~~44
Section 11.5 Limited Release of Released Parties by Entities Accepting Distributions
  Under the Plan ..................................................... ~~46~~45
Section 11.6 Asbestos PI Channeling Injunction ..................................................... ~~46~~45
Section 11.7 Settling Asbestos Insurance Entity Injunction ..................................................... ~~47~~46
Section 11.8 Non-Settling Asbestos Insurance Entity Injunction ..................................................... ~~48~~47
Section 11.9 Limitations of Injunctions ..................................................... ~~50~~49
Section 11.10 Releases and Indemnification by Quigley ..................................................... ~~50~~49
Section 11.11 Confidentiality Injunction ..................................................... 49

ARTICLE XII CONDITIONS PRECEDENT TO CONFIRMATION  AND CONSUMMATION
  OF THE PLAN ..................................................... ~~51~~49
Section 12.1 Conditions Precedent to the Confirmation of the Plan ..................................................... ~~51~~49
Section 12.2 Conditions Precedent to the Effective Date of the Plan ..................................................... ~~55~~54
Section 12.3 Waiver of Conditions Precedent ..................................................... ~~56~~55
Section 12.4 Effect of Failure or Absence of Waiver of Conditions Precedent to the
  Effective Date of the Plan ..................................................... ~~56~~55

ARTICLE XIII JURISDICTION OF BANKRUPTCY COURT ..................................................... ~~57~~55
Section 13.1 Retention of Jurisdiction ..................................................... ~~57~~55
Section 13.2 Modification of Plan ..................................................... ~~59~~57
Section 13.3 Compromises of Controversies ..................................................... ~~59~~58
Section 13.4 Petition for Final Decree ..................................................... ~~59~~58
Section 13.5 Preservation of Rights under Rule 2004 of the Bankruptcy Rules ..................................................... ~~59~~58
Section 13.6 Revocation or Withdrawal of the Plan ..................................................... ~~60~~58

ARTICLE XIV MISCELLANEOUS PROVISIONS ..................................................... ~~60~~58
Section 14.1 Governing Law ..................................................... ~~60~~58
Section 14.2 Notices ..................................................... ~~60~~59
Section 14.3 Further Documents and Action ..................................................... ~~62~~60
Section 14.4 Plan Supplement ..................................................... ~~62~~61
Section 14.5 Inconsistencies ..................................................... ~~63~~61
Section 14.6 Reservation of Rights ..................................................... ~~63~~61
Section 14.7 Tax Reporting and Compliance ..................................................... ~~63~~61
Section 14.8 Exemption from Transfer Taxes ..................................................... ~~63~~62
Section 14.9 Binding Effect ..................................................... ~~63~~62
Section 14.10 Severability ..................................................... ~~63~~62
Section 14.11 Further Authorizations ..................................................... ~~64~~62
Section 14.12 Payment of Statutory Fees ..................................................... ~~64~~62

Section 14.13  Prepayment................................................................... 6462

Section 14.14  Effective Date Actions Simultaneous.............................. 6463

**SCHEDULE**

Schedule 1       Pfizer Inc. Affiliates

**EXHIBITS**

Exhibit A        Asbestos PI Trust Agreement

Exhibit B        Asbestos PI Trust Distribution Procedures

Exhibit C        Schedule of Shared Asbestos Insurance Policies

Exhibit D        Schedule of Shared Asbestos-Excluded Insurance Policies

Exhibit E        Schedule of Shared Asbestos-Excluded Claims-Made Insurance Policies

Exhibit F        Schedule of Insurance Settlement Agreements and AIG Insurance Settlement
                 Agreement

Exhibit G        AIG Assignment Agreement

Exhibit H        Amended Bylaws of Reorganized Quigley

Exhibit I        Amended Certificate of Incorporation of Reorganized Quigley

Exhibit J        Asbestos PI Claims Services Agreement

Exhibit K        Insurance Relinquishment Agreement

Exhibit L        Pfizer/AIG Annuity*

Exhibit M        Pfizer Annuity*

Exhibit N        Pfizer Claims Services Agreement*

---

\* Filed with the Plan Supplement on August 27, 2008 [Docket No. 1531].

DOC ID-10435617.9

## INTRODUCTION

Quigley Company, Inc., debtor and debtor-in-possession ("Quigley" or the "Debtor"), proposes the following modified ~~fourth~~fifth amended and restated plan of reorganization under chapter 11 of the Bankruptcy Code for the resolution of Quigley's outstanding Claims, Demands, and Equity Interests (the "Plan"). The Plan amends and supersedes the "~~Third~~Fourth Amended Quigley Company, Inc. ~~Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code," dated and filed with the Bankruptcy Court on October 17, 2005 and restates in modified form the "Fourth Amended Quigley Company, Inc.~~ Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code (As Modified As ~~of March 28, 2008)."~~Of August 6, 2009)" dated and filed with the Bankruptcy Court on August 6, 2009. Reference is made to the Disclosure Statement to which this Plan is annexed for a discussion of Quigley's history, business, properties, and assets, and for a summary of the Plan and certain related matters. All holders of Claims and Demands against, and Equity Interests in, Quigley are encouraged to read the Plan and Disclosure Statement in their entirety before voting to accept or reject the Plan.

**NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH AND APPROVED BY THE BANKRUPTCY COURT, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN.**

Quigley is the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code (as that term is defined herein). Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Rule 3019 of the Bankruptcy Rules and Section 13.2 of this Plan, Quigley reserves the right to alter, amend or modify this Plan, as Quigley deems necessary, prior to its substantial consummation.

## ARTICLE I

## DEFINITIONS AND RULES OF INTERPRETATION

Section 1.1    Capitalized Terms. The capitalized terms used herein have the respective meanings set forth below. Any term that is not otherwise defined herein, but that is defined or used in the Bankruptcy Code or Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or Bankruptcy Rules, as applicable.

"Administrative Claim" means any right to payment constituting a cost or expense of administration of the Chapter 11 Case of a kind specified under section 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority under section 507(a)(1) of the Bankruptcy Code, including, without limitation, (i) any actual and necessary costs and expenses of preserving the Estate, (ii) any actual and necessary costs and expenses of operating the businesses of Quigley, (iii) any indebtedness or obligations incurred or assumed by Quigley in the ordinary course of business in connection with the conduct of its businesses, (iv) any Fee Claims, (v) any fees or charges assessed against the Estate under 28 U.S.C. § 1930, including

post-Confirmation Date and post-Effective Date fees and charges, and (vi) all costs and expenses, including any recording fees, transfer taxes, or similar fees or taxes, but only to the extent not proscribed by section 1146(ea) of the Bankruptcy Code, arising out of or related to the transfer of Quigley's assets pursuant to this Plan.

"Administrative Claims Bar Date" means the deadline for filing Administrative Claims, including Fee Claims, which date shall be set forth in the Confirmation Order.

"Affiliate" of a specified Entity is: (i) an Entity that directly or indirectly owns, controls or holds with power to vote, 20 percent or more of the outstanding voting securities of such specified Entity; (ii) an Entity 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote by such specified Entity, or by an Entity described in subclause (i); or (iii) any other Entity that, directly or indirectly, through one or more intermediaries or otherwise, Controls or is Controlled by, or is under common Control with the specified Entity; provided, however, that without limiting the generality of the foregoing, with respect to an "Affiliate" of Quigley or an Entity "Affiliated" with Quigley, the term "Affiliate" shall include the meaning ascribed thereto in section 101(2) of the Bankruptcy Code.

"AIG Assignment Agreement" means the AIG Assignment Agreement referenced in Section 9.119.3(f) of the Plan, and substantially in the form annexed hereto as Exhibit G.

"AIG Companies" has the meaning assigned to such term in the AIG Insurance Settlement Agreement.

"AIG Insurance Settlement Agreement" means the Addendum to Settlement Agreement Among Pfizer Inc., Quigley Company, Inc. and certain AIG Companies, effective August 13, 2004.

"AIG Payments" means any and all payments made or to be paid by the AIG Companies under the AIG Insurance Settlement Agreement, as further described therein, including any interest earned on any and all such payments.

"Allowed" means, when used with respect to any Claim against Quigley (excluding Asbestos PI Claims), including an Administrative Claim: (i) such Claim to the extent it is not a Disputed Claim; (ii) such Claim to the extent it may be allowed pursuant to a Final Order of the Bankruptcy Court; (iii) a Disputed Claim, proof of which was filed on or prior to the Bar Date, and (A) as to which no objection was filed by the Claims Objection Bar Date, unless such Claim is to be determined in a forum other than the Bankruptcy Court, in which case such Claim will not become allowed until determined by a Final Order of such other forum and allowed by a Final Order of the Bankruptcy Court; or (B) as to which an objection was filed by the Objection Deadline, to the extent allowed by a Final Order of the Bankruptcy Court; (iv) if no Proof of Claim was so filed, any Claim against Quigley which has been listed by Quigley on its Schedules, as such Schedules may be amended from time to time in accordance with Rule 1009 of the Bankruptcy Rules, as liquidated in amount and not disputed or contingent (or as to which the applicable Proof of Claim has been withdrawn or such claim has been Disallowed); (v) any Claim arising from the recovery of property under section 550 or 553 of the Bankruptcy

DOC ID-10435617.9

Code and allowed in accordance with section 502(h) of the Bankruptcy Code; or (vi) any Claim expressly allowed under or pursuant to the terms of the Plan.  The term "Allowed" shall not apply to Asbestos PI Claims.

Notwithstanding the foregoing, Claims against Quigley allowed solely for the purpose of voting to accept or reject the Plan pursuant to the Solicitation Procedures Order or other order of the Bankruptcy Court shall not be considered Allowed Claims hereunder.

"Allowed Amount" means, with respect to any Claim (excluding Asbestos PI Claims):  the lesser of (i) the dollar amount of such Claim as Allowed; (ii) the estimated amount of such Claim (other than the estimated amount of any Claim for voting purposes only, pursuant to either the Solicitation Procedures Order or any other order of the Bankruptcy Court); and (iii) the dollar amount agreed to by Quigley.  Unless otherwise provided in the Plan or a Final Order of the Bankruptcy Court or District Court, the Allowed Amount of an Allowed Claim, except for the Allowed Amount of the DIP Claim and the Pfizer Secured Claim shall not include interest or penalties accruing on such Allowed Claim from and after the Petition Date.  In addition, unless an order of the Bankruptcy Court provides otherwise, the Allowed Amount of an Allowed Claim shall not, for any purpose under the Plan, include interest at any default rate of interest.

"Allowed Claim" means an Allowed Claim of the type described.

"Amended Bylaws" means the amended and restated bylaws of Reorganized Quigley, in substantially the form annexed hereto as Exhibit H.

"Amended Certificate of Incorporation" means the amended and restated certificate of incorporation of Reorganized Quigley, in substantially the form annexed hereto as Exhibit I.

"Amended Charter Documents" means, collectively, the Amended Bylaws and the Amended Certificate of Incorporation.

"Asbestos Insurance Action" means any and all Claims, Causes of Action, and/or rights of Quigley against any Asbestos Insurance Entity arising from, under or related to any Shared Asbestos Insurance Policy, any Insurance Settlement Agreement, any other settlement agreement with any Asbestos Insurance Entity, or any Quigley Insurer Receivable that are subject to the Quigley Insurance Transfer, including, but not limited to, Claims, Causes of Action, or rights arising from, under and/or related to:  (a) any such Asbestos Insurance Entity's failure to provide coverage or pay amounts billed to it for Asbestos PI Claims, whether prior to or after the Petition Date, under an Insurance Settlement Agreement; (b) the refusal of any Asbestos Insurance Entity to pay any obligations on, or compromise and settle, any Asbestos PI Claim under or pursuant to any Shared Asbestos Insurance Policy; or (c) the interpretation or enforcement of the terms of any Shared Asbestos Insurance Policy with respect to any Asbestos PI Claim.

"Asbestos Insurance Dispute" means any and all formal or informal proceedings in any judicial, nonjudicial, arbitral or alternative dispute resolution forum of any kind, as well as all Claims asserted and defenses thereto, whether or not asserted in a proceeding, pending now or commenced in the future, (1) involving an Asbestos Insurance Entity and (2) related to

any Asbestos Insurance Policy, any Insurance Settlement Agreement, any other settlement agreement with any Asbestos Insurance Entity, the Pfizer Contribution, the Insurance Relinquishment Agreement, the Quigley Contribution, the Quigley Insurance Transfer, the Quigley Transferred Insurance Rights, and/or any Quigley Insurer Receivable.  Without limiting the foregoing, "Asbestos Insurance Dispute" includes "Asbestos Insurance Action."

"Asbestos Insurance Entity" means any Entity, including any insurance company, broker, or guaranty association, that has issued, or that has any actual or potential liabilities, duties or obligations under or with respect to any Shared Asbestos Insurance Policy or any other insurance policy that provides coverage for Asbestos PI Claims.

"Asbestos Insurance Policy" means any insurance policy in effect at any time on or before the Effective Date naming Quigley or Pfizer (or any predecessor, subsidiary, or past or present Affiliate of Quigley or Pfizer) as an insured (whether as the primary or as an additional insured), or otherwise affording to Quigley or Pfizer indemnity or insurance coverage, upon which any Claim has been or may be made with respect to any Asbestos PI Claim.  Without limiting the foregoing, "Asbestos Insurance Policy" includes "Shared Asbestos Insurance Policy."

"Asbestos PI Channeling Injunction" means the injunction described in Section 11.6 of the Plan.

"Asbestos PI Claim" means any Claim or Demand seeking recovery for damages for bodily injury allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products (1) against or on Quigley or Reorganized Quigley; and (2) against or on any other Entity that is alleged to be directly or indirectly liable for the conduct of, Claims against or Demands on Quigley to the extent such alleged liability arises by reason of—

> (a)    the other Entity's ownership of a financial interest in Quigley, a past or present Affiliate of Quigley, Reorganized Quigley or a predecessor in interest of Quigley or Reorganized Quigley;

> (b)    the other Entity's involvement in the management of Quigley, Reorganized Quigley or a predecessor in interest of Quigley or Reorganized Quigley, or service as an officer, director or employee of Quigley, Reorganized Quigley or a Related Party;

> (c)    the other Entity's provision of insurance to Quigley, Reorganized Quigley or a Related Party; or

> (d)    the other Entity's involvement in a transaction changing the corporate structure, or in a loan or other financial transaction affecting the financial condition, of Quigley, Reorganized Quigley or a Related Party, including but not limited to—

> > (i)    involvement in providing financing (debt or equity), or advice to an Entity involved in such a transaction; or

(ii) acquiring or selling a financial interest in an Entity as part of such a transaction.

"Asbestos PI Claims" shall not include any Claim against a Quigley Person or any Pfizer Protected Party for benefits under any government-mandated workers' compensation system. "Asbestos PI Claims" shall include, without limitation, Indirect Asbestos PI Claims, Asbestos PI Deficiency Claims and Trust Expenses.

"Asbestos PI Claims Services Agreement" means the agreement, to be dated as of the Effective Date, by and between Reorganized Quigley and the Asbestos PI Trust, pursuant to which Reorganized Quigley will manage and process the Asbestos PI Claims on behalf of the Asbestos PI Trust, in substantially the form annexed hereto as Exhibit J.

"Asbestos PI Deficiency Claim" means with respect to each Secured Bond Claim, the amount of any Final Judgment obtained by the holder of such Claim that exceeds the amounts received on account of the supersedeas bond securing the Secured Bond Claim at such time as the holder obtains such Final Judgment against Quigley or Reorganized Quigley, as the case may be, as described in Section 4.2(b), (c), (d), or (e), as applicable.

"Asbestos PI Insurer Coverage Defenses" means all rights, Claims, or defenses, at law or in equity, that any Asbestos Insurance Entity may have under applicable law, any Asbestos Insurance Policy, any Insurance Settlement Agreement, or any other settlement agreement to which any Asbestos Insurance Entity is a party, with respect to a Claim seeking insurance coverage; provided, however, that "Asbestos PI Insurer Coverage Defenses" shall not include any right of, or Claim or defense asserted by, any Asbestos Insurance Entity that (1) is based on the assertion that the Plan does not, or that any of the Plan Documents do not, comply with the Bankruptcy Code; (2) is based on the assertion that either the Quigley Insurance Transfer or the Insurance Relinquishment Agreement is invalid, ineffective and/or unenforceable or is otherwise prohibited, or otherwise serves to impair, limit or void any rights to insurance coverage; (3) the Asbestos Insurance Entity has released, limited (to the extent of such limitation) or waived in any Insurance Settlement Agreement or any other settlement agreement; or (4) has been resolved or limited (to the extent of such limitation) in a Final Order by binding adjudication in any proceeding, including in Continental Cas. Co., et al. v. Pfizer Inc., et al., Adv. No. 06-01299 (Bankr. S.D.N.Y.) (the "CNA Adversary Proceeding"), but otherwise excluding the Chapter 11 Case.

"Asbestos PI Trust" means the asbestos personal injury trust to be established pursuant to section 524(g) of the Bankruptcy Code and in accordance with the Plan, the Confirmation Order and the Asbestos PI Trust Agreement, which trust shall be treated as a "qualified settlement fund" under section 468B of the Internal Revenue Code.

"Asbestos PI Trust Agreement" means the agreement, to be dated as of the Effective Date, between and among Reorganized Quigley, the Trustees of the Asbestos PI Trust, the Future Demand Holders' Representative and the Trust Advisory Committee, governing the creation of the Asbestos PI Trust, in substantially the form annexed hereto as Exhibit A.

"Asbestos PI Trust Assets" means, collectively: (i) the Pfizer Contribution; (ii) the Quigley Contribution; and (iii) all proceeds of the foregoing.

"Asbestos PI Trust Distribution Procedures" means the trust distribution procedures for the Asbestos PI Trust, in substantially the form annexed hereto as Exhibit B, and such additional procedures as subsequently may be adopted by the Asbestos PI Trust, which provide for the liquidation and satisfaction of Asbestos PI Claims.

"Asbestos PI Trust Documents" means the Asbestos PI Trust Agreement, the Trust Bylaws, the Trust Indemnification Agreement and the other agreements, instruments and documents governing the establishment and administration of the Asbestos PI Trust, as the same may be amended or modified from time to time, in accordance with the terms thereof.

"Asbestos Protected Party" means any of the following:

(a)     any Quigley Person;

(b)     Reorganized Quigley;

(c)     any Pfizer Protected Party and any other Entity that is alleged to be directly or indirectly liable for the conduct of, Claims against or Demands on Quigley to the extent such alleged liability arises by reason of—

(i)  (i) the Pfizer Protected Party's or other Entity's ownership of a financial interest in Quigley, a past or present Affiliate of Quigley, Reorganized Quigley or a predecessor in interest of Quigley or Reorganized Quigley;

(ii)  (ii) the Pfizer Protected Party's or other Entity's involvement in the management of Quigley, Reorganized Quigley or a predecessor in interest of Quigley or Reorganized Quigley, or service as an officer, director or employee of Quigley, Reorganized Quigley or a Related Party; or

(iii)  (iii) the Pfizer Protected Party's or other Entity's involvement in a transaction changing the corporate structure, or in a loan or other financial transaction affecting the financial condition, of Quigley, Reorganized Quigley or a Related Party, including but not limited to—

a.     involvement in providing financing (debt or equity), or advice to an Entity involved in such a transaction; or

b.     acquiring or selling a financial interest in an Entity as part of such a transaction.

"Asbestos Records" means all of the books and records of Quigley, Reorganized Quigley, Pfizer and its Affiliates, wherever such books and records are located, to the extent that such books and records relate to any Asbestos PI Trust Asset or any Asbestos PI Claim, including, without limitation: (a) historical claims data relating to Asbestos PI Claims; (b) sales records of Quigley relating to asbestos or asbestos-containing products formerly made, used or

sold by Quigley; and (c) insurance policies, agreements, claim forms and any other records relating to the Quigley Transferred Insurance Rights.

"Asbestos Record Party" means each Entity whose books and records, or any portion thereof, are Asbestos Records.

~~"Avoidance Action" means any and all avoidance or recovery actions under sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, or under related state or federal statutes and common law, whether or not litigation has been commenced with respect to such causes of action as of the Effective Date.~~

"Ballot" means each of the ballots and/or master ballots distributed with the Disclosure Statement to holders of Impaired Claims against or Equity Interests in Quigley (other than to holders of Impaired Claims or Equity Interests deemed to have rejected the Plan or otherwise not entitled to vote on the Plan) on which ballot such holder of a Claim or Equity Interest may, among other things, vote to accept or reject the Plan.

"Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. § 101 et seq., as in effect on the Petition Date, together with all amendments, modifications and replacements of the foregoing, as the same may exist on any relevant date to the extent applicable to the Chapter 11 Case.

"Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York or such other court as may have jurisdiction over the Chapter 11 Case.

"Bankruptcy Rules" means, collectively: (a) the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075, title 28, United States Code; (b) the Federal Rules of Civil Procedure, as applicable to the Chapter 11 Case or proceedings therein; and (c) the local rules of the Bankruptcy Court, all as amended from time to time and applicable in this Chapter 11 Case.

"Bar Date" means September 15, 2005, the date fixed by order of the Bankruptcy Court dated July 26, 2005, by which a holder of a Claim against Quigley (other than a holder of an "Excluded Claim," as defined in Quigley's Notice Of Deadline For Filing Proofs Of Claim For Non-Asbestos Claims) must have filed a Proof of Claim against Quigley.

