UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
In re:                                            :
                                                  :        Chapter 11 (Confirmed)
            QUIGLEY COMPANY, INC.,                :        Case No.: 04-15739(SMB)
                                                  :
                            Debtor.               :
-----------------------------------------------------X

### MEMORANDUM DECISION AND ORDER
### REGARDING ACCESS TO PUBLIC DOCUMENT

**A P P E A R A N C E S :**

BROWN RUDNICK LLP
*Attorneys for Former Ad Hoc Committee*
  *of Tort Victims*
Seven Times Square
New York, New York 10036

            Edward S. Weisfelner, Esq.
            Jeffrey L. Jonas, Esq.
                  Of Counsel

GIBSON, DUNN & CRUTCHER, LLP
*Attorneys for Mintz Group LLC*
200 Park Avenue
New York, New York 10166-0193

            Reed Brodsky, Esq.
            Lisa H. Rubin, Esq.
                  Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

        The Mintz Group LLC ("Mintz") is conducting an investigation into the

conduct of Weitz & Luxenberg, PC ("Weitz"), and Sheldon Silver, the former

Speaker of the New York State Assembly who was "of counsel" to Weitz.

(Transcript of Nov. 18, 2015 Hr'g, at 25:24-25:22 (ECF Doc. # 2875).)  On

November 30, 2015, Silver was convicted following a jury trial in the United

States District Court for the Southern District of New York in connection with a Superseding Indictment that charged Silver with fraudulent schemes to deprive the public of his honest services, extortion and money transactions involving crime proceeds. (*Verdict Sheet*, dated Nov. 30, 2015 (No. 1:15-cr-00093 (VEC)) (ECF Doc. # 137); *see Superseding Indictment*, filed Apr. 23, 2015 (No. 1:15-cr-00093 (VEC)) (ECF Doc. # 32).)  Mintz filed an application to obtain access to a schedule of clients represented by the members of the former Ad Hoc Committee of Tort Victims ("AHC"), a group that included Weitz.  The schedule was supposed to be annexed to a statement filed in 2004 on behalf of the AHC pursuant to Federal Bankruptcy Rule 2019 ("Rule 2019") by its counsel, Brown Rudnick Berlack Israels LLP ("Brown Rudnick").  According to Brown Rudnick, the schedule was not attached to the filed Rule 2019 statement because it was too voluminous.  Instead, the Rule 2019 statement represented that the schedule was available on request.

This appeared to be a simple matter but was not because there is no evidence that Schedule A, at least in the form that the Rule 2019 statement suggested, was ever prepared.  Thus, Mintz essentially seeks to compel Brown Rudnick and/or the members of the AHC to create Schedule A and provide access to Mintz.  Mintz's application raises two threshold questions: does the Court have subject matter jurisdiction to grant the relief requested by Mintz, and if so, does Mintz have standing to seek it?  Accordingly, the parties are directed to file memoranda of law dealing with these issues in accordance with the schedule set forth at the end of this decision.

2

## BACKGROUND

The background to this chapter 11 case is described in prior decisions of this Court. *See, e.g.*, *In re Quigley Co.*, 437 B.R. 102 (Bankruptcy S.D.N.Y. 2010); *In re Quigley Co.*, No. 04-15739 (SMB), 2009 WL 9034027 (Bankr. S.D.N.Y. Apr. 24, 2009). I assume familiarity with these decisions, and state only the facts necessary to the Court's disposition of the current application.

Quigley Company, Inc. ("Quigley"), a subsidiary of Pfizer, Inc. ("Pfizer"), was formerly engaged in the manufacture of products containing asbestos. As a result, it was caught up in the wave of asbestos litigation, and filed this chapter 11 case on September 3, 2004 (the "Petition Date"). Shortly after the commencement of the case, three personal injury law firms representing thousands of asbestos claimants – Cooney & Conway ("Cooney"), Weitz and the Law Offices of Peter G. Angelos, PC ("Angelos") – joined together to form the AHC. The AHC retained Brown Rudnick to represent it in the Quigley case. Edward S. Weisfelner, Esq., a partner at Brown Rudnick, bore the primary responsibility for the representation throughout the entire case.

The AHC was required to file a Rule 2019 statement.[1] Rule 2019 requires a group or unofficial committee that appears in a chapter 11 case to disclose certain information about its members and their interests. Brown Rudnick filed the original Rule 2019 Statement on behalf of the AHC on

---

[1]     Rule 2019 was substantially amended in 2011.