"Board of Directors" means the board of directors of a corporation.

"Business Day" means any day except: (i) Saturday; (ii) Sunday; (iii) any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order; and (iv) the Friday after Thanksgiving.

"Cash" means legal tender of the United States of America.

"Causes of Action" means any and all actions, causes of action, Liabilities, obligations, accounts, controversies, rights to legal remedies, rights to equitable remedies, rights to payment, suits, debts, sums of money, damages, judgments, Claims, and Demands, whatsoever, whether known or unknown, reduced to judgment, not reduced to judgment,

liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, whether asserted or assertable directly or derivatively, in law, equity or otherwise which may be brought by or on behalf of Quigley and/or the Estate, arising under any provision of the Bankruptcy Code or other applicable law.

"Chapter 11 Case" means Quigley's case under chapter 11 of the Bankruptcy Code, captioned *In re Quigley Company, Inc.*, Case No. 04–15739 (SMB), pending in the United States Bankruptcy Court for the Southern District of New York.

"Claim" means a (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured, or unsecured; or (b) right to an equitable remedy for breach of performance if such right gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"Claims Agent" means BMC Group, Inc.

"Claims Objection Bar Date" means, for all Claims against Quigley (other than Asbestos PI Claims), 270 days after the Effective Date, unless extended by order of the Bankruptcy Court prior to the expiration thereof.

"Class" means a category of holders of Claims or Equity Interests described in Article IV hereof.

"Common Stock" means the shares of common stock, par value $100 per share, of Quigley issued and outstanding as of the Petition Date.

"Confidentiality Injunction" means the injunction described in Section 11.11 of this Plan.

"Confirmation Date" means the date the Confirmation Order is entered on the docket maintained by the Clerk of the District Court or the Bankruptcy Court, as applicable, with respect to the Chapter 11 Case.

"Confirmation Hearing" means the hearing to be held by the Bankruptcy Court and/or District Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

"Confirmation Order" means, as the context requires, the order or orders of the District Court confirming the Plan under section 1129 of the Bankruptcy Code or affirming an order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code, which shall contain, among other things, the Asbestos PI Channeling Injunction, the Settling Asbestos Insurance Entity Injunction, the Non-Settling Asbestos Insurance Entity Injunction, and the Confidentiality Injunction and the Dividend Injunction.

DOC ID-10435617.9

"Control" means the possession, directly or indirectly, of the power to direct or cause the direction of management, policies, or activities of an Entity, whether through ownership of voting securities, by contract or otherwise.

"Creditors' Committee" means the statutory committee of unsecured creditors appointed in the Chapter 11 Case by the United States Trustee on September 22, 2004, as thereafter modified or reconstituted.

"Cure" means the Distribution of Cash, or such other property as may be agreed upon by the parties and/or ordered by the Bankruptcy Court, with respect to the assumption of an Executory Contract pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all accrued, due, and unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties or ordered by the Bankruptcy Court, under such Executory Contract, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

"Debtor" means Quigley Company, Inc., debtor and debtor-in-possession in the Chapter 11 Case.

"Demand" means a demand for payment, present or future, within the meaning of section 524(g)(5) of the Bankruptcy Code that: (i) was not a Claim during the Chapter 11 Case; (ii) arises out of the same or similar conduct or events that gave rise to the Asbestos PI Claims; and (iii) pursuant to the Plan, is to be paid by the Asbestos PI Trust.

"DIP Claim" means Pfizer's Claim arising under the Senior Secured Loan Facility for all advances made on or after the Petition Date and for the use of Cash Collateral pursuant to: (a) the Interim Cash Collateral Order; and (b) the Final DIP/Cash Collateral Order.

"Disallowed" means, when used with respect to a Claim against Quigley, a Claim that: (a) is disallowed in whole or in part (but solely to the extent of such disallowance) by an order of the Bankruptcy Court or other court of competent jurisdiction; or (b) has been withdrawn, in whole or in part, by the holder thereof.

"Disclosure Statement" means the written disclosure statement that relates to this Plan, including the exhibits and schedules thereto, as approved by the Bankruptcy Court as containing adequate information pursuant to section 1125 of the Bankruptcy Code and Rule 3017 of the Bankruptcy Rules, as such disclosure statement may be amended, modified, or supplemented from time to time.

"Disputed Claim" means a Claim, or any portion thereof, against Quigley that is neither Allowed nor Disallowed (other than Asbestos PI Claims) or is contingent, disputed or unliquidated (other than an Asbestos PI Claim).

"Distribution Record Date" means the record date for determining an entitlement to receive Distributions under the Plan on account of Allowed Claims, which shall be the Confirmation Date.

"Distributions" means the properties or interests in property to be paid or distributed hereunder to the holders of Allowed Claims.

"District Court" means the United States District Court for the Southern District of New York.

~~"Dividend Injunction" means the injunction described in Section 11.12 of the Plan.~~

"Effective Date" means the first Business Day on which all conditions precedent set forth in Section 12.2 of the Plan have been satisfied or waived as provided in Section 12.3 of the Plan.

"Encumbrance" means with respect to any property (whether real or personal, tangible or intangible), any mortgage, Lien, pledge, charge, security interest, assignment, or encumbrance of any kind or nature in respect of such property (including any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction) to secure payment of a debt or performance of an obligation.

"Entity" means any person or entity, including, without limitation, any individual, company, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, or government or any political subdivision thereof.

"Equity Interests" means all right, title and interest of Pfizer in the issued and outstanding shares of the Common Stock.

"Estate" means the estate created in Quigley's Chapter 11 Case under section 541 of the Bankruptcy Code.

"Excess Cash" means an amount equal to the greater of the following: (a) $0; and (b) the sum of (i) all Cash and short term Cash investments held by Quigley and (ii) the Pfizer Tax Sharing Receivable outstanding, as of the last day of the month immediately preceding the Effective Date, accounting for any tax consequences to Quigley as a result of the transactions contemplated by the Plan, *less* the sum of the following as of ~~such date~~ the Effective Date: (i) a working capital reserve in the amount of $1,000,000 (or such other amount as Quigley, after consultation with the Future Demand Holders' Representative and the Creditors' Committee, determines it requires for working capital purposes); (ii) the Allowed Amount of Allowed Administrative Claims; (iii) a reasonable estimate by Quigley of additional Administrative Claims (including, but not limited to, Fee Claims) that may become Allowed thereafter; (iv) the Allowed Amount of Allowed Priority Tax Claims; (v) a reasonable estimate by Quigley of additional Priority Tax Claims that may become Allowed Priority Tax Claims thereafter; (vi) the Allowed Amount of all Priority Claims; (vii) a reasonable estimate of all Priority Claims that may become Allowed Priority Claims thereafter; (viii) ~~the DIP Claim; (ix) the amount of the Pfizer Secured Claim minus $30 million; (x)~~ the Allowed Amount of all Unsecured Claims multiplied by the Payment Percentage; and (~~xi~~ix) any other Cash required to be paid or

~~DOC ID-10435617.9~~

distributed by Quigley or Reorganized Quigley pursuant to the Plan, other than in respect of Cash to be contributed to the Asbestos PI Trust.

"Executory Contract" means any unexpired lease or executory contract that is subject to treatment under section 365 of the Bankruptcy Code.

"Exit Facility" means the financing agreement(s) and/or commitment(s) that Quigley may obtain to provide Reorganized Quigley with availability to finance its general working capital and other general corporate needs, in such amounts and on such terms as are satisfactory to Reorganized Quigley ~~and Pfizer~~.

"Fee Claim" means collectively, any Claim of a: (a) Professional for allowance of compensation and reimbursement of costs and expenses, and (b) member of the Creditors' Committee for reimbursement of costs and expenses, incurred in the Chapter 11 Case prior to and including the Effective Date.

"Final DIP/Cash Collateral Order" means the Final Order: (I) Authorizing Postpetition Financing; (II) Granting Security Interests and Superpriority Administrative Expense Status; (III) Authorizing the Use of Cash Collateral; (IV) Authorizing Quigley Company, Inc. to Enter into Financing Agreements; (V) Modifying the Automatic Stay; and (VI) Granting Replacement Liens and Rights to Adequate Protection, entered by the Bankruptcy Court on October 8, 2004, as supplemented by the Orders Under 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 9006 and Local Rule 9074-1(b) Authorizing Extension of Term of Postpetition Financing Approved by Order of this Court Entered October 8, 2004, entered by the Bankruptcy Court on July ~~25,~~26, 2005, March ~~1,~~2, 2006, September ~~12,~~13, 2006, February 28, 2007, October 2, 2007, March 6, 2008, July 23, 2008, February 19, 2009, March 10, 2009, August 14, 2009, February 11, 2010, August 16, 2010, February 17, 2011, and subsequently to the date hereof.

"Final Judgment" or "Final Order" means a judgment or an order, as the case may be, as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending; provided, however, if an appeal, writ of certiorari, reargument or rehearing thereof has been filed or sought, (i)(a) such judgment or order shall have been affirmed by the highest court to which such judgment or order was appealed, or (b) certiorari shall have been denied or reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired, or (ii) such appeal, writ of certiorari, or request for reargument or rehearing shall have been dismissed with prejudice by the filing or seeking party.

"Future Demand Holders" means any and all holders of Demands, whether now known or hereafter discovered.

"Future Demand Holders' Representative" means Albert Togut (or any court-appointed successor), in his capacity as the court-appointed legal representative for all Future Demand Holders for the purpose of protecting the interests of persons that may subsequently assert Asbestos PI Claims channeled to the Asbestos PI Trust.

"Hatchett" means George L. Hatchett.

"Hatchett Bond" means the supersedeas bond in the amount of $174,624.87, dated March 31, 2004, and any other such bond, securing Hatchett's judgment against Quigley in the civil action styled George L. Hatchett, et al. v. Owens Corning, et al., to the extent of the value of the Hatchett Bond. The "Hatchett Bond" is not property of, or secured by property of, Quigley's estate.

"Hatchett Secured Claim" means the Claim of Hatchett based on the judgment obtained by Hatchett in the civil action styled George L. Hatchett, et al. v. Owens Corning, et al.

"Impaired" means, when used with respect to a Claim or an Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"Indirect Asbestos PI Claim" means a Claim or Demand that is based upon a right of contribution, reimbursement, subrogation, indemnity (whether arising by contract or by operation of law) or virile share (as those terms are defined by the nonbankruptcy law of any relevant jurisdiction), or similar Claims or Demands, whether or not such Claim or Demand is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, whether or not the facts or legal bases therefore are known or unknown, and regardless of whether in the nature of, or sounding in, contract, tort, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, indemnity, statutory right, conspiracy, conducting a fraudulent defense, or any other theory of law, equity, or admiralty, and arising out of or related to an Asbestos PI Claim; provided, however, that "Indirect Asbestos PI Claim" shall not include (a) Count I of the complaint in the pending action styled Certain Underwriters at Lloyd's, London, et al. v. Allstate Insurance Co., et al., Index No. 603900/001 (NY Supreme Court, County of New York), or (b) any claims of Allstate Insurance Company against Pfizer Inc. for indemnification under Section VI of the Settlement Agreement Between and Among Pfizer Inc., Quigley Company, Inc. and Allstate Insurance Company Concerning Asbestos-Related Bodily Injury Claims effective June 1, 1999, as amended in or around April, 2004, pursuant to an Addendum to Settlement Agreement Between and Among Pfizer Inc., Quigley Company, Inc. and Allstate Insurance Company Concerning Asbestos-Related Bodily Injury Claims.

"Initial Distribution Date" means the date, not later than thirty (30) days after the Effective Date, on which Reorganized Quigley commences Distributions under the Plan.

"Insurance Relinquishment Agreement" means the agreement, to be dated as of the Effective Date, by and between Quigley and Pfizer, substantially in the form annexed hereto as Exhibit K.

"Insurance Settlement Agreements" means the agreements listed on the annexed Exhibit F, as such exhibit may be amended, supplemented, or otherwise modified by Quigley from time to time prior to the Confirmation Date; provided, however, that the defined term "Insurance Settlement Agreements" shall not include the AIG Insurance Settlement Agreement

DOC ID 10435617.9

or any insurance settlement agreement related solely to the Shared Asbestos-Excluded Insurance Policies or the Shared Asbestos-Excluded Claims-Made Insurance Policies.

"Insurance Settlement Proceeds Trust" means the Pfizer/Quigley Joint Insurance Fund Trust established by Pfizer and Quigley pursuant to the Insurance Settlement Proceeds Trust Agreement.

"Insurance Settlement Proceeds Trust Agreement" means the Pfizer/Quigley Joint Insurance Fund Trust Agreement, dated as of August 27, 2004, by and among Pfizer, Quigley, and JPMorgan Chase Bank, as trustee.

"Interim Cash Collateral Order" means that Interim Order (I) Authorizing the Use of Cash Collateral; (II) Granting Replacement Liens and Rights to Adequate Protection; and (III) Scheduling a Final Hearing on the Debtor's Motion to Obtain Post-Petition Financing, entered by the Bankruptcy Court on September 7, 2004.

"Liabilities" means any and all costs, expenses, actions, causes of action, suits, controversies, damages, claims, demands, debts, liabilities or obligations of any nature, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, liquidated or unliquidated, matured or not matured, contingent or direct, whether arising at common law, in equity, or under any statute, based in whole or in part on any act or omission or other occurrence arising or taking place on or prior to the Effective Date.

"Lien" has the meaning ascribed to such term in section 101(37) of the Bankruptcy Code (but a lien that has been or may be avoided pursuant to an Avoidance Action shall not constitute a Lien).

"Master Service List" means the master service list, as amended from time to time, established in the Chapter 11 Case pursuant to an order of the Bankruptcy Court dated September 7, 2004.

"New Quigley Operations" means the commercial real property that will be owned and operated by Reorganized Quigley from and after the Effective Date.

"Non-Releasing Asbestos PI Claimant" means a holder of an Asbestos PI Claim who has not released its derivative claims against any of the Pfizer Protected Parties pursuant to an agreement entered into with any of the Pfizer Protected Parties, either individually or through counsel.

"Non-Settling Asbestos Insurance Entity" means an Asbestos Insurance Entity that is not a Settling Asbestos Insurance Entity.

"Non-Settling Asbestos Insurance Entity Injunction" means the injunction described in Section 11.8 of the Plan.

"Other Secured Bond Claims" means, collectively, all Secured Bond Claims against Quigley, other than the Secured Bond Claims included in Classes 2.02 through 2.05, that

are based on a prepetition judgment obtained by a claimant against Quigley for an asbestos personal injury claim and are secured, in whole or in part, by a supersedeas bond.

"Payment Percentage" means the initial payment percentage, in effect on the Effective Date, of full liquidated value that holders of Asbestos PI Claims will be entitled to receive on account of their Quigley claims from the Asbestos PI Trust pursuant to the Asbestos PI Trust Distribution Procedures, which shall be 7.5%.  The "Payment Percentage" on the Effective Date for all Asbestos PI Claims initially shall be 7.5%, provided, however, that the "Payment Percentage" on account of Non-Releasing Asbestos PI Claimants' Asbestos PI Claims shall be computed initially to also reflect 23% of full liquidated value that such Non-Releasing Asbestos PI Claimants shall be entitled to receive from the Asbestos PI Trust as consideration for the release of Pfizer's derivative liability through the Asbestos PI Channeling Injunction, as described in Article 11.6.

"Pending Appeal" means collectively, with respect to a Secured Bond Claim: (a) the pending appeal from the judgment underlying such Claim; (b) any further proceedings ordered, required or held on remand from such pending appeal; and (c) any appeal, petition for a writ of mandamus or certiorari, request for rehearing or reargument thereof, or further proceedings on remand from any proceeding described herein.

"Petition Date" means September 3, 2004, the date the Chapter 11 Case was commenced.

"Pfizer" means Pfizer Inc., a Delaware corporation.

"Pfizer Annuity" means an annuity payable to the Asbestos PI Trust with a total nominal face value of $45.1 million, payable in equal installments over a period of 41 years, with the first installment payment payable on the fifth anniversary of the Effective Date.

"Pfizer/AIG Annuity" means an annuity payable to the Asbestos PI Trust with a total nominal face value of $405 million, payable in equal installments over a period of 40 years, with the first installment payment payable on the Effective Date.

"Pfizer's Cash Contribution" means Pfizer's cash contribution to the Asbestos PI Trust on the Effective Date in the amount of $50264.9 million.

"Pfizer Claimant Settlement Agreement" means any settlement agreement entered into between Pfizer and certain holders of Asbestos PI Claims or their counsel, prior to September 2010, pursuant to which the holders of such Claims agreed to resolve all current and future asbestos personal injury claims against the Pfizer Protected Parties, with the exception of Quigley.

"Pfizer Claims Services Agreement" means the agreement, to be dated as of the Effective Date, by and between Reorganized Quigley and Pfizer, pursuant to which Reorganized Quigley will manage and process asbestos-related personal injury claims on behalf of Pfizer, in substantially the form annexed hereto as Exhibit N.

"Pfizer Contribution" means, collectively, the contributions of, and benefits provided by, Pfizer on behalf of itself and the other Pfizer Protected Parties, as follows:

(a) Pfizer's execution and delivery to Reorganized Quigley of the Insurance Relinquishment Agreement;

(b) Pfizer's ~~contribution~~execution and delivery to the Asbestos PI Trust of the ~~Pfizer Annuity;~~

~~(c) Pfizer's contribution to the Asbestos PI Trust of the Pfizer/AIG Annuity~~AIG Assignment Agreement;

(c) ~~(d)~~ Pfizer's agreement to forgive ~~$30 million of~~ the Pfizer Secured Claim as of the Effective Date;

(d) ~~(e)~~ Pfizer's ~~Cash Contribution;~~agreement to forgive the Pfizer Unsecured Claim as of the Effective Date;

(e) Pfizer's agreement to forgive the DIP Claim as of the Effective Date;

(f) Pfizer's ~~right, title and interest in the Insurance Settlement Proceeds Trust, except for Pfizer's right, title and interest in and to any AIG Payments and any interest earned thereon, which Quigley shall assign to Pfizer in accordance with the AIG Assignment Agreement; and~~Cash Contribution; and

(g) ~~Upon the occurrence of the Stock Transfer Date,~~ Pfizer's transfer of 100% of the common stock of Reorganized Quigley to the Asbestos PI Trust; provided that~~, until the occurrence of the Stock Transfer Date, neither Pfizer, Quigley, nor Reorganized Quigley, as the case may be, shall (and Pfizer shall not cause Quigley or Reorganized Quigley, as the case may be, to) declare, issue or otherwise pay any dividend with respect to the common stock of Quigley; provided further that,~~ following the transfer of 100% of the common stock of Reorganized Quigley to the Asbestos PI Trust, any dividends that are declared on such common stock shall be used to fund the Asbestos PI Trust.

"Pfizer Protected Parties" means: (a) Pfizer; (b) Pfizer's Affiliates (other than Quigley) as of the date hereof, including, without limitation, those listed on Schedule 1 hereto; and (c) Mineral Technologies Inc.

"Pfizer Secured Claim" means Pfizer's Claim for all amounts outstanding as of the Petition Date under the Senior Secured Loan Facility, plus interest accruing from and after the Petition Date.

"Pfizer Tax Sharing Receivable" means any amount owed to Quigley or Reorganized Quigley, as the case may be, by Pfizer under the Tax Sharing Agreement.

"Pfizer Unsecured Claim" means, collectively, the Unsecured Claims held by Pfizer against Quigley totaling $33,370,920.38.

"Plan" means this plan of reorganization of Quigley under chapter 11 of the Bankruptcy Code, including any supplements, schedules and exhibits hereto, either in its present form or as the same may be amended, modified or supplemented from time to time in accordance with the terms hereof.

"Plan Contributors" means, collectively, Pfizer, on behalf of itself and the other Pfizer Protected Parties, and Quigley.

"Plan Documents" means the Plan, the Disclosure Statement, the Asbestos PI Trust Agreement, the Asbestos PI Trust Distribution Procedures, the AIG Assignment Agreement, the Insurance Relinquishment Agreement, the Asbestos PI Claims Services Agreement, ~~the Pfizer Claims Services Agreement,~~ any document contained in the Plan Supplement, all of the exhibits and schedules attached to any of the foregoing, and any other document necessary to implement the Plan.

"Plan Supplement" means the compilation of documents or forms of documents specified in the Plan, including, but not limited to, the documents specified in Section 14.4 of the Plan and any exhibits to the Plan not included herewith, each in form and substance acceptable to Quigley and Pfizer, which Quigley shall file with the Bankruptcy Court on or before the date that is five (5) Business Days prior to the deadline for the filing and service of objections to the Plan, all of which are incorporated herein by reference.

"Preliminary Injunction Order" means the Injunction Pursuant to 11 U.S.C. §§ 105(a) and 362(a) and Federal Rule of Bankruptcy Procedure 7065, dated December 17, 2004 (as amended on December 6, 2007).

"Priority Claim" means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code other than an Administrative Claim, DIP Claim, or a Priority Tax Claim.

"Priority Tax Claim" means any Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

"Products/Completed Operations Coverage" means the coverage afforded under an insurance policy for claims within the scope of the "products hazard" and/or the "completed operations hazard" (or any other policy term providing coverage for claims arising from an insured's products or reliance on a representation or warranty made with respect to such products, provided that the alleged injury occurred away from the insured's premises and after the insured had relinquished physical possession of such products to others).