November 1, 2004, (*Verified Statement of Brown Rudnick Berlack Israels LLP*

*Pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure*, dated Nov.

1, 2004 (ECF Doc. # 146)), and filed an amended statement three days later.

(*First Amended Verified Statement of Brown Rudnick Berlack Israels LLP*

*Pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure*, dated Nov.

4, 2004 ("*Amended Statement*") (ECF Doc. # 157).)  Paragraph 1 of the

*Amended Statement* stated that the AHC acted as counsel for "the entities or

individuals (the "Claimants") listed in Schedule A attached hereto."  The

Schedule A attached to the *Amended Statement* did not, however, include the

names or any other information about the Claimants.  Instead, it consisted of a

single sheet of paper that stated "Available on Request."

Quigley and Pfizer challenged the sufficiency of the *Amended Statement*.

By motion dated November 9, 2004, they jointly moved, *inter alia*, to strike

objections filed by the AHC and Reaud, Morgan & Quinn, L.L.P. ("Reaud"),

another law firm representing asbestos claimants, to Quigley's and Pfizer's

pending motion for a preliminary injunction, and also sought to disqualify the

AHC and Reaud's clients and their counsel.[2]  The *Motion to Strike* was based, in

part, on the inadequacies of the *Amended Statement*.  Quigley and Pfizer

---

[2]    *Motion of Quigley Company, Inc. and Pfizer Inc. for: (I) an Order Under Fed. R. Bankr. P.
2019(b) (A) Striking Objections of Ad Hoc Committee of Tort Victims and Reaud, Morgan & Quinn,
L.L.P. to Motion for a Preliminary Injunction; and (B) Disqualifying the Members of the Ad Hoc
Committee, Reaud, Morgan & Quinn, L.L.P., and Their Counsel from Representing Personal Injury
Claimants in the Chapter 11 Case; and (II) for an Order Pursuant to Sections 105(a) and 1102 of
the Bankruptcy Code Removing Certain Members from Serving on the Official Committee of
Unsecured Creditors for Conflicts of Interest*, dated Nov. 9, 2004 ("*Motion to Strike*") (ECF Doc. #
161.)

argued that the AHC "merely provided three separate lists of personal injury plaintiffs totaling nearly 600 pages without any information as to which Ad Hoc Committee member represents which claimants or even an aggregate number of personal injury claimants the Ad Hoc Committee purportedly represents that hold Quigley claims and those with Pfizer-only claims." (*Motion to Strike* at ¶ 16.)

The AHC and the United States Trustee opposed the *Motion to Strike*. Citing Schedule A, the AHC argued that the *Amended Statement* "provides specific information relating to over 22,000 asbestos claimants represented by the three law firms who comprise the Ad Hoc Committee."[3]  The United States Trustee's objection stated that the "Brown Rudnick filed an amended Verified Statement on or about November 4, 2004, which annexes as schedule A, the names and addresses of the entities and claimants they purport to represent."[4]

---

[3]    *Opposition of the Ad Hoc Committee of Tort Victims to Motion of Quigley Company, Inc. and Pfizer, Inc. for (I) an Order Under Fed. R. Bankr. P. 2019(b) (A) Striking Objections of Ad Hoc Committee of Tort Victims and Reaud, Morgan & Quinn, L.L.P. to Motion for a Preliminary Injunction; and (B) Disqualifying the Members of the Ad Hoc Committee, Reaud, Morgan & Quinn, L.L.P. and Their Counsel from Representing Personal Injury Claimants in this Chapter 11 Case; and (II) for an Order Pursuant to Sections 105(a) And 1102 of the Bankruptcy Code Removing Certain Members from Serving on the Official Committee of Unsecured Creditors for Conflicts Of Interest*, dated Nov. 16, 2004, at 2 (ECF Doc. # 176).

[4]    *Objection of the United States Trustee to the Motion of Quigley Company, Inc. and Pfizer Inc. for (I) an Order Under Fed. R. Bankr. P. 2019(b) (A) Striking Objections of Ad Hoc Committee of Tort Victims and Reaud, Morgan & Quinn, L.L.P. to Motion for a Preliminary Injunction; and (B) Disqualifying the Members of the Ad Hoc Committee, Reaud, Morgan & Quinn, L.L.P. and Their Counsel from Representing Personal Injury Claimants in this Chapter 11 Case; and (II) for an Order Pursuant to Sections 105(a) And 1102 of the Bankruptcy Code Removing Certain Members from Serving on the Official Committee of Unsecured Creditors for Conflicts Of Interest*, dated Nov. 16, 2004, at ¶ 8 (ECF Doc. # 183.)