"Professional" means any person retained or to be compensated pursuant to section 327, 328, 330, 503(b), 506(b), 524(g) or 1103 of the Bankruptcy Code, including the Future Demand Holders' Representative and any person or entity retained thereby.

"Proof of Claim" means any proof of claim filed with the Bankruptcy Court or the Claims Agent pursuant to Bankruptcy Code section 501 and Rule 3001 or 3002 of the Bankruptcy Rules that asserts a Claim against Quigley.

DOC ID-10435617.9

"Pro Rata Share" means, with respect to any Claim, a proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of such Allowed Claim is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims in such Class to the amount of all Allowed Claims in such Class.

"Quigley" means Quigley Company, Inc., a New York corporation, debtor and debtor-in-possession.

"Quigley Contribution" means the consideration to be delivered pursuant to the terms of the Plan on or after the Effective Date, by and on behalf of Quigley or Reorganized Quigley, as the case may be, to the Asbestos PI Trust, on account of Asbestos PI Claims, consisting of:  (a) the Quigley Insurance Transfer; (b) Excess Cash; and (c) Quigley's ~~right, title~~execution and ~~interest in and to the Insurance Settlement Proceeds Trust, except for Quigley's right, title and interest in and to any AIG Payments and any interest earned thereon, which Quigley shall assign to Pfizer in accordance with~~delivery to the Asbestos PI Trust of the AIG Assignment Agreement.

"Quigley Insurance Transfer" means the transfer, grant, and assignment by Quigley of the Quigley Transferred Insurance Rights to the Asbestos PI Trust as part of the Quigley Contribution; provided, however, such transfer, grant and assignment is not, and shall not be deemed to be, a transfer, grant or assignment of the Shared Asbestos Insurance Policies, the Insurance Settlement Agreements or any other settlement agreements with any Asbestos Insurance Entity themselves.

"Quigley Insurer Receivable" means any unpaid amount Quigley billed to any insurer prior to the Petition Date pursuant to any Insurance Settlement Agreement and/or the Products/Completed Operations Coverage under any insurance policy to the extent that it gives rise to any such amount.

"Quigley Person" means each of:  (a) Quigley; and (b) Quigley's former and present employees, directors, or officers, acting in such capacity.

~~"Quigley Stock Right" means the right granted by Pfizer to the Asbestos PI Trust to acquire 100% of the common stock of Reorganized Quigley, which is exercisable by the Asbestos PI Trust no earlier than upon the satisfaction of each of the following conditions:  (a) the one-year anniversary of the Effective Date has occurred; and (b) the Asbestos PI Trust has processed Asbestos PI Claims having an aggregate nominal amount of at least $25 million.~~

"Quigley Transferred Insurance Rights" means, subject to the terms and conditions of the AIG Assignment Agreement and the Insurance Relinquishment Agreement, any and all of Quigley's rights, titles, privileges, interests, Claims, demands or entitlements to any proceeds, payments, initial or supplemental dividends, scheme payments, supplemental scheme payments, state guaranty fund payments, Causes of Action and choses in action in, under, for or related to the following:  (a) the Shared Asbestos Insurance Policies, the Insurance Settlement Agreements, and any other settlement agreements with any Asbestos Insurance Entity; (b) the Quigley Insurer Receivables; ~~and~~ (c) the Asbestos Insurance Actions; (d) all

DOC ID-10435617.9

– 17 –

amounts held in the Insurance Settlement Proceeds Trust as of the Effective Date, including all AIG Payments, other insurance proceeds, and any interest earned thereon; and (e) all AIG Payments to be made after the Effective Date; provided, however, that the Quigley Transferred Insurance Rights shall not include (x) Quigley's rights, titles, privileges, interests, Claims, demands or entitlements to any proceeds, payments, initial or supplemental dividends, scheme payments, supplemental scheme payments, state guaranty fund payments, Causes of Action and choses in action in, under, for or related to a Shared Asbestos Insurance Policy, Insurance Settlement Agreement and/or any other settlement agreement with any Asbestos Insurance Entity in the event there is a final and binding determination (by settlement or adjudication) that such Shared Asbestos Insurance Policy, Insurance Settlement Agreement and/or any other settlement agreement with any Asbestos Insurance Entity does not provide Products/Completed Operations Coverage for Asbestos PI Claims; (y) the Shared Asbestos Insurance Policies, the Insurance Settlement Agreements, the AIG Insurance Settlement Agreement, or any other settlement agreements with any Asbestos Insurance Entity themselves; and (z) any unpaid amount that Pfizer billed to any insurer prior to the Petition Date pursuant to any settlement agreement with any Asbestos Insurance Entity, which shall remain the property of Pfizer as set forth in Schedule 5 to the Insurance Relinquishment Agreement, which shall remain the property of Pfizer.

"Reaud Bond" means the supersedeas bond in the amount of $8,773,100, and any other such bond, securing the Reaud Claimants' judgment against Pfizer and Quigley in civil action styled Sammy Ray Acker, et al. v. Quigley Co., Inc. et al., to the extent of the value of the Reaud Bond. The "Reaud Bond" is not property of, or secured by property of, Quigley's estate.

"Reaud Claimants" means the claimants represented by Reaud, Morgan & Quinn, L.L.P. whose Claims are secured by the Reaud Bond.

"Reaud Secured Claim" means the Claims of the Reaud Claimants based on the judgment obtained by the Reaud Claimants in civil action styled Sammy Ray Acker, et al. v. Quigley Co., Inc. et al.

"Rejection Claim" means a Claim for damages under section 502(g) of the Bankruptcy Code resulting from the rejection of an executory contract or unexpired lease by Quigley or Reorganized Quigley.

"Related Party" means—

(a)     a past or present Affiliate of Quigley or Reorganized Quigley;

(b)     a predecessor in interest of Quigley or Reorganized Quigley; or

(c)     any Entity that owned a financial interest in—

(i) Quigley or Reorganized Quigley;

(ii)     a past or present Affiliate of Quigley or Reorganized Quigley; or

(iii)     a predecessor in interest of Quigley or Reorganized Quigley.

DOC ID-10435617.9

– 18 –

"Released Parties" shall have the meaning ascribed to such term in Section 11.3 of the Plan.

"Released Parties" shall have the meaning ascribed to such term in Section 11.3 of the Plan.

"Reorganized Quigley" means Quigley, or any successor thereto by merger, consolidation, or otherwise, on and after the Effective Date.

"Representatives" means, with respect to any specified Entity, the officers, directors, employees, agents, attorneys, accountants, financial advisors, other representatives, subsidiaries, affiliates, or any person who controls any of these within the meaning of the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended.

"Schedules" means the schedules of assets and liabilities and the statements of financial affairs of Quigley as filed with the Bankruptcy Court by Quigley in accordance with section 521 of the Bankruptcy Code, as such schedules and statements may be amended or supplemented from time to time.

"Secured Bond Claims" means, collectively:  (a) the Reaud Secured Claim, (b) the Hatchett Secured Claim, (c) the Sherry Secured Claim, and (d) the Other Secured Bond Claims.

"Secured Claims" means, collectively, the Pfizer Secured Claim and the Secured Bond Claims.

"Senior Secured Loan Facility" means the Credit and Security Agreement, dated as of March 6, 2003:  (a) as amended on May 29, 2003 and October 29, 2003, between Quigley, as borrower, and Pfizer, as lender; (b) as further amended on October 8, 2004 pursuant to Amendment No. 3 to Credit and Security Agreement, between Quigley, as borrower, and Pfizer, as lender, and approved by the Bankruptcy Court pursuant to the Final DIP/Cash Collateral Order; (c) as further amended on February 18, 2005 pursuant to Amendment No. 4 to Credit and Security Agreement between Quigley, as borrower, and Pfizer, as lender; (d) as further amended on July 15, 2005 pursuant to Amendment No. 5 to Credit and Security Agreement between Quigley, as borrower, and Pfizer, as lender; (e) as further amended on January 31, 2006 pursuant to Amendment No. 6 to Credit and Security Agreement between Quigley, as borrower, and Pfizer, as lender; (f) as further amended on August 9, 2006 pursuant to Amendment No. 7 to Credit and Security Agreement between Quigley, as borrower, and Pfizer, as lender; (g) as further amended on January 18, 2007 pursuant to Amendment No. 8 to Credit and Security Agreement between Quigley, as borrower, and Pfizer, as lender; (h) as further amended on August 10, 2007 pursuant to Amendment No. 9 to Credit and Security Agreement between Quigley, as borrower, and Pfizer, as lender; and (i) as further amended on February 14, 2008 pursuant to Amendment No. 10 to Credit and Security Agreement between Quigley, as borrower, and Pfizer, as lender; (j) as further amended on June 20, 2008 pursuant to Amendment No. 11 to Credit and Security Agreement between Quigley, as borrower, and Pfizer, as lender; (k) as further amended on February 17, 2009 pursuant to Amendment No. 12 to Credit and Security Agreement between Quigley, as borrower, and Pfizer, as lender; (l) as further amended on July

20, 2009 pursuant to Amendment No. 13 to Credit and Security Agreement between Quigley, as borrower, and Pfizer, as lender; (m) as further amended on January 21, 2010 pursuant to Amendment No. 14 to Credit and Security Agreement between Quigley, as borrower, and Pfizer, as lender; (n) as further amended on July 27, 2010 pursuant to Amendment No. 15 to Credit and Security Agreement between Quigley, as borrower, and Pfizer, as lender; and (o) as further amended on January 28, 2011 pursuant to Amendment No. 16 to Credit and Security Agreement between Quigley, as borrower, and Pfizer, as lender.

"Settling Asbestos Insurance Entity" means each Asbestos Insurance Entity (a) listed on Exhibit F to the Plan, including, without limitation, the AIG Companies, and (b) that Quigley adds to Exhibit F to the Plan prior to the Confirmation Date. Nothing herein, however, shall prevent any Asbestos Insurance Entity that enters into an Insurance Settlement Agreement prior to the Confirmation Date, after first seeking Quigley's recommendation prior to the Confirmation Date, from petitioning the Bankruptcy Court for treatment under section 524(g) of the Bankruptcy Code and this Plan as a "Settling Asbestos Insurance Entity."

"Settling Asbestos Insurance Entity Injunction" means the injunction described in Section 11.7 of the Plan.

"Shared Asbestos-Excluded Insurance Policies" means the occurrence-based policies listed on Exhibit D to the Plan, as such exhibit may be amended by Quigley from time to time prior to the Effective Date.

"Shared Asbestos Insurance Policies" means the occurrence-based policies listed on Exhibit C to the Plan, as such exhibit may be amended by Quigley from time to time prior to the Effective Date.

"Shared Asbestos-Excluded Claims-Made Insurance Policies" means the claims-made excess liability policies listed on Exhibit E to the Plan, as such exhibit may be amended by Quigley from time to time prior to the Effective Date.

"Sherry" means Edward J. Sherry.

"Sherry Bond" means the supersedeas bond in the amount of $258,444.80, dated March 31, 2004, and any other such bond, securing Sherry's judgment against Quigley in the civil action styled Edward J. Sherry, et al. v. Owens Corning, et al., to the extent of the value of the Sherry Bond. The "Sherry Bond" is not property of, or secured by property of, Quigley's estate.

"Sherry Secured Claim" means the Claim of Sherry based on the judgment obtained by Sherry in the civil action styled Edward J. Sherry, et al. v. Owens Corning, et al.

"Solicitation Procedures Order" means the order entered by the Bankruptcy Court on March 28, 2008,[●], which, among other things, approves procedures for soliciting and tabulating the votes to accept or reject the Plan cast by holders of Claims against and Equity Interests in Quigley, including, without limitation, Asbestos PI Claims.

DOC ID-10435617.9

"Stock Transfer Date" means the date on which the Quigley Stock Right is exercised. Notwithstanding anything to the contrary contained in the Plan, if the Bankruptcy Court confirms the Plan pursuant to section 1129(b) of the Bankruptcy Code, the Stock Transfer Date shall occur on the Effective Date.

"Tax Sharing Agreement" means the Tax Sharing Agreement entered into by and among Pfizer and certain of its Affiliates, including Quigley, dated December 31, 2003, pursuant to which the parties to the agreement established a method for allocating their consolidated tax liability.

"Trust Advisory Committee" means the Trust Advisory Committee established pursuant to the terms of the Plan and the Asbestos PI Trust Agreement.

"Trust Bylaws" means the Quigley Company, Inc. Asbestos PI Trust Agreement Bylaws, effective as of the Effective Date, substantially in the form as Exhibit B attached to the Asbestos PI Trust Agreement, as such bylaws may be amended or modified from time to time in accordance with the terms of the Asbestos PI Trust Agreement.

"Trustee" means an individual appointed by the Bankruptcy Court to serve as one of the trustees of the Asbestos PI Trust pursuant to the terms of the Plan and the Asbestos PI Trust Agreement or who subsequently may be appointed pursuant to the terms of the Asbestos PI Trust Agreement.

"Trust Expenses" means any of the liabilities, costs, or expenses of, or imposed upon, or assumed by the Asbestos PI Trust (other than liabilities to holders of Asbestos PI Claims in respect of such Asbestos PI Claims), as incurred in accordance with the provisions of the Asbestos PI Trust Agreement.

"Trust Indemnification Agreement" means the Indemnification Agreement entered into by and among Quigley or Reorganized Quigley, as the case may be, Pfizer, on behalf of itself and for the benefit of the other Pfizer Protected Parties, and the managing Trustee of the Asbestos PI Trust, substantially in the form as Exhibit A attached to the Asbestos PI Trust Agreement.

"Unimpaired" means a Claim or Equity Interest, or a Class of Claims or Equity Interests, that is not Impaired under this Plan.

"United States Trustee" means the United States Trustee appointed under section 591, title 28, United States Code to serve in the Southern District of New York.

"Unsecured Claim" means a Claim against Quigley that is not secured by a valid and enforceable Lien against property of Quigley and that is not an Administrative Claim, a Priority Claim, a Priority Tax Claim or an Asbestos PI Claim.

Section 1.2    Interpretation; Application of Definitions; Rules of Construction and Computation of Time.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Wherever from the context it appears appropriate, each term stated in either the singular or the plural will include both the singular and

the plural, and pronouns stated in the masculine, feminine, or neuter gender will include the masculine, feminine, and neuter.  Unless otherwise specified, all Article, Section, Schedule or Exhibit references in the Plan are to the respective article or section of, or schedule or exhibit to, the Plan.  For purposes of the Plan:  (a) any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; and (b) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar meaning refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan.  The rules of construction contained in section 102 of the Bankruptcy Code will apply to the construction of the Plan.  Unless otherwise stated herein, all references to dollars mean United States dollars.  In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Rule 9006(a) of the Bankruptcy Rules will apply.

Section 1.3 Exhibits.  All exhibits and schedules to this Plan, to the extent not annexed hereto and any agreements referred to herein and therein will be available for review following their filing with the Bankruptcy Court (a) at http://www.bmcgroup.com/restructuring/geninfo.aspx?ClientID=155, and (b) on Business Days from 9:00 a.m. through 5:00 p.m. (prevailing New York time), at the following address:

Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022
Attention:  Adam L. Hirsch, Esq.
Kyu (Mike) Paek, Esq.

Section 1.4 Ancillary Documents.  Each of the Schedules and Exhibits to the Plan (whether annexed hereto or included in the Plan Supplement), the Disclosure Statement, and the schedules and exhibits to the Disclosure Statement are an integral part of the Plan and are hereby incorporated by reference and made a part of the Plan, including, without limitation, the Asbestos PI Trust Agreement, the Asbestos PI Trust Distribution Procedures, the Amended Charter Documents, and the other Plan Documents.

Section 1.5 "Contra Proferentem" Rule Not Applicable.  This Plan is the product of extensive discussions and negotiations between and among, inter alia, the Plan Contributors, the members of the Creditors' Committee, the Future Demand Holders' Representative and Representatives of certain other holders of Asbestos PI Claims.  Each of the foregoing was represented by counsel who either participated in the formulation and documentation of, or was afforded the opportunity to review and provide comments on, this Plan, the Disclosure Statement, and the documents ancillary thereto.  Accordingly, the rule of contract construction known as "contra proferentem" shall not apply to the interpretation of any provision of this Plan, the Disclosure Statement, the other Plan Documents or any agreement or document generated in connection herewith.

DOC ID-10435617.9

## ARTICLE II

## CLASSIFICATION OF
## CLAIMS AND EQUITY INTERESTS

Section 2.1    Claims and Equity Interests Classified.    For purposes of organization, voting, and all Plan confirmation matters, and except as otherwise provided herein, all Claims against and Equity Interests in Quigley are classified as set forth in this Article II of the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, the DIP Claim and Priority Tax Claims described in Article III of this Plan have not been classified and are excluded from the following Classes.  A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest falls within the description of the Class, and is classified in another Class or Classes to the extent that any remainder of the Claim or Equity Interest falls within the description of such other Class or Classes.  Notwithstanding anything to the contrary contained in this Plan, no Distribution shall be made by Reorganized Quigley on account of any Claim that is not an Allowed Claim for distribution purposes.  The Bankruptcy Court at the Confirmation Hearing shall resolve any dispute with respect to Quigley's classification of Claims and Equity Interests.

Section 2.2    Summary of Classification of Claims and Equity Interests.    A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

For purposes of all confirmation matters, including, without limitation, voting on, confirmation of, and Distributions under, the Plan, and except as otherwise provided herein, all Claims (other than Administrative Claims (including Fee Claims), the DIP Claim, and Priority Tax Claims, which are not classified) against and Equity Interests in Quigley are classified as follows:

DOC ID-10435617.9

| CLASS | CLASS NAME | STATUS |
|---|---|---|
| Class 1 | Priority Claims | Unimpaired – not entitled to vote |
| Class 2 | Secured Claims<br>　　Class 2.01:  Pfizer Secured Claim<br>　　Class 2.02:  Reaud Secured Claim<br>　　Class 2.03:  Hatchett Secured Claim<br>　　Class 2.04:  Sherry Secured Claim<br>　　Class 2.05:  Other Secured Bond Claims | <br>Impaired – not entitled to vote<br>Unimpaired – not entitled to vote<br>Unimpaired – not entitled to vote<br>Unimpaired – not entitled to vote<br>Unimpaired – not entitled to vote |
| Class 3 | Unsecured Claims | Impaired – entitled to vote |
| Class 4 | Asbestos PI Claims | Impaired – entitled to vote |
| Class 5 | Equity Interests in Quigley | Impaired – not entitled to vote |

Section 2.3    Classification.

(a)    Class 1:  Priority Claims.  Class 1 consists of all Priority Claims.

(b)    Class 2:  Secured Claims.  Class 2 consists of separate subclasses for each Secured Claim.  Each subclass is deemed to be a separate class for all purposes under the Bankruptcy Code.

(i)    Class 2.01:  Pfizer Secured Claim

Class 2.01 consists of the Pfizer Secured Claim.

(ii)    Class 2.02:  Reaud Secured Claim

Class 2.02 consists of the Reaud Secured Claim

(iii)    Class 2.03:  Hatchett Secured Claim

Class 2.03 consists of the Hatchett Secured Claim.

(iv)    Class 2.04:  Sherry Secured Claim

Class 2.04 consists of the Sherry Secured Claim.

(v)    Class 2.05:  Other Secured Bond Claims

Class 2.05 consists of all Other Secured Bond Claims.

(c)    Class 3:  Unsecured Claims.  Class 3 consists of all Unsecured Claims.

DOC ID-10435617.9

(d)      <u>Class 4:  Asbestos PI Claims</u>.  Class 4 consists of all Asbestos PI Claims.

(e)      <u>Class 5:  Equity Interests in Quigley</u>.  Class 5 consists of all Equity Interests in Quigley.

ARTICLE III

TREATMENT OF UNCLASSIFIED CLAIMS

      <u>Section 3.1</u>      <u>Allowed Administrative Claims</u>.  Holders of Allowed Administrative Claims (other than Fee Claims, which are governed by Section 3.2 of this Plan) shall receive Cash in an amount equal to the unpaid portion of such Allowed Administrative Claims, in full satisfaction, settlement and discharge of and in exchange for such Claims on the Initial Distribution Date, or as soon as practicable after such Claims become Allowed Claims (if the date of allowance is later than the Initial Distribution Date), or such amounts and on such other terms as may be agreed on between the holders of such Claims and Quigley or Reorganized Quigley, as the case may be; <u>provided</u>, <u>however</u>, that Allowed Administrative Claims with respect to liabilities incurred by Quigley in the ordinary course of business during the Chapter 11 Case shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreement or course of dealing relating thereto.

      <u>Section 3.2</u>      <u>Professional Compensation and Reimbursement Claims</u>.  All Entities seeking payment of a Fee Claim (including a request under section 503(b)(4) of the Bankruptcy Code by any Professional or other Entity for making a substantial contribution in the Chapter 11 Case) must file with the Bankruptcy Court and serve their respective final applications for allowance of such Fee Claim so as to be received by Reorganized Quigley and its counsel no later than forty-five (45) days after the Effective Date or such other date as may be fixed by the Bankruptcy Court; <u>provided</u>, <u>however</u>, that any Professional who is entitled to receive compensation or reimbursement of expenses pursuant to orders of the Bankruptcy Court, may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date, without further review or approval of the Bankruptcy Court, pursuant to such orders.  Objections to any Fee Claim must be filed and served on Reorganized Quigley and the requesting party within thirty (30) days of the date of service of the application for payment of the Fee Claim.  If the application for payment of the Fee Claim is granted by the Bankruptcy Court, the Allowed Fee Claim shall be paid in Cash in such amounts as Allowed by the Bankruptcy Court within ten (10) days of the date of becoming an Allowed Fee Claim.