The Bankruptcy Court heard many matters on November 17, 2004, including the issues relating to the sufficiency of the *Amended Statement*. Mr. Weisfelner informed the Court that Brown Rudnick had complied with Rule 2019. The Court disagreed, stating that Brown Rudnick's statement only listed the three law firms comprising the AHC. Mr. Weisfelner responded (incorrectly) that the Court was "absolutely wrong" because Brown Rudnick had filed a supplemental 2019 affidavit that "list[ed] over 6,000 claimants." (Transcript of Nov. 17, 2004 Hr'g, at 30:18-31:6 (ECF Doc. # 217-1).)[5]

The Court ultimately declined to rule on the sufficiency of the Rule 2019 statements that day, (*id.* at 31:15-18), and my examination of the docket did not disclose any further proceedings relating to that issue.[6] Nevertheless, it is clear that in November 2004, Brown Rudnick provided three separate lists of claimants represented by the AHC to Quigley, Pfizer and, possibly the United States Trustee, and everyone treated these lists as the Schedule A referred to in the *Amended Statement*.

After many years and a few unsuccessful attempts to confirm a plan, Quigley eventually confirmed its fifth amended and restated plan of reorganization, (*see Findings of Fact, Conclusions of Law, and Order (i)*

---

[5]    The court reporter incorrectly attributed this last statement to another lawyer, Bruce Zirinsky, Esq., who represented Pfizer. The context makes clear that Mr. Weisfelner was the speaker.

[6]    Neither Brown Rudnick nor Reaud, nor their clients, were ever disqualified from participating in the Quigley case, and the claimants they represented voted on the plan that the Court ultimately confirmed.

*Confirming Quigley Company Inc.'s Chapter 11 Plan of Reorganization Under 11 U.S.C. § 1129(a) and (ii) Recommending Affirmance by the U.S. District Court,* dated July 2, 2013 (ECF Doc. # 2670), and the District Court affirmed the confirmation order shortly thereafter. (*See Notice of Entry of Order Under 11 U.S.C. § 524(g)(3)(A) Affirming Bankruptcy Court's Confirmation of Chapter 11 Reorganization Plan,* dated Aug. 2, 2013 (ECF Doc. # 2681).)

The confirmation was preceded by creditor voting. On September 4, 2012, the Court signed an order approving Quigley's disclosure statement and setting out the procedures for solicitation of the vote and balloting.[7] Personal injury claimants voted in Class 4A or 4B depending on whether they were parties to a pre-September 2010 settlement agreement with Pfizer.[8]

The *Balloting Order* authorized voting by master ballot, meaning that counsel could vote the claims of all of its clients in one ballot. In that event, the master ballot had to attach an exhibit that identified each voting claimant/client by name and provide other information relevant to tabulating the vote. (*Balloting Order*, Ex. A, at ¶ 4(c)(ii)(1).) Counsel voting a master ballot was also required to complete a certification that it had the authority to cast

---

[7]      *Order: (I) Approving Quigley's Disclosure Statement; (II) Approving Third Amended Ballot Solicitation and Tabulation Procedures, Forms of Ballots, and Manner of Notice; and (III) Estimating Each Voting Asbestos PI Claim Solely for Voting Purposes Using Amounts Set Forth in the Asbestos PI Trust Distribution Procedures,* dated Sept. 4, 2012 ("*Balloting Order*") (ECF Doc. # 2458.)

[8]      The AHC members' clients did not settle with Pfizer prior to September 2010, and fell into Class 4B.

the master ballot on behalf of the claimants identified in the exhibit attached to the master ballot. (*Id.*, Ex. A, at ¶ 4(c)(iii).) Individual and master ballots had to be sent to Quigley's balloting agent, BMC Group, Inc. ("BMC"), by November 16, 2012. (*Id.* at ¶ 11.) The ballots themselves were not filed and did not become judicial records.