      <u>Section 3.3</u>      <u>Priority Tax Claims</u>.  Except to the extent that the holder of an Allowed Priority Tax Claim has been paid by Quigley prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim, if any, shall, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, receive in full satisfaction, settlement and discharge of and in exchange for such Allowed Priority Tax Claim, ~~either of the following, at the sole discretion of Reorganized Quigley:  (a)~~ Cash in an amount equal to the unpaid portion of such Allowed Priority Tax Claim on the latest of:  (i) the Initial Distribution Date; (ii) the date such Priority Tax Claim becomes an Allowed Claim, or as soon thereafter as is practicable; and (iii) the date such Allowed Priority Tax Claim becomes payable under applicable non-

bankruptcy law~~; or (b) deferred Cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the Effective Date, equal to the amount of such Allowed Priority Tax Claim, together with interest at an annual rate equal to the long-term applicable federal rate, as published by the Internal Revenue Service, in effect during the month in which the Effective Date occurs, or as otherwise agreed to by Reorganized Quigley and such holder. If deferred Cash payments are made to a holder of an Allowed Priority Tax Claim, payments of principal shall be made in equal annual installments, with the first payment to be due on the first anniversary of the Effective Date, and subsequent payments to be due on each successive anniversary of the first payment date or as soon thereafter as is practicable; provided, however, that any installments remaining unpaid on the date that is six years after the date of assessment of the Allowed Priority Tax Claim shall be paid on the first Business Day following such date, together with any accrued and unpaid interest to the date of payment.~~

Section 3.4    DIP Claim.  On <u>and as of</u> the Effective Date, Pfizer, the holder of the DIP Claim, shall ~~receive in full satisfaction, settlement and discharge of and in exchange for such Claim: (a) Cash equal to the Allowed Amount of the DIP Claim; or (b) such other treatment as Quigley and~~<u>forgive the DIP Claim as part of the</u> Pfizer ~~shall have agreed to in writing~~<u>Contribution</u>.

ARTICLE IV

TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

Section 4.1    Class 1 – Priority Claims.  Except to the extent a holder of an Allowed Priority Claim has been paid prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Claim shall receive in full satisfaction, settlement and discharge of and in exchange for such Claim, Cash in an amount equal to the unpaid portion of such Allowed Priority Claim on or before the later of:  (a) the Initial Distribution Date; and (b) the date the Claim becomes an Allowed Priority Claim, or as soon thereafter as practicable.  All Allowed Priority Claims not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof.

Class 1 is not Impaired under the Plan.  Each holder of an Allowed Priority Claim is deemed to have accepted the Plan and is therefore not entitled to vote to accept or reject the Plan.

Section 4.2    Class 2 – Secured Claims.  Each Class 2 Secured Claim shall be treated as a separate class for purposes of voting on, implementing, and consummating the Plan, and each holder of an Allowed Class 2 Secured Claim shall receive the treatment set forth below.

(a)    Class 2.01:  Pfizer Secured Claim

On ~~or before~~<u>and as of</u> the ~~Initial Distribution~~<u>Effective</u> Date, Pfizer, as the holder of the Pfizer Secured Claim, shall ~~receive in full satisfaction, settlement and discharge of and in exchange for such Claim, Cash equal to: (a) 100% of the Allowed Amount of the~~

~~DOC ID-10435617.9~~

~~Allowed~~forgive the Pfizer Secured Claim ~~*minus* (b) $30 million, which amount Pfizer shall forgive~~ as part of the Pfizer Contribution.

Class 2.01 is Impaired under the Plan. Pfizer, the holder of the Pfizer Secured Claim, shall be ~~entitled~~deemed to ~~vote to accept or~~ reject the Plan.

> (b)    Class 2.02: Reaud Secured Claim

On the Effective Date, the Reaud Claimants, as the holders of the Reaud Secured Claim, shall be entitled to proceed with the Pending Appeal of the judgment underlying the Reaud Secured Claim to Final Judgment as provided for under the terms of the Reaud Bond and in accordance with applicable law. If the Final Judgment is ultimately entered against Quigley or Reorganized Quigley, as the case may be, the Reaud Claimants shall be entitled to seek payment of the Final Judgment from the Reaud Bond. If, after application of the amounts received on account of the Reaud Bond to the Final Judgment, the Reaud Claimants hold an Asbestos PI Deficiency Claim, the sole recourse of the Reaud Claimants for such Asbestos PI Deficiency Claim shall be to proceed against the Asbestos PI Trust in accordance with the Asbestos PI Trust Distribution Procedures. If the Final Judgment ultimately reverses any extant judgment against Quigley, then any remaining Asbestos PI Claim that any of the Reaud Claimants may have shall automatically and without further act, deed or court order be channeled to and assumed by the Asbestos PI Trust in accordance with and to the extent set forth in Articles IX and XI of the Plan.

Class 2.02 is not Impaired under the Plan. The Reaud Claimants, as the holders of the Reaud Secured Claim, is deemed to have accepted the Plan and is therefore not entitled to vote to accept or reject the Plan.

> (c)    Class 2.03: Hatchett Secured Claim

On the Effective Date, Hatchett, as the holder of the Hatchett Secured Claim, shall be entitled to proceed with the Pending Appeal of the judgment underlying the Hatchett Secured Claim to Final Judgment as provided for under the terms of the Hatchett Bond and in accordance with applicable law. If the Final Judgment is ultimately entered against Quigley or Reorganized Quigley, as the case may be, Hatchett shall be entitled to seek payment of the Final Judgment from the Hatchett Bond. If, after application of the amounts received on account of the Hatchett Bond to the Final Judgment, Hatchett holds an Asbestos PI Deficiency Claim, the sole recourse of Hatchett for such Asbestos PI Deficiency Claim shall be to proceed against the Asbestos PI Trust in accordance with the Asbestos PI Trust Distribution Procedures. If the Final Judgment ultimately reverses any extant judgment against Quigley, then any remaining Asbestos PI Claim that Hatchett may have shall automatically and without further act, deed or court order be channeled to and assumed by the Asbestos PI Trust in accordance with and to the extent set forth in Articles IX and XI of the Plan.

Class 2.03 is not Impaired under the Plan. Hatchett, as the holder of the Hatchett Secured Claim, is deemed to have accepted the Plan and is therefore not entitled to vote to accept or reject the Plan.

DOC ID-10435617.9

(d)     Class 2.04:  Sherry Secured Claim

On the Effective Date, Sherry, as the holder of the Sherry Secured Claim, shall be entitled to proceed with the Pending Appeal of the judgment underlying the Sherry Secured Claim to Final Judgment as provided for under the terms of the Sherry Bond and in accordance with applicable law.  If the Final Judgment is ultimately entered against Quigley or Reorganized Quigley, as the case may be, Sherry shall be entitled to seek payment of the Final Judgment from the Sherry Bond.  If, after application of the amounts received on account of the Sherry Bond to the Final Judgment, Sherry holds an Asbestos PI Deficiency Claim, the sole recourse of Sherry for such Asbestos PI Deficiency Claim shall be to proceed against the Asbestos PI Trust in accordance with the Asbestos PI Trust Distribution Procedures.  If the Final Judgment ultimately reverses any extant judgment against Quigley, then any remaining Asbestos PI Claim that Sherry may have shall automatically and without further act, deed or court order be channeled to and assumed by the Asbestos PI Trust in accordance with and to the extent set forth in Articles IX and XI of the Plan.

Class 2.04 is not Impaired under the Plan.  Sherry, as the holder of the Sherry Secured Claim, is deemed to have accepted the Plan and is therefore not entitled to vote to accept or reject the Plan.

(e)     Class 2.05:  Other Secured Bond Claims

On the Effective Date, any holder of an Other Secured Bond Claim shall be entitled to the same treatment as the holders of the Secured Claims in Classes 2.02 through 2.04.

Class 2.05 is not Impaired under the Plan.  The holders of any Other Secured Bond Claim are deemed to have accepted the Plan and are therefore not entitled to vote to accept or reject the Plan.

Section 4.3     Class 3 – Allowed Unsecured Claims.  On or before the later of: (a) the Initial Distribution Date; and (b) the date the Claim becomes an Allowed Unsecured Claim, or as soon thereafter as practicable, each holder of an Allowed Unsecured Claim shall receive in full satisfaction, settlement and discharge of and in exchange for such Claim, Cash in an amount equal to the Allowed Amount of such Unsecured Claim multiplied by the Payment Percentage.

Class 3 is Impaired under the Plan.  Each holder of an Allowed Unsecured Claim shall be entitled to vote to accept or reject the Plan to the extent and in the manner provided in the Solicitation Procedures Order.

Section 4.4     Class 4 – Asbestos PI Claims.  As of the Effective Date, liability for all Class 4 Claims shall automatically and without further act, deed or court order be channeled to and assumed by the Asbestos PI Trust in accordance with, and to the extent set forth in, Articles IX and XI of the Plan and the Plan Documents.  Each Asbestos PI Claim shall be determined and paid in accordance with the terms, provisions and procedures of the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures, including application of the Payment Percentage.  The Asbestos PI Trust shall be funded in accordance with the provisions of Section 9.3 of the Plan.  Except as set forth in Section 11.6(b)(ix) of the Plan, the

sole recourse of the holder of an Asbestos PI Claim on account of such Claim shall be to the Asbestos PI Trust and each holder shall have no right whatsoever at any time to assert its Asbestos PI Claim against any Asbestos Protected Party, or, subject to the terms of Section 11.7 below, a Settling Asbestos Insurance Entity, or, subject to the terms of Section 11.8 below, a Non-Settling Asbestos Insurance Entity.

Pfizer has waived and shall be deemed to have waived any and all obligations or requirements of holders of Asbestos PI Claims who become Settling Plaintiffs under the terms of the Pfizer Claimant Settlement Agreements to reduce the amount of distributions they are entitled to receive from the Asbestos PI Trust; provided, however, that such waiver shall be null and void and of no further force and effect in the event that the Effective Date does not occur.

Class 4 is Impaired under the Plan. Each holder of an Asbestos PI Claim shall be entitled to vote to accept or reject the Plan to the extent and in the manner provided in the Solicitation Procedures Order.

Section 4.5    Class 5 – Equity Interests.  On the ~~Stock Transfer~~Effective Date, Pfizer, ~~as~~ the holder of the Equity Interests, shall transfer the common stock of Reorganized Quigley to the Asbestos PI Trust.

Class 5 is Impaired under the Plan. Pfizer, ~~as~~ the sole holder of the Equity Interests, shall be ~~entitled to vote to accept or~~deemed to reject the Plan.

ARTICLE V

ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION
BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS

Section 5.1    Classes Entitled to Vote.  Except as set forth below, each holder of an Allowed Claim or Allowed Equity Interest, and each holder of a Claim or Equity Interest that has been temporarily allowed for voting purposes, including each holder of an Asbestos PI Claim, in each Impaired Class of Claims or Equity Interests shall be entitled to vote separately to accept or reject the Plan to the extent and in the manner provided in the Solicitation Procedures Order.  Any Unimpaired Class of Claims shall not be entitled to vote to accept or reject the Plan. Any Class of Claims or Equity Interests that shall not receive or retain any property on account of such Claims or Equity Interests under the Plan shall be deemed to have rejected the Plan.

Section 5.2    Class Acceptance Requirement.  Acceptance of the Plan by any Impaired Class of Claims or Equity Interests shall be determined in accordance with section 1126 of the Bankruptcy Code and the terms of the Solicitation Procedures Order.

Section 5.3    Issuance of Injunctions Pursuant to Section 524(g) of the Bankruptcy Code.  The Bankruptcy Court may issue the Asbestos PI Channeling Injunction and the Settling Asbestos Insurance Entity Injunction if, in accordance with section 524(g)(2)(B)(ii)(IV)(bb) of the Bankruptcy Code, the Plan has been accepted by at least 75% in number of those holders of Class 4 Claims actually voting on the Plan.

Section 5.4    Cramdown.   In the event that any impaired Class of Claims or Equity Interests fails to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, Quigley reserves its right to: (i) modify the Plan in accordance with Section 13.2 hereof; and/or (ii) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code by finding that the Plan does not discriminate unfairly and provides fair and equitable treatment to any impaired Class of Claims or Equity Interests voting to reject the Plan, in which case the Plan shall constitute a motion for such relief that shall be considered at the Confirmation Hearing.

Section 5.5    Acceptance by Unimpaired Class.   Class 1 (Priority Claims), Class 2.02 (Reaud Secured Claim), Class 2.03 (Hatchett Secured Claim), Class 2.04 (Sherry Secured Claim), and Class 2.05 (Other Secured Bond Claims) are Unimpaired under the Plan and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

Section 5.6    Elimination of Vacant Classes.   Any Class of Claims that does not contain a holder of an Allowed Claim or a holder of a Claim temporarily allowed pursuant to the Solicitation Procedures Order, as of the date of the commencement of the Confirmation Hearing, shall be deemed deleted from the Plan for all purposes, including for purposes of determining acceptance of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

ARTICLE VI

DISTRIBUTIONS UNDER THE
PLAN ON ACCOUNT OF CLAIMS
OTHER THAN ASBESTOS PI CLAIMS

Section 6.1    Distributions.   Reorganized Quigley shall make all Distributions required under the Plan as provided under this Article VI.  Distributions on account of Allowed Claims other than Asbestos PI Claims shall be made on the related Distribution date or as soon thereafter as practicable (unless otherwise provided herein or ordered by the Bankruptcy Court). All distributions on account of Asbestos PI Claims shall be made in accordance with the terms of the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures.

Section 6.2    Pro Rata Share Distributions.   The Pro Rata Share of any Cash or assets to be distributed to or for the benefit of the holder of an Allowed Claim in any Class of Claims under the Plan shall be distributed as provided in the Plan.  An initial distribution shall be made on the Initial Distribution Date, with escrowed Distributions established in the aggregate amounts that would be distributable to Disputed Claims.  If and when a Disputed Claim in any Class becomes a Disallowed Claim, then the Pro Rata Share to which each holder of an Allowed Claim in such Class is entitled shall increase proportionately and Reorganized Quigley shall have the right (but not the obligation) to make or direct the making of subsequent interim Distributions to the holders of Allowed Claims in such Class in order to reflect any increases in the Pro Rata Share.  Reorganized Quigley shall distribute Pro Rata Shares of the escrowed Distributions to each holder of a Claim that was a Disputed Claim on the Effective Date within fifteen (15) Business Days of the date on which such Claim becomes an Allowed Claim, or as soon thereafter as is practicable.  As soon as practicable after all Disputed Claims in any Class

receiving Pro Rata Shares have become either Allowed Claims or Disallowed Claims, a final Distribution shall be made to the holders of Allowed Claims in such Class.

Section 6.3    Means of Cash Payment.  Cash payments made pursuant to the Plan shall be in United States dollars, by check drawn on a bank located in the United States or by wire transfer from such bank.

Section 6.4    Delivery of Distributions.  Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the Proofs of Claim filed by such holders (or at the last known addresses of such holders if no Proof of Claim is filed or if Reorganized Quigley has been notified of a change of address).  If any holder's Distribution is returned as undeliverable, then no further Distributions to such holder shall be made unless and until Reorganized Quigley is notified of such holder's then-current address, at which time all missed Distributions shall be made to such holder without interest.  Cash Distributions that are not claimed by the expiration of six (6) months from the date that such Distributions were made shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revest in Reorganized Quigley, and the Claim of any holder to such Distributions shall be discharged and forever barred.  Nothing contained in the Plan shall require Quigley or Reorganized Quigley to attempt to locate any holder of an Allowed Claim.

Section 6.5    Time Bar to Cash Payments.  Checks issued by Reorganized Quigley in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof.  The holder of the Allowed Claim with respect to which such check originally was issued shall make requests for reissuance of any check directly to Reorganized Quigley.  Any such request for reissuance of a check shall be made on or before the later of the six month anniversary of the Initial Distribution Date, and ninety (90) days after the date of issuance of such check.  After such date, all Claims in respect of void checks shall be discharged and forever barred.

Section 6.6    Timing of Distributions.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

Section 6.7    Record Date for Holders of Claims.  Except as otherwise provided in an order of the Bankruptcy Court that is not subject to any stay, the transferees of Claims that are transferred pursuant to Rule 3001 of the Bankruptcy Rules on or prior to the Distribution Record Date shall be treated as the holders of such Claims for all purposes, notwithstanding that any period provided by Rule 3001 of the Bankruptcy Rules for objecting to such transfer has not expired by the Distribution Record Date.

Section 6.8    Distributions After Effective Date.  Distributions made after the Effective Date shall be deemed to have been made on the Effective Date.

Section 6.9    Fractional Cents.  Notwithstanding any other provision of the Plan to the contrary, no payment of fractional cents shall be made pursuant to the Plan.  Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual

DOC ID-10435617.9

Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with half pennies or more being rounded up and fractions less than a half of a penny being rounded down.

Section 6.10   Interest on Claims.  Except as specifically provided for in the Plan, the Confirmation Order, the Interim Cash Collateral Order or the Final DIP/Cash Collateral Order, interest shall not accrue on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.  Interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Petition Date to the date a final Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.  Except as expressly provided herein, no prepetition Claim shall be Allowed to the extent that it is for postpetition interest or other similar charges.

Section 6.11   *De Minimis* Distributions.   Notwithstanding anything to the contrary contained in the Plan or Confirmation Order, Quigley and Reorganized Quigley shall not be required to distribute, and shall not distribute, Cash to the holder of an Allowed Claim if the amount of Cash to be distributed on account of such Claim is less than $40.  Any holder of an Allowed Claim on account of which the amount of Cash to be distributed is less than $40 shall have such Claim discharged and shall be forever barred from asserting any such Claim against Quigley, Reorganized Quigley, the Asbestos PI Trust or their respective property.  Any Cash not distributed pursuant to this provision shall be the property of Reorganized Quigley, free of any restrictions thereon.  For the avoidance of doubt, the *de minimis* distribution limitation described in this Section 6.11 shall not apply to distributions made by the Asbestos PI Trust.

Section 6.12   Setoffs.  Subject to the limitations provided in section 553 of the Bankruptcy Code, Reorganized Quigley may, but shall not be required to, setoff against any Claim and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, Claims of any nature whatsoever that Quigley may have against the holder of such Claim.  However, neither the failure to set off nor the allowance of any Claim hereunder shall constitute a waiver or release by Quigley of any such Claim that Quigley may have against the holder.

ARTICLE VII

TREATMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES

Section 7.1   General Treatment.  The Plan constitutes a motion by Quigley to assume, as of the Effective Date, all Executory Contracts to which Quigley is a party except for: (a) the Executory Contracts specifically listed in the Plan Supplement, which shall either be rejected or assumed and assigned as described therein; and (b) the Executory Contracts dealt with herein or pursuant to a Final Order of the Bankruptcy Court entered on or before the Effective Date.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving such:  (a) rejections; (b) assumptions; or (c) assumptions and assignments, as the case may be, pursuant to section 365 of the Bankruptcy Code as of the Confirmation Date.

Section 7.2   Rejected, Assumed or Assumed and Assigned Executory Contracts.  Except as otherwise provided herein or pursuant to a Final Order of the Bankruptcy

Court, effective as of the Confirmation Date, all Executory Contracts of Quigley specifically listed in the Plan Supplement shall be deemed to be automatically, as set forth therein: (a) rejected; or (b) assumed and assigned, as the case may be, as of the Confirmation Date. Effective as of the Confirmation Date, all other Executory Contracts that are not specifically listed in the Plan Supplement shall be deemed to be automatically assumed by Reorganized Quigley. Quigley may at any time on or before the Confirmation Date amend the Plan Supplement to delete therefrom or add thereto any Executory Contract, and, as of the Confirmation Date, such Executory Contract shall be deemed to be rejected or assumed and assigned, as the case may be. Quigley shall provide notice of any amendments to the list of Executory Contracts contained in the Plan Supplement to the parties to the Executory Contracts affected thereby and to parties on the Master Service List. The fact that any contract or lease is listed in the Plan Supplement shall not constitute or be construed to constitute an admission that such contract or lease is an Executory Contract within the meaning of section 365 of the Bankruptcy Code or that Quigley or any successor in interest to Quigley (including Reorganized Quigley) has any liability thereunder.

Section 7.3    Payments Related to Assumption of Executory Contracts. Any monetary amounts by which each Executory Contract to be assumed or assumed and assigned under the Plan may be in default shall be satisfied in full by the payment of Cure in accordance with section 365(b)(1) of the Bankruptcy Code. In the event of a dispute regarding: (a) the nature or amount of any Cure; (b) the ability of Quigley, Reorganized Quigley or any proposed assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or assumed and assigned; or (c) any other matter pertaining to assumption, the payment of Cure shall occur following the entry of a Final Order of the Bankruptcy Court resolving the dispute. No amount shall be due for Cure or other compensation to the parties to assumed or assumed and assigned Executory Contracts except as expressly provided in the Cure schedule to be included in the Plan Supplement or as otherwise ordered by the Bankruptcy Court pursuant to a Final Order. On the Initial Distribution Date or as soon thereafter as practicable, Reorganized Quigley shall pay all undisputed Cure amounts, if any, under the Executory Contracts being assumed or assumed and assigned pursuant to Section 7.2 of this Plan. Except for Claims for payment of Cure, the non-Debtor parties to the assumed or assumed and assigned contracts shall have no Claim against Quigley or Reorganized Quigley relating to those contracts.