The plan was overwhelmingly accepted by the voting classes, including Classes 4A and 4B. (*Declaration of Brad Daniel on Behalf of BMC Group Inc., as Claims, Tabulation and Noticing Agent Regarding Solicitation and Final Tabulation of Votes With Respect to Quigley Company, Inc. Fifth Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated June 12, 2013 ("*Daniel Declaration*"), at ¶ 16 (ECF Doc. # 2641).) The *Daniel Declaration* attached exhibits which reflected that Weitz submitted a master ballot in Class 4B, (*see id.*, Ex. A, p. 393 of 480), as did Cooney, (*see id.*, Ex. A, p. 239 of 480), and Angelos. (*See id.*, Ex. A, p. 306 of 480.) [9]

Over two years later, on October 22, 2015, Mintz moved to compel the production by the AHC and/or Brown Rudnick of Schedule A. (*Motion to Compel Production of a Judicial Record Filed in this Court, Kept in the Possession of the Ad Hoc Committee and not Made Available Despite Repeated Written Requests for Access*, dated Oct. 22, 2015 ("*Mintz Motion*") (ECF Doc. # 2851).) Mintz, who was not a party in interest in Quigley's chapter 11 case, argued

---

[9]    The page citations to the ballots refer to the numbers automatically assigned by the Court's CM/ECF system at the top of each page.

that Schedule A was a judicial record that was not available through ECF or
the clerk and Brown Rudnick would not turn it over. In addition, it urged that
there is a strong presumption of public access to judicial records and Brown
Rudnick and the AHC had failed to overcome that presumption. (*Mintz Motion*
at ¶¶ 12-16.)

Brown Rudnick objected. (*Objection of Brown Rudnick LLP to Motion to
Compel Filed by Mintz Group LLC*, dated Oct. 29, 2015 (ECF Doc. # 2853).) The
firm asserted that despite diligent efforts, it could not locate Schedule A. (*Id.* at
¶ 10.) The task was made difficult by the fact that the AHC had disbanded, (*id.*
at ¶ 2), the list was compiled eleven years ago and the firm did not typically
retain such old records, particularly when the client no longer existed, (*id.* at
¶¶ 7, 10), and one of the two attorneys primarily responsible for preparing the
list had passed away and the other had left Brown Rudnick. (*Id.* at ¶¶ 7, 10,
12.) Finally, Brown Rudnick suggested that it was not required to provide a
document that was never publically filed, especially when the requester was
not a party in interest and its motives were "murky." (*Id.* at ¶ 14.)[10]

The firm submitted Mr. Weisfelner's declaration in further support.
(*Declaration of Edward S. Weisfelner in Support of Objection of Brown Rudnick
LLP to Motion to Compel Filed by Mintz Group LLC*, dated Oct. 29, 2015 (ECF
Doc. # 2853-1).) Mr. Weisfelner stated that "I conducted and/or caused to be

---

[10]    Mintz did not disclose its motive until later.

conducted an internal search regarding the Amended 2019 Statement and Schedule A," (*id.* at ¶ 15), and "[d]espite diligent efforts, Brown Rudnick was unable to locate the documents in its records." (*Id.* at ¶ 16.) He also explained that Brown Rudnick did not typically retain such old documents, particularly when the client no longer existed. (*Id.* at ¶ 17.)

Mintz would not accept Brown Rudnick's representation and continued to press for Schedule A and discovery regarding its whereabouts. In the meantime, Brown Rudnick had obtained the three separate lists that were believed to be the three AHC client lists sent to Brown Rudnick in 2004. In an email dated November 23, 2015 (sent at 4:32 p.m.), Mr. Weisfelner advised Mintz's counsel that the three lists were never requested by anyone other than Quigley and Pfizer, and "were never formally combined, filed or provided as Schedule A to anyone else." He explained that his firm was finalizing its search, and was prepared to turn over the three lists no later than the following Wednesday, but only if this satisfied the *Mintz Motion.* (*Letter from Reed Brodsky, Esq. to the Court*, dated Nov. 30, 2015, Ex. 15.)[11]

Reed Brodsky, Esq., Mintz's lead counsel, responded by email the next day (sent at 1:47 p.m.) He proposed that Mr. Weisfelner send the three lists so he could review them and decide if they satisfied Mintz. He further proposed that they meet after thirty days and talk so that Mr. Weisfelner could answer

---

[11]    The letter and exhibits were not filed and are too voluminous for the Court to scan into CM/ECF. Mintz's counsel should do so.

questions. (*Id.*) Mr. Weisfelner responded nine minutes later, stating that he had no interest in dragging this out any further or spending any more time or money on the matter. He further stated that the component client lists that would have made up Schedule A were all that Mintz would be entitled to get, and there was nothing left to work out or any additional questions to answer. (*Id.*)