Section 7.4    Bar to Rejection Damages. If the rejection or deemed rejection of an Executory Contract under the Plan by Quigley results in damages to the other party or parties to such contract, a Claim for such damages shall be forever barred and shall not be enforceable against any of Quigley, Reorganized Quigley or its properties, whether by way of setoff, recoupment, or otherwise unless a Proof of Claim is filed with the Bankruptcy Court and served upon counsel for Quigley or Reorganized Quigley by the earlier of: (a) thirty (30) days after entry of the Confirmation Order; and (b) thirty (30) days after entry of an order rejecting a contract pursuant to a motion filed by Quigley to reject such contract.

Section 7.5    Indemnification and Reimbursement Obligations. For purposes of this Plan, the obligations of Quigley to indemnify and reimburse persons who are or were directors, officers, or employees of Quigley on the Petition Date or at any time thereafter against and for any obligations pursuant to articles of incorporation, codes of regulations, by-laws,

applicable state law, or specific agreement, or any combination of the foregoing, shall survive confirmation of the Plan, remain unaffected thereby, and not be discharged in accordance with section 1141 of the Bankruptcy Code, irrespective of whether indemnification or reimbursement is owed in connection with an event occurring before, on, or after the Petition Date. In furtherance of the foregoing, Reorganized Quigley shall use its commercially reasonable efforts to maintain or procure insurance for the benefit of such directors, officers, or employees at levels no less favorable than those existing as of the date of entry of the Confirmation Order for a period of no less than four years following the Effective Date.

ARTICLE VIII

PROCEDURES FOR RESOLVING
AND TREATING DISPUTED CLAIMS
OTHER THAN ASBESTOS PI CLAIMS

Section 8.1    Disputed Claims.  All Disputed Claims against Quigley shall be subject to the provisions of this Article VIII.  All Asbestos PI Claims shall be determined and paid by the Asbestos PI Trust in accordance with the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures.  Only the Asbestos PI Trust will have the right to resolve Asbestos PI Claims.

Section 8.2    Objection Deadline.  Unless otherwise ordered by the Bankruptcy Court, objections to Claims other than Asbestos PI Claims shall be filed with the Bankruptcy Court or District Court, as applicable, and served upon the holders of each such Claim to which objections are made on or before the Claims Objection Bar Date.  If an objection to a Claim is timely filed by any party in interest, a subsequent amendment to the objection shall also be deemed timely, even if filed subsequent to the deadline for filing the original Claim objection, and even if the amendment raises facts or legal theories not raised in the original Claim objection.

Section 8.3    Prosecution of Objections.  After the Confirmation Date, Quigley or Reorganized Quigley, as the case may be, shall have authority to file, litigate to final judgment, settle, or withdraw objections to Disputed Claims.

Section 8.4    No Distributions Pending Allowance.  No payments or Distributions shall be made with respect to any Claim to the extent it is a Disputed Claim unless and until all objections to such Disputed Claim are resolved and such Disputed Claim becomes an Allowed Claim in whole or in part.

ARTICLE IX

MEANS FOR IMPLEMENTATION OF THE PLAN

Section 9.1    General.  On the Confirmation Date, Quigley shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions necessary to enable it to implement the provisions of this Plan, including, without limitation, the creation of

the Asbestos PI Trust. From and after the Effective Date, Reorganized Quigley shall be governed pursuant to its Amended Charter Documents.

Section 9.2  Transactions on the Effective Date. On the Effective Date, the following shall be deemed for all purposes to have occurred simultaneously:

(a)  any Distributions required to be made on the Effective Date;

(b)  establishment of the Asbestos PI Trust, including the Pfizer Contribution and the Quigley Contribution;

(c)  contribution by Pfizer to Reorganized Quigley of the New Quigley Operations; and

(d)  (c) the effectiveness and binding effect of the Amended Charter Documents upon Reorganized Quigley.

Section 9.3  The Asbestos PI Trust.

(a)  Creation of the Asbestos PI Trust. On the Effective Date, the Asbestos PI Trust shall be created in accordance with the Plan Documents. The Asbestos PI Trust shall be a "qualified settlement fund" within the meaning of section 468B of the United States Internal Revenue Code and the regulations issued thereunder. The purposes of the Asbestos PI Trust shall be to assume all Asbestos PI Claims (whether now existing or arising at any time hereafter) and to use the Asbestos PI Trust Assets to pay holders of Asbestos PI Claims in accordance with the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures, and in such a way that provides reasonable assurance that the Asbestos PI Trust shall value and be in a financial position to pay present and future Asbestos PI Claims that involve similar Claims in substantially the same manner, and to otherwise comply in all respects with the requirements of section 524(g)(2)(B) of the Bankruptcy Code. On the Effective Date, subject to the terms of the Pfizer Contribution and except as otherwise provided with respect to the Quigley Stock Transfer, all right, title and interest in and to the Asbestos PI Trust Assets and any proceeds thereof will be transferred to and vested in the Asbestos PI Trust, free and clear of all Claims, Demands, Equity Interests, Encumbrances and other interests of any Entity without any further action of any Entity.

(b)  Appointment of Trustees. Prior to or at the Confirmation Hearing, the Creditors' Committee and the Future Demand Holders' Representative, in consultation with Quigley, shall nominate the three initial Trustees of the Asbestos PI Trust, one of which shall be a resident of the State of New York (if a natural person) or have a principal place of business in the State of New York (in all other cases). The Confirmation Order shall constitute an order of the Bankruptcy Court appointing the initial Trustees to serve as Trustees of the Asbestos PI Trust in accordance with the Asbestos PI Trust Agreement, effective as of the Effective Date.

(c)  Appointment of Trust Advisory Committee Members. Prior to or at the Confirmation Hearing, the Creditors' Committee, in consultation with Quigley and the Future Demand Holders' Representative, shall nominate the five initial members of the Trust Advisory Committee. The Confirmation Order shall constitute an order of the Bankruptcy Court

appointing the initial members of the Trust Advisory Committee (and thereupon the Trust Advisory Committee shall be formed) to serve in accordance with the Asbestos PI Trust Agreement.

(d) <u>Contributions to the Asbestos PI Trust or Reorganized Quigley</u>. On or after the Effective Date, Reorganized Quigley and Pfizer shall make the Quigley Contribution and Pfizer Contribution, respectively, to the Asbestos PI Trust or Reorganized Quigley, as applicable. The Asbestos PI Trust shall perform all obligations of Quigley with respect to the Quigley Transferred Insurance Rights.

(e) <u>Insurance Relinquishment Agreement</u>. On or before the Effective Date, Quigley or Reorganized Quigley, as the case may be, shall execute and deliver to Pfizer and Pfizer shall execute and deliver to Quigley or Reorganized Quigley, as the case may be, the Insurance Relinquishment Agreement.

(f) <u>AIG Assignment Agreement</u>. On or before the Effective Date, Quigley or Reorganized Quigley, as the case may be, and Pfizer shall execute and deliver to the Asbestos PI Trust the AIG Assignment Agreement.

(g) ~~(f)~~ <u>Transfer of Claims and Demands to the Asbestos PI Trust</u>. On the Effective Date, all liabilities, obligations, Demands and responsibilities relating to all Asbestos PI Claims shall be transferred and channeled to the Asbestos PI Trust.

(h) ~~(g)~~ <u>Asbestos PI Claims Services Agreement</u>. On or before the Effective Date, Quigley or Reorganized Quigley, as the case may be, and the Asbestos PI Trust shall execute the Asbestos PI Claims Services Agreement.

(h) ~~Pfizer Claims Services Agreement. On or before the Effective Date, Quigley or Reorganized Quigley, as the case may be, and Pfizer shall execute the Pfizer Claims Services Agreement.~~

(i) <u>Discharge of Liabilities to Holders of Asbestos PI Claims</u>. Except as may otherwise be provided in the Plan Documents and the Confirmation Order, the transfer to, vesting in, and assumption by the Asbestos PI Trust of the Asbestos PI Trust Assets on or after the Effective Date, as contemplated by the Plan, shall, among other things, discharge all obligations and Liabilities of Quigley and Reorganized Quigley for and in respect of all Asbestos PI Claims. On the Effective Date, the Asbestos PI Trust shall assume all Asbestos PI Claims and shall pay the Asbestos PI Claims in accordance with the Asbestos PI Trust Distribution Procedures.

(j) <u>Indemnification by the Asbestos PI Trust</u>. As and to the extent provided in the Trust Indemnification Agreement, the Asbestos PI Trust shall indemnify and hold harmless each of: (i) Quigley and Reorganized Quigley and their respective past, present and future Representatives, in their capacities as such; and (ii) the Pfizer Protected Parties.

DOC ID-10435617.9

(k)    Transfer of the Common Stock of Reorganized Quigley to the Asbestos PI Trust.  On the ~~Stock Transfer~~Effective Date, Pfizer shall transfer 100% of the common stock of Reorganized Quigley to the Asbestos PI Trust.

(l)    Books and Records.  On the Effective Date, and in accordance with instructions to be provided by the Asbestos PI Trust, the Asbestos Record Parties shall transfer the Asbestos Records or cause the same to be transferred to the Asbestos PI Trust.  The Asbestos Records may be used by the Asbestos PI Trust and its Representatives to assist in the processing and determination of, objection to, or otherwise in connection with, Asbestos PI Claims pursuant to the Asbestos PI Trust Distribution Procedures and in connection with any Quigley Transferred Insurance Rights.  The Asbestos PI Trust shall treat the Asbestos Records as confidential and shall not voluntarily waive any attorney-client, work product or other privilege applicable to the Asbestos Records without the written consent of the transferring Asbestos Record Parties.  The Asbestos PI Trust shall cooperate with each Asbestos Record Party with respect to the Asbestos Records to the extent necessary for such Asbestos Record Party to comply with any discovery, subpoena, or other process.

Section 9.4    Reorganized Quigley's Obligations under the Plan.  From and after the Effective Date, Reorganized Quigley shall perform the obligations of Quigley under the Plan.

Section 9.5    Charter and Bylaws.  The Amended Bylaws and the Amended Certificate of Incorporation shall contain such provisions as are necessary to satisfy the provisions of the Plan and, to the extent necessary, to prohibit the issuance of nonvoting equity securities ~~(other than the Quigley Stock Right)~~ as required by section 1123(a)(6) of the Bankruptcy Code, subject to further amendment of the Amended Bylaws and the Amended Certificate of Incorporation after the Effective Date, as permitted by applicable law.  Except as otherwise provided herein, such Amended Bylaws and Amended Certificate of Incorporation shall contain such indemnification provisions applicable to the officers, directors and employees of Reorganized Quigley and such other Entities as may, in the discretion of the Board of Directors of Reorganized Quigley, be appropriate.

Section 9.6    The Board of Directors of Reorganized Quigley.  Unless otherwise agreed to by Reorganized Quigley and Pfizer, the existing members of Quigley's Board of Directors shall continue to serve in their respective capacities until the ~~Stock Transfer~~Effective Date.  On and after the ~~Stock Transfer~~Effective Date, the Asbestos PI Trust shall have the right, but not the obligation, to replace any or all of the members of Reorganized Quigley's Board of Directors with one or more individuals selected by the Trustees.

Section 9.7    Exit Facility.  On the Effective Date, Quigley may, as necessary, enter into the Exit Facility, which shall be secured by a Lien on all of Reorganized Quigley's assets that are not being transferred to the Asbestos PI Trust hereunder.

Section 9.8    Operations of Quigley Between Confirmation and the Effective Date.  Quigley shall continue to operate as a debtor-in-possession during the period from the Confirmation Date through and until the Effective Date.

DOC ID-10435617.9

Section 9.9    Cancellation of Existing Securities.  On the Effective Date, except for the Equity Interests and as otherwise provided for in the Plan or the Confirmation Order:  (a) all notes, bonds, indentures, and other instruments or documents evidencing or creating any indebtedness or obligation of Quigley (except such notes or other instruments evidencing indebtedness or obligations of Quigley that are reinstated under the Plan) shall be extinguished and canceled; and (b) the obligations of Quigley under any agreements, indentures, or certificates of designation governing any notes, bonds, indentures, and other instruments or documents evidencing or creating any indebtedness or obligation of Quigley (except such notes or other instruments evidencing indebtedness or obligations of Quigley that are reinstated or transferred or assigned to Pfizer or the Asbestos PI Trust under the Plan), as the case may be, shall be discharged.

Section 9.10    Effectuating Documents; Further Transactions.  The Chairman of the Board of Directors, the President, the Chief Operating Officer, the Chief Executive Officer, the Chief Financial Officer, or any other appropriate officer of each of Quigley or Reorganized Quigley, as the case may be, shall be, and hereby are, authorized to execute, deliver, file, and record such contracts, instruments, releases, indentures, certificates, and other agreements or documents, and take such other actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Secretary of Quigley will be authorized to certify or attest to any of the foregoing, if necessary.

Section 9.11    AIG Assignment Agreement.  On the Effective Date, Reorganized Quigley shall execute and deliver to Pfizer the AIG Assignment Agreement, pursuant to which Reorganized Quigley shall assign to Pfizer all of its right, title and interest in and to the AIG Payments.

ARTICLE X

EFFECT OF CONFIRMATION

Section 10.1    Revesting of Reorganized Quigley's Assets.  Pursuant to section 1141(b) of the Bankruptcy Code, except as otherwise provided in the Plan or the Confirmation Order, the property of the Estate of Quigley (except for the Quigley Contribution) shall revest in Reorganized Quigley on the Effective Date.  From and after the Effective Date, Reorganized Quigley may operate its businesses and may use, acquire, and dispose of property free of any restrictions imposed under the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Court.  As of the Effective Date, all property of Quigley and Reorganized Quigley will be free and clear of all Claims, Liens and interests, except as specifically provided in the Plan, the Confirmation Order, or in connection with the Exit Facility.  Without limiting the generality of the foregoing, Reorganized Quigley may, without application to or approval by the Bankruptcy Court, pay Professional fees and expenses that Reorganized Quigley may incur after the Effective Date.

Section 10.2    Preservation of Certain Causes of Action; Defenses.

(a)    Except as otherwise provided in the Plan or the Confirmation Order, in accordance with section 1123(b) of the Bankruptcy Code, Reorganized Quigley, as

successor in interest to Quigley and its Estate, shall retain and may enforce such Claims, rights and Causes of Action that are property of Quigley and its Estate, and Reorganized Quigley shall retain and enforce all defenses and counterclaims to all Claims asserted against Quigley or its Estate, including, but not limited to, setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code. Reorganized Quigley may pursue such Claims, rights, or Causes of Action, as appropriate, in accordance with its best interests, as determined by the Board of Directors of Reorganized Quigley.

(b) Notwithstanding Section 10.2(a) of the Plan, on the Effective Date, all defenses and Causes of Action of Quigley and Reorganized Quigley relating to Asbestos PI Claims, including any Asbestos Insurance Actions, shall be transferred and assigned to the Asbestos PI Trust. Except as otherwise provided in the Plan or the Confirmation Order, in accordance with section 1123(b) of the Bankruptcy Code, the Asbestos PI Trust shall retain and may enforce such defenses and Causes of Action and shall retain and may enforce all defenses and counterclaims to all Claims asserted against the Asbestos PI Trust with respect to such Asbestos PI Claims, including, but not limited to, setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code; provided, however, that no such defenses, Causes of Action, or counterclaims may be asserted against any Pfizer Protected Party. The Asbestos PI Trust may pursue such defenses, rights, or Causes of Action, as appropriate, in accordance with its and its beneficiaries' best interests. Nothing in this Section 10.2(b), however, shall be deemed to be a transfer by Quigley or Reorganized Quigley of any Claims, Causes of Action, or defenses relating to assumed Executory Contracts or which otherwise are required by Reorganized Quigley to conduct its business in the ordinary course subsequent to the Effective Date.

### Quigley Insurance Transfer

.

(a) Implementation of Quigley Insurance Transfer. To effectuate the Quigley Contribution, on the Effective Date and without any further action of the Bankruptcy Court or further act or agreement of any Entity, Quigley shall irrevocably transfer, grant and assign to the Asbestos PI Trust the Quigley Transferred Insurance Rights pursuant to the Quigley Insurance Transfer. The Asbestos PI Trust shall assume responsibility for all obligations of Quigley arising from, under or related to any of the Quigley Transferred Insurance Rights. The Quigley Transferred Insurance Rights shall be subject to any and all Asbestos PI Insurer Coverage Defenses. The Quigley Insurance Transfer shall be made and shall be effective. The Quigley Insurance Transfer shall not be, and shall not be deemed to be, an assignment of the Shared Asbestos Insurance Policies, the Insurance Settlement Agreements, the AIG Insurance Settlement Agreement, or any other settlement agreements with Asbestos Insurance Entities themselves.

(b) Institution and Maintenance of Legal and Other Proceedings. From and after the Effective Date, the Asbestos PI Trust shall be empowered and entitled, in its sole and absolute discretion, to pursue, compromise or settle its interests in any and all Quigley Transferred Insurance Rights, including, without limitation, its interests in any and all Asbestos Insurance Actions. The duties, obligations and liabilities of any Asbestos Insurance Entity under

all insurance policies, all Shared Asbestos Insurance Policies, all Insurance Settlement Agreements, the AIG Insurance Settlement Agreement, and all other settlement agreements with Asbestos Insurance Entities are not diminished, reduced or eliminated by: (i) the discharge of Quigley and Reorganized Quigley from all Asbestos PI Claims; (ii) the injunctive protection provided to Quigley, Reorganized Quigley, the Asbestos Protected Parties, and the Settling Asbestos Insurance Entities with respect to Asbestos PI Claims; or (iii) the assumption of responsibility and liability for all Asbestos PI Claims by the Asbestos PI Trust. For avoidance of doubt, any and all Asbestos PI Insurer Coverage Defenses are preserved by and under this Plan.

(c)     License Back To Reorganized Quigley. From and after the Effective Date, Reorganized Quigley shall have a license to collect and use the proceeds of the Shared Asbestos Insurance Policies (the "License") only to the extent that (i) Reorganized Quigley's collection and use of the proceeds of the Shared Asbestos Insurance Policies does not reduce the Products/Completed Operations Coverage or any aggregate, per occurrence or other policy limit of any Shared Asbestos Insurance Policy that is or could potentially be applicable to Asbestos PI Claims, and (ii) Reorganized Quigley's collection and use of the proceeds of the Shared Asbestos Insurance Policies does not in any way interfere with the Asbestos PI Trust's exercise of any Quigley Transferred Insurance Rights. The Asbestos PI Trust may terminate this License at any time if the Asbestos PI Trust deems the termination of the License necessary for any reason, including, without limitation, to resolve any disputes with insurers concerning any of the Shared Asbestos Insurance Policies.

(d)     Obligations of Reorganized Quigley. At the reasonable direction and request of the Asbestos PI Trust, and at the cost of the Asbestos PI Trust, Reorganized Quigley shall (i) use its commercially reasonable efforts to pursue any of the Quigley Transferred Insurance Rights for the benefit of Asbestos PI Trust; and (ii) immediately transfer any amounts recovered by Reorganized Quigley under or on account of any of the Quigley Transferred Insurance Rights to the Asbestos PI Trust; provided, however, that while any such amounts are held by or under the control of Reorganized Quigley, such amounts shall be held for the benefit of the Asbestos PI Trust. To the extent permitted by applicable law, Reorganized Quigley shall cooperate with the Asbestos PI Trust in its pursuit of the Quigley Transferred Insurance Rights as requested by the Asbestos PI Trust, including, but not limited to, by making its books, records, employees, agents, and professionals available to the Asbestos PI Trust solely as they relate to the Quigley Transferred Insurance Rights.

Section 10.4     Insurance Neutrality.

(a)     Subject to Sections 10.4(e) and 10.4(f) below, nothing in the Plan, the Confirmation Order, or any other Plan Documents, or any finding of fact and/or conclusion of law with respect to the confirmation of the Plan, shall limit the right of any Asbestos Insurance Entity to assert any Asbestos PI Insurer Coverage Defense. Notwithstanding any provision in the Plan, the Confirmation Order, or any other Plan Documents, and subject to Sections 10.4(e) and 10.4(f) below, nothing contained in any such documents shall impose, or shall be deemed or construed to impose, any obligation on any Asbestos Insurance Entity to provide a defense for, settle, pay any judgment with respect to, or otherwise pay, any Claim, including any Asbestos PI Claim; rather, whether an Asbestos Insurance Entity is obligated to provide a defense for, settle, pay any judgment with respect to, or otherwise pay, any Claim,

including any Asbestos PI Claim, shall be determined in accordance with the applicable Asbestos Insurance Policy issued by that Asbestos Insurance Entity, any related Insurance Settlement Agreement, any other relevant settlement agreement, and/or applicable non-bankruptcy law.