Shortly before this email exchange, Brown Rudnick had filed papers attesting to the search for Schedule A and the firm's offer, at that time, to provide the attachments to the 2012 master ballots containing the client information for each AHC member and, where available, the 2004 client lists sent to Brown Rudnick. (*Declaration of Edward S. Weisfelner in Support of Emergency Motion for an Order Quashing Mintz Group LLC Subpoenas, Dismissing Mintz Group LLC Motion to Compel and Terminating Trial*, dated Nov. 16, 2015, at ¶ 9 (ECF Doc. # 2868).) Mr. Weisfelner's declaration attached, as Exhibit 2, declarations by three attorneys associated with the three members of the AHC. The declarants were individuals responsible for the compilation and transmission of their firm's client lists to Brown Rudnick for inclusion in Schedule A. Kathy Byrne, Esq., an attorney at Cooney, declared that she had conducted a diligent search but could not locate any copies of Schedule A. (*Declaration of Kathy Byrne*, dated Nov. 13, 2015, at ¶ 5.) She did, however, locate a list of Cooney clients that was attached to the 2012 master ballot and

annexed a copy.[12]  (*Id.* at ¶ 6.)  Armand Volta, Esq., an attorney at Angelos,

also affirmed that he had conducted a diligent search but could not locate any

copies of Schedule A.  (*Declaration of Armand J.  Volta, Jr.*, dated Nov. 13, 2015,

at ¶ 5.)  He stated that he was continuing to search for the list of clients that

was sent to Brown Rudnick in 2004 for inclusion in Schedule A, (*id.* at ¶ 6),

and attached the list of Angelos' clients that was annexed to the 2012 master

ballot.  (*Id.* at ¶ 7.)  Finally, Lisa Busch, Esq., an attorney at Weitz, stated that

she had conducted a diligent search and could not locate any copies of

Schedule A.  (*Declaration of Lisa N. Busch*, dated Nov. 13, 2015, at ¶ 5.)  She

did, however, locate the list of claimants that Weitz had sent to Brown Rudnick

in 2004 in connection with the compilation of Schedule A, and attached a copy.

(*Id.* at ¶ 6.)  In addition, she located and attached the list of Weitz clients that

was attached to the 2012 master ballot.  (*Id.* at ¶ 7.)

Brown Rudnick continued its search.  A letter to the Court from Brown

Rudnick, dated November 30, 2015, attached two declarations that described

the results of Brown Rudnick's continuing investigation following the November

18 hearing.  (*Letter to the Court from Marek P. Krzyzowski, Esq.* dated Nov, 30,

2015 (ECF Doc. # 2891).)  Amanda Buck Varella, Esq., a litigation partner at

---

[12]    Each declaration attached the client list referred to in the declaration.  Brown Rudnick
filed the declarations but did not file the attachments to the declarations.  Mintz objected, and
the Court eventually entered an order directing Brown Rudnick to make the exhibits to the
declarations available upon request.  (*Order*, dated Jan. 13, 2016 (ECF Doc. # 2876).)
Dissatisfied with Brown Rudnick's response to the order, Mintz moved to compel compliance,
but the Court denied the motion.  (*Order Denying Mintz Group's Motion to Compel*, dated Feb.
10, 2015 (ECF Doc. # 2889).)

04-15739-smb    Doc 2892    Filed 03/18/16    Entered 03/18/16 11:55:09    Main Document
Pg 13 of 16

Brown Rudnick, explained the efforts she had made or overseen to locate

Schedule A.  (*Declaration of Amanda Buck Varella*, dated Nov. 25, 2015.)

Despite numerous searches through the archives of the firm's document

management system used in 2004 and the hard copy files maintained by the

firm's records department, she was unable to locate Schedule A.  (*Id.* at ¶¶ 6-7,

9.)

She also reviewed the hard copy files of the attorneys that had worked on

the filing of the *Amended Statement*.  Their files did not contain a list of the

AHC firms' combined clients but the files of one of the attorneys included a

printout of the client lists provided by Weitz and Angelos in 2004.  (*Id.* at ¶ 8.)

Finally, Ms. Varella reviewed the emails from the relevant period, and was able

to locate Cooney emails that appeared to transmit its client list, but due to

their age, the attachments had been archived and were not available.  (*Id.* at

¶ 11.)

Mr. Weisfelner also submitted a declaration.  (*Declaration of Edward S.

Weisfelner*, dated Nov. 30, 2015.)  He confirmed that Brown Rudnick had now

located the client lists sent by Weitz and Angelos in 2004, and Cooney had

provided Brown Rudnick with the client list it had sent at that time.  (*Id.* at

¶¶ 5-6.)