(b)        Subject to Sections 10.4(e) and 10.4(f) below, none of (i) the Plan and the Plan Documents, (ii) the Court's approval of the Plan or the Plan Documents, (iii) the Confirmation Order or any findings and conclusions entered with respect to Confirmation, (iv) any estimation or valuation of Asbestos PI Claims, either individually or in the aggregate (including without limitation any agreement as to the valuation of Asbestos PI Claims) in this Chapter 11 Case, or (v) any judgment, order, finding of fact, conclusion of law, determination or statement (written or verbal, on or off the record) made by the Bankruptcy Court or issued or affirmed by the District Court pursuant to 11 U.S.C. § 524(g)(3) or entered by any other court exercising jurisdiction over the Chapter 11 Case, including in any judgment, order, writ or opinion entered on appeal from any of the foregoing, shall, for purposes of any Asbestos Insurance Dispute, constitute an adjudication, judgment, trial, hearing on the merits, finding, conclusion, or other determination, or evidence or suggestion of any such determination, establishing:

A.        that any Asbestos Insurance Entity has or does not have liability or coverage obligations for any Claim, including without limitation any Asbestos PI Claim, under any Asbestos Insurance Policy, any Insurance Settlement Agreement, or any other settlement agreement to which any Asbestos Insurance Entity is a party, on any basis;

B.        that the amount of any Asbestos PI Claim (either individually or in the aggregate with other Claims) is or is not reasonable;

C.        that any Entity is or is not covered for any Claim, including any Asbestos PI Claim, under any Asbestos Insurance Policy;

D.        that any Asbestos Insurance Entity has or does not have any defense or indemnity obligation with respect to any Claim, including any Asbestos PI Claim;

E.        that any Asbestos Insurance Entity is or is not liable for, or otherwise is or is not obligated to provide coverage with respect to, any individual Asbestos PI Claim (either individually or in the aggregate with other Claims);

F.        that the procedures established by the Plan or any of the Plan Documents, including without limitation the Asbestos PI Trust Distribution Procedures, for evaluating and paying Asbestos PI Claims, are or are not reasonable, appropriate, established or agreed to in good faith, or consistent with the terms and conditions of any Asbestos Insurance Policy;

G.        that the procedures established by the Plan or any of the Plan Documents, including without limitation the Asbestos PI Trust Distribution Procedures, for evaluating and paying Asbestos PI Claims, are or are not consistent with any procedures that

DOC ID-10435617.9

were used to evaluate, settle or pay Asbestos PI Claims against Quigley or Pfizer before the Petition Date;

H.      that the settlement of, or the value assigned to, any individual Asbestos PI Claim (either individually or in the aggregate with other Claims) pursuant to the Plan or any of the Plan Documents, including without limitation the Asbestos PI Trust Distribution Procedures, is, is not, was or was not reasonable and/or otherwise appropriate;

I.      that any Asbestos Insurance Entity did or did not participate in, consult on, and/or consent to the negotiation, proposal or solicitation of the Plan or any of the Plan Documents, including without limitation the Asbestos PI Trust Distribution Procedures;

J.      that Quigley, Pfizer or the Asbestos PI Trust has or has not suffered an insured loss or otherwise incurred a legal liability with respect to any Asbestos PI Claim;

K.      that it was, is or will be (or was not, is not or will not be) reasonable, appropriate, in good faith, or consistent with the terms and conditions of any Asbestos Insurance Policy for Quigley, Reorganized Quigley, Pfizer or the Asbestos PI Trust to settle, allow, liquidate, assign any value to, and/or pay (or present to any Asbestos Insurance Entity for payment) any Asbestos PI Claim on any terms or conditions contemplated by the Plan or any Plan Document;

L.      that the conduct of Quigley, Pfizer, Reorganized Quigley or the Asbestos PI Trust in connection with the negotiation, development, settlement, confirmation and/or implementation of the Plan or any Plan Document was, is or will be (or is not or will not be) reasonable, appropriate, in good faith, or consistent with the terms and conditions of any Asbestos Insurance Policy; or

M.      that any Asbestos Insurance Entity had, has or will have (or did not have, does not have or will not have) a reasonable, good-faith basis to withhold consent to the settlement, allowance or liquidation of, assignment of any value to, and/or payment of (including any presentation to any Asbestos Insurance Entity for payment of) any Asbestos PI Claim, including under or in connection with the Plan or any Plan Document.

Notwithstanding the foregoing, in any Asbestos Insurance Dispute, any Entity may use evidence of any item listed in subparts (i) through (v) of this Section 10.4(b) for the purpose of proving the occurrence of an event in this Chapter 11 Case.  Further, nothing in this Section 10.4(b) shall, or shall be deemed to, prohibit any Entity in such Asbestos Insurance Dispute from asserting any position with respect to insurance coverage that is not expressly limited, restricted or prohibited by subsections (A) through (M) of this Section 10.4(b).

(c)      Subject to Sections 10.4(e) and 10.4(f) below, any judgment, order, finding of fact, conclusion of law, determination or statement (written or verbal, on or off the record) made by the Bankruptcy Court or issued or affirmed by the District Court pursuant to 11 U.S.C. § 524(g)(3) or entered by any other court exercising jurisdiction over the Chapter 11 Case, including in any judgment, order, writ or opinion entered on appeal from any of the

foregoing, shall not, and shall not be construed to, constitute a finding, conclusion, or determination regarding insurance coverage. Subject to Sections 10.4(e) and 10.4(f) below, in considering whether to confirm the Plan and to approve any Plan Document, the Bankruptcy Court, the District Court, or any other court exercising jurisdiction over the Chapter 11 Case, is not considering, and is not deciding, any matter with respect to any Asbestos PI Insurer Coverage Defense.

        (d)        Nothing in this Section 10.4 of the Plan shall be interpreted to affect or limit the protections afforded to any Settling Asbestos Insurance Entity or any Asbestos Protected Party by Sections 11.6 or 11.7 of this Plan.

        (e)        Nothing in this Section 10.4 precludes or shall be construed to preclude otherwise applicable principles of res judicata or collateral estoppel from being applied against any Entity with respect to any issue that is actually litigated by such Entity in connection with the Chapter 11 Case, as part of its objections, if any, to Confirmation of the Plan or as part of any contested matter or adversary proceeding. Plan objections filed by any Asbestos Insurance Entity on or before January 1, 2009, that are withdrawn by that Asbestos Insurance Entity pursuant to the Corrected Stipulation and Agreed Order Concerning Insurance Issues, entered by the Bankruptcy Court in the Bankruptcy Case, ECF Dkt. 1873, shall be deemed not to have been actually litigated.

        (f)        Notwithstanding any other provision of this Plan or any of the Plan Documents, in any Asbestos Insurance Dispute no Asbestos Insurance Entity shall have, or have the right to assert, any right, Claim or defense enumerated in subparts (1) through (4) of the proviso to the definition of Asbestos PI Insurer Coverage Defenses.

        (g)        Nothing in any provision of this Plan or any of the Plan Documents shall in any way operate to impair, or have the effect of impairing, in any respect, the legal, equitable, or contractual rights of the Parties under the Corrected Stipulation and Agreed Order Concerning Insurance Issues, entered by the Bankruptcy Court in the Bankruptcy Case, ECF Dkt. 1873. For purposes of the foregoing, "Parties" has the meaning set forth in such Stipulation and Agreed Order.

        Section 10.5    Reduction of Insurance Judgments. Any right, Claim or cause of action that an insurer would have been entitled to assert under applicable non-bankruptcy law against any Settling Asbestos Insurance Entity but for the Settling Asbestos Insurance Entity Injunction shall be treated solely as a setoff claim against the Asbestos PI Trust. Any such right, Claim, or cause of action to which an insurer may be entitled shall be solely a setoff against any recovery of the Asbestos PI Trust from that insurer. Under no circumstances shall that insurer receive an affirmative recovery of funds from the Asbestos PI Trust or any Settling Asbestos Insurance Entity for such right, Claim, or cause of action. Any setoff in favor of an insurer shall not constitute a classified or unclassified Claim under this Plan and shall not be subject to or Impaired by this Plan. Instead, any setoff shall be determined, calculated and applied solely as a matter of applicable non-bankruptcy law without regard to any other provision of this Plan or any bankruptcy law or decision.

Section 10.6    Terms of Injunction and Automatic Stay.

(a)    All of the injunctions and/or automatic stays provided for in or in connection with the Chapter 11 Case, whether pursuant to section 105, 362, or any other provision of the Bankruptcy Code, Bankruptcy Rules or other applicable law, including, but not limited to, the Preliminary Injunction Order, in existence immediately prior to the Confirmation Date shall remain in full force and effect until the injunctions set forth in this Plan become effective pursuant to a Final Order, and shall continue to remain in full force and effect thereafter as and to the extent provided by the Plan, the Confirmation Order, or by their own terms.  In addition, on and after the Confirmation Date, Reorganized Quigley may seek such further orders as it may deem necessary or appropriate to preserve the status quo during the time between the Confirmation Date and the Effective Date.

(b)    Each of the injunctions contained in this Plan or the Confirmation Order shall become effective on the Effective Date and shall continue in effect at all times thereafter unless otherwise provided by the Plan or the Confirmation Order.  Notwithstanding anything to the contrary contained in the Plan or the Confirmation Order, all actions of the type or nature of those to be enjoined by such injunctions shall be enjoined during the period between the Confirmation Date and the Effective Date.

Section 10.7    No Successor Liability; No Liability for Certain Released Claims.

(a)    Except as otherwise expressly provided in this Plan, neither Quigley, Reorganized Quigley, the other Asbestos Protected Parties, nor the Asbestos PI Trust does, or shall be deemed to, pursuant to this Plan, assume, agree to perform, pay, or indemnify creditors for any liabilities or obligations of Quigley relating to or arising out of the operations of or assets of Quigley whether arising prior to, or resulting from actions, events, or circumstances occurring or existing at any time prior to the Confirmation Date.  Neither the Asbestos Protected Parties, Reorganized Quigley, nor the Asbestos PI Trust shall be liable by reason of any theory of successor liability, either in law or equity, and none shall have any successor or transferee liability of any kind or character, except that Reorganized Quigley and the Asbestos PI Trust shall assume the obligations specified in this Plan and the Confirmation Order.

(b)    Except as otherwise expressly provided in this Plan, effective automatically on the Effective Date, the Pfizer Protected Parties and their respective Representatives shall unconditionally and irrevocably be fully released from any and all Avoidance Actions or similar claims arising under federal, state or any other law or regulation, including, if applicable, claims in the nature of fraudulent transfer, successor liability, corporate veil piercing, or alter ego-type claims, as a consequence of transactions, events, or circumstances involving or affecting Quigley (or any of its predecessors) or any of theirQuigley or its predecessors' respective businesses or operations that occurred or existed prior to the Effective Date.

Section 10.8    Title to Asbestos PI Trust Assets.  On the Effective Date, title to all of the Asbestos PI Trust Assets shall vest in the Asbestos PI Trust free and clear of all Claims, Equity Interests, Encumbrances and other interests of any Entity; provided, however, that title to the Quigley Stock Right shall vest in the Asbestos PI Trust on the Stock Transfer

~~Date~~. The Asbestos PI Trust shall be empowered and entitled to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve all Quigley Transferred Insurance Rights (subject to the Asbestos PI Coverage Defenses), including without limitation, its interest in any and all Asbestos Insurance Actions, in the name of the Asbestos PI Trust, the Trustees of the Asbestos PI Trust, and/or Reorganized Quigley.

Section 10.9    Dissolution of Creditors' Committee; Retention of Future Demand Holders' Representative; Creation of the Trust Advisory Committee.  On the Effective Date, the members of the Creditors' Committee shall be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to and arising from and in connection with the Chapter 11 Case, and the Creditors' Committee shall be deemed dissolved. Notwithstanding the foregoing, if the Effective Date occurs prior to the Confirmation Order becoming a Final Order, the Creditors' Committee, may, at its option, continue to serve and function for the purposes of participating in any:  (a) appeal of the Confirmation Order, but only until such time as the Confirmation Order becomes a Final Order; (b) hearing on a Fee Claim; and (c) adversary proceeding pending on the Effective Date in which the Creditors' Committee was a party.  The Future Demand Holders' Representative also may, at his option, participate in any:  (a) appeal of the Confirmation Order, but only until such time as the Confirmation Order becomes a Final Order; (b) hearing on a Fee Claim; and (c) adversary proceeding pending on the Effective Date in which the Future Demand Holders' Representative was a party.

As provided in Section 9.3(c) of this Plan, the Trust Advisory Committee shall be appointed by the Bankruptcy Court effective as of the Effective Date.  From and after the Effective Date, the Future Demand Holders' Representative shall continue to serve as provided in the Plan and in the Asbestos PI Trust Agreement, to perform the functions specified and required by that agreement.  Upon termination of the Asbestos PI Trust:  (a) the members of the Trust Advisory Committee and the Future Demand Holders' Representative shall be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to and arising from and in connection with the Chapter 11 Case; and (b) the Trust Advisory Committee shall be deemed dissolved and the Future Demand Holders' Representative's employment shall be deemed terminated.  All reasonable and necessary post-Effective Date fees and expenses of the professionals retained by the Trust Advisory Committee and the Future Demand Holders' Representative shall be paid exclusively by the Asbestos PI Trust in accordance with the terms of the Asbestos PI Trust Agreement, and Reorganized Quigley shall not be liable for any such fees and expenses.  If there shall be any dispute regarding the payment of such fees and expenses, the parties shall attempt to resolve such dispute in good faith and if they shall fail to resolve such dispute, they shall submit the dispute to the Bankruptcy Court for resolution.

Section 10.10    ~~Avoidance and~~ Recovery Actions.  Except to the extent released pursuant to the Plan, the Confirmation Order or any other Plan Document (including, without limitation, Section 10.7(b) of the Plan), any rights, Claims, or Causes of Action accruing to Quigley pursuant to the Bankruptcy Code or pursuant to any statute or legal theory, including ~~any Avoidance Action,~~ any rights to, Claims, or Causes of Action for recovery under any policies of insurance issued to or on behalf of, or which provides indemnity or liability payments to or on behalf of Quigley, and any rights, Claims, and Causes of Action against third parties related to or arising out of Allowed Claims, except Claims that shall, pursuant to this Plan, be

retained and resolved by Reorganized Quigley, shall be transferred to the Asbestos PI Trust on the Effective Date.

The Asbestos PI Trust shall be deemed to be the appointed representative to, and may, pursue, litigate, and compromise and settle any rights, Claims, or Causes of Action transferred to it, as appropriate, in accordance the best interests, and for the benefit, of the Asbestos PI Trust and the beneficiaries thereof.

~~Section 10.11 Tax Sharing Agreement. The Tax Sharing Agreement shall remain in effect until the Stock Transfer Date.~~

ARTICLE XI

RELEASES, INJUNCTIONS
AND WAIVERS OF CLAIMS

Section 11.1    Discharge of Quigley.  Except as specifically provided in the Plan, the Plan Documents or in the Confirmation Order, pursuant to section 1141(d)(1)(A) of the Bankruptcy Code, confirmation of the Plan shall discharge Quigley and Reorganized Quigley from any and all Claims of any nature whatsoever and Demands, including, without limitation, any Claims, Demands and Liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h) and 502(i) of the Bankruptcy Code, whether or not: (a) a Proof of Claim based on such Claim was filed or deemed filed under section 501 of the Bankruptcy Code, or such Claim was listed on the Schedules of Quigley; (b) such Claim is or was Allowed under section 502 of the Bankruptcy Code; or (c) the holder of such Claim has voted on or accepted the Plan.  Except as specifically provided for in the Plan or other Plan Documents, as of the Effective Date, the rights provided for in the Plan shall be in exchange for and in complete satisfaction, settlement and discharge of, all Claims (including, without limitation, Asbestos PI Claims) or Demands against, Liens on, and interests (other than the Equity Interests) in Quigley or Reorganized Quigley or any of their assets or properties.

**Section 11.2    Injunction.  Except as otherwise expressly provided in the Plan or in the Confirmation Order, all entities who have held, hold or may hold Claims or Demands against Quigley, are permanently enjoined, on and after the Confirmation Date, from:  (a) commencing or continuing in any manner any action or other proceeding of any kind against Quigley with respect to any such Claim or Demand; (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against Quigley on account of any such Claim or Demand; (c) creating, perfecting or enforcing any Encumbrance of any kind against Quigley or against the property or interest in property of Quigley on account of any such Claim or Demand; and (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from Quigley or against the property or interests in property of Quigley on account of any such Claim or Demand.  The foregoing injunction shall extend to the successors of Quigley (including, without limitation, Reorganized Quigley) and their respective properties and interests in property.**

~~DOC ID-10435617.9~~

Section 11.3    **Exculpation.  None of the following parties (but solely in respect of their specific capacities as listed below):  (a) the Creditors' Committee and the present and former members thereof (including *ex officio* members, if any); (b) Quigley; (c) Reorganized Quigley; (d) the Future Demand Holders' Representative; (e) the Asbestos Protected Parties; and (f) all present or former Representatives of the foregoing (collectively, but solely in respect of the capacities listed above, the "Released Parties") shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of:  (i) the Chapter 11 Case; (ii) pursuit of confirmation of the Plan; (iii) consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan or the Asbestos PI Trust Distribution Procedures; (iv) the Plan; or (v) the negotiation, formulation and preparation of the Plan and the other Plan Documents and any of the terms and/or settlements and compromises reflected in the Plan and the other Plan Documents, except for gross negligence, willful misconduct, breach of fiduciary duty that resulted in personal profit at expense of the Estate, or, in the case of attorneys, breaches of professional responsibility, and, in all respects, Quigley, Reorganized Quigley, and each of the Released Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and the other Plan Documents.**

Section 11.4    **Release of Quigley's Officers and Directors.  The acceptance of (a) any Distribution by any holder of a Claim and (b) the Quigley Contribution by the Asbestos PI Trust shall constitute a waiver and release of any and all causes of action that such holder, including any holder of an Asbestos PI Claim, could have commenced against any officer or director of Quigley serving in such capacity from and after the Petition Date, that is based upon, related to or arising from any actions or omissions of such officers or directors occurring prior to the Effective Date in connection with or related to their capacities as officers or directors of Quigley, to the fullest extent permitted under section 524(e) of the Bankruptcy Code and applicable law as now in effect or as subsequently extended; provided, however, that the forgoing shall not operate as a waiver or release from (a) any causes of action arising out of willful misconduct, gross negligence of any such person or entity, or breach of fiduciary duty by any such person or entity that resulted in personal profit at expense of the Estate; (b) any claim by any federal, state or local authority under the Internal Revenue Code or any applicable environmental or criminal laws; or (c) any contractual obligations arising from or out of a loan or advance from Quigley to any officer or director of Quigley.**

Section 11.5    **Limited Release of Released Parties by Entities Accepting Distributions Under the Plan.  Except as otherwise specifically provided in the Plan or the Confirmation Order, any Entity who has accepted the Plan or who is entitled to receive any Distribution pursuant to the Plan shall be presumed conclusively to have released the Released Parties from any Claim or cause of action based on, arising from, or in any way connected with the same subject matter as the Claim for which a Distribution is received. The foregoing release shall be enforceable as a matter of contract law against any Entity who has accepted the Plan or who is entitled to receive any Distribution pursuant to the Plan.**

Section 11.6   **Asbestos PI Channeling Injunction.**

(a)   **Terms.   Subject to Section 11.6(b) below, pursuant to section 524(g) of the Bankruptcy Code, the sole recourse of any holder of an Asbestos PI Claim on account of such Asbestos PI Claim shall be to the Asbestos PI Trust pursuant to the provisions of the Asbestos PI Channeling Injunction as described in this Section 11.6 of the Plan, the Asbestos PI Trust Agreement, and the Asbestos PI Trust Distribution Procedures. Each such holder shall be enjoined from taking legal action directed against Quigley, Reorganized Quigley or any other Asbestos Protected Party or the property of any of them for the purpose of directly or indirectly collecting, recovering or receiving payment or recovery with respect to such Asbestos PI Claim, other than from the Asbestos PI Trust in accordance with this Asbestos PI Channeling Injunction and pursuant to the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures.**

(b)   **Reservations.   Notwithstanding anything to the contrary above, this Asbestos PI Channeling Injunction shall not enjoin:**

(i)   **the rights of Entities to the treatment accorded them under Articles III and IV of the Plan, as applicable, including the rights of Entities with Asbestos PI Claims to assert Asbestos PI Claims against the Asbestos PI Trust in accordance with the Asbestos PI Trust Distribution Procedures;**

(ii)   **the rights of Entities to assert any Claim, debt, obligation, or liability for payment of Trust Expenses against the Asbestos PI Trust;**

(iii)   **the rights of the Asbestos PI Trust and/or Reorganized Quigley to take any action with respect to any and all of the Quigley Transferred Insurance Rights, subject to any applicable Insurance Settlement Agreement, the AIG Insurance Settlement Agreement, the Insurance Relinquishment Agreement, the AIG Assignment Agreement, and any Asbestos PI Insurer Coverage Defense;**

(iv)   **the rights of any Entity to which the Asbestos PI Trust, Reorganized Quigley and/or any Pfizer Protected Party has assigned any of the Quigley Transferred Insurance Rights to take any action with respect to any such Quigley Transferred Insurance Right, subject to any applicable Insurance Settlement Agreement, the AIG Insurance Settlement Agreement, the Insurance Relinquishment Agreement, the AIG Assignment Agreement, and any Asbestos PI Insurer Coverage Defense;**

(v)   **the rights of the Asbestos PI Trust, Reorganized Quigley, any Pfizer Protected Party or any other Entity to assert any Claim, debt, obligation, or liability for payment against any Settling Asbestos Insurance Entity to the extent any insurance policies or insurance coverages were not resolved or released in the Insurance Settlement Agreement or the AIG Insurance Settlement Agreement, as applicable, with that Settling Asbestos Insurance Entity, subject to any applicable Insurance Settlement Agreement, the AIG Insurance Settlement Agreement, the Insurance Relinquishment Agreement and any Asbestos PI Insurer Coverage Defense;**

(vi) ~~the rights of Pfizer, as defined in the AIG Insurance Settlement Agreement, to assert or prosecute any Claim, debt, obligation, or liability for payment against any AIG Company in connection with the implementation, enforcement or interpretation of the AIG Insurance Settlement Agreement, subject to the AIG Insurance Settlement Agreement, the Insurance Relinquishment Agreement~~ **the AIG Assignment Agreement,** and any Asbestos PI Insurer Coverage Defense;

(vi) ~~(vii)~~ the rights of any Entity to assert or prosecute any Claim, debt, obligation, or liability for payment against any Asbestos Insurance Entity, subject to the Quigley Insurance Transfer, any applicable Insurance Settlement Agreement, the Insurance Relinquishment Agreement and any Asbestos PI Insurer Coverage Defense; and

(vii) ~~(viii)~~ the rights of holders of Secured Bond Claims to prosecute such Claims against Quigley or Reorganized Quigley in accordance with Section 4.2(b), (c), (d), or (e) of the Plan, as applicable.