## DISCUSSION

Exhibits attached to a Rule 2019 statement are judicial records to which

the public has a presumptive right of access.  *In re Motions for Access of*

*Garlock Sealing Techs. LLC*, 488 B.R. 281, 298 (D. Del. 2013); s*ee* 11 U.S.C. § 107(a) (subject to certain exceptions, "a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge").  Here, however, there is no Schedule A and none was ever created.  Instead, there were three lists of clients provided to Brown Rudnick in 2004 that Brown Rudnick gave to Quigley and Pfizer, and possibly the United States Trustee.

At a November 10, 2015 hearing, I asked Mintz's counsel what would happen if, at the end of the day, there was no Schedule A.  He responded that the list should be recreated.  (Transcript of Nov. 10, 2015 Hr'g, at 6:4-8 (ECF Doc. # 2873).)  I am satisfied from the declarations discussed above that there is no Schedule A, which explains why no one could find it.  But before directing Brown Rudnick to recreate Schedule A (which may not amount to anything more than providing the three 2004 client lists, an offer Mintz has already rejected), Mintz must demonstrate that I have the jurisdiction to grant that relief, and as a member of the public, it has the right to insist upon it.

Generally, a party invoking the bankruptcy court's post-confirmation jurisdiction must show that the matter has a close nexus to the bankruptcy plan, and the plan provides for the retention of such jurisdiction.  *Cohen v. CDR Creances S.A.S.* (*In re Euro–Am. Lodging Corp.*), 549 F. App'x 52, 54 (2d Cir. 2014); *Ace Am. Ins. Co. v. State of Michigan Workers' Comp. Ins. Agency* (*In re DPH Holdings Corp.*), 448 F. App'x 134, 137 (2d Cir. 2011).  The relief sought

14

by Mintz, the creation of Schedule A, has no connection to the plan,[13] and

Mintz has not addressed the jurisdictional provisions of the plan.  Even if a

Court always has jurisdiction to oversee and ensure access to the records it

maintains, the Court does not maintain Schedule A and never did.

This brings me to the second question – whether Mintz has the standing

or the right to compel Brown Rudnick to create Schedule A eleven years after

the fact.  The Rule itself does not provide for that relief.  At the time that the

*Amended Statement* was filed, Rule 2019(b) provided in pertinent part:

> **(b) Failure to Comply; Effect.**  On motion of any party in interest
> or on its own initiative, the court may (1) determine whether there
> has been a failure to comply with the provisions of subdivision (a)
> of this rule . . . and, if it so determines, the court may refuse to
> permit that entity, committee or indenture trustee to be heard
> further or to intervene in the case; (2) examine any representation
> provision of a . . . committee or other authorization, and any claim
> or interest acquired by any entity or committee in contemplation or
> in the course of a case under the Code and grant appropriate relief;
> and (3) hold invalid any authority, acceptance, rejection, or
> objection given, procured, or received by an entity or committee
> who has not complied with this rule or with § 1125(b) of the
> Code.[14]

Mintz is not a party in interest in the Quigley case, and only a party in

interest or the Court, on its own motion, can seek redress based upon a failure

to comply with 2019.  Further, the sanctions for noncompliance are limited to

disqualification of the ad hoc committee and invalidation of any pleadings filed

---

[13]    The sanctions for non-compliance are discussed below.  While Rule 2019(b) authorizes
a court to disqualify the votes cast by the non-complying entity, the confirmation of Quigley's
plan is no longer subject to direct review and cannot be collaterally attacked by Mintz.

[14]    The comparable provision now appears in Rule 2019(e).

or votes procured.  The Rule does not authorize the Court to compel a non-compliant entity to comply; instead, it empowers the Court to bar the non-compliant entity from participating in the case.[15]

Accordingly, the Court directs Mintz to file a memorandum of law within fourteen days of the date of this order, not exceeding twenty pages, to address the questions raised by the Court.  In the event it does not, and absent an extension granted by the Court, I will deem the *Mintz Motion* abandoned. Brown Rudnick may file an opposition of equal length within fourteen days of the receipt of Mintz's brief.  The Court will reserve decision on the merits pending consideration of the threshold questions.

So ordered.

Dated:      New York, New York
            March 18, 2016

                                        /s/ *Stuart M. Bernstein*
                                        STUART M. BERNSTEIN
                                        United States Bankruptcy Court

---

[15]     In addition, the sanctions authorized by Rule 2019 are not mandatory; the Court *may* impose them.  To the extent I have discretion in the matter, Mintz must explain why it is appropriate to require Brown Rudnick to create Schedule A, by now irrelevant, at this late date.