Section 11.7    Settling Asbestos Insurance Entity Injunction.

(a)    **Terms.**  Subject to Section 11.7(b) below, in order to preserve and promote the property of the Estate, as well as the settlements contemplated by and provided for in this Plan, and the agreements approved by the Bankruptcy Court, pursuant to section 524(g) of the Bankruptcy Code, the sole recourse of any holder of an Asbestos PI Claim on account of such Asbestos PI Claim shall be to the Asbestos PI Trust pursuant to the provisions of the Settling Asbestos Insurance Entity Injunction as described in this Section 11.7 of the Plan, the Asbestos PI Trust Agreement, and the Asbestos PI Trust Distribution Procedures.  Each such holder shall be enjoined from taking legal action directed against any Settling Asbestos Insurance Entity or its property for the purpose of directly or indirectly collecting, recovering or receiving payment or recovery with respect to such Asbestos PI Claim, other than from the Asbestos PI Trust in accordance with this Asbestos PI Channeling Injunction and pursuant to the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures.

(b)    **Reservations.**  Notwithstanding anything to the contrary above, this Settling Asbestos Insurance Entity Injunction shall not enjoin:

(i)    the rights of Entities to the treatment accorded them under Articles III and IV of the Plan, as applicable, including the rights of Entities with Asbestos PI Claims to assert Asbestos PI Claims against the Asbestos PI Trust in accordance with the Asbestos PI Trust Distribution Procedures;

(ii)    the rights of Entities to assert any Claim, debt, obligation, or liability for payment of Trust Expenses against the Asbestos PI Trust;

(iii)    the rights of the Asbestos PI Trust and/or Reorganized Quigley to take any action with respect to any and all of the Quigley Transferred Insurance Rights, subject to any applicable Insurance Settlement Agreement, the **AIG Insurance**

Settlement Agreement, the Insurance Relinquishment Agreement, the AIG Assignment Agreement, and any Asbestos PI Insurer Coverage Defense;

(iv) the rights of any Entity to which the Asbestos PI Trust, Reorganized Quigley and/or any Pfizer Protected Party has assigned any of the Quigley Transferred Insurance Rights to take any action with respect any such Quigley Transferred Insurance Right, subject to any applicable Insurance Settlement Agreement, the AIG Insurance Settlement Agreement, the Insurance Relinquishment Agreement, the AIG Assignment Agreement, and any Asbestos PI Insurer Coverage Defense;

(v) the rights of the Asbestos PI Trust, Reorganized Quigley, any Pfizer Protected Party or any other Entity to assert any Claim, debt, obligation, or liability for payment against any Settling Asbestos Insurance Entity to the extent any insurance policies or insurance coverages were not resolved or released in the Insurance Settlement Agreement or the AIG Insurance Settlement Agreement, as applicable, with that Settling Asbestos Insurance Entity, subject to any applicable Insurance Settlement Agreement, the AIG Insurance Settlement Agreement, the Insurance Relinquishment Agreement and any Asbestos PI Insurer Coverage Defense;

(vi) the rights of Pfizer, as defined in the AIG Insurance Settlement Agreement, to assert or prosecute any Claim, debt, obligation, or liability for payment against any AIG Company in connection with the implementation, enforcement or interpretation of the AIG Insurance Settlement Agreement, subject to the AIG Insurance Settlement Agreement, the Insurance Relinquishment Agreement, the AIG Assignment Agreement, and any Asbestos PI Insurer Coverage Defense; and

(vi) (vii) the rights of any Entity to assert or prosecute any Claim, debt, obligation, or liability for payment against any Asbestos Insurance Entity, subject to the Quigley Insurance Transfer, any applicable Insurance Settlement Agreement, the Insurance Relinquishment Agreement and any Asbestos PI Insurer Coverage Defense.

Section 11.8    Non-Settling Asbestos Insurance Entity Injunction.

(a)    **Terms. Subject to Sections 11.8(b) and (c) below, in order to preserve and promote the property of the Estate, pursuant to section 105(a) of the Bankruptcy Code, holders of Asbestos PI Claims shall have no right whatsoever at any time to assert their Asbestos PI Claims against a Non-Settling Asbestos Insurance Entity or any property or interest in property of a Non-Settling Asbestos Insurance Entity. Each such holder of Asbestos PI Claims shall be enjoined from taking legal action directed against Non-Settling Asbestos Insurance Entity or its property for the purpose of directly or indirectly collecting, recovering, or receiving payment or recovery with respect to such Asbestos PI Claim, other than from the Asbestos PI Trust in accordance with this Non-Settling Asbestos Insurance Entity Injunction and pursuant to the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures.**

DOC ID-10435617.9

(b)  **Reservations**.  Notwithstanding anything to the contrary above, this Non-Settling Asbestos Insurance Entity Injunction shall not enjoin:

(i)  the rights of Entities to the treatment accorded them under Articles III and IV of the Plan, as applicable, including the rights of Entities with Asbestos PI Claims to assert Asbestos PI Claims against the Asbestos PI Trust in accordance with the Asbestos PI Trust Distribution Procedures;

(ii)  the rights of Entities to assert any Claim, debt, obligation, or liability for payment of Trust Expenses against the Asbestos PI Trust;

(iii)  the rights of the Asbestos PI Trust and/or Reorganized Quigley to take any action with respect to any and all of the Quigley Transferred Insurance Rights, subject to any applicable Insurance Settlement Agreement, the AIG Insurance Settlement Agreement, the Insurance Relinquishment Agreement, the AIG Assignment Agreement, and any Asbestos PI Insurer Coverage Defense;

(iv)  the rights of any Entity to which the Asbestos PI Trust, Reorganized Quigley and/or any Pfizer Protected Party has assigned any of the Quigley Transferred Insurance Rights to take any action with respect any such Quigley Transferred Insurance Right, subject to any applicable Insurance Settlement Agreement, the AIG Insurance Settlement Agreement, the Insurance Relinquishment Agreement, the AIG Assignment Agreement, and any Asbestos PI Insurer Coverage Defense;

(v)  the rights of the Asbestos PI Trust, Reorganized Quigley, any Pfizer Protected Party or any other Entity to assert any Claim, debt, obligation, or liability for payment against any Settling Asbestos Insurance Entity to the extent any insurance policies or insurance coverages were not resolved or released in the Insurance Settlement Agreement or the AIG Insurance Settlement Agreement, as applicable, with that Settling Asbestos Insurance Entity, subject to any applicable Insurance Settlement Agreement, the AIG Insurance Settlement Agreement, the Insurance Relinquishment Agreement and any Asbestos PI Insurer Coverage Defense;

(vi)  the rights of Pfizer, as defined in the AIG Insurance Settlement Agreement, to assert or prosecute any Claim, debt, obligation, or liability for payment against any AIG Company in connection with the implementation, enforcement or interpretation of the AIG Insurance Settlement Agreement, subject to the AIG Insurance Settlement Agreement, the Insurance Relinquishment Agreement, the AIG Assignment Agreement, and any Asbestos PI Insurer Coverage Defense; and

(vi)  (vii) the rights of any Entity to assert or prosecute any Claim, debt, obligation, or liability for payment against any Asbestos Insurance Entity, subject to the Quigley Insurance Transfer, any applicable Insurance Settlement Agreement, the Insurance Relinquishment Agreement and any Asbestos PI Insurer Coverage Defense.

DOC ID-10435617.9

(c)     Notwithstanding anything in this Section 11.8 to the contrary, (i) the Non-Settling Asbestos Insurance Entity Injunction is issued solely for the benefit of the Asbestos PI Trust and not for the benefit of any other Entity, including, but not limited to, any Non-Settling Asbestos Insurance Entity, and no Non-Settling Asbestos Insurance Entity is intended to be a third-party beneficiary of the Non-Settling Asbestos Insurance Entity Injunction; (ii) the Asbestos PI Trust shall have the sole right to enforce the Non-Settling Asbestos Insurance Entity Injunction; and (iii) the Asbestos PI Trust has the sole discretion to waive the Non-Settling Asbestos Insurance Entity Injunction as to any Asbestos PI Claim or any Non-Settling Asbestos Insurance Entity upon express written notice to such Non-Settling Asbestos Insurance Entity.

Section 11.9    Limitations of Injunctions.  Notwithstanding any other provision of this Plan to the contrary, the releases set forth in the Plan and the injunctions set forth in Sections 11.6, 11.7 and 11.8, respectively, shall not serve to satisfy, discharge, release, or enjoin claims by any Entity against:  (a) the Asbestos PI Trust for payment of Asbestos PI Claims in accordance with the Asbestos PI Trust Distribution Procedures; or (b) the Asbestos PI Trust for the payment of Trust Expenses.

Section 11.10   **Releases and Indemnification by Quigley.  As of the Effective Date, except to the extent otherwise provided for in the Plan, the other Plan Documents or the Confirmation Order, Quigley and Reorganized Quigley hereby release and are permanently enjoined from any prosecution or attempted prosecution of any and all Causes of Action that they have, may have or claim to have, which are property of, assertable on behalf of or derivative of Quigley, against the Released Parties (but solely in their capacities as Released Parties); provided, however, that the foregoing release shall not serve to release or enjoin any Settling Asbestos Insurance Entity from its obligations under the relevant Insurance Settlement Agreement, other settlement agreement or Shared Asbestos Insurance Policy.  Reorganized Quigley also will indemnify, release and hold harmless each of Pfizer and the other Pfizer Protected Parties pursuant to the provisions of, and to the extent set forth in, this Plan.**

Section 11.11   **Confidentiality Injunction.  Neither Reorganized Quigley nor any other Entity shall cause or purport to permit Reorganized Quigley to make any use of any information entrusted to Reorganized Quigley by any client of Reorganized Quigley, except as expressly permitted by the terms of any agreement between Reorganized Quigley and such client or under applicable law.  Reorganized Quigley and any Person harmed or likely to be harmed by the actual or threatened violation of this Section shall be entitled to enforce the Confidentiality Injunction through any remedy available under any applicable principle of law or equity.**

~~Section 11.12  Dividend Injunction~~Section 11.13    ~~.  Until the occurrence of the Stock Transfer Date, neither Pfizer, Quigley, nor Reorganized Quigley, as the case may be, shall (and Pfizer shall not cause Quigley or Reorganized Quigley, as the case may be, to) declare, issue or otherwise pay any dividend with respect to the common stock of Quigley.~~

~~DOC ID-10435617.9~~

# ARTICLE XII

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

Section 12.1  Conditions Precedent to the Confirmation of the Plan.  The following are conditions precedent to confirmation of the Plan that must be satisfied, unless waived in accordance with Section 12.3 of the Plan:

(a)  The Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to Quigley and Pfizer, after consulting with the Creditors' Committee and the Future Demand Holders' Representative, approving the Disclosure Statement with respect to this Plan as containing adequate information within the meaning of section 1125 of the Bankruptcy Code.

(b)  Any order entered by the Bankruptcy Court or the District Court that modifies, clarifies, or interprets the scope of the Preliminary Injunction Order or the Asbestos PI Channeling Injunction shall be in form and substance acceptable to Quigley and Pfizer.

(c)  The Confirmation Order shall be in form and substance acceptable to Quigley and Pfizer, after consulting with the Creditors' Committee and the Future Demand Holders' Representative.

(d)  The Confirmation Order shall, among other things:

(i)  order that the assets revesting in Reorganized Quigley shall be free and clear of all Claims, Liens, and Encumbrances (other than Liens granted pursuant to the terms of the Plan or the Exit Facility);

(ii)  order that the Confirmation Order shall supersede any Bankruptcy Court orders issued prior to the Confirmation Date that may be inconsistent with the Confirmation Order;

(iii)  provide that, except with respect to obligations specifically preserved in the Plan, including, without limitation, Section 7.5 of the Plan, Quigley is discharged effective on the Effective Date (in accordance with the Plan) from any Claims, Demands, and any "debts" (as that term is defined in section 101(12) the Bankruptcy Code), and Quigley's liability in respect thereof, whether reduced to judgment or noncontingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, or known or unknown, that arose from any agreement of Quigley entered into or obligation of Quigley incurred before the Effective Date, or from any conduct of Quigley prior to the Effective Date, or whether such interest accrued before or after the Petition Date, is extinguished completely;

(iv)     provide that, ~~as part of the Pfizer Contribution to the Asbestos PI Trust,~~ Pfizer is obligated to ~~contribute to the Asbestos PI Trust the Pfizer/AIG Annuity, the Pfizer Annuity, and Pfizer's Cash~~make the Pfizer Contribution;

(v)     provide that, subject to the limitations expressly set forth in Section 10.4 of the Plan, all transfers of assets of Quigley contemplated under the Plan, and the transfer of the common stock of Reorganized Quigley by Pfizer ~~on the Stock Transfer Date~~, shall be free and clear of all Claims, Liens and all Encumbrances against or on such assets and common stock;

(vi)     authorize the implementation of the Plan in accordance with its terms;

(vii)     provide that any transfers effected or entered into, or to be effected or entered into, under the Plan shall be and are exempt from any state, city or other municipality transfer taxes, mortgage recording taxes and any other stamp or similar tax under section 1146(~~e~~a) of the Bankruptcy Code;

(viii)     approve the other settlements, transactions and agreements to be effected pursuant to the Plan in all respects;

(ix)     provide that all Executory Contracts or unexpired leases assumed by Quigley and assigned during the Chapter 11 Case or under the Plan shall remain in full force and effect for the benefit of Reorganized Quigley or the assignee thereof notwithstanding any provision in such contract or lease (including those provisions described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits such assignment or transfer or that enables or requires termination of such contract or lease;

(x)     provide that the transfers of property by Quigley to Reorganized Quigley (A) are or will be legal, valid, and effective transfers of property; (B) vest or will vest Reorganized Quigley with good title to such property free and clear of all Liens, Claims, Encumbrances, and interests, except as expressly provided in the Plan or Confirmation Order; (C) do not and will not constitute avoidable transfers under the Bankruptcy Code or under applicable bankruptcy or non-bankruptcy law; and (D) do not and will not subject Reorganized Quigley to any liability by reason of such transfer under the Bankruptcy Code or under applicable non-bankruptcy law, including, without limitation, any laws affecting successor or transferee liability;

(xi)     find that the Plan does not provide for the liquidation of all or substantially all of the property of Quigley, that Reorganized Quigley will continue ~~its~~to conduct business as an ongoing reorganized debtor, and that confirmation of the Plan is not likely to be followed by the liquidation of Reorganized Quigley or the need for further financial reorganization;

(xii)     find that the Plan complies with all applicable provisions of the Bankruptcy Code, including, without limitation, that the Plan was proposed in good faith and that the Confirmation Order was not procured by fraud;

(xiii)   provide that any attorney-client, work product or other privilege that applies to the Asbestos Record Parties transferred by the Asbestos Record Parties to the Asbestos PI Trust shall not be destroyed, waived, or otherwise affected by the transfer of the Asbestos Records to the Asbestos PI Trust; and

(xiv)   find that Pfizer has waived and shall be deemed to have waived any and all obligations or requirements of holders of Asbestos PI Claims who become Settling Plaintiffs under the terms of the Pfizer Claimant Settlement Agreements to reduce the amount of distributions they are entitled to receive from the Asbestos PI Trust; provided, however, that such waiver shall be null and void and of no further force and effect in the event that the Effective Date does not occur.

(e)   In addition to the foregoing, the Confirmation Order shall contain the following findings of fact and conclusions of law, among others:

(i)   The Asbestos PI Trust will have the sole and exclusive authority as of the Effective Date to defend all Asbestos PI Claims;

(ii)   The Quigley Insurance Transfer, the Insurance Relinquishment Agreement and the AIG Assignment Agreement do not violate any consent-to-assignment provisions of any Shared Asbestos Insurance Policy, any Insurance Settlement Agreement, the AIG Insurance Settlement Agreement or any other applicable insurance policy, agreement, or contract;

(iii)   The Quigley Insurance Transfer pursuant to the Plan is valid, effective and enforceable, and effectuates the transfer to the Asbestos PI Trust of the Quigley Transferred Insurance Rights; provided, however, that all Asbestos PI Insurer Coverage Defenses are preserved to the extent set forth in Section 10.4 of this Plan;

(iv)   The duties, obligations and liabilities of any Asbestos Insurance Entity under all insurance policies, all Shared Asbestos Insurance Policies, all Insurance Settlement Agreements, the AIG Insurance Settlement Agreement, and all other settlement agreements, are not diminished, reduced or eliminated by:  (A) the discharge of Quigley and Reorganized Quigley from all Asbestos PI Claims; (B) the injunctive protection provided to Quigley, Reorganized Quigley, the Asbestos Protected Parties, and the Settling Asbestos Insurance Entities with respect to Asbestos PI Claims; or (C) the assumption of responsibility and liability for all Asbestos PI Claims by the Asbestos PI Trust; provided, however, that all Asbestos PI Insurer Coverage Defenses are preserved to the extent set forth in Section 10.4 of this Plan;

(v)   The Asbestos PI Channeling Injunction, the Settling Asbestos Insurance Entity Injunction, the Non-Settling Asbestos Insurance Entity Injunction, and the Confidentiality Injunction and the Dividend Injunction are essential to the Plan and Quigley's reorganization efforts;

(vi)    Pfizer's contribution of the Pfizer Contribution, and Quigley's contribution of the Quigley Contribution, to the Asbestos PI Trust or Reorganized Quigley, as applicable, constitute substantial assets of the Plan and the reorganization; and

(vii)    The Plan and its acceptance otherwise comply with section 1126 of the Bankruptcy Code.

(f)    Pursuant to section 524(g) of the Bankruptcy Code, as a condition precedent to the issuance of the Asbestos PI Channeling Injunction, the Confirmation Order shall contain the following findings of fact and conclusions of law:

(i)    At least 75% of those holders of Class 4 Asbestos PI Claims actually voting on the Plan vote to accept the Plan;

(ii)    The Asbestos PI Channeling Injunction, the Settling Asbestos Insurance Entity Injunction and the Non-Settling Asbestos Insurance Entity Injunction are to be implemented in accordance with the Plan and the Asbestos PI Trust, and the Confidentiality Injunction ~~and the Dividend Injunction are~~is to be implemented in accordance with the Plan;

(iii)    As of the Petition Date, Quigley has been named as a defendant in personal injury, wrongful death, or property damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products;

(iv)    The Asbestos PI Trust is to be funded in part by securities of Quigley, the Quigley Contribution and the Pfizer Contribution, and future payment of dividends by Reorganized Quigley;

(v)    The Asbestos PI Trust, on the ~~Stock Transfer~~Effective Date, will own one hundred percent (100%) of the common stock of Reorganized Quigley;

(vi)    The Asbestos PI Trust is to use its assets and income to pay Asbestos PI Claims;

(vii)    Quigley is likely to be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise to the Asbestos PI Claims, which are addressed by the Asbestos PI Channeling Injunction, the Settling Asbestos Insurance Entity Injunction and the Non- Settling Asbestos Insurance Entity Injunction;

(viii)    The actual amounts, numbers, and timing of Demands cannot be determined;

(ix)    Pursuit of Demands outside the procedures prescribed by the Plan and the Asbestos PI Trust Distribution Procedures is likely to threaten the Plan's purpose to deal equitably with Asbestos PI Claims;

(x)     The terms of the Asbestos PI Channeling Injunction, the Settling Asbestos Insurance Entity Injunction, the Non-Settling Asbestos Insurance Entity Injunction, and the Confidentiality Injunction and the Dividend Injunction, including any provisions barring actions against third parties, are described in specific and conspicuous language in the Plan and the Disclosure Statement;

(xi)    Pursuant to (A) the Asbestos PI Trust Distribution Procedures; (B) court order; or (C) otherwise, the Asbestos PI Trust will operate through mechanisms such as structured, periodic, or supplemental payments, pro rata distributions, matrices, or periodic review of estimates of the numbers and values of Asbestos PI Claims or other comparable mechanisms, that provide reasonable assurance that the Asbestos PI Trust will value, and be in a financial position to pay, similar Asbestos PI Claims in substantially the same manner;

(xii)   The Future Demand Holders' Representative was appointed by the Bankruptcy Court as part of the proceedings leading to the issuance of the Asbestos PI Channeling Injunction, the Settling Asbestos Insurance Entity Injunction and the Non-Settling Asbestos Insurance Entity Injunction for the purpose of, among other things, protecting the rights of persons that might subsequently assert Demands of the kind that would constitute Asbestos PI Claims and are addressed in the Asbestos PI Channeling Injunction, the Settling Asbestos Insurance Entity Injunction and the Non-Settling Asbestos Insurance Entity Injunction and channeled to the Asbestos PI Trust; and

(xiii)  In light of the benefits provided, or to be provided, to the Asbestos PI Trust on behalf of each Asbestos Protected Party or Settling Asbestos Insurance Entity, as applicable, the Asbestos PI Channeling Injunction and the Settling Asbestos Insurance Entity Injunction are fair and equitable with respect to the persons that might subsequently assert Demands that would constitute Asbestos PI Claims against any Asbestos Protected Party or Settling Asbestos Insurance Entity, as applicable.

Section 12.2   Conditions Precedent to the Effective Date of the Plan.   The Effective Date shall not occur and the Plan shall not become effective unless and until the following conditions shall have been satisfied or waived in accordance with Section 12.3 of the Plan:

(a)     The Confirmation Date shall have occurred and the Confirmation Order, in form and substance acceptable to Quigley and Pfizer, shall have been entered by the Bankruptcy Court and affirmed by the District Court or issued by the District Court, and shall have become a Final Order.

(b)     No request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending.

(c)     All conditions precedent to the Confirmation Date shall have been satisfied or waived and shall continue to be satisfied or waived.

DOC ID-10435617.9

(d)    The following agreements and documents, in form and substance satisfactory to Quigley and Pfizer, shall have been executed and delivered, and all conditions precedent thereto shall have been satisfied:

        (i)     Amended Charter Documents;

        (ii)    Asbestos PI Trust Agreement;

        (iii)   AIG Assignment Agreement;

        (iv)    Insurance Relinquishment Agreement;

        (v)     Asbestos PI Claims Services Agreement; and

        (vi)    ~~Pfizer/AIG Annuity~~Documents related to New Quigley Operations.

        ~~(vii)   Pfizer Annuity; and~~

        ~~(viii)  Pfizer Claims Services Agreement.~~

(e)    All other actions, Plan Documents, and other documents and agreements necessary to implement those provisions of the Plan to be effectuated on or prior to the Effective Date, in form and substance satisfactory to Quigley and Pfizer, shall have been effected or executed and delivered.

(f)    The Confirmation Order shall contain the Asbestos PI Channeling Injunction, the Settling Asbestos Insurance Entity Injunction, the Non-Settling Asbestos Insurance Entity Injunction, and the Confidentiality Injunction ~~and the Dividend Injunction~~.

(g)    Quigley shall have obtained an opinion of counsel stating that the Asbestos PI Trust qualifies as a "qualified settlement fund" within the meaning of regulations issued pursuant to section 468B of the Internal Revenue Code.

Section 12.3    Waiver of Conditions Precedent.  To the fullest extent permitted by law, each of the conditions precedent in Sections 12.1 and 12.2 hereof may be waived or modified, in whole or in part, by Quigley with the written consent of Pfizer, after consulting with the Creditors' Committee and the Future Demand Holders' Representative.  Any such waiver or modification of a condition precedent in Sections 12.1 and 12.2 hereof may be effected at any time, without notice, without leave or order of the Bankruptcy Court or District Court and without any other formal action.

Section 12.4    Effect of Failure or Absence of Waiver of Conditions Precedent to the Effective Date of the Plan.  In the event that one or more of the conditions specified in Section 12.2 of the Plan have not been satisfied, or waived, as applicable, by Quigley and Pfizer (after consulting with the Creditors' Committee and the Future Demand Holders' Representative), within 90 days of entry of the Confirmation Order, upon notification submitted by Quigley in its discretion to the Bankruptcy Court:  (a) the Confirmation Order shall be

vacated; (b) no Distributions under the Plan shall be made; (c) Quigley and all holders of Claims against and Equity Interests in Quigley shall be restored to the *status_quo_ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred; and (d) Quigley's obligations with respect to Claims and Equity Interests shall remain unchanged. If the Confirmation Order is vacated pursuant to this Section 12.4, nothing contained in this Plan shall: (x) constitute or be deemed a waiver or release of any Claims or Equity Interests by, against, or in Quigley or any other Entity; or (y) prejudice in any manner the rights of Quigley or any other Entity in the Chapter 11 Case or any other or further proceedings involving Quigley.

## ARTICLE XIII

## JURISDICTION OF BANKRUPTCY COURT

Section 13.1    Retention of Jurisdiction. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall, to the fullest extent permitted by law, retain and have exclusive jurisdiction over all matters arising out of and related to the Chapter 11 Case and this Plan, including, among other things, jurisdiction to:

(a)    Hear and determine any and all objections to and proceedings involving the allowance, estimation, classification, and subordination of Claims (other than Asbestos PI Claims) or Equity Interests;

(b)    Hear and determine any and all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Asbestos PI Trust after the Effective Date, including any proceedings with respect to Avoidance Actions, except to the extent that any such Avoidance Actions have been released under this Plan or the Confirmation Order, or otherwise to recover assets for the benefit of the Estate or the Asbestos PI Trust;

(c)    Hear and determine all objections to the termination of the Asbestos PI Trust;

(d)    Hear and determine such other matters that may be set forth in or arise in connection with the Plan, the Confirmation Order, the Asbestos PI Channeling Injunction, the Settling Asbestos Insurance Entity Injunction, the Non-Settling Asbestos Insurance Entity Injunction, the Confidentiality Injunction, the Dividend Injunction or the Asbestos PI Trust Agreement;

(e)    Hear and determine any proceeding that involves the validity, application, construction, enforceability, or modification of the Asbestos PI Channeling Injunction, the Settling Asbestos Insurance Entity Injunction, the Non-Settling Asbestos Insurance Entity Injunction, or the Confidentiality Injunction or the Dividend Injunction;

(f)    Hear and determine any conflict or other issues that may arise in the Chapter 11 Case and the administration of the Asbestos PI Trust;

DOC ID-10435617.9

(g)     Enter such orders as are necessary to implement and enforce the injunctions described herein, including, if necessary, orders extending the protections afforded by section 524(g) of the Bankruptcy Code to the Settling Asbestos Insurance Entities and the Asbestos Protected Parties;

(h)     Hear and determine any and all applications for allowance of Fee Claims and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan;

(i)     Enter such orders authorizing non-material modifications to the Plan as may be necessary to comply with section 468B of the Internal Revenue Code;

(j)     Hear and determine any applications pending on the Effective Date for the assumption, rejection or assumption and assignment, as the case may be, of Executory Contracts to which Quigley is a party or with respect to which Quigley may be liable, and to hear and determine and, if necessary, liquidate any and all Claims arising therefrom;

(k)     Hear and determine any and all applications, Claims, causes of action, adversary proceedings, and contested or litigated matters that may be pending on the Effective Date or commenced by Reorganized Quigley or any other party in interest subsequent to the Effective Date;

(l)     Consider any modifications of the Plan, remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Code;

(m)     Hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan or any Entity's obligations hereunder, including, but not limited to, performance of Quigley's duties under the Plan;

(n)     Hear and determine any proposed compromise and settlement of any Claim against or cause of action by or against Quigley;

(o)     Issue orders in aid of confirmation, consummation and execution of the Plan to the extent authorized by section 1142 of the Bankruptcy Code;

(p)     Hear and determine such other matters as may be set forth in the Confirmation Order or other orders of the Bankruptcy Court, or which may arise in connection with the Plan, the Confirmation Order, or the Effective Date, as may be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(q)     Hear and determine any timely objections to Administrative Claims or to Proofs of Claim filed, both before and after the Confirmation Date, including any objections to the classification of any Claim, and to Allow or Disallow any Disputed Claim, in whole or in part;

(r)     Hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(s)     Compel the conveyance of property and other performance contemplated under the Plan and documents executed in connection herewith;

(t)     Enforce remedies upon any default under the Plan;

(u)     Hear and determine any other matter not inconsistent with the Bankruptcy Code; and

(v)     Enter a final decree closing the Chapter 11 Case.

If and to the extent that the Bankruptcy Court is not permitted under applicable law to exercise jurisdiction over any of the matters specified above, the reference to the "Bankruptcy Court" in the preamble to this Section 13.1 shall be deemed to be a reference to the "District Court." Notwithstanding the terms of this Section 13.1, the Bankruptcy Court shall retain continuing, but not exclusive, jurisdiction over Asbestos Insurance Actions; provided, however, that this Section 13.1 shall not confer or grant jurisdiction to the Bankruptcy Court when the Asbestos Insurance Action is governed by an otherwise applicable arbitration provision. Notwithstanding anything in this Section 13.1 to the contrary, the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures shall govern the satisfaction of Asbestos PI Claims and the forum in which such Asbestos PI Claims shall be determined.

Section 13.2    Modification of Plan.  Quigley may alter, amend, or modify this Plan or any Schedules or Exhibits thereto, with the consent of Pfizer, under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date and may include any such amended Schedules or Exhibits in the Plan or the Plan Supplement, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and Quigley shall have complied with section 1125 of the Bankruptcy Code, to the extent necessary. Quigley may alter, amend, or modify this Plan or any Schedules or Exhibits thereto, with the written consent of Pfizer, at any time after entry of the Confirmation Order and before the Plan's substantial consummation; provided, however, that:  (a) the Plan, as modified, altered, or amended, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code; and (b) the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modification. A holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, if any, such holder changes its previous acceptance or rejection.

Section 13.3    Compromises of Controversies.  From and after the Effective Date, Reorganized Quigley shall be authorized to compromise controversies not involving the Asbestos PI Trust or Asbestos PI Claims on such terms as Reorganized Quigley may determine, in its sole discretion, to be appropriate.

Section 13.4    Petition for Final Decree.  The Chapter 11 Case shall not be deemed fully administered until all Claims (other than Asbestos PI Claims) and contested matters brought or to be brought by Quigley or Reorganized Quigley, as the case may be, have

been adjudicated by Final Order, and all Distributions to be made under this Plan (other than distributions to be made by the Asbestos PI Trust to the holders of Asbestos PI Claims) have been completed. At such time, Reorganized Quigley shall petition the Bankruptcy Court for entry of a final decree declaring the case fully administered. Upon entry of an order of the Bankruptcy Court granting Reorganized Quigley's application for a final decree, which order shall have become a Final Order, the Chapter 11 Case shall be closed.

   Section 13.5 <u>Preservation of Rights under Rule 2004 of the Bankruptcy Rules</u>. From and after the Effective Date and until the Chapter 11 Case is closed in accordance with Section 13.4 above, Reorganized Quigley shall continue to have all rights available to Quigley prior to the Effective Date pursuant to Rule 2004 of the Bankruptcy Rules.

   Section 13.6 <u>Revocation or Withdrawal of the Plan</u>. Quigley reserves the right to revoke or withdraw the Plan, with the written consent of Pfizer, at any time prior to entry of the Confirmation Order. If Quigley revokes or withdraws the Plan or if confirmation of the Plan does not occur, then: (a) this Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any Claim or Equity Interest or Class of Claims or Equity Interests), assumption or rejection of Executory Contracts or leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; (c) Pfizer's waiver of any obligations or requirements of holders of Asbestos PI Claims who become Settling Plaintiffs under the terms of the Pfizer Claimant Settlement Agreements to reduce the amount of distributions they are entitled to receive from the Asbestos PI Trust shall be null and void and of no further force or effect; and (d) nothing contained in this Plan, and no acts taken in preparation for consummation of this Plan, shall: (x) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Equity Interests in, Quigley or any other Entity; (y) prejudice in any manner the rights of Quigley or any Entity in any further proceedings involving Quigley; or (z) constitute an admission of any sort by Quigley or any other Entity.

ARTICLE XIV

MISCELLANEOUS PROVISIONS

   Section 14.1 <u>Governing Law</u>. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), or a Schedule or Exhibit hereto or instrument, agreement or other document executed under the Plan provides otherwise, the rights, duties and obligations arising under the Plan, and the instruments, agreements and other documents executed in connection with the Plan, shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York without giving effect to the principles of conflicts of law thereof.

   Section 14.2 <u>Notices</u>. Any notice, statement, or other report required or permitted by this Plan must be: (i) in writing and shall be deemed given when: (a) delivered personally to the recipient; (b) sent by facsimile before 5:00 p.m. prevailing New York time on a Business Day with a copy of such facsimile sent to the recipient by reputable overnight courier service (charges prepaid) on the same day; (c) five (5) days after deposit in the United States mail, mailed by registered or certified mail, return receipt requested, postage prepaid; or (d) one

(1) Business Day after being sent to the recipient by reputable overnight courier service (charges prepaid); and (ii) addressed to the parties to whom such notice, statement or report is directed (and, if required, its counsel) at the addresses set forth below, or at such other address as such party may designate from time to time in writing in accordance with this Section 14.2.

If to Quigley:

Quigley Company, Inc.
52 Vanderbilt Avenue
New York, New York 10017
Attention:  President

with a copy (which will not constitute notice) to:

Schulte Roth & Zabel LLP
919 Third Avenue
New York, New York 10022
Attention:  Michael L. Cook, Esq.
            Lawrence V. Gelber, Esq.

If to the Creditors' Committee:

Caplin & Drysdale, Chartered
399 Park Avenue
New York, New York 10022
Attention:  Elihu Inselbuch, Esq.

        -and-

Caplin & Drysdale, Chartered
One Thomas Circle, NW
Washington, D.C. 20005
Attention:  ~~Peter V.N. Lockwood, Esq.~~
            ~~~~Ronald Reinsel, Esq.
            Rita C. Tobin, Esq.

If to Pfizer:

Pfizer Inc~~.~~
235 East 42nd Street
New York, New York 10017
Attention:  ~~Atiba Adams~~Brad Lerman, Esq.
            Michele Suggs, Esq.

with a copy (which will not constitute notice) to:

~~Greenberg Traurig LLP~~
~~MetLife Building~~

~~200 Park Avenue~~Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York ~~10166~~10036
Attention: ~~Bruce R. Zirinsky, Esq.~~
~~John H. Bae~~Sheila Birnbaum, Esq.
Jay Goffman, Esq.
George Zimmerman, Esq.

~~And~~

~~Cadwalader, Wickersham & Taft LLP~~
~~One World Financial Center~~
~~New York, New York 10281~~
~~Attention: Dennis J. Block, Esq~~

If to the Future Demand Holders' Representative:

>Togut, Segal & Segal LLP
>One Penn Plaza
>Suite 3335
>New York, New York 10119
>Attention:  Albert Togut, Esq.

with a copy (which will not constitute notice) to:

>Togut, Segal & Segal LLP
>One Penn Plaza
>Suite 3335
>New York, New York 10119
>Attention:  Richard K. Milin, Esq.

Section 14.3  Further Documents and Action.  Quigley and Reorganized Quigley, with the written consent of Pfizer, shall execute and be authorized to file with the Bankruptcy Court such agreements and other documents, take or cause to be taken such action, and deliver such documents or information as may be necessary or appropriate to effect and further evidence the terms and conditions of the Plan and to consummate the transactions and transfers contemplated by the Plan.  Quigley and Reorganized Quigley, and all other parties, including all holders of Claims entitled to receive Distributions under the Plan, shall execute any and all documents and instruments that must be executed under or in connection with the Plan in order to implement the terms of the Plan or to effectuate the Distributions under the Plan, provided that such documents and instruments are reasonably acceptable to such party or parties.

Section 14.4  Plan Supplement.  Any and all Exhibits, lists, or Schedules referred to herein but not filed with this Plan shall be contained in the Plan Supplement and filed with the Clerk of the Bankruptcy Court at least five (5) Business Days prior to the deadline for the filing and service of objections to the Plan.  Thereafter, the Plan Supplement will be available for inspection in the office of the Clerk of the Bankruptcy Court during normal court hours and at Quigley's Internet site (http://www.bmcgroup.com/restructuring/geninfo.aspx?ClientID=155).  Claimants also may obtain a copy of the Plan Supplement, once filed, from Quigley by written request sent to the following address:

>If Sent by U.S. Mail:
>BMC Group, Inc.
>Quigley Company, Inc.
>c/o BMC Group, Inc.
>PO Box 1066
>El Segundo, CA 90245-10663020
>Chanhassen, MN 55317-3020

DOC ID-10435617.9

If by Overnight Courier or Hand Delivery:
BMC Group, Inc.
Quigley Company, Inc.
c/o BMC Group, Inc.
444 N. Nash Street
El Segundo, CA 9024518750 Lake Drive East
Chanhassen, MN 55317

Section 14.5    Inconsistencies.   To the extent the Plan is inconsistent with the Disclosure Statement, the provisions of the Plan shall be controlling.  To the extent the Plan is inconsistent with the Confirmation Order, the provisions of the Confirmation Order shall be controlling.

Section 14.6    Reservation of Rights.   If the Plan is not confirmed by a Final Order, or if the Plan is confirmed and does not become effective, the rights of all parties in interest in the Chapter 11 Case are and shall be reserved in full.  Any concessions or settlements reflected herein, if any, are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Chapter 11 Case shall be bound or deemed prejudiced by any such concession or settlement.

Section 14.7    Tax Reporting and Compliance.   In connection with the Plan and all instruments issued in connection therewith and Distributions thereon, Quigley, and Reorganized Quigley, shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements.  No holder of an Allowed Claim against Quigley shall effectuate any withholding with respect to the cancellation or satisfaction of such Allowed Claim under the Plan.  Reorganized Quigley is hereby authorized to request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all taxable periods of Quigley ending after the Petition Date through, and including, the Effective Date of the Plan.

Section 14.8    Exemption from Transfer Taxes.   Pursuant to section 1146(a) of the Bankruptcy Code, applicable to the Chapter 11 Case, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan shall be exempt from all taxes as provided in such section 1146(a).

Section 14.9    Binding Effect.   The rights, benefits and obligations of any Entity named or referred to in the Plan, or whose actions may be required to effectuate the terms of the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity (including, but not limited to, any trustee appointed for Quigley under chapters 7 or 11 of the Bankruptcy Code).  The Confirmation Order shall provide that the terms and provisions of the Plan and the Confirmation Order shall survive and remain effective after entry of any order which may be entered converting the Chapter 11 Case to a case

under chapter 7 of the Bankruptcy Code, and the terms and provisions of the Plan shall continue to be effective in this or any superseding case under the Bankruptcy Code.

Section 14.10  Severability.  At the option of Quigley or Reorganized Quigley, as the case may be, Pfizer, the Creditors' Committee and the Future Demand Holders' Representative, acting jointly, any provision of the Plan, the Confirmation Order, the Asbestos PI Channeling Injunction, the Settling Asbestos Insurance Entity Injunction, the Non-Settling Asbestos Insurance Entity Injunction, the Confidentiality Injunction, ~~the Dividend Injunction~~ or any of the Exhibits to the Plan that is determined to be prohibited, unenforceable, or invalid by a court of competent jurisdiction or any other governmental Entity with appropriate jurisdiction shall, as to any jurisdiction in which such provision is prohibited, unenforceable, or invalidated, be ineffective to the extent of such prohibition, unenforceability, or invalidation without invalidating the effectiveness of the remaining provisions of the Plan, the Confirmation Order, the Asbestos PI Channeling Injunction, the Settling Asbestos Insurance Entity Injunction, the Non-Settling Asbestos Insurance Entity Injunction, the Confidentiality Injunction, ~~the Dividend Injunction~~ and the Exhibits to the Plan or affect the validity or enforceability of such provisions in any other jurisdiction.

Section 14.11  Further Authorizations.  The Debtor, and, after the Effective Date, the Asbestos PI Trust, if and to the extent necessary, may seek such orders, judgments, injunctions, and rulings that it deems necessary to carry out further the intentions and purposes of, and to give full effect to the provisions of, the Plan.

Section 14.12  Payment of Statutory Fees.  All fees payable under section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date.  Reorganized Quigley shall pay all such fees that arise after the Effective Date but before the closing of the Chapter 11 Case.

Section 14.13  Prepayment.  Except as otherwise provided in this Plan, the Plan Documents, or the Confirmation Order, Reorganized Quigley shall have the right to prepay, without penalty, all or any portion of an Allowed Claim at any time; provided, however, that any such prepayment shall not be violative of, or otherwise prejudice, the relative priorities and parities among the Classes of Claims.

Section 14.14  Effective Date Actions Simultaneous.  Unless the Plan or the Confirmation Order provides otherwise, actions required to be taken on the Effective Date shall take place and be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

[END OF TEXT]

DOC ID-10435617.9

**IN WITNESS WHEREOF**, the undersigned has duly executed the Plan as of the date first above written.

Respectfully submitted,

**QUIGLEY COMPANY, INC.**

By:  /s/ Kim D. Jenkins
      Name:  Kim D. Jenkins
      Title:  President

New York, New York

~~August~~April 6, ~~2009~~2011

SCHULTE ROTH & ZABEL LLP
Attorneys for Quigley Company, Inc.,
Debtor and Debtor-in-Possession

By: ~~    /s/ Lawrence V. Gelber~~

Michael L. Cook
Lawrence V. Gelber
~~Victoria A. Lepore~~
~~Adam L. Hirsch~~
919 Third Avenue
New York, New York 10022
Telephone:  (212) 756-2000
Facsimile:  (212) 593-5955

~~DOC ID-10435617.9~~